**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 25-CR-346 (KAM) |
| EMMANUEL CLASE DE LA CRUZ, et al., | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF MOTION FOR BILL OF PARTICULARS**

Defendant Emmanuel Clase De La Cruz respectfully submits this memorandum of law in support of his Motion for Bill of Particulars. In addition to and to the extent not inconsistent with the legal arguments herein, Mr. Clase specifically adopts the legal arguments advanced by Co-Defendant Luis Leandro Ortiz Ribera in his Motion for Bill of Particulars, ECF Entry No. 59, and his Memorandum in Support, ECF Entry No. 59-1.

**I.     Preliminary Statement**

The government indicted Mr. Clase on four conspiracy counts generally alleging that he conspired with unnamed Bettors, and later, Mr. Ortiz, to provide advance notice to those Bettors of the characteristics of certain pitches so the Bettors could profit from wagers placed on those pitches. *See* ECF Entry No. 1, ¶¶ 41–48. The government alleges Mr. Clase engaged in the conspiracy from May 2023 until June 2025, *id.*, ¶ 13, threw at least nine rigged pitches, *id.* ¶¶ 15, 16, 17, 18, 20, 22, 23, 25,

and 27, and used coded language, such as payment for a horse or house repairs, to refer to the ill-gotten proceeds, *id.* ¶¶ 19, 36.

But these allegations are not sufficient for Mr. Clase to prepare his defense and avoid surprise at trial. Mr. Clase threw over 2,500 pitches and sent or received tens of thousands of messages, nearly all of which are in Spanish, during the period of the alleged conspiracy. Unless the government specifies which pitches were allegedly in furtherance of the conspiracy, Mr. Clase and his counsel must spend precious and limited resources preparing trial defenses for thousands of potentially irrelevant pitches. And unless the government specifies which communications were code for the gambling conspiracy, Mr. Clase and his counsel must spend even more time and further expend resources to manually translate, assess, and prepare defenses for Mr. Clase's tens of thousands of homogenous, innocuous messages, of which the government has alleged at least two were code.

Mr. Clase moves the court to order the government to file a bill of particulars setting forth those pitches it alleges he threw illegally and those communications it alleges were coded language in furtherance of a baseball gambling conspiracy.

## II.    Mr. Ortiz's Motion

Mr. Ortiz filed a Motion for Bill of Particulars, ECF Entry No. 59, and Memorandum of Law in Support, ECF Entry No. 59-1 on January 9, 2026. Mr. Clase incorporates the law and argument referenced therein to the extent not inconsistent with Mr. Clase's Motion for Bill of Particulars or this Memorandum of Law in Support.

Mr. Clase additionally offers the following law and argument in light of the indictment alleging he was engaged in the criminal conspiracy for a significantly longer period of time, May 2023 to June 2025.

## III. Legal Standard

Rule 7(f) of the Federal Rules of Criminal Procedure allows a defendant to seek a bill of particulars in order to "(1) 'identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial'; (2) 'to prevent surprise'; and (3) 'to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense.'" *United States v. Barret*, 824 F. Supp. 2d 419, 438 (E.D.N.Y. 2011) (Matsumoto, J.) (quoting *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987)). The court has discretion to order a bill of particulars when "the information sought is necessary" to prepare for trial and prevent surprise because "the charges of the indictment are so general that they do not advise the defendant of the *specific acts* of which he is accused." *United States v. Mandell*, 710 F. Supp. 2d 368, 384 (S.D.N.Y. 2010) (emphasis added) (citations omitted).

While pre-trial discovery may be an acceptable alternate form for the prosecution to provide the specificity sought by the defendant, *see, e.g.*, *United States v. Barnes*, 158 F.3d 662, 665-66 (2d Cir. 1998), providing "mountains of documents" to defense counsel is insufficient if the defendant remains "unguided" as to which events the government alleges to be actually at issue. *Bortnovsky*, 820 F.2d at 575 (reversing defendants' convictions and remanding for new trial when the government did not identify which documents and burglaries it contended the defendants fabricated out of the larger set of burglaries and accompanying documents for which

3

the defendants submitted insurance claims). Indeed, when the government alleges the defendant falsified some indefinite portion of a set of records, a bill of particulars is an appropriate tool to limit that universe so that the defendant can reasonably prepare for trial and avoid unfair surprise. *See id.*; *United States v. Upton*, 856 F. Supp. 727, 753 (E.D.N.Y. 1994) ("[A]lthough the Superseding Indictment does detail 33 specific instances of falsification of records, it would be unfair under the circumstances to allow the government to introduce allegedly falsified maintenance records buried in thousands of documents already produced without prior notice to defendants . . .").

## IV.   Argument

Mr. Clase threw over 2,500 pitches and sent and received tens of thousands of communications during the over two-year period of the alleged conspiracy.[1] Outside of a handful of identified examples of allegedly fixed pitches, the indictment does not allege which pitches were illegal. And likewise, outside of two instances of alleged coded language regarding proceeds, the indictment does not allege which communications were code rather than literal. Mr. Clase needs this information to be able to prepare for trial. He therefore respectfully moves the Court to order the government to produce a bill of particulars specifying which of his pitches and communications the government alleges were in furtherance of the conspiracy.

---

[1] The government produced 60,000+ audio messages, 19,000+ PDFs of chats, 8,000+ videos, and 8,000+ images from Mr. Clase and one alleged co-conspirator's phones that were sent during the alleged conspiracy. Moreover, the government produced responsive reports from several other cell phones and, on January 13, 2026, produced what is believed to be more than 1 terabyte of data from approximately nine phones.

> A.    *Mr. Clase needs to know which pitches the government alleges were part of the conspiracy to prepare his defense at trial.*

Mr. Clase cannot prepare his defense at trial without knowing which pitches the government alleges he threw as part of a baseball gambling conspiracy. The government identifies nine "example" pitches in the indictment and alleges that the unnamed Bettors won approximately $173,500 on these pitches. *See* ECF Entry No. 1, ¶¶ 15, 16, 17, 18, 20, 22, 23, 25, and 27. But Mr. Clase threw 2,605 pitches between May 2023 and June 2025,[2] and the government specifically alleges that the Bettors "won at least $400,000" on pitches thrown by Mr. Clase, ECF Entry No. 1, ¶ 29. Mr. Clase simply cannot be ready for trial by May without risk of unfair surprise if he must prepare a defense for each of his pitches and guess at whether the government alleges the remaining $226,500+ was won legitimately or as part of the alleged conspiracy. *See Upton*, 856 F. Supp. at 753 (holding that a bill of particulars was necessary, despite the indictment detailing 33 specific instances of allegedly falsified records, when the defendant risked also having to defend additional records not specified by the government); *cf. Leka v. Portuondo*, 257 F.3d 89, 103 (considering *Brady* material only disclosed when there was "opportunity for a responsible lawyer to use the information with some degree of calculation and forethought"). A bill of particulars requiring the government to disclose those pitches it alleges were in furtherance of the conspiracy would prevent Mr. Clase from wasting resources on pitches the government does not contend were wrongful. *See Bortnovsky*, 820 F.2d at

---

[2] https://baseballsavant.mlb.com/savant-player/emmanuel-clase-661403.

575 (holding a bill of particulars should have been granted when "defense counsel were left unguided as to . . . which of some fifteen burglaries would be demonstrated to be staged").

Mr. Clase's case is exceptionally atypical, and a bill of particulars is necessary, not to impermissibly provide a "preview of the evidence or the theory of the government's case," but to require the government to adequately disclose which pitches it alleges were crimes rather than baseball plays. *Cf. United States v. Bin Laden*, 92 F. Supp. 2d 225, 233 (S.D.N.Y. 2000). First, while cross-examination often prevents prejudice to defendants who are forced to wait until trial to learn which acts the government will rely on, *see United States v. Chen*, 378 F.3d 151, 163 (2d. Cir. 2004), the volume of pitches makes it impossible for Mr. Clase to prepare an effective cross-examination. Each of Mr. Clase's 2,605 pitches during the alleged conspiracy is videotaped and has a known context, such as the weather, the count, the opposing batter's tendencies, the score of the game, defensive alignment, and Mr. Clase's days of rest. While this information is available to Mr. Clase for each pitch, Mr. Clase cannot be expected to be ready to present all this exculpatory information for thousands of pitches, especially when the government knows which pitches it alleges, but has yet to fully disclose, were thrown in furtherance of a conspiracy.

Second, Mr. Clase does not need, nor request, a preview of the government's trial presentation. *Cf. Torres*, 901 F.2d at 234 ("Acquisition of evidentiary detail is not the function of the bill of particulars.") (quoting *Hemphill v. United States*, 392 F.2d 45, 49 (8th Cir. 1968)). Mr. Clase only needs to know which pitches the

government alleges he threw in furtherance of the conspiracy so that he can reasonably prepare for trial.[3]

> **B.    *Mr. Clase needs to know which communications the government alleges were coded statements in furtherance of a conspiracy to prepare his defense at trial.***

Mr. Clase also needs to know which communications the government alleges were coded communications in order to prepare his defense at trial. The government alleges twice in the indictment that Mr. Clase sent or received coded messages to hide the alleged gambling activity and its proceeds. *See* ECF Entry No. 1, ¶¶ 19, 36. But during the greater than two-year period of the alleged conspiracy, Mr. Clase sent and received tens of thousands of messages, including hundreds, if not thousands, of messages about subjects like rooster gambling, livestock, and house repairs.[4] These tens of thousands of messages are almost exclusively in Spanish, use abbreviations or slang terms, and are often audio messages. Mr. Clase cannot reasonably prepare to defend their contents in English at trial without knowing which ones the government alleges were coded messages in furtherance of the conspiracy.

Contrary to other cases, the discovery produced to Mr. Clase weighs in favor of, not against, a bill of particulars. Typically, the discovery the prosecution provides to the defendant in advance of trial weighs against a bill of particulars because it

---

[3] For example, the government could identify the pitches in reference to the date, inning, opposing batter, and pitch of the plate appearance, *e.g.*, "10/1/1932, Top 5, Babe Ruth, Fifth Pitch."

[4] In addition to sufficiently identifying alleged acts in furtherance of the fraud conspiracies charged in Counts 1-3, a bill of particulars is also necessary for Mr. Clase to understand which messages were alleged coded statements in furtherance of the money laundering conspiracy charged in Count 4. This information is necessary to allow Mr. Clase to prepare his defenses and not waste limited resources on transfers of legitimately earned funds sent to Mr. Clase's home country, the Dominican Republic, for legitimate purposes, including providing for Mr. Clase's family, livestock, and business interests.

helps the defendant understand the charges against him, prepare for trial, and avoid surprise. *See United States v. Barnes*, 158 F.3d 662, 665-66 (2d Cir. 1998). This is true because some features of discovery, such as text searchability or organization, may help the defendant understand the charges against him. *See United States v. Rogas*, 547 F. Supp. 3d 357, 366 (S.D.N.Y. 2021). However, a bill of particulars is appropriate when the indictment obscures the allegedly wrongful conduct and where the produced discovery is too voluminous to illuminate it. *See Bortnovsky*, 820 F.2d at 575 ("The relevance of key events was shrouded in mystery at the commencement of and throughout the trial. The government did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided . . .").

Here, the relevant produced discovery is overwhelmingly in Spanish, uses slang and abbreviations, and, most importantly, comes in the form of audio files. Leaving to the side the materials from other phones making up more than a terabyte of discovery, from just Mr. Clase's phones and the government's production of responsive cuts of one alleged co-conspirator's phones, there are over 60,000 audio messages during the period of the alleged conspiracy, May 2023 to June 2025. These audio files are not text searchable and require manual translation. Even text searchable files present problems, however, since the use of slang and abbreviations through informal text communications disrupts the use of software to mass translate the messages. Mr. Clase thus is in the realm of *Bortnovsky*, rather than *Rogas*, and needs to know the universe of allegedly coded communications so that he can devote the necessary time and resources to those communications. *Compare Bortnovsky*, 820

F.2d at 575 ("The Government did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided as to which documents would be proven falsified or which of some fifteen burglaries would be demonstrated to be staged.") *with Rogas*, 547 F. Supp. 3d at 366 ("The Government has represented, and Rogas does not dispute, that it has produced discovery in an 'electronically searchable' format and the productions have been 'accompanied by itemized indices with Bates ranges.'").

And again, Mr. Clase does not request that the government disclose those communications it intends to use as evidence at trial or otherwise preview its presentation of evidence in the bill of particulars. *See Torres*, 901 F.2d at 234. Mr. Clase requests a bill of particulars to reasonably prepare his defense and avoid unfair surprise at trial.

## V.    Conclusion

For the foregoing reasons, Mr. Clase respectfully moves the Court to order the government to produce a bill of particulars specifying which of his pitches and communications the government alleges were in furtherance of the conspiracy.

Respectfully submitted,

/s/ *Michael Ferrara*
Michael Ferrara (*pro hac vice*)
Lindsay Gerdes (NY Bar No. 4581690)
Michael Bronson (*pro hac vice*)
Riley Able (*pro hac vice*)
Dinsmore & Shohl LLP
191 W. Nationwide Blvd., Suite 200
Columbus, OH 4325
(614) 628-6975
michael.ferrara@dinsmore.com

**Counsel for Emmanuel Clase**