

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

RCH:EWS/SMS
F. #2025R00435

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

January 13, 2026

By ECF

The Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: United States v. Emmanuel Clase de la Cruz et al.
       Criminal Case No. 25-346 (KAM)

Dear Judge Matsumoto:

    The government respectfully submits this letter in response to the defendants' joint motion requesting that the Court order the government to immediately disclose certain materials, ECF No. 58 ("Discovery Br."), and defendant Luis Leandro Ortiz Ribera's motion for a bill of particulars, ECF No. 59 ("BOP Br."). As discussed below, the government is aware of, has complied with, and continues to comply with its discovery obligations, including under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny. It has also provided defendant Ortiz with sufficiently particular information to prepare his defense. Both motions should be denied.

  I. Background

    A. Overview of Charged Case[1]

    The defendants are charged with (1) conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349; (2) conspiracy to commit honest services wire fraud, in violation of Title 18, United States Code, Section 1349; (3) conspiracy to influence sporting contests by bribery, in violation of Title 18, United States Code, Section 224; and (4) money laundering conspiracy, in violation of Title 18, United States Code, Section 1956(h). See Indictment, ECF No. 1.

---

[1] This proffer of facts is not a complete statement of all facts and evidence of which the government is aware or will seek to introduce at trial. Unless otherwise indicated, all statements are provided in sum and substance and in part.

As alleged in the indictment, beginning in approximately May 2023, defendant Emmanuel Clase de la Cruz ("Clase") agreed to share advance information about pitches he would throw in upcoming Major League Baseball ("MLB") games with other individuals—including an individual identified as Bettor-1—so that those individuals could use the information to win wagers on those pitches. In or around June 2025, defendant Luis Ortiz Ribera ("Ortiz") joined the scheme and agreed that he would throw two pitches in exchange for money: one on June 15, 2025 ("Subject Pitch-1") and a second on June 27, 2025 ("Subject Pitch-2").

The government's evidence at trial will consist of, among other things, (i) witness testimony; (ii) text and audio messages from the defendants and their co-conspirators; (iii) various documents and other records, including gambling records, financial records, photographs, and videos.

Jury selection is scheduled to begin on May 4, 2026. In advance of trial, the Court has set a deadline for the disclosure of various items, including, as relevant here, impeachment information pursuant to Giglio v. United States, 405 U.S. 150 (1972), which is due on March 27, 2026; an exhibit list, which is due on March 30, 2026; and Jencks Act materials, which are due on May 1, 2026. See ECF No. 53.

B.  Summary of Pretrial Disclosures

The government has produced extensive discovery in this case. It has also engaged with defense counsel on their numerous requests for additional information and, where appropriate, made additional disclosures well beyond those required by its various discovery obligations to facilitate the defense's preparation for trial.

1.  Rule 16 Discovery

Immediately following the issuance of the protective order by the Court on November 30, 2025, ECF No. 37, the government produced Rule 16 discovery to the defendants, and it has continued to do so on an ongoing basis. See Gov't Ex. A (discovery letters).[2] To date, the discovery consists of over 2 terabytes of data, including approximately 19,000 pages of records and responsive materials identified from nine electronic devices obtained during the investigation. The productions of discovery were made with itemized discovery letters identifying, where relevant, the type and source of the materials. The majority of the information is text searchable. Moreover, even though the government has no obligation at this time to produce raw extractions for third parties' entire electronic devices, the government did so at the defendants' request, see Discovery Br. Exs. 2a at 6, 2b at 7, for 13 electronic devices.

---

[2]  The government respectfully requests leave to file the exhibits attached hereto under seal because they contain information designated as "Sensitive" under the Protective Order, and identifies other information about the investigation, including identifying information for victims and witnesses.

## 2. Defendants' Demands for Information

On December 23, 2025, the defendants sent simultaneous letters—18 pages in total—demanding the disclosure of various categories of information. Discovery Br. Ex. 2. The demands ran the gamut, from information about the qualifications and credentials of translators used by the government to demands for search warrant affidavits associated with third parties and information in the possession of MLB and various sports betting platforms.

On December 30, 2025, and January 5, 2026, the government provided the defendants with two letters containing the disclosure of additional records and information. Discovery Br. Ex. 3. Among other information, the government disclosed out of an abundance of caution (1) copies of declarations of third-party witnesses (hereinafter, "Declarant Witnesses") interviewed by defendant Clase's attorneys, which were previously provided by defendant Clase's defense to the government;[3] (2) summaries of statements by certain identified witnesses, which included statements from certain Declarant Witnesses; (3) records and reports relating to pre-indictment defense presentations made by defense counsel; (4) the identities of all anonymized persons and entities in the indictment; and (5) contact information for MLB's counsel, in response to requests for information related to MLB's separate investigation. As to the disclosure of witness statements, the government informed the defendants that some of the witnesses for whom the government had provided summaries of their statements to defense counsel had also made other statements that were inconsistent with their potentially exculpatory statements, including by recanting the exculpatory statements. Discovery Br. Ex. 3b at 4.

## 3. Translations

In December 2025, the defendants asked the government to produce translations of the underlying Spanish-language text messages provided in discovery. As the government conveyed to both defendants, the government will provide translated copies of communications it intends to use at trial once an expert translation service engaged by the government prepares final form versions. Nonetheless, in an effort to facilitate the defendants' trial preparation and despite being under no obligation to do so, the government provided defendant Clase with FBI work product of draft verbatim translations of text messages—totaling more than 1,100 pages—after defendant Clase agreed to execute a stipulation limiting his ability to use those draft translations at trial. See Gov't Ex. B. The government made the same offer to Ortiz's attorneys, but the parties have not yet come to an agreement on an appropriate stipulation governing the use of those materials.

---

[3] As set forth above, the declarations were prepared by counsel for defendant Clase and the declarant's signatures to those declarations were obtained by counsel for defendant Clase. During a pre-indictment meeting with the government, counsel for Ortiz indicated to the government that they were in possession of at least one of these declarations. Accordingly, the government understands that the defendants have long been aware of the declarations and their contents, even prior to Indictment.

#### 4. Ongoing Investigation and Additional Discovery

As the government previewed for the Court and the parties during the initial status conference on December 2, 2025, the government's investigation is ongoing. The government therefore expects that it may obtain additional discoverable information in the weeks ahead,[4] and, to the extent it does, will make the appropriate disclosures.[5]

### C. The Defendants' Motions

On January 9, 2026, the defendants filed a joint motion to compel the disclosure of information. ECF No. 58. The gravamen of the motion turns on statements made by the Declarant Witnesses, who signed declarations prepared by counsel for defendant Clase in connection with a purported pre-indictment investigation. The government's investigation has revealed that the purportedly exculpatory statements contained in the declarations are false; in fact, one or more of the Declarant Witnesses have provided inculpatory information to the government about the defendants' participation in the scheme and recanted the declaration(s). The defendants assert that, despite knowing the Declarant Witnesses' purportedly exculpatory statements (and in fact, having drafted such statements themselves), all information and witness statements inconsistent with those declarations—which is to say, all inculpatory information, i.e., all Jencks Act material— constitutes Brady material, triggering the immediate production of all reports and underlying notes memorializing any statements by the Declarant Witnesses. Discovery Br. at 12-18. In other words, having drafted declarations attesting to their client's innocence and obtaining the signatures of the Declarant Witnesses on those declarations as part of defendant Clase's own "investigation," the defendants now seek to employ those false declarations to obtain early Jencks Act material for government witnesses, under the backwards proposition that those declarations have transformed any inculpatory statements by government witnesses into Brady material.

The defendants also demand the production of various materials held by third-party entities, which they claim would be exculpatory if they exist. Id. at 19-21. Defendant Ortiz

---

[4] Pointing to the government's disclosure of third-party subpoena returns on December 30, 2025, the defendants falsely suggest that the government misrepresented the status of discovery when it characterized Rule 16 discovery as "substantially complete" during the initial status conference. Discovery Br. at 6 n.10. In fact, the government specifically flagged for the Court and defendants that it expected to obtain additional information not currently in its possession and would disclose it promptly upon receipt, which it did on December 30, 2025. Moreover, as is standard, the government cautioned that it would continuously review its records to ensure all Rule 16 material is identified and produced. The government will continue to produce additional information promptly upon obtaining it and will continue to review its files for additional discoverable information.

[5] For instance, only after the defendants filed their motion to compel on January 9, 2026, the government obtained additional information that it has since disclosed out of an abundance of caution, pursuant to Brady, by letter dated January 13, 2026. See Gov't Ex. C.

4

additionally claims he needs notes and reports of witness statements to prepare a motion to suppress pursuant to Franks v. Delaware, 438 U.S. 154 (1978).

Separately, Ortiz has filed a motion for a bill of particulars. Even though the indictment particularly alleges the precise month the defendant joined the conspiracy (June 2025), ECF No. 1 ¶ 30, the dates the pitches at issue were thrown by defendant Ortiz (June 15 and June 27), which particular pitches were fixed (using photographs, no less), and precisely how much money the defendant was offered in bribes and kickbacks ($5,000 and $7,000, respectively), id. ¶¶ 31–37, defendant Ortiz asserts he needs more information to adequately prepare for trial.[6]

Both motions should be denied.

## II.    The Defendants' Motion to Compel Should Be Denied

The government understands its Brady obligations, has complied with them, and will continue to do so. As it relates to the defendants' demands, the government has already produced, in an abundance of caution pursuant to its obligations under Brady, summaries of certain witness statements as described above. The government has also produced as Rule 16 discovery information in its possession from third parties including MLB and betting platforms.

With respect to statements by the Declarant Witnesses, the defendants mischaracterize the information they seek as Brady. In essence, the defendants are seeking to use false affidavits that they obtained pre-indictment as a mechanism to compel early production of Jencks Act materials for government witnesses. Turning Brady on its head, the defendants claim that—by virtue of the inconsistency—they are entitled to all statements by the Declarant Witnesses *inculpating* the defendants. Such statements obviously do not constitute Brady material. In any event, the government will produce witness statements, and underlying agent notes and reports, in accordance with the Court's pretrial disclosure deadlines, which will allow the defense to make effective use of any inconsistencies at trial, including by impeaching potential government's witnesses.

The other information sought by the defense is not discoverable under Brady because, to the extent it exists, it is information held by third parties who are not part of the prosecution team and not in the possession of the government. Accordingly, the defense's various requests for information—from MLB, from betting platforms, from teammates and the like—are requests that should be directed to those third parties, not the government.

---

[6]    Minutes before the government filed the instant opposition, defendant Clase also moved for a bill of particulars. See ECF No. 61. While the government will separately respond to the arguments raised by defendant Clase, for the same reasons outlined here, the government opposes his motion as well. The speaking indictment in this case is detailed as to both defendants and provides each with the notice necessary to prepare a defense. Nevertheless, the government's arguments here are limited to responding to those points raised by defendant Ortiz in his motion.

A. Applicable Legal Standard

The government has a "constitutional duty to disclose evidence favorable to an accused when such evidence is material to guilt or punishment." United States v. Coppa, 267 F.3d 132, 135 (2d Cir. 2001). "[A] prosecutor must disclose evidence if, without such disclosure, a reasonable probability will exist that an outcome of a trial in which the evidence had been disclosed would have been different." Id. at 142. "The rationale underlying Brady is not to supply a defendant with all the evidence in the [g]overnment's possession which might conceivably assist the preparation of his defense, but to assure that the defendant will not be denied access to exculpatory evidence only known to the [g]overnment." United States v. LeRoy, 687 F.2d 610, 619 (2d Cir. 1982).

"It is well-settled that the government need not disclose Brady or Giglio material simply upon request by the defendant." United States v. Barret, 824 F. Supp. 2d 419, 455 (E.D.N.Y. 2011) (citing Coppa, 267 F.3d at 146). Rather, the government satisfies its Brady obligations where it provides the defendants with the "essential facts permitting him to take advantage of any exculpatory evidence." United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987). Where the defense knows the identity of a witness with exculpatory information, it is ordinarily on notice of the substance of the witness's potential testimony. See United States v. Zagari, 111 F.3d 307, 320 (2d Cir. 1997) (no suppression of Brady information where defendant knew of witnesses who could testify about insanity of government witness).

Brady does not require the government produce underlying agent reports or transcripts memorializing exculpatory information. See, e.g., United States v. Salerno, 868 F.2d 524, 542 (2d Cir. 1989) (government satisfied its obligations by informing defense that it "might want to interview" witness); Leroy, 687 F.2d at 618-19 (government satisfied Brady obligation where it put defense on notice of witnesses with favorable information, even though it did not disclose witness's exculpatory grand jury testimony); United States v. Grossman, 843 F.2d 78, 85 (2d Cir. 1988) (Brady obligation satisfied where the government provided letter day before trial identifying witness who may have given exculpatory grand jury testimony but did not disclose underlying transcript); United States v. Collins, 409 F. Supp. 3d 228, 244–45 (S.D.N.Y. 2019) (denying defense motion for reports and notes underlying Brady demand, and observing, "[d]efendants do not cite case law that supports their argument that the Government is required to produce primary materials containing exculpatory statements in order to meet its Brady obligation. This is not surprising because such disclosure is not legally required[.]"); United States v. Volpe, 42 F. Supp. 2d 204, 227 (E.D.N.Y. 1999) ("Providing the names of witnesses, without full statements or summaries of whatever exculpatory information they may have, has been sufficient in this circuit for the government to be in compliance with Brady.").

Indeed, while the government has already made disclosures out of an abundance of caution and will continue to do so to the extent additional information becomes known, the law is clear that there is also not a general duty to disclose Brady material before trial. See United States ex rel Lucas v. Regan, 503 F.2d 1, 3 n.1 (2d Cir. 1974); see also United States v. Persico, 645 F.3d 85, 111-12 (2d Cir. 2011) (disclosure on the fourth day of trial that continued for six weeks was sufficient); United States v. Brown, 582 F.2d 197, 200 (2d Cir. 1978) (government had no obligation to disclose cooperating witness' vacillation before trial). Instead, the touchstone for determining the proper timing for the disclosure of Brady material is whether the defense has an

6

opportunity to make effective use of the information at trial. Coppa, 267 F.3d at 135. The required timing depends on the particular circumstances of each case. United States v. Taylor, 17 F. Supp. 3d 162, 177 (E.D.N.Y. 2014); see also United States v. Rodriguez, 496 F.3d 221, 227–28 (2d Cir. 2007).

In the context of Giglio material, 'there is no pre-trial discovery right to Giglio materials.'" Barret, 824 F. Supp. 2d at 455 (internal citation and quotation marks omitted); United States v. Badoolah, No. 12-CR-774 (KAM), 2014 WL 4793787, at *16 (E.D.N.Y. Sept. 25, 2014); (same); United States v. Inniss, No. 18-CR-134 (KAM), 2019 WL 6117987, at *3 (E.D.N.Y. Nov. 18, 2019) (same); see also United States v. Nixon, 418 U.S. 683, 701 (1974) (impeachment information regarding government witnesses generally need not be disclosed before trial).

> B. The Government's Identification of Witnesses Who Made Potentially Exculpatory Statements and Provision of Summaries of that Information Satisfies *Brady*

The defendants' assertion that Brady requires the immediate production of all reports and notes underlying the government's interviews of the Declarant Witnesses is wrong in many respects.

Foremost among them is that the defendants are *already in possession* of the purported Brady information in the government's possession. Because counsel for defendant Clase interviewed the Declarant Witnesses at length and obtained the declarations themselves, the defendants obviously have full knowledge of the purportedly exculpatory statements. See Zagari, 111 F.3d at 320. And to the extent the Declarant Witnesses independently made exculpatory statements to the government, the government disclosed summaries of those statements along with contact information for the witness' attorneys (where applicable) so the defense could contact them and make effective use of their information at trial. Brady requires nothing more. See Salerno, 868 F.2d at 542; Leroy, 687 F.2d at 618-19 Grossman, 843 F.2d at 85.

The defendants' assertion that they are entitled to "all reports and notes documenting the Declarant Witness' inconsistent statements," Discovery Br. at 15-16, effectively boils down to a claim that anytime a witness makes an initial exculpatory statement, all later inculpatory statements are subject to immediate disclosure under Brady. Even worse, the defendants are relying on the pre-indictment Declarations they obtained from witnesses—Declarations *drafted by counsel for defendant Clase*—as the mechanism by which all other statements become immediately discoverable. Unsurprisingly, none of the cases cited by the defendants stand for that principle. For instance, in United States v. Trie, 21 F. Supp 2d 7 (D.D.C. 1998), cited by the defendants, the court specifically noted that earlier exculpatory information by a witness "would be quintessential Brady material," but specifically did not say the same for the later inculpatory material. Id. at 26. In Lewis v. Connecticut Comm'r of Correction, 790 F.3d 109 (2d Cir. 2015), also cited by the defendants, the exculpatory information—that the prosecution's chief witness was coached to lie—was never disclosed to the defense. Id. at 122-24. In United States v. Mahaffy, 693 F.3d 113 (2d Cir. 2012), also cited by the defendants, the government withheld SEC deposition transcripts containing exculpatory information despite a supervising AUSA warning the line assistants to review the transcripts and make appropriate Brady disclosures. Id. at 122. And in United States v. Rivas, 377 F.3d 195, 199 (2d Cir. 2004), cited by the defendants, the prosecution disclosed a previously undisclosed interview—the contents of

7

which went squarely to a jury note received during jury deliberations—after the jury returned a guilty verdict. Id. at 198-200.

The circumstances presented in those cases bear no resemblance whatsoever to this one, where the government has disclosed exculpatory information in its possession and has committed to disclosing inconsistent inculpatory statements—of all witnesses, not just those the government intends to call—in accordance with the Court's deadline for the disclosure of impeachment information.[7] The Court set a deadline for the disclosure of Giglio information more than five weeks before jury selection. To the extent any of the Declarant Witnesses made statements to the government that were inconsistent with either the declarations they signed for the defense or other information disclosed to the government, the government will disclose those inconsistencies, along with corresponding agent reports and notes, in accordance with the Court's Giglio and Jencks Act deadlines. The disclosure deadline set by the Court exists for a reason. It is designed to balance the defendants' need to prepare for trial with the government's legitimate interests in protecting witnesses[8] and preventing defendants from conforming their defenses to the government's evidence. Those disclosures will take place sufficiently in advance of trial for the defense to make effective use of them. Coppa, 267 F.3d at 135.

Finally, the defendants' claim that they need early disclosure of witness statements to make sense of the discovery, Discovery Br. at 16-17, is confounding. It is not clear how the defendants can claim that they are operating "without any indication as to which messages may be relevant," Discovery Br. at 17, when the government has specifically identified for the defense the messages that it has designated as relevant from the nine devices provided as Rule 16 discovery. Nor do the defendants explain why they are unable to meaningfully translate and review foreign language text messages months before trial despite the fact that their clients—in their words—are "two professional baseball players with tens, if not hundreds, of millions of dollars in past and future earnings." Discovery Br. at 1.

---

[7] The defendants repeated claims that the government is violating Department of Justice policy, Discovery Br. at 12, is unavailing. Indeed, consistent with the government's position, the Justice Manual provides that while exculpatory information must be disclosed "reasonably promptly after it is discovered," impeachment information "which depends on the prosecutor's decision on who is or may be called as a government witness, will typically be disclosed at a reasonable time before trial to allow the trial to proceed efficiently." Justice Manual § 9-5.001(D)(1)–(2). Moreover, the Justice Manual cautions that a prosecutor "may have to balance the goals of early disclosure against other significant interests—such as witness security and national security—and may conclude that it is not appropriate to provide early disclosure. In such cases, required disclosures may be made at a time and in a manner consistent with the policy embodied in the Jencks Act, 18 U.S.C. § 3500." Id. § 9-5.001(D)(2).

[8] This need is particularly magnified given the defendants' disclosure of identifying information about Bettor-1, see ECF No. 58-1, in violation of the protective order in this case.

The defendants' repeated claims that they have been "buried" in discovery, id. at 2, 14 nn.17-18, 16, and cannot locate "hid[den]" Brady material, id. at 13, are likewise unavailing.[9] It was the defense, for instance, that asserted that the reports containing responsive materials obtained via search warrant from electronic devices that were provided by the government to defense counsel were insufficient, and that it needed to review the entire contents of these electronic devices to identify favorable information. Id. Ex. 2a at 7. ("[E]ven if the government attempted global review, given the use of slang, abbreviations, and lack of context, it does not possess the ability to reliably recognize which messages may be exculpatory. Accordingly, Mr. Clase must be afforded the opportunity to review the entire contents of the phones to identify favorable information."). That is, the defendants have demanded that the government produce voluminous materials not discoverable under Rule 16 and, after the government has complied with these requests, now use those extensive productions as a vehicle to assert they are entitled to other relief by the Court (including a bill of particulars). Moreover, most of the cases cited by the defendants relating to "buried Brady" concerned the disclosure of information on the eve of trial or during it—a situation not applicable here. See, e.g., United States v. Gil, 297 F.3d 93 (2d Cir. 2002) (disclosure of Brady material among more than 2,700 pages of Jencks Act material provided less than one business day before trial); United States v. Thomas, 981 F. Supp. 2d 229, 240 (S.D.N.Y. 2013) (disclosure of inconsistent description of robbers during sidebar while defense case ongoing was "too late"); United States v. Djibo, 730 F. App'x 52, 55 (2d Cir. 2018) (disclosure of cell phone containing roughly 8,000 pages of material, including hundreds of pages in Swahili, disclosed five days before trial to indigent defendant without pretrial access to translator).

The defendants' request for notes and reports of statements made by the Declarant Witnesses should be understood for what it truly is: an improper attempt to make an end-run around the Court's scheduling order for strategic gain. The Court should not abide it.

### C. The Government Will Continue to Comply with its *Brady* Obligations

The defendants demand the disclosure of other categories of information, including "statements supporting the proposition that the defendants engaged in no coded communication, gambling analyses showing a possibility that Bettors won relevant wagers legitimately, and statements, documents, or data from witnesses or third parties, including representatives of MLB, inconsistent with the charged scheme." Discovery Br. at 19.

The government has already produced documents in its possession from third parties, including MLB and numerous betting agencies. It will continue to review its files to make sure all such third-party productions are produced. To the extent the defendants demand analyses or other information held exclusively by third parties like MLB, "gambling app providers, and third-party monitors," id. at 19 n.19, that are not currently in the government's possession, the government has no discovery obligations to obtain and then produce such materials. The government's discovery obligations only extend to the prosecution team. E.g., United States v. Hwa, No. 18-CR-538 (MKB), 2021 WL 11723583, at *52 (E.D.N.Y. Sept. 3, 2021) (citing cases),

---

[9] To be clear, the government has not "hidden" or "buried" any information that it has determined constitutes potential Brady material.

9

aff'd sub nom. United States of Am. v. Hwa, 161 F.4th 127 (2d Cir. 2025). None of the third parties identified by the defendants are members of the prosecution team. Accordingly, the government has no obligation to learn about and collect information they potentially hold. See United States v. Tillem, 906 F.2d 814, 824 (2d Cir. 1990) (government has no obligation to disclose information of which it is unaware).

### D. Ortiz Has All the Information He Needs to File a Motion to Suppress

Ortiz asserts that he needs reports memorializing all statements of witnesses identified in the government's Brady disclosures "to enable [him] to make the requisite preliminary showing for a Franks hearing." Discovery Br. at 21-24. The basis for this demand is that *any* exculpatory information in the government's possession would purportedly constitute a material omission from the affidavit, regardless of whether the government relied on any such witness statements in its affidavit.[10]

Setting aside the merits of the defendant's Franks claim,[11] defendant Ortiz has not adequately articulated why he needs additional information to formulate a Franks motion. With the government's Brady disclosures in hand, the defendant has all the information he needs to file his motion. The defendant cites no authority otherwise. The cases relied upon by the defendant— United States v. White, 489 F. Supp. 3d 274, 280 (S.D.N.Y. 2020), United States v. Barton, 995 F.2d 931, 935 (9th Cir. 1993); Smith v. Black, 904 F.2d 950, 965-66 (5th Cir. 1990)—stand for the general proposition that Brady extends to the suppression context.[12] But as described above, Brady does not generally require the production of reports of interviews or other underlying primary materials. See Salerno, 868 F.2d at 542; Leroy, 687 F.2d at 618-19 Grossman, 843 F.2d at 85; United States v. Collins, 409 F. Supp. at 244–45 (S.D.N.Y. 2019); Volpe, 42 F. Supp. 2d at 227. Just as the defendant has knowledge of potentially exculpatory information it can make effective use of at trial, so too can it use that information to file its suppression motion. This request too appears to be an improper effort to gain early access to Jencks Act materials by prospective government witnesses. The Court should deny the motion.

---

[10] In fact, the relevant affidavit at issue relies on the grand jury's return of the indictment to establish probable cause. The affidavit also relies on information provided by a single witness, whose information the government included in the affidavit in an abundance of caution as potentially exculpatory.

[11] The defendant's claim that the affidavit lacked probable cause is hard to square with the fact that the affidavit relied in large part on the Indictment, which itself memorializes that the Grand Jury found that probable cause existed. The speaking Indictment, which contains 40 paragraphs of factual allegations, was attached to the affidavit and incorporated by reference.

[12] As the defendant notes, whether that proposition constitutes a principle of law in the Second Circuit is unsettled. See United States v. Nelson, 193 Fed. App'x 47, 50 (2d Cir. 2006) ("Whether Brady and its progeny require disclosures in advance of pre-trial hearings is an open question in this circuit.").

III.     Defendant Ortiz's Motion for a Bill of Particulars Should Be Denied

The indictment alleges that defendant Oritz participated in the charged conspiracy over the course of one month—June 2025—by agreeing to throw pitches on two dates in exchange for money: June 15, 2025 ($5,000), and June 27, 2025 ($7,000). See ECF No. 1 at ¶¶ 30–40. Notwithstanding the straightforward and simple nature of the allegations against him, he now seeks granular details about the government's proof through a bill of particulars. Like the motion to compel, the defendant's motion for a bill of particulars is, in reality, an improper demand for early production of Jencks Act and/or Giglio materials. But a bill of particulars is not a tool to obtain an early preview of the government's case, as this Court has repeatedly held in analogous circumstances. See United States v. Shkreli et al., 2016 WL 8711065, at *7 (E.D.N.Y. Dec. 16, 2016); Sterritt, 678 F. Supp. 3d at 332 ("The request [there, for allegedly false and fraudulent statements] is another attempt by [the defendant] to gain premature access to § 3500 material. As discussed above, the Government is not required to produce witness statements at this juncture of the litigation."). The Court should deny the motion.

A.     Applicable Legal Standard

Under Federal Rule of Criminal Procedure 7(c), an indictment need only set forth a "plain, concise, and definite written statement of the essential facts constituting the offense." Additional details, in the form of a bill of particulars, see Fed. R. Crim. P. 7(f), are appropriate only when the indictment is too vague to inform a defendant of the nature of the charges against him to allow the preparation of a defense, avoid unfair surprise, and assert a double jeopardy claim. See United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987); United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990) (bill of particulars required "only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused") (internal quotation marks omitted). "The defendant bears the burden of showing 'the information sought is necessary,' and that he will be prejudiced without it." Shkreli, 2016 WL 8711065, at *4 (quoting United States v. Fruchter, 104 F. Supp. 2d 289, 312 (S.D.N.Y. 2000)).

It is inappropriate to use Rule 7(f) to flesh out the government's prosecutorial theories in advance of trial. See United States v. Urso, 369 F. Supp. 2d. 254, 272 (E.D.N.Y. 2005) ("As a general rule, a defendant is not entitled to receive details of the government's conspiracy allegations in a bill of particulars."); see also United States v. Barret, 824 F. Supp. 2d 419, 439 (E.D.N.Y. 2011) ("[T]he court is mindful that it cannot compel the government to disclose, through a bill of particulars, the manner in which it will attempt to prove the charges, the precise manner in which a defendant committed the crime charged, or to give a preview of its evidence and legal theories.") (quotations and citations omitted); United States v. Ianniello, 621 F. Supp. 1455, 1478 (S.D.N.Y. 1985) ("To require most of the further disclosure the defendants seek would do little more than restrict the government's proof at trial, which is not the purpose of a bill of particulars."); United States v. Albunio, No. 91-CR-0403 (ILG), 1992 WL 281037, at *2 (E.D.N.Y. Sept. 9, 1992) ("The defendant's right to know the crime with which he is charged must be distinguished from his right to know the evidentiary details by which proof of his culpability will be established."). Ultimately, "[t]he applicable standard for whether a bill of particulars should issue is not whether the information would be helpful to the defense, but whether it is necessary." United States v. Taylor, 17 F. Supp. 3d 162, 178 (E.D.N.Y. 2014). Consequently, a motion for a bill of

particulars must be denied where it would "unduly restrict the government's ability to present its case." United States v. Baez, 62 F. Supp. 2d 557, 559 (D. Conn. 1999).

Following this general principle, the law does not require, for example, that the government provide the precise conduct or roles played by the defendant or his co-conspirators. See, e.g., United States v. Jones, No. 85-CR-1075 (CSH), 1986 WL 275, at *2 (S.D.N.Y. 1986) ("[T]he government is under no obligation to disclose the specific role played by a defendant in a conspiracy, or the particular acts each defendant is alleged to have participated in, had knowledge of, or for which he is being held responsible."). Nor is the defendant entitled to discover through a bill of particulars the specific dates, times and locations of a crime, or the identities of witnesses or documents that will establish the charged crime. See United States v. Persico, 621 F. Supp. 842, 868 (S.D.N.Y. 1985). Such requests have been deemed little more than "impermissible attempts to force the government to particularize all of its evidence." United States v. Cephas, 937 F.2d 816, 823 (2d Cir. 1991); see also United States v. Facciolo, 753 F. Supp. 449, 451 (S.D.N.Y. 1990), aff'd, 968 F.2d 242 (2d Cir. 1992); United States v. Lorenzano, No. 03-CR-1256 (S-6) (JFK), 2005 WL 975980, at *3 (S.D.N.Y. 2005); United States v. Berganza, No. 03-CR-987 (S-4) (DAB), 2005 WL 372045, at *5 (S.D.N.Y. 2005). In short, it is well-settled that "[t]he government may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which the defendant committed the crimes charged, or a preview of the Government's evidence or legal theories." United States v. Carpenter, No. 18-CR-362 (ADS), 2018 WL 6933160, at *6 (E.D.N.Y. Dec. 28, 2018).

There are three reasons animating these restrictions on the use of bills of particulars. First, the use of bills of particulars "is not comparable to discovery in civil [cases] because of the nature of the issues, the danger of intimidation of witnesses, and the greater danger of perjury and subornation of perjury." Persico, 621 F. Supp. at 868 (internal quotation marks and citations omitted). Second, the government must not be compelled "to give a preview of its evidence and legal theories lest the defendant tailor his testimony to explain away the [g]overnment's case." United States v. Jimenez, 824 F. Supp. 351, 363 (S.D.N.Y. 1993) (citations omitted). Finally, the government should not be restricted from "using proof it may develop as the trial approaches." Id. (citation omitted); Ianniello, 621 F. Supp. at 1478 ("To require most of the further disclosure the defendants seek would do little more than restrict the government's proof at trial, which is not the purpose of a bill of particulars.").

B. The Allegations Against Defendant Ortiz Are Sufficiently Particularized

"[A] defendant is not entitled to preview, via a motion for bill of particulars, an extended trailer of the feature the Government plans to screen for the jury well in advance of the premiere." Shkreli, 2016 WL 8711065, at *4 (E.D.N.Y. Dec. 16, 2016). The Court should deny the defendants' motion for a bill of particulars setting forth (1) the precise date in between June 1, 2025, and June 15, 2025, that the defendant joined the criminal scheme, and the manner in which he agreed to do so; (2) the precise date in between June 1, 2025, and June 15, 2025, that the defendant agreed to throw Subject Pitch-1, and the manner in which he agreed to do so; (3) the precise date in June 2025 that the defendant agreed to throw Subject Pitch-2, and the manner in which he agreed to do so; (4) the factual basis for the government's interpretation of messages sent by defendants Ortiz and Clase on or about June 18, 2025, and June 19, 2025; (5) a list of the "materially false or fraudulent" statements or representations. See BOP Br. at 3–4. "[T]hese

12

requests amount to the 'wheres, whens and with whoms' of a charged offense that courts have routinely held are beyond the scope of a bill of particulars." Shkreli, 2016 WL 8711065, at *7 (quoting United States v. Rivera, No. 09-CR-619 (SJF), 2011 WL 1429125, at *8 (E.D.N.Y. Apr. 13, 2011)). It is well-settled that this information is not the proper subject of a bill of particulars because it is not necessary to prevent surprise, prepare for trial, or assert a claim of double jeopardy. See United States v. Aguilar, No. 20-CR-390 (ENV), ECF Dkt. No. 39 at 3 (E.D.N.Y. Mar. 2, 2021) ("To obtain a bill of particulars on such a wide swath of information is a tall order, as 'courts generally deny requests for bills of particulars concerning the wheres, when, and with whoms' of the crime.'" (quoting United States v. Perryman, 881 F. Supp. 2d 427, 430 (E.D.N.Y. 2012) (internal quotation marks omitted))).

### 1. The Detailed Allegations in the Indictment and the Itemized Discovery Productions Belie the Need for Further Particulars

The detailed allegations in the indictment and the government's discovery productions provide sufficient information for defendant Ortiz to prepare for trial. See Aguilar, No. 20-CR-390 (ENV), ECF No. 39 (denying motion for bill of particulars where information sought was overbroad in view of discovery provided); United States v. Huawei Technologies Co., Ltd., No. 18-CR-457 (AMD), ECF No. 303 (E.D.N.Y. July 26, 2021) (denying motion for bill of particulars seeking a list of alleged fraudulent statements where defendants were charged in a speaking indictment and there was no actual confusion about the nature of the fraud scheme); United States v. Boustani, No. 18-CR-681 (WFK), ECF No. 231 (E.D.N.Y. Oct. 3, 2019) (denying motion for bill of particulars identifying false statements in fraud case where defendants were charged by speaking indictment and provided extensive discovery).

The indictment describes in detail the manner and means of the scheme, the alleged misrepresentations, and the defendants' roles. Contrary to the defendant's effort to play-up the scheme's "obvious complexity," BOP Br. at 2, it was, in fact, quite simple: In June 2025, defendant Ortiz agreed that in exchange for money, he would throw a ball on June 15, 2025 (for $5,000) and a second ball on June 27, 2025 (for $7,000). See ECF No. 1 ¶¶ 30–40. The indictment explains how the bettors participating in the scheme made misrepresentations to the betting platforms, see id. ¶¶ 9–12, and how the defendants violated their obligations to their team and to MLB, see id. ¶¶ 4–5.[13]

The detailed allegations in the Indictment are supplemented by the government's discovery productions, which are an aid to the defendant rather than an impediment to his preparation for trial. To date, the government has made five productions of discovery, which include but are not limited to: gambling records for the Bettors, including specific bets made on pitches by defendants Clase and Ortiz; video of the pitches that correspond to those bets; financial records reflecting the distribution of proceeds from the scheme; MLB and Cleveland Guardians records reflecting trainings on the defendants' duties to the MLB and their team; and searchable text messages between and among the defendants and their co-conspirators. The government's

---

[13] In his motion, defendant Ortiz claims that there are an "indefinite number of bettors." BOP Br. at 9. But on December 30, 2025, the government voluntarily disclosed to the defendants a current list of the "Bettors" in the indictment. See Def. Ex. 3a at 2 & n.2.

13

discovery productions are accompanied by itemized production letters (with corresponding Bates stamps) that make it easy for the defendant to identify the category of materials and third-party source where relevant.[14] See Gov't Ex. A. The majority of this information is text searchable. Additionally, by letter, the government has disclosed summaries of certain witness statements as well as the identities of anonymized individuals and entities in the Indictment, including a non-exhaustive list of thirteen individuals who are "Bettors" referenced in paragraph 12 of the Indictment. Accordingly, the defendant is "not entitled to information, beyond the detailed Indictment and extensive discovery produced by the government, describing 'the specific role [he is alleged to have] played [ ] in the conspiracy or the particular acts [he] is alleged to have participated in, had knowledge of, or for which he is being held responsible.'" Sterritt, 678 F. Supp. 3d at 328 (rejecting argument that voluminous discovery rendered a detailed indictment in need of a bill of particulars).

2. Each of the Defendant's Specific Requests Should be Denied

The defendant's arguments betray the detailed nature of the allegations against him and the inappropriate level of detail he seeks to compel via the instant motion. For example, although the indictment plainly alleges that he joined the conspiracy in June 2025, the defendant argues that the government must be ordered to disclose the precise "time of day" that this happened, along with a litany of other details. See BOP Br. at 10. But this Court and others have regularly rejected the use of a bill of particulars for this level of granularity, especially where, as here, the defendant is charged in a conspiracy. See United States v. Sterritt, 678 F. Supp. 3d 317, 328 (E.D.N.Y. 2023) ("The government is not required to reveal 'the manner in which it will attempt to prove the charges, the precise manner in which [either Sterritt or Straza] committed the crime[s] charged, or to give a preview of its evidence and legal theories"); United States v. Carpenter, No. 18-CR-362 (ADS), 2018 WL 6933160, at *7 (E.D.N.Y. Dec. 28, 2018) ("The government is not required to include the dates of the specific events that occurred in furtherance of the conspiracy. A defendant is generally not entitled to the details of the government's conspiracy allegations in a bill of particulars. This is because '[t]he government is not required to prove ... exactly when or how a conspiracy was formed or when a particular defendant joined the scheme.' As a result, such requests are consistently denied.") (internal citations omitted).

As to the defendants' specific demands, the Court should reject the defendants' demands for particulars of each fraudulent misrepresentation. The indictment alleges with sufficient particularity, including with numerous illustrative examples, a scheme to defraud betting platforms of money or property by placing bets while in possession of inside information, in contravention of the betting platforms' terms of service. ECF No. 1 ¶¶ 6-9, 13-40. Indeed, this Court and numerous other fraud cases in this district in have denied similar demands for the "who, what, when and where" of each fraudulent misrepresentation. United States v. Motovich, No. 21-CR-497 (WFK), 2024 WL 2943960, at *17–18 (E.D.N.Y. June 11, 2024); Sterritt, 678 F. Supp. 3d at 329–30; United States v. Gasperini, No. 16-CR-441 (NGG), 2017 WL 2399693, at *13

---

[14] As noted above, in addition to the responsive search warrant returns, at the defendants' request, the government also disclosed the complete extractions of numerous cellular devices. The defendant—having received the additional information he sought—now claims that he needs even more information from the government because he has too much discovery.

(E.D.N.Y. June 1, 2017); Shkreli, 2016 WL 8711065, at *7; United States v. Rivera, No. 09-CR-619 (SJF), 2011 WL 1429125, at *8 (E.D.N.Y. Apr. 13, 2011); United States v. Persing, No. 06-CR-0815 (BMC), 2008 WL 11344620, at *3 (E.D.N.Y. May 6, 2008).

The defendant is also not entitled to a list of "all coconspirators and the dates on which each person entered or exited the conspiracy." See BOP Br. at 3. With respect to the dates of entry and exit, as this Court has previously explained in denying a similar motion for a bill of particulars demanding "the point at which each alleged co-conspirator joined the conspiracy, as well as the factual basis for the alleged duration of the conspiracy," and "the dates, times, and places of any alleged conspiratorial acts," those "specific requests for information fall beyond the scope of a bill of particulars. United States v. Badoolah, No. 12-CR-774 KAM, 2014 WL 4793787, at *14 (E.D.N.Y. Sept. 25, 2014) (citing United States v. Torres, 901 F.2d 205, 233–34 (2d Cir. 1990); United States v. Matos–Peralta, 691 F. Supp. 780, 791 (S.D.N.Y. 1988)). Similarly, in United States v. Urso, a case relied upon by the defendant (BOP Br. at 3), the court explained that "details regarding the date on which the conspiracy was formed, or when each participant entered into the conspiracy need not be revealed before trial." United States v. Urso, 369 F. Supp. 2d 254, 272–73 (E.D.N.Y. 2005) (citing Persico, 621 F. Supp. at 868 (S.D.N.Y.1985)).

With respect to the identities of coconspirators, this information is not necessary for the defendant to prepare for trial or to prevent unfair surprise. In deciding whether to grant requests for the identities of unindicted co-conspirators, courts in this Circuit have considered the following six factors: (1) the number of co-conspirators; (2) the duration and breadth of the alleged conspiracy; (3) whether the government has otherwise provided adequate notice of the particulars; (4) the volume of pre-trial disclosures; (5) the potential danger to co-conspirators; and (6) the potential harm to the government's investigation. United States v. Nachamie, 91 F. Supp. 2d 565, 572 (S.D.N.Y. 2000). These factors weigh against ordering a bill of particulars in this case.

As to the first two factors, courts in this district have consistently rejected demands for a list of unidentified co-conspirators in cases involving longer and more complex schemes than the one-month involvement by defendant Ortiz in the fraud scheme alleged here. See, e.g., United States v. Gentile, et al., No. 21-CR-54 (DG), May 6, 2022 Tr. at 103 (denying demand for list of unidentified co-conspirators in four-year multi-scheme fraud case); Sterritt, 678 F. Supp. 3d at 331 (denying request for co-conspirator identities in case alleging two inter-related fraud schemes over a three-year period); Shkreli, 2016 WL 8711065, at *4–6 (denying request for identities of unindicted co-conspirators in case involving four schemes over approximately five years). As to the third and fourth factors, the government has already provided notice of the details of the scheme through a lengthy speaking indictment and the discovery, while substantial, is accompanied by detailed production letters. See Sterritt, 678 F. Supp. 3d at 331. Moreover, the government has already provided in discovery the identities of all the anonymized persons or entities in the Indictment, including by providing a non-exhaustive list of 13 individuals who are "Bettors" referenced in paragraph 12 of the Indictment.

Because the first four Nachamie factors weigh so heavily in favor of denying the government's motion, the Court need not consider the fifth and sixth factors. Nonetheless, to the extent the Court considers them, these factors also weigh against ordering disclosure of a list of co-conspirators. There is a significant risk that disclosing information that could reveal the identity

of potential witnesses will harm the government's investigation and potentially intimidate witnesses.

Finally, without citing any legal authority, the defendant claims that the government must also disclose its "basis for [the] characterization" of text and audio messages exchanged by defendant Ortiz and others during the scheme, as detailed in the indictment. See BOP Br. at 13-15. As detailed previously however, a bill of particulars may not be used to compel the government to disclose "the manner in which it will attempt to prove the charges, the precise manner in which a defendant committed the crime charged, or to give a preview of its evidence and legal theories." Barret, 824 F. Supp. 2d at 439; Albunio, 1992 WL 281037, at *2 (E.D.N.Y. Sept. 9, 1992) ("The defendant's right to know the crime with which he is charged must be distinguished from his right to know the evidentiary details by which proof of his culpability will be established.").

The defendant attempts to compare the charges against him with United States v. Bortnovsky, a case in which the government did not reveal in advance of trial the dates of four fake burglaries over a six-month period at the crux of the government's fraud case. 820 F.2d 572 (2d Cir. 1987). Here, by contrast, the defendant's involvement spanned only a month, and the dates of the relevant fraudulent pitches are laid out in the indictment, along with photographs of the pitches themselves. See ECF No. 1 ¶¶ 30–40.

The Court should deny the defendants' motion for a bill of particulars in full. None of the information demanded is necessary for the defendant to prepare for trial. The detailed speaking indictment and the government's discovery provides him with notice of the details of the fraudulent scheme, the misrepresentations made, how they were made, and to whom. Nothing more is required, and the defendant is not entitled to an early preview of the government's trial witnesses and exhibits.

IV.	Conclusion

        For the foregoing reasons, the government respectfully submits that the defendants' motions should be denied.

        Respectfully submitted,

        JOSEPH NOCELLA, JR.
        United States Attorney

By:    /s/
        Eric Silverberg
        Sean M. Sherman
        Assistant U.S. Attorneys
        (718) 254-7000

cc:    Clerk of the Court (KAM) (by ECF)
        Defense Counsel (by E-Mail and ECF)