

U.S. Department of Justice

United States Attorney
Eastern District of New York

271 Cadman Plaza East
Brooklyn, New York 11201

FTB:EWS/SMS
F. #2025R00435

January 13, 2026

By ECF and E-Mail

The Honorable Kiyo A. Matsumoto
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:   United States v. Emmanuel Clase de la Cruz et al.,
             Criminal Docket No. 25-346 (KAM)

Dear Judge Matsumoto:

      The government respectfully submits this letter to notify the Court of a potential conflict involving Michael Ferrara, Esq., Michael Bronson, Esq., Lindsay Gerdes, Esq., and Riley Able, Esq., of the law firm Dinsmore & Shohl ("Dinsmore"), counsel for the defendant Emmanuel Clase de la Cruz.[1]

      The potential conflict arises from pre-indictment interviews conducted by Messrs. Ferrara, Bronson, and Able of at least four potential trial witnesses (the "Witnesses"). During those interviews, the government understands that the Witnesses denied that they knowingly participated in or knew about a scheme to bet on fixed pitches thrown by the defendants. At least three of the Witnesses executed sworn declarations prepared by defense counsel denying their knowledge or participation in the criminal scheme. To the government's knowledge, the interviews of the Witnesses were attended only by attorneys of Dinsmore and not by any independent investigative personnel.

      Despite the Witnesses' contradicting pre-indictment statements to defense counsel, the government anticipates that the evidence at trial will establish that one or more of the Witnesses were not truthful when interviewed by the defendant's attorneys. Among other sources of proof, the government anticipates that one or more Witnesses will testify that they provided false information to defense counsel and knowingly signed a false declaration in their

---

[1]     Unless otherwise noted, all references herein to the defendant and defense counsel refer to Clase and his attorneys, respectively, as opposed to his co-defendant and his co-defendant's counsel.

presence.  Defense counsel may seek to impeach the Witnesses with information learned during their interviews of the Witnesses. But for defense counsel to do so, the mode and extent of impeachment will need to be subject to certain limitations so as not to run afoul of the unsworn witness rule.

While the conflict of interest has not ripened yet, the government advises the Court of this information out of an abundance of caution, pursuant to its obligations under United States v. Curcio, 680 F.2d 881, 888-90 (2d Cir. 1982), and its progeny, so that the Court may conduct the appropriate inquiry to determine whether the defendant fully, knowingly, and intelligently waives the potential conflict raised herein, see, e.g., United States v. Stantini, 85 F.3d 9, 13 (2d Cir. 1996); United States v. Malpiedi, 62 F.3d 465, 467 (2d Cir. 1995), and whether the Court should, in its discretion, accept such waiver, see Wheat v. United States, 486 U.S. 153 (1988).

## BACKGROUND

I. The Indictment

On November 5, 2025, a grand jury sitting in the Eastern District of New York returned a four-count indictment charging the defendants, two Major League Baseball ("MLB") pitchers, with wire-fraud conspiracy, honest-services-wire-fraud conspiracy, conspiracy to influence sporting contests by bribery, and money-laundering conspiracy.  The charges arise from the defendants' participation in a scheme to rig proposition bets – or "prop" bets – on particular pitches they threw during MLB games.  The defendants conspired with sports bettors, who used advanced, inside information to wager thousands of dollars through online sports books.  In exchange for providing this information, the defendants at times received bribes and kickbacks, which were sometimes paid overseas through intermediaries using peer-to-peer payment platforms.  In total, by rigging pitches, the defendants caused their co-conspirators to win over $400,000 in wagers.

II. Defense Counsel's Pre-Indictment Interviews of Potential Witnesses

The defendant is represented by attorneys from Dinsmore.

Based on records provided by defense counsel to the government, including a sworn declaration by a Dinsmore attorney (the "Dinsmore Attorney Sworn Declaration"), the government understands that in August 2025, Dinsmore attorneys, including Messrs. Ferrara, Bronson, and Able, interviewed at least three potential trial Witnesses.[2]  A fourth Witness appears to have been interviewed in October 2025.  According to records provided by defense counsel to the government, all four Witnesses denied knowingly participating in a scheme to wager on or launder the proceeds of fixed pitches thrown by the defendant.  Three of the

---

[2] As noted above, although the government's information is limited, the government's understanding is that the only participants in the interviews were defense counsel and the Witnesses.

Witnesses signed sworn declarations to that effect.[3]  A fourth declaration was unsigned.  According to the Dinsmore Attorney Sworn Declaration, the Witness associated with that declaration orally attested to its contents but declined to sign it after speaking to a family member.

The government understands that the Witnesses made statements to defense counsel beyond those reflected in the declarations provided to the government.  For example, during a recent meet-and-confer with defense counsel in December 2025 discussing the defense's request for certain witness statements, Mr. Ferrara stated, in sum and substance, that one of the Witnesses told him what the Witness purportedly relayed to the Federal Bureau of Investigation when first interviewed by law enforcement.  To this end, according to the Dinsmore Attorney Sworn Declaration, some of the Witnesses were interviewed on multiple occasions and in various settings, including over telephone calls, on videoconferences, and in-person meetings.  At least two of the interviews of the Witnesses lasted "several hours."

III.   The Trial Evidence

The government anticipates that the one or more Witnesses will testify at trial that the Witness provided false information to defense counsel.  The government also expects that one or more Witnesses will testify that the Witness knowingly signed the false declaration prepared by Dinsmore in the Witness's name.

---

[3]    The Dinsmore Attorney Sworn Declaration described defense counsel's interviews of three of the four Witnesses and explains that all three declarations associated with those Witnesses were initially drafted by Dinsmore attorneys.  The Dinsmore Attorney Sworn Declaration further states that the declarations were reviewed paragraph-by-paragraph with the Witnesses in the presence of a translator, and the Witnesses were given an opportunity to make edits.  One of the Witness declarations was attached as an exhibit to the defendants' motion to compel, dated January 9, 2026.  See ECF No. 58-1.

For the avoidance of doubt, the government currently has no information indicating that defense counsel coerced the Witnesses to sign their declarations, knew the contents of the declaration were false as to any particular Witness, or otherwise acted improperly, such that they would be subject to disqualification.  Cf. United States v. Gambino, 838 F. Supp. 749, 754 (S.D.N.Y. 1993) (actual conflict requiring disqualification arises when an attorney is "implicated in the crimes of his or her client since, in that event, the attorney cannot be free from fear that 'vigorous defense should lead the prosecutor or the trial judge to discover evidence of the attorney's own wrong doing.'" (quoting United States v. Fulton, 5 F.3d 605, 611 (2d Cir. 1993)).

DISCUSSION

I.       Applicable Law

       A.       Overview

The Sixth Amendment affords a criminal defendant the right to effective assistance of counsel.  See Wood v. Georgia, 450 U.S. 261, 271 (1981); United States v. Perez, 325 F.3d 115, 124 (2d Cir. 2003).  That right, however, is not absolute and does not guarantee the defendant counsel of his own choosing.  See United States v. Jones, 381 F.3d 114, 119 (2d Cir. 2004); United States v. Locascio, 6 F.3d 924, 931 (2d Cir. 1993).  While there is a "presumption in favor of the [defendant's] chosen counsel, such presumption will be overcome by a showing of an actual conflict or a potentially serious conflict."  Jones, 381 F.3d at 119 (citing Locascio, 6 F.3d at 931); see also Wheat, 486 U.S. at 164.

To determine if the defendant's counsel is burdened by a conflict of interest, a district court "must investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all."  United States v. Levy, 25 F.3d 146, 153 (2d Cir. 1994).  An actual conflict exists "when the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action, or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client."  Jones, 381 F.3d at 119 (internal quotation marks and citations omitted).  A potential conflict arises if "the interests of the defendant could place the attorney under inconsistent duties in the future."  Id. (emphasis and citations omitted).

       B.       Mandatory Disqualification

If an attorney suffers from an actual or potential conflict of such a serious nature that no rational defendant would knowingly and intelligently desire that attorney's representation, the court must disqualify that attorney.  See United States v. Lussier, 71 F.3d 456, 461-62 (2d Cir. 1995).  Such per se conflicts of interest are not only unwaivable, but are of such a serious nature that if allowed to persist through trial and conviction, on appeal they result in automatic reversal without requiring a showing of prejudice.  United States v. Williams, 372 F.3d 96, 103 (2d Cir. 2004).  The Second Circuit has recognized only two categories of conflicts that are unwaivable:  where counsel is not admitted to the bar of any court and where counsel is implicated in the defendant's crimes.  E.g., United States v. John Doe No. 1, 272 F.3d 116, 125 (2d Cir. 2001).

       C.       Conflicts That May Be Waived

If a conflict is such that a rational defendant could knowingly and intelligently choose to continue to be represented by the conflicted attorney, the Court must obtain directly from the defendant a valid waiver in accordance with the procedures set forth in Curcio.  See, e.g., Malpiedi, 62 F.3d at 470; Levy, 25 F.3d at 153; United States v. Iorizzo, 786 F.2d 52, 58-59

(2d Cir. 1986). In summarizing <u>Curcio</u> procedures, the Second Circuit has instructed the trial court to:

> (i) advise the defendant of the dangers arising from the particular conflict; (ii) determine through questions that are likely to be answered in narrative form whether the defendant understands those risks and freely chooses to run them; and (iii) give the defendant time to digest and contemplate the risks after encouraging him or her to seek advice from independent counsel.

<u>Iorizzo</u>, 786 F.2d at 59; <u>see also</u> <u>Curcio</u>, 680 F.2d at 888-90. By relying on waivers of potential-conflict claims, courts are spared from having to wade into the intricacies of those claims. <u>United States v. Jiang</u>, 140 F.3d 124, 128 (2d Cir. 1998).

### D. Imputation of Conflict

In evaluating whether an actual or potential conflict of interest exists, actions and conflicts of any member of a law firm are imputed to every member of the firm. <u>Id.</u> at 127.

### E. Relevant Conflict: Advocates as Witnesses

A lawyer is generally barred from acting as both an advocate and a witness in the same proceeding. Model Rules of Professional Conduct Rule 3.7(a); <u>Ciak v. United States</u>, 59 F.3d 296, 304-05 (2d Cir. 1995) ("becoming an unsworn witness is a basis for disqualification of an attorney"); <u>see also</u> Hon. John Gleeson, Gordon Mehler & David C. James, Federal Criminal Practice: A Second Circuit Handbook § 8-6 (12th ed. 2012).

Even where a lawyer will not be called to testify, he or she may be disqualified if the lawyer "is in a position to be [an unsworn] witness[.]" <u>Locascio</u>, 6 F.3d at 933. "An attorney acts as an unsworn witness when his relationship to his client results in his having first-hand knowledge of the events presented at trial." <u>Id.</u> For example, "[i]f counsel were to cross-examine [a] witness as to her conversations with him, argue the credibility of her testimony to the jury, or suggest alternative interpretations of her account of the conversation, he would place himself in the position of an unsworn witness and implicitly put his own credibility at issue." <u>United States v. McKeon</u>, 738 F.2d 26, 35 (2d Cir. 1984). Where an attorney acts as an unsworn witness,

> his role as advocate may give his client an unfair advantage, because the attorney can subtly impart to the jury his first-hand knowledge of the events without having to swear an oath or be subject to cross examination. . . . When an attorney is an unsworn witness, . . . the detriment is to the government, since the defendant gains an unfair advantage, and to the court, since the factfinding process is

5

> impaired. Waiver by the defendant is ineffective in curing the
> impropriety in such situations, since he is not the party prejudiced.

Locascio, 6 F.3d at 933-34 (citing McKeon, 738 F.2d at 34-35; United States v. Cunningham, 672 F.2d 1064, 1075 (2d Cir. 1982); United States v. Castellano, 610 F. Supp 1151, 1167 (S.D.N.Y. 1985)).

The Second Circuit's decision in United States v. Kliti, 156 F.3d 150, 156 n.7 (2d Cir. 1998), is illustrative. There, a cooperating witness, Sherif Abdelgwad, testified at trial against the defendant. During cross examination, defense counsel sought to inquire about a conversation the attorney had with Abdelgwad shortly after a hearing at which he represented both Abdelgwad and the defendant. Outside the presence of the jury, defense counsel proffered to the court that the cooperating witness told him that the defendant "had 'absolutely nothing to do with this [the charged] offenses and that he [Abdelgwad] would let the authorities know about that.'" Id. at 155. The district court permitted defense counsel to cross-examine Abdelgwad about the statement, provided he did not suggest that it was made to the attorney or in his presence. When cross-examination resumed, Abdelgwad denied making the exculpatory statement, and the defense attorney could not press Abdelgwad on the issue.

The Second Circuit reversed the conviction. It concluded that once it became clear that the only person who could rebut the denial of the exculpatory statement by the witness was the defense attorney, "the need for a Curcio hearing became patent." Id. at 156. "At that point, [the attorney was in a clear conflict because he was faced with the choice of (1) testifying on behalf of his client, which would result in his disqualification or (2) not presenting evidence of the exculpatory statement. When faced with an attorney as a sworn or unsworn witness, the proper recourse is to disqualify the attorney, not to exclude the testimony." Id. In so holding, the Second Circuit observed that "agreeing to limit the inquiry to avoid the problem as an unsworn witness may be appropriate in some circumstances." Id. at 156 n.7.

II.     Defense Counsel Faces a Potential Conflict of Interest at Trial

Because one or more Witnesses will likely testify in a manner that is inconsistent with the false information they provided to defense counsel before the indictment was unsealed, defense counsel faces a potential conflict of interest that the government expects to ripen during trial. Should that happen, the Court must limit the manner and extent to which defense counsel can impeach the Witnesses. For instance, in an effort to rebut the Witness, defense counsel would not be permitted to proffer or even suggest a firsthand account about a Witness interview, either in summations or when questioning the Witnesses. Nor would the defendant be permitted to a call an attorney for the defense team to perfect impeachment of a Witness who denies making a particular statement to defense counsel. Even counsel's use of the declarations for impeachment purposes should be constrained. As the authors of the declarations, the persons who reviewed the declarations with the Witnesses, and the ones who were physically present in the room while some of the declarations were signed, defense counsel's credibility may be placed at issue before the jury on cross-examination or during trial.

The government therefore believes that the Court should hold a Curcio hearing in advance of trial to advise the defendant of this potential conflict and the different ways it may

manifest at trial. At this time, the government believes that the potential conflict is waivable.[4] Accordingly, the government proposes that the Court advise the defendant as follows:

> I am advised that some of your attorneys, including Michael Ferrara, Michael Bronson, and Riley Able, who are employed by Dinsmore & Shohl LLP ("Dinsmore"), interviewed certain individuals who the government informs me may testify at your trial. The government refers to these individuals as the "Witnesses" in their January 13, 2026 letter. Do you know which individuals I am referring to?
>
> Because your attorneys interviewed these witnesses, your attorneys may have firsthand knowledge of information about those interviews that may be relevant at trial. The law, however, prohibits attorneys from acting as both attorneys and witnesses. Do you understand that?
>
> This prohibition could affect how your attorneys conduct the trial on your behalf. For instance, your defense attorneys would not be permitted to take the witness stand and testify. Nor would they be permitted to give or suggest factual information to the jury, even if that information is helpful to you, because that would have the practical effect of converting them into witnesses, even if they are not called to testify. They may be limited in how they cross-examine witnesses or making arguments to the jury to avoid placing their own credibility at issue. Do you understand that?
>
> Do you have any questions about what I have just explained to you? Can you tell me in your own words what you understand the potential conflicts of interest to be?
>
> There may be other issues, in addition to the ones that I've just described, that can arise in which your defense counsel's ability to do certain things might be affected by the fact that they interviewed Witnesses who will testify at trial. No one can foresee every possible conflict of interest.
>
> You have the right to be represented by an attorney who does not have any potential conflicts of interest in representing you at all stages of this case. If you proceed with waiving the potential conflicts of interest of the Dinsmore law firm representing you, you will be giving up that right. Do you understand that?

---

[4] After conferring with defense counsel, the government understands that the defendant and his attorneys are prepared to hold a <u>Curcio</u> hearing following the status conference currently scheduled for January 15, 2026.

You have the right to consult with an independent attorney appointed by the Court who can advise you about the possible conflicts of interest that might arise if you proceed with your current attorneys. Do you understand that?

You are not under any pressure to make a decision about this right now. You are entitled, if you wish, to a reasonable period of time to think about these matters, or to consult further with your lawyers or with another lawyer before you advise the Court what you wish to do.

If you have had enough time to consider the issues I have advised you on today, do you wish to waive the potential conflicts posed by attorneys from the Dinsmore law firm representing you?

## CONCLUSION

For the foregoing reasons, the Court should notify the defendant of the potential conflict raised above and conduct an appropriate inquiry pursuant to Curcio. The Court should further advise the defendant of his right to conflict-free representation and determine if he can waive that right, and whether the Court, in its discretion, should accept that waiver.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By: _____/s/_____
Eric Silverberg
Sean M. Sherman
Assistant U.S. Attorneys
(718) 254-7000

cc: Clerk of Court (KAM) (by ECF and E-Mail)
    Counsel of Record (by ECF and E-Mail)