IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EMMANUEL CLASE DE LA CRUZ, and<br>LUIS LEANDRO ORTIZ RIBERA<br><br>Defendants. | Case No. 25-CR-346 (KAM) |

**REPLY IN SUPPORT OF MOTION TO COMPEL THE DISCLOSURE OF
<u>EXCULPATORY MATERIALS</u>**

I.      **Preliminary Statement**

The government's position in this case is that there is "not a general duty to disclose Brady material before trial[.]" Letter Resp. at 6, ECF No. 62. That statement cannot be squared with the law, this Court's orders, or the Justice Manual. Disclosure of exculpatory material—and any "item [that] is material to preparing the defense," Fed. R. Crim. P. 16(E)1(E)(i)—must be made well in advance of trial to provide the defense sufficient opportunity to investigate, make strategy decisions, and to adequately prepare. *See United States v. Djibo*, 730 F. App'x 52, 56 (2d Cir. 2018). That is especially important here—in a case featuring terabytes of discovery material, including tens of thousands of Spanish language audio communications, none of which are text searchable. An order directing the Government to immediately produce *Brady* material should not be required, but, given the Government's apparent misunderstand about its obligations, it is necessary.

Government witnesses' inconsistent statements, material to the defendant's guilt, are *Brady* information. *See Smith v. Cain*, 565 U.S. 73, 76 (2012). Here, any statement made to the government by a Declarant Witness, or a witness identified in the government's *Brady* Disclosures (together, the *"Brady* Witnesses") that is inconsistent with the information attributed to *Brady* Witnesses is *Brady* material because it makes the testimony "markedly weaker." *Kyles v. Whitley*, 514 U.S. 419, 441 (1995). The government does not cite a single case in which a court found that inculpatory statements are *Giglio* and not *Brady*. Nor could it—the Supreme Court has rejected the contention that materials do not fall under *Brady* because they are "inculpatory." *Strickler v. Greene*, 527 U.S. 263, 282 n.21 (1999).

1

Instead, the government mischaracterizes material impeachment evidence as Jencks Act material, Letter Resp. at 4-5. Moreover, the government's brazen (and wrong) statement that there is "not a general duty to disclose Brady material before trial," *id.* at 6, is unsupportable under the law and directly violates the Rule 5(f) Orders in this case.[1] The government's failure to cite or even acknowledge their obligation to comply with the Rule 5(f) Orders, which require "prompt" disclosure of *Brady*, demonstrates that they are not taking their obligations seriously and cannot be trusted to disclose Brady. Their conduct is a gross dereliction of the ethical obligations imposed on federal prosecutors by both the Constitution and the Court. The only appropriate remedy under these circumstances is prompt production of all *Brady* Witnesses' inconsistent statements because they are *Brady* material.[2]

The government's argument that barebones descriptions of statements it deems exculpatory satisfied its *Brady* obligation is likewise unavailing and will severely prejudice the defendants. Here, the government's cursory disclosures, coupled with repeated acknowledgements that certain, unspecified witnesses have recanted prior exculpatory statements, *see* Letter Resp. at 3, is the opposite of straightforward. The government has not offered, and cannot offer, any compelling or reasonable rationale for withholding the FBI reports and corresponding notes of

---

[1] *See* Rule 5(f) Orders, ECF No. 15 & 21 ("The Government shall disclose [*Brady*] information to the defense promptly after its existence becomes known to the Government so that the defense may make effective use of the information in the preparation of its case.").

[2] The government runs the risk of "contempt and sanctions . . . for violations of [its] disclosure obligations," and even referral to disciplinary authorities, along with evidentiary sanctions, for violations of the Rule 5(f) Orders in this case. *See id.* at 2. At this time, the only relief requested by the defense is immediate production of the requested material. The defense reserves all rights to seek further relief of the Court in the future.

statements. Nor can it justify withholding information on the coercion implemented by the government to cause the *Brady* Witnesses to change their account. Threats of prosecution, immigration consequences, and any other evidence of pressure exerted on the *Brady* witnesses is material impeachment evidence the defense is entitled it. *See Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109, 124 (2d Cir. 2015) (holding that police officer's conduct in "provid[ing] critical details about the case" to the witness, telling the witness "that it was in his best interest to tell what happened [and] give a detailed statement as to his participation," and promising to let the witness go if he did so was "clearly exculpatory").

The government does not contest that categories of information such as gambling analyses conducted by sportsbooks or statements from Major League Baseball ("MLB") players, coaches, or representatives that are inconsistent with the charged scheme would be exculpatory. *See* Letter Resp. at 9. Nor does it contest that statements supporting the proposition that the defendants did not communicate in code are exculpatory. *Id.* Rather, the government states that third-parties like MLB and sportsbooks are not "members of the prosecution team" and "the government has no obligation to learn about and collect information they potentially hold." *Id.* at 10. Nevertheless, the government has refused to say on the record whether or not any of this requested information is in its possession. If it is, it must be promptly produced. If it is not, then the Court should require express confirmation from the government.

II. **Argument**

A. ***Brady* requires the government to produce *Brady* Witnesses inconsistent statements because they are exculpatory.**

1. *The* Brady *Witnesses inconsistent statements are* Brady *information because they are material to guilt or punishment.*

As explained in the Motion to Compel, when the government's case relies on a witness's testimony to prove an element of the crime, that witness's inconsistent statements as to that very element is *Brady* material. *See United States v. Rivas*, 377 F.3d. 195, 199-200 (2d. Cir. 2004) (vacating and remanding for new trial when the prosecution did not disclose inconsistent testimony it viewed as inculpatory because the statements were *Brady* in that they aligned with the defendant's theory of the case and were therefore exculpatory); *Cain*, 565 U.S. at 76 (granting habeas relief where prosecution did not disclose sole eyewitness's inconsistent identification).

The government fails to distinguish the cases cited in the motion. The government argues that the court in *United States v. Trie*, 21 F. Supp. 2d 7 (D.D.C. 1998), "specifically did not say" that "later inculpatory material" is *Brady*. Letter Resp. at 7. But the court *did* say, "To the extent that witness statements of key government witnesses are exculpatory *or impeaching*, however, they constitute <u>Brady</u> material, and the government has an obligation to disclose those statements." *Trie*, 21 F. Supp. 29 at 26 (emphasis added).

The government attempts to distinguish the remaining cases by pointing to the egregious conduct that warranted post-conviction relief, Letter Resp. at 7-8, but it misses the mark. In each of the cited cases, the court recognized that inconsistent statements were *Brady* material. *See Lewis*, 790 F.3d at 123-24 (finding *Brady*

4

violation where prosecutors failed to disclose witness's shifting story); *United States v. Mahaffy*, 693 F.3d 113, 127-31 (2d Cir. 2012) (holding that transcripts contained "substantial *Brady* material"); *Rivas*, 377 F.3d at 199 (holding the "late-disclosed statement" had an "exculpatory effect" because it "might well have been viewed by the jury as a critical piece of evidence supporting the defense theory").

Moreover, merely providing witness names, high-level summaries of exculpatory statements, drafted by prosecutors who have unilaterally deemed these statements false exculpatory statements, and in some instances, contact information, i.e. their lawyer's name, does not satisfy *Brady*. *See United States v. Espinal*, 96 F. Supp. 3d 53, 69 (S.D.N.Y. 2015). It is yet another example of the gamesmanship of the government. The summaries contained in the *Brady* Disclosures are not the same as disclosure of the reports and notes prepared by agents participating in the interviews, which are less biased and track a witnesses actual statements. The government's reliance on *United States v. Le Roy*, 687 F.2d 610 (2d Cir. 1982), is misplaced. In *Le Roy*, the at-issue witnesses were former employees of the defendant and the defendant knew *exactly* what each witness had said to the grand jury, such that non-disclosure of the grand jury testimony did not constitute a *Brady* violation. *Id.* at 618-19. Here, by contrast, Messrs. Clase and Ortiz lack an understanding of the inconsistent statements that are material to guilt or innocence. *Cf. United States v. Rittweger,* 524 F.3d 171, 182 (2d Cir. 2008) ("[T]he government should have acted in favor of disclosing the *Brady* material earlier, particularly when earlier discovery would not have had the potential to harm the witness.").

5

Since at least September 2025, when the government received copies of the Declarant Witnesses' denials, and since it received the denials of the witnesses identified in the *Brady* disclosures, none of which are dated, it has known of the exculpatory nature of *all* inconsistent evidence in its possession. The court already ordered "prompt[]" disclosure of *Brady* material to the defense, *see* Rule 5(f) Orders, ECF No. 15 & 21, and the government has no legitimate basis to continue to withhold inconsistent, exculpatory statements, *see Mahaffy*, 693 F.3d at 127-31.

> 2. Brady *further requires the government disclose the* Brady *Witnesses inconsistent statements because it does not identify* Brady *material among voluminous, foreign-language material.*

As the government correctly notes, "the touchstone for determining the proper timing for the disclosure of Brady material is whether the defense has an opportunity to make effective use of the information at trial," and the "required timing depends on the particular circumstances of each case." Letter Resp. at 6-7 (citations omitted). For those precise reasons, the government must disclose the *Brady* Witnesses' inconsistent statements because the government's produced discovery is in Spanish and does not identify *Brady* material among the terabytes of produced and forthcoming ESI. Neither Messrs. Clase's and Ortiz's requests for additional discovery, nor their past and future earnings, allow the government to avoid their due process obligations. *Cf.* Letter Resp. at 8-9.

The government argues it is "confound[ed]" that Messrs. Clase and Ortiz need witness statements to "make sense of the discovery" considering it "specifically identified for the defense the messages it has designated as relevant from the nine

6

devices." Letter Resp. at 8. But even the "responsive cuts" consist of thousands of untranslated written and oral statements, without any indication as to which, if any the *Brady* Witnesses now allege were code or which relate to legal, legitimate gambling winnings, or rooster fighting and livestock in the Dominican Republic. Indeed, the draft translations that the government provided to Mister Clase skip entire portions of exculpatory material regarding topics like roosters and livestock.

The government disingenuously states that Messrs. Clase and Ortiz are using the government's "voluminous" production of full devices "as a vehicle to assert they are entitled to other relief by the Court." Letter Resp. at 8. But, at the time of this submission, neither Mister Clase nor Mister Ortiz have even *received* those productions. Even without the full devices, the government's refusal to disclose the *Brady* Witnesses' inconsistent statements causes *Brady* material to become "an exculpatory needle in a haystack of discovery materials." *United States v. Thomas*, 981 F. Supp. 2d 229, 239 (S.D.N.Y. 2013). If the government cannot identify whether information provided by witnesses is exculpatory, the government should err on the side of disclosure and allow Messrs. Clase and Ortiz to review it as well. *Cf. DiSimone v. Phillips*, 461 F.3d 181, 195 (2d Cir. 2006) ("[I]f there were questions about the reliability of the exculpatory information, it was the prerogative of the defendant and his counsel – and not of the prosecution – to exercise judgment in determining whether the defendant should make use of it.").

### B. *Brady* also requires that the government promptly disclose additional exculpatory information to Messrs. Clase and Ortiz.

7

The government states that it will continue to comply with its *Brady* obligations. In so doing, it does not contest that the remaining categories of information sought in the motion are exculpatory, namely, "statements supporting the proposition that the defendants engaged in no coded communication, gambling analyses showing a possibility that Bettors won relevant wagers legitimately, and statements, documents, or data from witnesses or third parties, including representatives of MLB, inconsistent with the charged scheme." Letter Resp. at 9.

Accordingly, the Court should order the government to promptly produce all additional evidence in its possession that fit within these categories. Importantly, this includes any oral statements from representatives of MLB and/or sportsbooks to the prosecution team. *See United States v. Rodriguez*, 496 F.3d 221, 226 (2d Cir. 2007) ("The obligation to disclose information covered by the *Brady* and *Giglio* rules exists without regard to whether that information has been recorded in tangible form."). To the extent the government does not have these materials in its possession, the Court should require the government to make that representation on the record.

    **C.**    **The additional exculpatory information is also critical to allow Mr. Ortiz to file his Motion to Suppress.**

The Government mischaracterizes Mr. Ortiz's argument regarding his need for certain exculpatory material in order to file his motion for *Franks* hearing. *See* Letter Resp. at 10. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ A grand jury's return of an

8

indictment signifies only that the grand jury voted that there was probable cause that the charged crimes were committed. *See Branzburg v. Hayes*, 408 U.S. 665, 686–87, 92 S. Ct. 2646, 2659, 33 L. Ed. 2d 626 (1972) (a grand jury has "[t]he dual function of determining if there is probable cause to believe that a crime has been committed and of protecting citizens against unfounded criminal prosecutions.") It does not signify that there was probable cause for each of the allegations in the Indictment. In any event, the Indictment says nothing about ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

To establish that second prong, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

██████████████████████████████████████████████████████████

████████████████████

　　████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████

　　Finally, it is untrue that Mr. Ortiz already has the items he needs to file the motion. *See* Letter Resp. at 10. ████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████ Both are necessary for Mr. Ortiz to make the threshold showing for a *Franks* hearing. *See United States v. Solomonyan*, 451 F. Supp. 2d 626, 638 (S.D.N.Y. 2006) (quoting *Franks v. Delaware,* 438 U.S. 154, 155–56 (1978)) ("A defendant is entitled to a *Franks* hearing where the defendant makes a 'substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause.'").

10

### III. Conclusion

For the foregoing reasons, Messrs. Clase and Ortiz respectfully request that the Court enter an Order compelling the immediate production of *Brady* materials.

Respectfully submitted,

/s/ *J. Riley Able*
J. Riley Able (*pro hac vice*)
Michael Ferrara (*pro hac vice*)
Lindsay Gerdes (NY Bar No. 4581690)
Michael Bronson (*pro hac vice*)
Dinsmore & Shohl LLP
255 E. 5th Street, Suite 1900
Cincinnati, OH 45202
(513) 977-8200
riley.able@dinsmore.com

***Counsel for Emmanuel Clase***

*/s/ Paul M. Flannery*
Paul M. Flannery (*pro hac vice*)
Chris N. Georgalis (*pro hac vice*)
Flannery Georgalis, LLC
1621 Euclid Ave, Floor 20
Cleveland, OH 44115
(614) 367-2120
paul@flannerygeorgalis.com

Elizabeth Geddes (NY Bar No. 4348470)
Corva Law LLP
110 West 40th St., Suite 1003
New York, NY 10018
(646) 974-1143
liz@corvalaw.com

***Counsel for Luis Ortiz***

## **CERTIFICATE OF SERVICE**

  I hereby certify that the foregoing was filed electronically on January 14, 2026 and that service of the same on all counsel of record will be made by the Court's CM/ECF system.

            /s/ *J. Riley Able*
            J. Riley Able