United States District Court
Eastern District of New York

----------------------------------X

United States of America,

         *Plaintiff*,            **Order**

   – against –           No. 25-cr-0346 (KAM)

Emmanuel de la Cruz; Luis Leandro
Ortiz Ribera,

         *Defendants*.

----------------------------------X

**Kiyo A. Matsumoto, United States District Judge:**

On November 5, 2025, a grand jury returned a four-count, twenty-three page speaking indictment charging two defendants—Emmanuel de la Cruz and Luis Leandro Ortiz Ribera—with conspiring with bettors to rig pitches to defraud Major League Baseball ("MLB"), the Cleveland Guardians, and sports betting platforms and to launder the proceeds obtained through the scheme.  Pending before the Court are Defendants' Joint Motion to Compel Discovery, including *Brady* materials, (ECF No. 58), the government's opposition to the joint motion (ECF No. 62), Defendants' Joint Reply (ECF No. 69), Ortiz Ribera's motion for a bill of particulars (ECF No. 59), the government's opposition to Ortiz Ribera's bill of particulars motion (ECF No. 62), Ortiz Ribera's reply (ECF No. 68), Clase de la Cruz's motion for a bill of particulars (ECF No. 61), and the government's opposition to Clase de la Cruz's bill of

particulars motion (ECF No. 72.)  For the reasons stated below, Defendants' joint motion to compel is granted in part and denied in part and Defendants' motions for a bill of particulars are denied.

**BACKGROUND**

Defendants Clase de la Cruz and Ortiz Ribero are Major League Baseball pitchers for the Cleveland Guardians.  (ECF No. 1 ("Indictment") at ¶ 1.)  The indictment charges that Mr. Clase de la Cruz entered a conspiracy with Bettor-1 and others from May 2023 through June 2025 to throw specific pitches in specific games on which multiple Bettors would place bets on betting platforms to win prize money.  (*Id.* at ¶¶ 13-14.)  Allegedly, Bettor-1 and others would often bet that Mr. Clase de la Cruz would throw a slider pitch that would end as a ball rather than a strike, and Mr. Clase de la Cruz would often do so as his first pitch against a batter.  (*Id.* at ¶ 14.)  The government charges Mr. Clase de la Cruz with executing such a scheme with Bettor-1 on May 19, 2023, when the Cleveland Guardians played the New York Mets.  (*Id.* at ¶ 15.)  Mr. Clase de la Cruz and Bettor-1 allegedly conspired again on June 3, 2023, in a Cleveland Guardians game against the Minnesota Twins; on June 7, 2023, against the Boston Red Sox; and on or around April 12, 2025.  (*Id.* at ¶¶ 16-18.)  The government stated at a January 15, 2026 status conference that these examples are not exhaustive. (Minute Entry dated 01/16/2026.)

Mr. Clase de la Cruz and Bettor-1 are alleged to have discussed and coordinated their conspiracy by phone and in person in Ohio. (*Id.* at ¶¶ 20-23.) On some occasions, Mr. Clase de la Cruz allegedly supplied Bettor-1 with money to bet on himself and his own pitches. (*Id.* at ¶ 24.) In total, the government alleges that the Bettors won at least $400,000 through bets on Mr. Clase de la Cruz's pitches. (*Id.* at ¶ 29.)

Around June 15, 2025, Mr. Clase de la Cruz brought Mr. Ortiz Ribera into the alleged conspiracy. (*Id.* at ¶ 30-31.) Mr. Ortiz Ribera is alleged to have agreed to throw balls for certain pitches in exchange for bribes or kickbacks. (*Id.* at ¶¶ 31, 33.) The indictment alleges that Mr. Ortiz Ribera threw a fraudulent pitch on June 15, 2025, in a game against the Seattle Mariners. (*Id.* at ¶ 31.) Mr. Ortiz Ribera then allegedly threw a fraudulent pitch on June 27 against the St. Louis Cardinals. (*Id.* at ¶ 37.) Bettors won at least $60,000 on Mr. Ortiz Ribera's pitches. (*Id.* at ¶ 40.)

The grand jury returned an indictment on November 5, 2025, charging Defendants Clase de la Cruz and Ortiz Ribera with 1) wire fraud conspiracy; 2) honest services wire fraud conspiracy; 3) conspiracy to influence sporting contests by bribery; and 4) money laundering conspiracy. (*Id.* at ¶¶ 41-48.) On January 9, 2026, Defendants filed a joint motion to compel disclosure of exculpatory materials. (ECF No. 58 ("Defs.' Joint Mot. to Compel").) On

January 13, 2026, the government filed its opposition to Defendants' joint motion to compel. (ECF No. 62 ("Gov't Opp'n Letter").) On January 14, 2026, Defendants filed their joint reply in support of their joint motion to compel. (ECF No. 69 ("Defs.' Joint Reply").) On January 9, 2026, Mr. Ortiz Ribera filed a motion for bill of particulars, and four days later Mr. Clase de la Cruz also filed a motion for bill of particulars on January 13, 2026. (ECF No. 59 ("Ortiz Mot.")); (ECF No. 61 ("Clase Mot.").) The government opposed Mr. Ortiz Ribera's motion on January 13, 2026, and opposed Mr. Clase de la Cruz's motion on January 15, 2026. (Gov't Opp'n Letter); (ECF No. 72 ("Gov't Opp'n to Cruz Mot.").) At a status conference on January 15, 2026, the Court conducted a *Curcio* hearing for Mr. Clase de la Cruz and discussed the above-mentioned motions, along with others, with the parties. (Minute Entry dated 01/16/2026.)[1]

In response to the Court's question about whether the investigation into Defendants' pitches was ongoing, the government informed the Court that its proof at trial against Mr. Ortiz Ribera would relate only to the charges in the indictment, but the

---

[1] On January 14, 2026, Ortiz Ribera also filed a motion for extension of time to file pre-trial motions and motions *in limine*. (ECF No. 67.) Clase de la Cruz joined Ortiz Ribera's motion at the January 15, 2026 status conference, and, on January 16, 2026, the Court granted Ortiz Ribera's motion to extend time and set a new pre-trial motion schedule as to both defendants. (Dkt. Order dated 01/16/2026.)

investigation of Mr. Clase de la Cruz was ongoing. (*Id.*)  The
Court, therefore, directed the government to produce evidence
regarding additional pitches by Mr. Clase de la Cruz that it
intended to prove in its case-in-chief by January 29, 2026. (*Id.*)

To the extent that Defendants' joint motion to compel
discovery requests that the government produce reports and
handwritten notes documenting Declarant Witness statements
inconsistent with exculpatory information provided by the
Declarant Witnesses listed in the *Brady* disclosures, the Court
grants Defendants' joint motion and orders the government to
produce those inconsistent statements and the reports and notes
documenting those statements by the March 27, 2026 deadline for
providing *Giglio* materials. The Court denies the remainder of
Defendants' joint motion to compel production of exculpatory
statements and denies both defense motions for a bill of
particulars because the speaking indictment is sufficiently
detailed, the government has provided significant discovery and
information to inform Defendants of the nature of the charges, the
ongoing productions have allowed them to prepare for trial, avoid
unfair surprise, and determine if they have a double jeopardy
claim, and has represented that it will continue to uphold its
obligations to produce discovery materials as required by *Brady*,
the Constitution and statute.

**LEGAL STANDARDS**

## I.   Rule 16

"Rule 16 of the Federal Rules of Criminal Procedure governs pre-trial discovery in criminal cases." *United States v. Ragano*, 740 F. Supp. 3d 179, 186 (E.D.N.Y. 2024) (quoting *United States v. Loera*, No. 09-cr-466, 2017 WL 2821546, at *5 (E.D.N.Y. June 29, 2017)); *see also In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 93, 124 (2d Cir. 2008) (finding that Rule 16 "establishes base-line requirements for pretrial discovery in a criminal case.")   It "provides that a defendant is entitled to obtain from the Government documents and objects that are within the government's possession, custody, or control if (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant." *United States v. Grinin*, 734 F. Supp. 3d 219, 223 (E.D.N.Y. 2024) (quoting *Loera*, 2017 WL 2821546, at *5); Fed. R. Crim. P. 16(a)(1)(E).   "Evidence is material if it could be used to counter the government's case or to bolster a defense." *United States v. Clarke*, 979 F.3d 82, 97 (2d Cir. 2020) (quoting *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993)).   The defendant bears the burden of making a *prima facie* showing of materiality to obtain Rule 16 discovery. *Id*. (first citing *United States v. Maniktala*, 934 F.2d 25, 28 (2d Cir. 1991) and then citing *United States v. Mandel*, 914 F.2d 1215,

1219 (9th Cir. 1990)). Rule 16 is not meant to provide the defendant access to the government's entire case against him. *Ragano*, 740 F. Supp. 3d at 186.

## II.  The *Brady* Doctrine

"[T]he Government has a constitutional duty to disclose favorable evidence to the accused where such evidence is 'material' either to guilt or to punishment." *United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). The government's failure to do so violates a defendant's right to due process. *United States v. Rivas*, 377 F.3d 195, 199 (2d Cir. 2004) (citing *Brady*, 373 U.S. at 87). The government's duty of disclosure is independent of a defendant's request for *Brady* materials. *Coppa*, 267 F.3d at 144 (citing *United States v. Bagley*, 473 U.S. 667, 682–83 (1985)). "Evidence is favorable if it is either exculpatory or impeaching[.]" *United States v. Mahaffy*, 693 F.3d 113, 127 (2d Cir. 2012) (citing *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)); *see also Giglio v. United States*, 405 U.S. 150, 154–55 (1972)). Evidence "is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Mahaffy*, 693 F.3d at 127.

To demonstrate a *Brady* violation, a defendant must show that: "(1) the Government, either willfully or inadvertently, suppressed evidence; (2) the evidence at issue is favorable to the defendant;

7

and (3) the failure to disclose this evidence resulted in prejudice." *Coppa*, 267 F.3d at 140 (citing *Strickler*, 527 U.S. at 281-82); *see also Rivas*, 377 F.3d at 199. The defendant establishes prejudice by showing that the suppressed evidence was material. *Lewis v. Connecticut Commissioner of Correction*, 790 F.3d 109, 124 (2d Cir. 2015) (citing *Leka v. Portuondo*, 257 F.3d 89, 104 (2d Cir. 2001)). The scope of evidence that the Government is required to disclose is limited by the "materiality" requirement. *See Coppa*, 267 F.3d at 140-42 ("evidence is material in the *Brady* context only if 'its suppression undermines confidence in the outcome of the trial.'") (quoting *Bagley*, 473 U.S. at 678). For the timing of the disclosure, courts have repeatedly held due process requires "that *Brady* material be disclosed in time for its effective use at trial." *Id.* at 142 (collecting cases).

Evidence is not considered to be "suppressed" under *Brady* if the defendant knew or should have known of essential facts to take advantage of exculpatory evidence, because the Government has a duty to disclose only the information that is known to the prosecution but unknown to the defense. *United States v. LeRoy*, 687 F.2d 610, 618 (2d Cir. 1982); *United States v. Grossman*, 843 F.2d 78, 85 (2d Cir. 1988). "Where suppressed [*Brady*] evidence is inculpatory as well as exculpatory, and its exculpatory character harmonizes with the theory of the defense case, a *Brady* violation has occurred." *Mahaffy*, 693 F.3d at 130. Lastly, "a court may order

8

*Brady/Giglio* disclosure at any time as a matter of sound case management." *United States v. Hwa*, No.18-CR-538 (MKB), 2021 WL 11723583, at *48 (E.D.N.Y. Sept. 3, 2021) (quoting *United States v. Taylor*, 17 F. Supp. 3d 162, 177 (E.D.N.Y. 2014)). Courts in the Second Circuit, however, "do not compel immediate disclosure of *Brady/Giglio* materials where (1) the Government represents it is aware of and will comply with its *Brady/Giglio* obligations, and (2) the defense does not provide any reason to suspect the Government will not comply." *Id.* (citing *United States v. Mohamed*, 148 F. Supp. 3d 232, 246 (E.D.N.Y. 2015) and *United States v. Rodriguez*, No. 19-CR-779, 2020 WL 5819503, at *10 (S.D.N.Y. Sept. 30, 2020)).

## III.   Bill of Particulars

Under Federal Rule of Criminal Procedure 7(f), a defendant may "seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling [the] defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (per curium) (citing *Wong Tai v. United States*, 273 U.S. 77, 82 (1927) and *United States v. Glaze*, 313 F.2d 757, 759 (2d Cir. 1963)); *see also United States v. Rigas*, 490 F.3d 208, 237 (2d Cir. 2007) (citing *United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir.

1988)).  A bill of particulars is only required "where the charges
of the indictment are so general that they do not advise the
defendant of the specific acts of which he is accused." *United
States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) (quoting *United
States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990)).

The information sought must be necessary, not just merely
helpful.  *United States v. Raniere*, 384 F. Supp. 3d 282, 322
(E.D.N.Y. 2019) (citing *United States v. Facciolo*, 753 F. Supp.
449, 451 (S.D.N.Y. 1990)).  "[A] bill of particulars is not
necessary where the government has made sufficient disclosures
concerning its evidence and witnesses by other means." *Walsh*, 194
F.3d at 47 (citing *Torres*, 901 F.2d at 234 and *United States v.
Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984)).  Nor is a bill of
particulars meant to "be substituted for a form of discovery—it
should not function to disclose evidence, witnesses, and legal
theories to be offered by the Government at trial or as a general
investigative tool for the defense." *United States v. Cobb*, 544
F. Supp. 3d 310, 326 (W.D.N.Y. 2021) (quoting *United States v.
Henry*, 861 F. Supp. 1190, 1197 (S.D.N.Y. 1994)) (internal quotation
marks omitted); *Raniere*, 384 F. Supp. 3d at 322.

Moreover, courts have consistently denied demands for a bill
of particulars about the formation of a conspiracy, *Cobb*, 544 F.
Supp. 3d at 327, and have frequently held that the nature of the
"wheres, whens, and with whoms of a conspiracy are…beyond the scope

of a bill of particulars." *Raniere*, 384 F. Supp. 3d at 322. The government is not required to disclose "all the overt acts it will prove in establishing a conspiracy charge." *Id.* (quoting *United States v. Carroll*, 510 F.2d 507, 508-09 (2d Cir. 1975)). Courts, however, have more frequently granted bills of particulars "where discovery is overwhelmingly extensive *and* the government fails to designate which documents it intends to introduce and which documents are merely relevant to the defense." *United States v. Mahaffy*, 446 F. Supp. 2d 115, 119 (E.D.N.Y. 2006).

"The defendant bears the burden of showing that the information sought is necessary and that he will be prejudiced without it." *Raniere*, 384 F. Supp. 3d at 322 (quoting *United States v. Fruchter*, 104 F. Supp. 2d 289, 312 (S.D.N.Y. 2000)) (citation modified). The court "must examine the totality of the information already available to the defendant—through the indictment, affirmations, and general pre-trial discovery." *Id.* (quoting *United States v. Bin Laden*, 92 F. Supp. 2d 225, 233 (S.D.N.Y. 2000) then citing *Bortnovsky*, 820 F.2d at 574). "The decision of whether or not to grant a bill of particulars rests within the sound discretion of the district court." *Bortnovsky*, 820 F.2d at 574; *see also Walsh*, 194 F.3d at 47 ("A denial of a bill of particulars is reviewed for an abuse of discretion.") (citing *United States v. Barnes*, 158 F.3d 662, 665-66 (2d Cir. 1998)).

11

## APPLICATION

**I.  Joint Motion to Compel Disclosure of Exculpatory Materials**

Defendants move for this Court to compel the government to produce exculpatory evidence as required under the *Brady* doctrine. (Defs.' Joint Mot. to Compel, ECF No. 58 at 4.)[2]  Defendants specifically request that the government produce evidence falling within four seemingly overlapping categories: (1) all reports and handwritten notes documenting Declarant Witness statements inconsistent with exculpatory information provided by the Declarant Witnesses listed in the *Brady* disclosures; (2) all reports and handwritten notes documenting witness statements exculpating the defendants; (3) all reports and handwritten notes documenting witness statements denying any knowledge that the defendants engaged in the charged crimes; and (4) any information in the government's possession from third parties inconsistent with the government's theory of prosecution, including the conclusions from betting application providers, or third-party monitoring companies that did not flag any allegedly fraudulent gambling activity until June 2025. (Defs.' Joint Mot. to Compel at 6.)  The government represents that it is aware of its *Brady* obligations, has complied with them, and will continue to comply, (Gov't Opp'n Letter, ECF No. 62 at 5), and that it has produced

---

[2] The Court refers to pages assigned by the Electronic Case Files system ("ECF").

Rule 16 discovery and will continue to do so. (Gov't Opp'n Letter, ECF No. 62 at 2.) For the following reasons, Defendants' joint motion to compel is granted in part and denied in part.

### a. Witness Statements Inconsistent with Exculpatory Information

Defendants argue that they interviewed and produced Declarant Witness statements to the government, which denied the conduct charged against Defendants so any subsequent inconsistent statements made by those witnesses are exculpatory statements that must be produced. (Defs.' Joint Mot. to Compel, ECF No. 58 at 17–18.) As an example, Defendants note that the Declarant Witnesses attested that they did not speak in code about aspects of the conspiracy when texting with Defendants, but the government asserts that Defendants did speak in code with the Declarant Witnesses to communicate about the charged conspiracy. (Defs.' Joint Mot. to Compel at 19.)

The government responds that it has already produced declarations and summaries of statements from the Declarant Witnesses and that it has informed Defendants that the Declarant Witnesses subsequently made inculpatory statements inconsistent with their earlier potentially exculpatory statements, including by recanting their exculpatory statements. (Gov't Opp'n Letter, ECF No. 62 at 3, 7.) The government also argues that Defendants erroneously argue that the Declarant Witnesses' inculpatory statements are *Brady* material because they are inconsistent with

13

prior exculpatory statements. (Gov't Opp'n Letter, ECF No. 62 at 5.) The government, however, argues that such statements are best characterized as Jencks Act or 3500 material. (*Id.*) Because the Court has set a discovery schedule that includes a deadline for the disclosure of *Giglio* and Jencks Act material, the government argues that Defendants will receive such materials in a timely fashion, distinguishing this case from the cases cited by Defendants in which the government disclosed evidence on the eve of trial or even after trial. (Gov't Opp'n Letter, ECF No. 62 at 8.) The Court does not find that the requested materials are exculpatory. The Court, however, does find that the requested materials may bear on the credibility of the Declarant Witnesses and should, therefore, be produced, at the latest, by the Court's March 27 *Giglio* deadline.

Though the Second Circuit has held that suppressed evidence that is both inculpatory and exculpatory can constitute a *Brady* violation if the "exculpatory character harmonizes with the theory of the defense," *Mahaffy*, 693 F.3d at 130, Defendants have not explained how the requested material harmonizes with the defense's theory, and argue for an expansive reading of *Mahaffy* by claiming that all inculpatory statements that are inconsistent with potentially exculpatory statements are themselves exculpatory statements. The government has represented that it has produced the requested statements in its Rule 16 and *Brady* disclosures to

14

Defendants. *See United States v. Maxwell*, 534 F. Supp. 3d 299, 324 (S.D.N.Y. 2021) ("The Court has no reason to doubt these representations given [the government's] expansive approach to document production thus far in this case.") (Nathan, J.). The government has also met its *Brady* obligations through its disclosure of summaries of witness statements that provide the "essential facts" of the witnesses' statements. *See United States v. Collins*, 409 F. Supp. 3d 228, 244–45 (S.D.N.Y. 2019) (finding the government's summaries of exculpatory statements by two witnesses fulfilled its *Brady* obligations.)

Defendants, however, correctly argue that the inculpatory statements made after the witnesses' exculpatory statements are inconsistent statements. Though the Court is not persuaded that those inconsistent statements are exculpatory, the Court is persuaded that those inconsistent statements are relevant to the credibility of the witnesses who have made those inconsistent statements. The Declarant Witnesses' inconsistent statements would therefore fall under *Giglio*. The Court, by its pre-trial scheduling order, ordered the government to provide any *Giglio* materials to Defendants by March 27, 2026. (ECF No. 53 at ¶ 5.) For these reasons, the Court grants Defendants' joint request for witness statements inconsistent with prior exculpatory statements and directs the government to produce the reports and handwritten notes documenting those inconsistent witness statements by March 27,

2026. The Court finds that production by the March 27, 2026 *Giglio* deadline will provide the Defendants with evidence in time for its effective use at trial.   *See Coppa*, 267 F.3d at 144 (citations omitted).

### b. Witness Statements That Exculpate Defendants

In their *Brady* demand letters, Defendants requested all exculpatory materials and information that are inconsistent with the government's theory of prosecution and the exculpatory testimony of the Declarant Witnesses. (Defs.' Joint Mot. to Compel, ECF No. 58 at 12–13.) Defendants, however, also concede that the government provided two productions of *Brady* material—on December 30, 2025 and on January 6, 2026. (Defs.' Joint Mot. to Compel at 9–10.)  Defendants also concede that the government provided summaries of exculpatory statements by a number of witnesses. (Defs.' Joint Mot. to Compel at 10.)  The Court, therefore, understands Defendants to be arguing that the government has violated its *Brady* obligations by disclosing information too slowly and through summaries rather than through primary materials, such as investigative reports and transcripts.

The government is producing *Brady* material months ahead of trial, and *Brady* permits the government to produce summaries of exculpatory statements to fulfill its obligations.  *Collins*, 409 F. Supp. 3d at 244 ("Defendants do not cite case law that supports their argument that the Government is required to produce primary

16

materials containing exculpatory statements in order to meet its *Brady* obligation. This is not surprising because such disclosure is not legally required[.]") Defendants' argument that the government is not complying with its *Brady* obligations because it is not timely producing messages that will require translation from Spanish to English is also unavailing. (Defs.' Joint Mot. to Compel at 10-11, 16-18.) The government represents that it has already produced verbatim translations of text messages to Mr. Clase de la Cruz after entering into a stipulation regarding how such translations may be used at trial and that it has engaged Mr. Ortiz Ribera in a similar conversation but, as of January 13, 2026, had yet to reach agreement on a stipulation regarding the use of the translated text messages. (Gov't Opp'n Letter, ECF No. 62 at 3.) The government has also engaged an "expert translation service" to prepare "final form versions" of the translated text messages and has committed to providing Defendants with the translations it intends to use at trial. (*Id.*) Because the government has made good faith representations that it is meeting its *Brady* obligations regarding exculpatory statements and Defendants have not provided a reason for the Court to doubt the government's representations, the Court denies Defendants' joint request for discovery, including exculpatory statements for which translations and summaries have been provided. *See United States v. Gogic*, No. 22-CR-493 (ARR), 2025 WL 3899726, at *9 (E.D.N.Y.

Jan. 8, 2025) (citing *United States v. Zelaya-Romero*, No. 15-CR-174, 2018 WL 1033235, at *3 (S.D.N.Y. Feb. 21, 2018) and *United States v. Numisgroup Int'l Corp.*, 128 F. Supp. 2d 136, 150 (E.D.N.Y. 2000)).

### c. Reports and Notes Documenting Witness Statements Denying Knowledge of Defendants Engaging in Charged Crimes

Defendants also seek witness statements such as Guardians personnel stating to a member of the prosecution team that they did not observe Defendants throwing an allegedly fraudulent pitch or a witness stating that Defendants were not speaking in code when they spoke about activities such as repairing a house or selling a horse. (Defs.' Joint Mot. to Compel, ECF No. 58 at 22-23.) Defendants assert that the government's affidavits in support of search warrants for Mr. Ortiz's phone, "egregiously failed to include the voluminous additional exculpatory material…that, upon information and belief, was then in the government's possession and materially undermined the government's theory." (Defs.' Joint Mot. to Compel at 26.) Defendants further argue that such statements are exculpatory because they undermine the government's theory of the case. (Defs.' Joint Mot. to Compel at 23.)

In response, the government again represents that it has already produced documents in its possession from third parties and will continue to produce documents it receives from third parties. (Gov't Opp'n Letter, ECF No. 62 at 9.) The Court finds no reason to doubt the government's representations because

18

Defendants have not provided any reason to do so. The Court also finds Defendants' joint request here to be overbroad. *Brady* material must specifically relate to the Defendants' guilt or punishment. Therefore, not all witness statements that may undermine the government's theory of the case will be a material statement under *Brady*, though it may be material under Rule 16. To the extent the government has produced and will continue to produce discovery, including third party statements and *Brady* disclosures, Defendants' joint request for materials documenting witness statements denying Defendants' involvement in the charged crimes is therefore denied.

### d. Third-Party Information Inconsistent with the Government's Theory of Prosecution

Lastly, Defendants request information from third parties such as analyses from gambling platforms showing a possibility that Bettors won their wagers legitimately or information inconsistent with the charged crimes that are held by third parties that monitored suspicious betting activity. (Defs.' Joint Mot. to Compel, ECF No. 58 at 23–24.) Defendants argue that *Brady* extends to information held by the entire prosecution team, which they broadly define to include third parties, and seek production of evidence in the possession of third parties. (*Id.*) The government counters that "[n]one of the third parties identified by the defendants are members of the prosecution team," and asserts that the government is not responsible for finding and disclosing

information held by those third parties.  (Gov't Opp'n Letter, ECF No. 62 at 9-10.)  The government is correct.

The government is required under *Brady* to disclose information held by other government agencies that engaged with the U.S. Attorney's Office in a "joint investigation."  *United States v. Middendorf*, No. 18-CR-36 (JPO), 2018 WL 3956494, at *4 (S.D.N.Y. Aug. 17, 2018) (citing *United States v. Gupta*, 848 F. Supp. 2d 491, 493 (S.D.N.Y. 2012)).  To determine if the prosecution conducted a joint investigation, courts have considered whether the other government agency: "(1) participated in the prosecution's witness interviews, (2) was involved in presenting the case to the grand jury, (3) reviewed documents gathered by or shared documents with the prosecution, (4) played a role in the development of prosecutorial strategy, or (5) accompanied the prosecution to court proceedings."  *Id.* (citing *United States v. Blaszczak*, 308 F. Supp. 3d 736, 741-42 (S.D.N.Y. 2018) and *United States v. Martoma*, 990 F. Supp. 2d 458, 461 (S.D.N.Y. 2014)).  Courts look to whether the government agencies engaged in joint fact gathering.  *Gupta*, 848 F. Supp. 2d at 494. Courts, however, have not found private entities to be part of joint investigations as they remain third parties "with [their] own interests and motives rather than [as arms] of the prosecution."  *Hwa*, 2021 WL 1723583, at *53 (citing *United States*

*v. Tomasetta*, No. 10-CR-1205, 2012 WL 896152, at *5 (S.D.N.Y. Mar. 16, 2012)).  The same reasoning applies here.

The government did not engage in a joint investigation with the MLB, the Cleveland Guardians, or with gambling platforms, as they are private entities that have retained their own interests and motives in preventing, identifying, and imposing their own sanctions for the charged activity.  Also, as stated above, the government represents that it has disclosed third-party information in its possession and will continue to do so. Defendants request for third-party information inconsistent with the government's theory of the case is therefore denied.

At bottom, the Court finds that the government is not suppressing evidence and has, therefore, not committed a *Brady* violation.   The inconsistent statements made by Declarant Witnesses, however, should be produced by the Court's pre-trial scheduling order's *Giglio* deadline of March 27, 2026. Defendants concede that they have received voluminous discovery, including Rule 16 and *Brady* disclosures from the government, and the government has committed to continuing to produce Rule 16 and *Brady* disclosures.  The government has produced such disclosures nearly five months before trial.  The Court has also ordered a pre-trial schedule obligating the government to make timely *Giglio* and Jencks

Act disclosures.[3]  The third parties involved in this case are private entities and so are not involved in a "joint investigation" with the government.  Defendants have not shown that they are incapable of obtaining third party materials.  Indeed, Defendants obtained witness interviews and created declarations for the Declarant Witnesses to sign.  The Court is also not persuaded by Defendants simultaneously complaining of not receiving sufficient discovery and *Brady* disclosures, while asserting that the government productions are too voluminous despite Defendants' broad, sweeping discovery demands.

For the foregoing reasons, Defendants' joint motion to compel is granted in part and denied in part.  If the government does not possess specific *Brady* material, requested by Defendants, the government should advise Defendants in writing.

## II.  Motions for Bill of Particulars

### a. *Clase de la Cruz*

Mr. Clase de la Cruz's request for bill of particulars is denied.  To the extent that Mr. Clase de la Cruz joins Mr. Ortiz Ribera's requests for bills of particulars regarding when Mr. Clase de la Cruz joined the charged conspiracy, how and when he conspired to throw the pitches described in the indictment, the basis for the government characterizing Mr. Clase de la Cruz's messages

---

[3] Under the Court's pre-trial scheduling order, Jencks Act or 3500 material must be produced by May 1, 2026. (ECF No. 53 at ¶ 10(c).)

regarding the charged conduct as "coded" communications, and identifying the statements and representations made in furtherance of the charged conspiracies, (*see* ECF No. 61-1 ("Clase Mem. of Law") at 1) ("In addition to and to the extent not inconsistent with the legal arguments herein, Mr. Clase adopts the legal arguments made by Co-Defendant Luis Leandro Ortiz Ribera in his Motion for Bill of Particulars"), the Court, for the reasons stated in section b. below, denies Mr. Clase de la Cruz's motion.

At the January 15, 2026 status conference, the government informed the Court that it is continuing its investigation against Mr. Clase de la Cruz and may present evidence in its case-in-chief of additional pitches that were part of the charged conspiracies but were not specifically described in the indictment. The government does not have to provide granular detail about the facts underlying its conspiracy charge, but courts have granted requests for a bill of particulars when the conspiracy covers a significant period of time, the indictment identifies only a few instances of the alleged illegal activity, and the government has produced voluminous discovery. *See United States v. Rajaratnam*, No. 09 Cr. 1184 (RJH), 2010 WL 2788168, at *2 (S.D.N.Y. July 13, 2010) (collecting cases). Here, the conspiracy spans over two years, the government has identified as fraudulent nine out of over 2,500 pitches by Mr. Clase de la Cruz but the government has stated that those nine pitches are non-exhaustive, and the government has

23

produced a voluminous amount of discovery—over 60,000 audio messages, 19,000 PDFs, 8,000 videos, and 8,000 images from the phones of Mr. Clase de la Cruz and one co-conspirator alone with more files expected. (Clase Mem. of Law at 4 n.1.)

At the January 15 conference, the government was directed by the Court to produce evidence regarding additional pitches— including the game, the inning, the pitch, and any video—that will be used at trial by January 29, 2026. The Court therefore denies Mr. Clase de la Cruz's motion for bill of particulars.

### b. Ortiz Ribera

The Ortiz Ribera motion for bill of particulars is denied. The government has represented that, as stated in the indictment, Mr. Ortiz Ribera threw two pitches in furtherance of the charged conspiracy and has provided the date and baseball game in which each pitch occurred. (Indictment, ECF No. 1 ¶¶ 30-37.) The government has also alleged that Mr. Clase de la Cruz informed Bettors of Mr. Ortiz Ribera's pitches beforehand and that the Bettors used that information to place bets on Mr. Ortiz Ribera's pitches. (Indictment ¶¶ 30-38.) The government has, therefore, adequately apprised Mr. Ortiz Ribera of the nature of the charges against him. Mr. Ortiz Ribera requests a bill of particulars for the following information: 1) specifying how Mr. Ortiz allegedly entered the conspiracy, 2) how and when Mr. Ortiz conspired to certain pitches, 3) identifying the basis for the government's

characterization of the purposes of certain messages, and 4) identifying materially false or fraudulent statements or representations in furtherance of the wire fraud conspiracy. (ECF No. 59-1 ("Ortiz Mem. of Law") at 9-15.) None of Mr. Ortiz Ribera's requests are meritorious.

Courts routinely deny requests for a bill of particulars to identify how and when a defendant entered or participated in a conspiracy. *See United States v. Urso*, 369 F. Supp. 2d 254, 272-73 (E.D.N.Y. 2005) (citing *United States v. Persico*, 621 F. Supp. 842, 868 (S.D.N.Y. 1985)); *United States v. Bin Laden*, 92 F. Supp. 2d 225, 242 (S.D.N.Y. 2000) (citing *United States v. Matos-Peralta*, 691 F. Supp. 780, 791 (S.D.N.Y. 1988)); *see also United States v. Perez*, No. 23-CR-99 (LJL), 2025 WL 41612, at *4 (S.D.N.Y. Jan. 7, 2025); *United States v. Sterritt*, 678 F. Supp. 3d 317, 328 (E.D.N.Y. 2023); *United States v. Bazezew*, 783 F. Supp. 2d 160, 168 (D.D.C. 2011) (finding that "[the defendants] are not entitled to know exactly how government law enforcement officials determined that each defendant was involved in the conspiracy"). Mr. Ortiz Ribera's request is denied.

Moreover, courts have rejected the use of a bill of particulars that effectively seeks the government's evidence or legal theory of the case before trial. *Ragano*, 740 F. Supp. 3d at 185 (citing *United States v. Mackey*, No. 21-cr-80, 2022 WL 2093012, at *2 (E.D.N.Y. May 13, 2022)); *United States v. Rivernider*, No.

25

3:10-CR-222 (EBB), 2012 WL 12964836, at *1 (D.Conn. June 19, 2012)
(citing *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990)).
If ordered to identify the reasons why the government characterizes
Mr. Ortiz Ribera's messages as being in furtherance of the alleged
conspiracy, the government would be forced to provide a preview of
its theory of the case against Mr. Ortiz Ribera. Thus, Mr. Ortiz
Ribera's request for a bill of particulars is denied. *Lastly*,
courts have both granted and denied requests for a bill of
particulars regarding statements or acts in furtherance of a
conspiracy. Courts granting the request often found the indictment
to be too vague and the discovery too voluminous for the defendant
to avoid surprise before trial. *See Rajaratnam*, 2010 WL 2788168,
at *2 (collecting cases). The indictment and discovery as to Mr.
Ortiz Ribera are neither vague nor too voluminous. The speaking
indictment provides specific information as to Mr. Ortiz Ribera's
charged conduct. (Indictment at ¶¶ 30-40.) Mr. Ortiz Ribera's
request for a bill of particulars as to statements or
representations in furtherance of the conspiracy is denied.

<u>CONCLUSION</u>

For the foregoing reasons, the Defendants' joint motion to
compel is **GRANTED IN PART** and **DENIED IN PART**. Mr. Clase de la
Cruz's motion for bill of particulars and Mr. Ortiz Ribera's motion
for bill of particulars are **DENIED**.

26

**SO ORDERED.**

Dated:      February 2, 2026
              Brooklyn, New York

                                            **Kiyo A. Matsumoto**
                                            United States District Judge
                                            Eastern District of New York