FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
* FEBRUARY 12, 2026 *
BROOKLYN OFFICE

RCH:EWS/SMS
F. #2025R00435

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------ X

UNITED STATES OF AMERICA

   - against -

EMMANUEL CLASE DE LA CRUZ,
ROBINSON VASQUEZ GERMOSEN
███████████████████████ and
LUIS LEANDRO ORTIZ RIBERA,

          Defendants.

------------------------------ X

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. 25-346 (S-1) (KAM)
(T. 18, U.S.C., §§ 224, 981(a)(1)(C),
982(a)(1), 982(b)(1), 1001(a)(2), 1349,
1956(h) and 3551 et seq.; T. 21, U.S.C.,
§ 853(p); T. 28, U.S.C., § 2461(c))

THE GRAND JURY CHARGES:

     At all times relevant to this Indictment, unless otherwise stated:

## INTRODUCTION

    1.    The defendants EMMANUEL CLASE DE LA CRUZ ("CLASE") and

LUIS LEANDRO ORTIZ RIBERA ("ORTIZ")—two Major League Baseball pitchers playing

for the Cleveland Guardians—conspired with the defendants ROBINSON VASQUEZ

GERMOSEN ("VASQUEZ"), ████████████████████████ and others to

rig pitches in professional baseball games so that the defendants and their co-conspirators would

profit from illegal wagers made based on that inside information. The defendants CLASE and

ORTIZ agreed in advance with VASQUEZ, ████ and other co-conspirators to throw specific

types and speeds of pitches, and VASQUEZ and other co-conspirators used that inside

information to place wagers on those pitches. In some instances, CLASE and ORTIZ received

bribes and kickback payments—funneled through third parties—in exchange for rigging pitches.

Through this scheme, the defendants defrauded betting platforms, deprived Major League Baseball and the Cleveland Guardians of the honest services of CLASE and ORTIZ, illegally enriched themselves and their co-conspirators, misled the public, and betrayed America's pastime.

BACKGROUND

I.    Major League Baseball, the Defendants and Relevant Individuals and Entities

2.    Major League Baseball ("MLB") was a professional baseball league in North America composed of 30 teams, including the Cleveland Guardians, the Arizona Diamondbacks, the Boston Red Sox, the Cincinnati Reds, the Detroit Tigers, the Houston Astros, the Kansas City Royals, the Los Angeles Dodgers, the Milwaukee Brewers, the Minnesota Twins, the New York Mets, the St. Louis Cardinals, the San Diego Padres, and the Seattle Mariners.

3.    The defendant EMMANUEL CLASE DE LA CRUZ was an MLB player and relief pitcher on the Cleveland Guardians.   CLASE was a citizen of the Dominican Republic.

4.    The defendant LUIS LEANDRO ORTIZ RIBERA was an MLB player and starting pitcher on the Cleveland Guardians.   ORTIZ was a citizen of the Dominican Republic.

5.    The defendant ROBINSON VASQUEZ GERMOSEN was a citizen of the Dominican Republic and an associate of the defendant EMMANUEL CLASE DE LA CRUZ. VASQUEZ resided in Bronx County, New York, and in Massachusetts.   Between 2024 and 2025, CLASE set aside tickets for professional baseball games under VASQUEZ's name on

2

approximately 28 occasions and the defendant LUIS LEANDRO ORTIZ RIBERA set aside tickets under VASQUEZ's name on one occasion.

6.      The defendant ███████████████████████ was a citizen of the Dominican Republic and an associate of the defendant EMMANUEL CLASE DE LA CRUZ. As described in greater detail below, ███ resided with CLASE in Ohio for a portion of the relevant time period.  Between 2022 and 2023, CLASE set aside tickets for professional baseball games under ███ name on approximately 55 occasions.

7.      Betting Platform-1, Betting Platform-2, and Betting Platform-3 (collectively, the "Betting Platforms"), entities the identities of which are known to the Grand Jury, were sportsbooks that operated online betting platforms and physical sportsbooks, usually located at casinos, that offered sports betting relating to, among other things, MLB games and individual players' performances in MLB games.

8.      Bettor-1, an individual whose identity is known to the Grand Jury, was a citizen of the Dominican Republic.  Bettor-1 maintained accounts with one or more of the Betting Platforms and used the accounts to place wagers on the outcome of pitches thrown by the defendants EMMANUEL CLASE DE LA CRUZ and LUIS LEANDRO ORTIZ RIBERA.

9.      Bettor-2, an individual whose identity is known to the Grand Jury, was a citizen of the Dominican Republic.  Bettor-2 maintained accounts with one or more of the Betting Platforms and used the accounts to place wagers on the outcome of pitches thrown by the defendants EMMANUEL CLASE DE LA CRUZ and LUIS LEANDRO ORTIZ RIBERA.

10.     Bettor-1 and Bettor-2 were also associated with other individuals who had accounts on the Betting Platforms and who used those accounts to place wagers on the

outcome of pitches thrown by the defendants EMMANUEL CLASE DE LA CRUZ and LUIS
LEANDRO ORTIZ RIBERA (collectively, the "Bettors").

11.    Individual-1, an individual whose identity is known to the Grand Jury,
resided in the Eastern District of New York.    Bettor-2 directed Individual-1 to open an account
on Betting Platform-1 on Bettor-2's behalf.

12.    Individual-2, an individual whose identity is known to the Grand Jury, was
an associate of the defendant ROBINSON VASQUEZ GERMOSEN.    VASQUEZ directed
Individual-2 to open an account on Betting Platform-2 on VASQUEZ's behalf (the "Individual-2
Account").

II.    MLB Rules and Contractual Provisions

13.    MLB rules prohibited MLB players from gambling on MLB games in
which they were involved.    Specifically, MLB Rule 21 provided, in relevant part, that "any
player . . . who shall bet any sum whatsoever upon any baseball game in connection with which
the bettor has a duty to perform, shall be declared permanently ineligible" to play professional
baseball.    MLB's sports betting policy further provided that, "Major League Players may not
ask others to place bets on their behalf, knowingly benefit financially from, or knowingly assist
with bets placed by others."    With limited exceptions for personal use—such as a time sensitive
text message to a spouse—MLB rules also prohibited MLB players from utilizing cellular
telephones during MLB games.

14.    Under the terms of their contracts with the Cleveland Guardians, the
defendants EMMANUEL CLASE DE LA CRUZ and LUIS LEANDRO ORTIZ RIBERA
agreed to accept and abide by all MLB rules, including the prohibition on betting on baseball
games and the in-game use of cellular telephones.    Their contracts with the Cleveland Guardians

4

further provided that each player owed a duty of loyalty to the Cleveland Guardians and "pledge[d] himself to the American public and to the [Cleveland Guardians] to conform to high standards of personal conduct, fair play and good sportsmanship."

III.     The Betting Platforms

15.     All bettors wagering on the Betting Platforms were required to agree to their terms of use (the "Terms of Use"), which provided, in sum, substance and in relevant part, that users were prohibited from (i) wagering in connection with sports contests or individual players' statistical performances if the users had access to any pre-release, confidential information or other information that was not available to all other wagerers, including any information provided by a professional athlete, such as non-public advance information about pitches; and (ii) placing wagers as an agent or proxy for any individual other than the account holder.

16.     Bets placed on an individual player's performance during a game, rather than on the final outcome of the game, were a type of bet referred to as a "proposition bet" or "prop bet."   For example, the Betting Platforms offered wagers that a specific pitch would be either a ball or a batter hit by pitch, as opposed to a strike ("Ball/HBP").   In addition, the Betting Platforms also offered users the ability to place wagers on the speed of a given pitch ("Pitch Speed"), such as whether the pitch would be above 94.95 miles per hour ("mph").

17.     In addition, sportsbooks like the Betting Platforms offered "parlay bets," which were wagers comprised of two or more individual bets.   For a bettor to win a parlay bet, each wager, or "leg," within the parlay bet needed to win; if either leg lost, the entire parlay bet would lose.   Because parlay bets required the bettor to win multiple bets, the payouts for winning parlay bets generally were higher than the payouts for winning single bets.

THE FRAUDULENT SCHEME

18.     From in or around May 2023 through June 2025, the defendant EMMANUEL CLASE DE LA CRUZ agreed with the defendant ROBINSON VASQUEZ GERMOSEN, the defendant ███████████████████ Bettor-1, and other Bettors to throw specific pitches in certain MLB games so that VASQUEZ███ the Bettors (and at times, CLASE) would profit from illegal wagers made based on that inside information.

19.     As part of the scheme, the defendants ROBINSON VASQUEZ GERMOSEN and ████████████████████████ acted as intermediaries between the defendant EMMANUEL CLASE DE LA CRUZ and the other Bettors.

20.     The defendants ROBINSON VASQUEZ GERMOSEN and ██████ ████████████████████ provided advance information from CLASE to the Bettors about the pitches that CLASE would throw in exchange for proceeds from the Bettors' fraudulent wagers on the pitches thrown by CLASE.   To communicate the advance information about the fixed pitches, the defendants and their co-conspirators often used code words, including but not limited to "rooster" and "chicken."

21.     In or around June 2025, the defendant LUIS LEANDRO ORTIZ RIBERA joined the criminal scheme and agreed to throw specific pitches in certain MLB games in exchange for money.

22.     Overall, the Bettors won at least $450,000 from the Betting Platforms on pitches thrown by the defendants EMMANUEL CLASE DE LA CRUZ and LUIS LEANDRO ORTIZ RIBERA.

I.    Fraudulent Wagers Associated with CLASE's Pitches

23.    Beginning in or around May 2023, the defendant EMMANUEL CLASE DE LA CRUZ agreed in advance with the defendants ROBINSON VASQUEZ GERMOSEN and ███████████████████████ as well as Bettor-1, on specific pitches that CLASE would throw in certain MLB games.   Usually, they agreed that CLASE would throw balls (instead of strikes) and slower "slider" pitches (rather than faster cut fastball "cutter" pitches)— and often on the first pitches of an at-bat when CLASE was brought into a game as a relief pitcher.   With CLASE's knowledge and approval, VASQUEZ, Bettor-1, Bettor-2, and other Bettors used this information to place over a hundred fraudulent Pitch Speed and Ball/HBP straight bets and parlays on CLASE's pitches on the Betting Platforms.

24.    For example, on or about May 19, 2023, the Cleveland Guardians played an MLB game against the New York Mets.   The game took place in the Eastern District of New York.   After receiving advance information from the defendant EMMANUEL CLASE DE LA CRUZ about a specific pitch that CLASE intended to throw, Bettor-1 and several of the Bettors won approximately $27,000 on Betting Platform-2 by wagering that a pitch thrown by CLASE would be faster than 94.95 mph.   Approximately two days later, Bettor-1 sent approximately $1,000 to the defendant ROBINSON VASQUEZ GERMOSEN.

25.    Similarly, on or about June 3, 2023, the Cleveland Guardians played an MLB game against the Minnesota Twins.   After receiving advance information from the defendant EMMANUEL CLASE DE LA CRUZ about a specific pitch that CLASE intended to throw, Bettor-1 and several of the Bettors won approximately $38,000 on Betting Platform-2 by placing multiple bets that a pitch thrown by CLASE would be a Ball/HBP and/or would be slower than 94.95 mph.   A screenshot of video footage of the pitch (with the ball highlighted in

a red box)—which CLASE threw slower than 94.95 mph and into the dirt well before home plate—is included below:



26.    On or about the next day, June 4, 2023, the defendant ████ ████████████████████ wrote to Bettor-1, "Active,"[1] and forwarded Bettor-1 a screenshot of a text message conversation between ████ and the defendant EMMANUEL CLASE DE LA CRUZ.   In that conversation, ████ asked CLASE in a coded message about throwing another fixed pitch on the first pitch: "And the rooster [t]he same??"   CLASE responded, "Yes, the same rooster."    ████ replied, "Okay" and noted that he would tell Bettor-1.   Later that day, during another MLB game between the Cleveland Guardians and the Minnesota Twins, Bettor-1 and several of the Bettors won approximately $33,000 on Betting Platform-2 by placing multiple bets that the first pitch thrown by CLASE would be slower than 94.95 mph.   The same day, one of the Bettors sent approximately $1,200 to ████

---

[1]       Throughout this Superseding Indictment, quotations from text messages originally transmitted in Spanish have been translated from Spanish to English.

27.    In another instance, on or about June 7, 2023, the Cleveland Guardians played an MLB game against the Boston Red Sox.   After receiving advance information from the defendant EMMANUEL CLASE DE LA CRUZ about a specific pitch that CLASE intended to throw, Bettor-1 and several of the Bettors won approximately $58,000 on Betting Platform-2 by placing multiple bets that a pitch thrown by CLASE would be a Ball/HBP and/or would be slower than 94.95 mph.

28.    A screenshot of video footage of the pitch (with the ball highlighted in a red box)—which the defendant EMMANUEL CLASE DE LA CRUZ threw slower than 94.95 mph and low into the dirt—is included below:



Thereafter, between approximately June 7, 2023, and June 9, 2023, Bettor-1 and one other Bettor sent the defendant ███████████████████ approximately $3,250.

29.    On or about June 9, 2023, the Cleveland Guardians played an MLB game against the Houston Astros.   After receiving advance information from the defendant

EMMANUEL CLASE DE LA CRUZ about a specific pitch that CLASE intended to throw, Bettor-1 and several of the Bettors won approximately $18,000 on Betting Platform-2 by placing multiple bets that a pitch thrown by CLASE would be faster than 94.95 mph.  On or about June 12, 2023, Bettor-1 sent approximately $1,716 to the defendant ROBINSON VASQUEZ GERMOSEN.

30.    On or about June 10, 2023, the Cleveland Guardians played another MLB game against the Houston Astros.  The defendant EMMANUEL CLASE DE LA CRUZ obtained tickets for the defendant ███████████████████ to attend the game. That same day, ███████ sent coded messages to Bettor-1 about CLASE throwing a fixed pitch for his first pitch: "Just one rooster.  The first one."  Ultimately, CLASE did not enter the game, which prevented him from fulfilling the plan to throw a fixed pitch to the first batter he faced in the game.

31.    On or about June 13, 2023, the defendant ███████████████ ███████ forwarded Bettor-1 a screenshot of a text message conversation between ████ and the defendant EMMANUEL CLASE DE LA CRUZ.  In that conversation, ████ again asked CLASE in a coded message about CLASE throwing a fixed pitch for his first pitch of an at-bat, to which CLASE responded, "Yes."  Two days later, the Cleveland Guardians played an MLB game against the San Diego Padres.  During that game, several of the other Bettors won approximately $58,000 on Betting Platform-2 by placing multiple bets that the first pitch thrown by CLASE would be a Ball/HBP and/or slower than 94.95 mph.  On or about the following day, June 16, 2023, one of the Bettors sent approximately $400 to ████

32.    On or about September 30, 2023, the Cleveland Guardians were scheduled to play the Detroit Tigers.  That day, Bettor-1 sent a text message to the defendant ████

10

██████████████████ writing, "[i]f it can happen, it can happen, if not, everything

stays the same." In response, █████ sent Bettor-1 the following audio message: "[Bettor-1] …

listen, I'm going to tell you something. I couldn't see Clase [the defendant EMMANUEL

CLASE DE LA CRUZ] today in [sic] the whole day. Clase woke up at 12:30 and went to the

baseball field. He came over here to the baseball field, I didn't see him. What do you want me

to do, [Bettor-1]? I told Robinson [the defendant ROBINSON VASQUEZ GERMOSEN]

what's up, I haven't seen him today, I couldn't talk to him. What should I do? Don't make me

neither- to me [sic], because you put a lot of pressure on me like if it was me. No, I'm doing

what I can. I am also interested, remember that."

33.    Later that same day, the defendant ████████████████████

sent an audio message to Bettor-1 stating: "Talk to me, [Bettor-1]. Talk to me. [Bettor-1], hit

up the man so he can tell you which of the two is it. If it is the first one or the second one. Hit

him up. Write to him." Approximately one hour later, Bettor-1 forwarded a screenshot to

██████ of the following text message conversation between Bettor-1 and the defendant

EMMANUEL CLASE DE LA CRUZ:

| | |
|---|---|
| Bettor-1: | What's up? How's everything? |
| CLASE: | Good, thank you. Active for today. |
| Bettor-1: | Cool. Any messages send them with ████████████████████ ████████████████ if anything can be done |
| CLASE: | I forgot to talk to him last night. I'm at the baseball field right now. |
| Bettor-1: | Okay. |
| CLASE: | I'll call him now, let me finish getting a haircut. |

Bettor-1 later wrote to ▨ "He's going to tell you." ▨ responded to Bettor-1 in an audio message, "Oh, okay, okay, all right. … Let him tell me, and then, I'll let you know."

34.    In two separate conversations with Bettors that same day, Bettor-1 sent a screenshot of a portion of Bettor-1's conversation with the defendant EMMANUEL CLASE DE LA CRUZ.  In that portion of the conversation, CLASE wrote coded messages about throwing a fixed pitch: "Did ▨ tell you is chicken number 3, after I kill the first 2, play the 3."  CLASE further wrote, "And if I can't kill it, don't play it.  I have to kill the first 2."  In response, one of the Bettors wrote to Bettor-1, "Ok" and asked, "[t]he guys know?"  Bettor-1 responded, "Yes."  Ultimately, CLASE did not enter the game, which prevented him from fulfilling the plan to throw a fixed pitch to the third batter he faced in the game.

35.    Beginning in or around April 2025, on several occasions, the defendant EMMANUEL CLASE DE LA CRUZ requested and received bribe and kickback payments in exchange for agreeing to throw specific pitches.  For example, on or about April 12, 2025, after receiving advance information from CLASE about a specific pitch that CLASE intended to throw, Bettor-1 and several of the Bettors won approximately $15,000 on Betting Platform-2 by placing multiple bets that a pitch thrown by CLASE would be a Ball/HBP and/or would be slower than 98.45 mph.  A screenshot of video footage of the pitch (with the ball highlighted in a red box)—which CLASE threw into the grass well before home plate—is included below:



36.     On or about April 13, 2025, the defendant EMMANUEL CLASE DE LA

CRUZ asked Bettor-1 by text message whether Bettor-1 had been able to "wager anything."

After Bettor-1 responded, in sum and substance, that Bettor-1 had bet and won money, CLASE

directed Bettor-1 to "send some of it to DR," referring to the Dominican Republic.   CLASE

provided Bettor-1 with contact information for a recipient for the money and directed Bettor-1 to

"[s]end it as if it were someone else."   CLASE also told Bettor-1 that the money was "for

repairs at the country house."   Bettor-1 subsequently sent the defendant ROBINSON

VASQUEZ GERMOSEN screenshot images of Bettor-1's text message exchange with CLASE

described above.   In addition, that same day, Bettor-1 and two other Bettors transferred

approximately $5,840 to VASQUEZ.

37.     As part of the scheme, the defendant EMMANUEL CLASE DE LA

CRUZ used his cellular telephone in the middle of MLB games involving the Cleveland

Guardians—contrary to MLB rules—to coordinate with Bettor-1.   For example, on or about

13

May 17, 2025, the Cleveland Guardians played an MLB game against the Cincinnati Reds.  The

game began at approximately 6:40 p.m.  At approximately 8:24 p.m., CLASE sent a text

message to Bettor-1 asking if Bettor-1 was "ready."  Bettor-1 responded, "[b]ut of course."

Approximately ten minutes later, the defendant ROBINSON VASQUEZ GERMOSEN—

utilizing the Individual-2 Account—as well as Bettor-1, Bettor-2, and several other Bettors won

approximately $27,000 on Betting Platform-2 and Betting Platform-3 by placing multiple bets

that a pitch thrown by CLASE would be a Ball/HBP and/or would be slower than 97.95 mph.  A

screenshot of video footage of the pitch (with the ball highlighted in a red box)—which CLASE

threw slower than 97.95 mph and low into the dirt—is included below:



Thereafter, Bettor-1 sent a screenshot to VASQUEZ of Bettor-1's winning wager on Betting

Platform-2 on CLASE's pitch.  The following day, May 18, 2025, one of the Bettors sent

approximately $500 to VASQUEZ.

38.     On or about the same day, May 18, 2025, the defendant ROBINSON

VASQUEZ GERMOSEN sent a text message to the defendant EMMANUEL CLASE DE LA

CRUZ that was a coded message about CLASE throwing a fixed pitch for his first pitch: "throw

a rock at the first rooster in today's fight[.]"   CLASE responded, "Yes, of course, that's an easy

toss to that rooster."   CLASE later wrote, "Yes, totally easy," adding, "yes, low."   Although the

Cleveland Guardians played against the Cincinnati Reds on May 18, 2025, CLASE did not enter

the game, which prevented him from fulfilling the plan to throw a ball to the first batter he faced

in the game.

39.     A few days later, on or about May 20, 2025, the defendant EMMANUEL

CLASE DE LA CRUZ sent Bettor-1 a text message with bank account information and told

Bettor-1 to "[l]et me know when you send the thing," to which Bettor-1 responded, "I will start

with 2,000."   Thereafter, Bettor-1 corresponded with an associate of CLASE in the Dominican

Republic ("CLASE Associate-1"), an individual whose identity is known to the Grand Jury.

CLASE Associate-1 directed Bettor-1 to send approximately $2,000 to an individual in the

Dominican Republic for CLASE's benefit.

40.     It was also part of the scheme that the defendant EMMANUEL CLASE

DE LA CRUZ coordinated rigging pitches in-person with Bettor-1 at CLASE's residence in

Ohio.   For example, on or about April 25, 2025, Bettor-1 traveled to Ohio and visited CLASE at

his residence.   CLASE obtained tickets for Bettor-1 to attend the Cleveland Guardians' MLB

game the following day, April 26, 2025, against the Boston Red Sox.   The game began at

approximately 1:10 p.m.   At approximately 3:16 p.m., in the middle of the game, CLASE sent a

text message initiating a conversation with Bettor-1.   A few seconds later, CLASE and Bettor-1

had a phone call that lasted approximately two minutes.   Four minutes later, Bettor-1 and

several of the Bettors won approximately $11,000 on Betting Platform-2 by wagering that a pitch

thrown by CLASE would be slower than 97.95 mph.    After the game on April 26, 2025,

Bettor-1 visited CLASE at his residence.    On or about April 30, 2025, Bettor-1 sent

approximately $3,200 to the defendant ROBINSON VASQUEZ GERMOSEN.

   41. Similarly, on or about May 11, 2025, Bettor-1 traveled to Ohio and visited

the defendant EMMANUEL CLASE DE LA CRUZ at his residence.    CLASE obtained tickets

for Bettor-1 to attend an MLB game on May 11, 2025.    The same day, after receiving advance

information from CLASE, Bettor-1, Bettor-2, and several of the Bettors won approximately

$11,000 on Betting Platform-2 by wagering that a pitch thrown by CLASE would be a Ball/HBP.

After the game on May 11, 2025, Bettor-1 again visited CLASE at his residence.    A screenshot

of video footage of the pitch (with the ball highlighted in a red box)—which CLASE threw

low—is included below:



42.      It was also part of the scheme that, on some occasions, the defendant EMMANUEL CLASE DE LA CRUZ provided money to Bettor-1 to wager on CLASE's behalf on pitches thrown by CLASE.   For example, on or about May 13, 2025, Bettor-1 sent CLASE a text message with a phone number and told CLASE to "[s]end it there if you can," but also noted that "[i]f not, we can work with what we have.   No problem."   CLASE responded, "[o]kay" and asked, "[h]ow much do I send?"   Bettor-1 replied, "[h]owever much you can, 2,500 and under." CLASE wrote back, "[o]kay," and also asked for the name of the individual "on the account." Bettor-1 advised CLASE of the individual's first name.   Later that day, CLASE electronically transferred approximately $2,500 to an individual with the same first name, who subsequently transferred $2,500 to Bettor-1.

43.      The same day, May 13, 2025, after receiving advance information from the defendant EMMANUEL CLASE DE LA CRUZ about a specific pitch that CLASE intended to throw, the defendant ROBINSON VASQUEZ GERMOSEN—utilizing the Individual-2 Account—as well as Bettor-1, Bettor-2, and several of the Bettors won approximately $20,000 on Betting Platform-2 and Betting Platform-3 by placing multiple bets that a pitch thrown by CLASE would be a Ball/HBP and/or would be slower than 99.45 mph.   After the game, Bettor-1 again visited CLASE at his residence.   A screenshot of video footage of the pitch (with the ball highlighted in a red box)—which CLASE threw slower than 99.45 mph and low into the dirt—is included below:



44.     To generate larger returns on the fraudulent pitches, Bettor-1 and the other

Bettors often placed parlay bets on the Betting Platforms in which one leg of the parlay bets were

fraudulent pitches thrown by the defendant EMMANUEL CLASE DE LA CRUZ.   For

example, between 2023 and 2025, Bettor-1 placed approximately 16 parlay bets in which one leg

of each parlay was that eight specific pitches by CLASE would be a Ball/HBP.   Bettor-1

successfully wagered on approximately seven of the eight pitches—and on the eighth, Bettor-1

was only unsuccessful because the batter swung at a pitch thrown by CLASE that was outside

the strike zone.

45.     Specifically, on or about May 28, 2025, the Cleveland Guardians played

an MLB game against the Los Angeles Dodgers.   The game began at approximately 1:10 p.m.

Before the game, at approximately 1:00 p.m., Bettor-1 sent a text message to the defendant

EMMANUEL CLASE DE LA CRUZ confirming whether CLASE was, "[a]ll set."   CLASE

responded, "[y]es."   At approximately 3:36 p.m., in the middle of the game, Bettor-1, Bettor-2,

and the defendant ROBINSON VASQUEZ GERMOSEN—utilizing the Individual-2 Account—

each placed wagers totaling approximately $7,000 (including a parlay bet) that a pitch thrown by

CLASE would be a Ball/HBP.   CLASE threw a pitch that appeared to be a ball, but the batter

swung, resulting in a strike and leading VASQUEZ, Bettor-1, and Bettor-2 to lose their wagers.

46.     Approximately 20 minutes after Bettor-1 lost the wager on May 28, 2025,

Bettor-1 sent a text message to the defendant EMMANUEL CLASE DE LA CRUZ with a .gif

image of a man hanging himself with toilet paper.   Even though the Cleveland Guardians won

the game, approximately 10 minutes later, CLASE responded to Bettor-1 with a .gif image of a

sad puppy dog face.

47.     Overall, between 2023 and 2025, the Bettors won at least $400,000 from

the Betting Platforms on pitches thrown by the defendant EMMANUEL CLASE DE LA CRUZ.

II.     Fraudulent Wagers Associated with ORTIZ's Pitches

48.     In or around June 2025, the defendant LUIS LEANDRO ORTIZ RIBERA

joined the criminal scheme.   ORTIZ agreed to throw balls (instead of strikes) on certain pitches

in exchange for bribes or kickbacks.   The defendant EMMANUEL CLASE DE LA CRUZ

coordinated between ORTIZ and Bettor-1, who in turn coordinated with the other Bettors.   For

his role in coordinating between ORTIZ and Bettor-1, CLASE requested and received money.

49.     On or about June 15, 2025, the defendant LUIS LEANDRO ORTIZ

RIBERA was scheduled to be the starting pitcher in an MLB game between the Cleveland

Guardians and the Seattle Mariners (the "June 15 Game").   Before the June 15 Game, ORTIZ

agreed with the defendant EMMANUEL CLASE DE LA CRUZ that in exchange for

approximately $5,000, ORTIZ would throw a ball for his first pitch in the second inning of the

June 15 Game ("Subject Pitch-1").   CLASE further agreed with Bettor-1 that CLASE would

receive approximately $5,000 ($10,000 in total for both ORTIZ and CLASE) for arranging

Subject Pitch-1 with ORTIZ.

50.    The June 15 Game was scheduled to start at approximately 4:10 p.m.

Beginning at approximately 1:40 p.m., Bettor-1 sent text messages to the defendant

EMMANUEL CLASE DE LA CRUZ asking CLASE, "[h]ow are we doing?" and "[e]verything

under control there?"   Bettor-1 and CLASE then had a brief telephone call.

51.    Shortly thereafter, beginning at approximately 3:30 p.m., Bettor-1 and

Bettor-2 placed several wagers totaling approximately $13,000 on the Betting Platforms that

Subject Pitch-1 would be a ball.   Subject Pitch-1 was a ball, leading to a payout of

approximately $26,000 for Bettor-1 and Bettor-2.   A screenshot of video footage of Subject

Pitch-1 (with the ball highlighted in a red box)—which the defendant LUIS LEANDRO ORTIZ

RIBERA threw low and to the left of home plate—is included below:



52.     On or about June 16, 2025, Bettor-1 corresponded with CLASE
Associate-1, who directed Bettor-1 to electronically transfer approximately $10,000 in smaller
increments to multiple individuals in the Dominican Republic.   Shortly thereafter, the defendant
EMMANUEL CLASE DE LA CRUZ sent a text message to Bettor-1 noting that Bettor-1 "said
you were going to do it today, but you didn't tell me anything," referring to the transfer of the
$10,000 in bribe payments for CLASE and the defendant LUIS LEANDRO ORTIZ RIBERA.
Bettor-1 responded, "[e]verything is there already."   Later the same day, ORTIZ sent a text
message to CLASE asking him to "tell me what the guy from the thing told you."   CLASE
responded, "[t]hey receive it tomorrow and I'll place it over there," referring to the initial receipt
of the $10,000 in bribe payments by multiple individuals in the Dominican Republic and his
intent to subsequently transfer those funds into the ultimate custody of CLASE and ORTIZ.

53.     On or about June 18, 2025, the defendant LUIS LEANDRO ORTIZ
RIBERA sent text messages to the defendant EMMANUEL CLASE DE LA CRUZ regarding
ORTIZ's receipt of money for throwing Subject Pitch-1.   ORTIZ sent CLASE a photograph of
an identification card for an individual in the Dominican Republic ("ORTIZ Associate-1"), an
individual whose identity is known to the Grand Jury, and told CLASE, "Clase, tell them to put
the 90 thousand pesos there are and to keep the other ones[.] Keep the 200 and the 90 to that
person today please[.]"

54.     On or about June 19, 2025, the defendant EMMANUEL CLASE DE LA
CRUZ sent the defendant LUIS LEANDRO ORTIZ RIBERA a photograph of a receipt for a
wire transfer of approximately 90,000 pesos from CLASE Associate-1 to ORTIZ Associate-1, as
well as an audio message directing ORTIZ to cause his associates in the Dominican Republic to
lie about the purpose of the funds ORTIZ was receiving if asked: "They're going to ask him

what is that payment for over there.   Tell him that this is payment for a horse.   Payment for a horse.   You got that?"   ORTIZ responded, "Okay, perfect."

55.     On or about June 27, 2025, the defendant LUIS LEANDRO ORTIZ RIBERA was scheduled to be the starting pitcher in an MLB game between the Cleveland Guardians and the St. Louis Cardinals (the "June 27 Game").   Before the June 27 Game, ORTIZ agreed with the defendant EMMANUEL CLASE DE LA CRUZ that in exchange for approximately $7,000, ORTIZ would throw a ball for his first pitch in the third inning of the June 27 Game ("Subject Pitch-2").   CLASE further agreed with Bettor-1 that CLASE would receive approximately $7,000 ($14,000 in total for both ORTIZ and CLASE) for arranging for Subject Pitch-2 with ORTIZ.   CLASE also obtained tickets for Bettor-1 to attend the June 27 Game.

56.     As part of the scheme, on or about June 27, 2025, before the June 27 Game, as captured by bank security camera footage, the defendant EMMANUEL CLASE DE LA CRUZ withdrew approximately $50,000 in cash.   CLASE provided approximately $15,000 of the cash he withdrew from the bank to Bettor-1 to use to wager on Subject Pitch-2.   Approximately one hour later, as captured by bank security camera footage, Bettor-1 deposited $15,000 at the same bank branch from which CLASE withdrew $50,000.

57.     In advance of the start of the June 27 Game, Bettor-1, Bettor-2, and several other Bettors wagered approximately $18,000 on the Betting Platforms that Subject Pitch-2 would be a ball.   Subject Pitch-2 was a ball, leading to a payout for the Bettors of approximately $37,000.   Screenshots of video footage of Subject Pitch-2 (with the ball highlighted in a red box)—which the defendant LUIS LEANDRO ORTIZ RIBERA threw into

the ground far from the strike zone, and which the catcher failed to retrieve because of its distance from the strike zone—are included below:







58.    Overall, in June 2025, the Bettors won at least $60,000 from the Betting

Platforms on pitches thrown by the defendant LUIS LEANDRO ORTIZ RIBERA.

III.    VASQUEZ's False Statement to Law Enforcement Agents

59.    On or about January 9, 2026, the defendant ROBINSON VASQUEZ

GERMOSEN engaged in a voluntary interview with agents of the Federal Bureau of

Investigation ("FBI") at the United States Attorney's Office for the Eastern District of New

York.    During the interview, VASQUEZ falsely stated that he was only aware of one instance of

the defendant EMMANUEL CLASE DE LA CRUZ telling someone what pitch he was going to

throw ahead of time.    That instance, VASQUEZ indicated, was on May 17, 2025, when he had

received the screenshot of Bettor-1's winning wager, described above.    VASQUEZ also falsely

denied having received advance information about CLASE's pitches from CLASE directly.

COUNT ONE
(Wire Fraud Conspiracy)

60.    The allegations contained in paragraphs one through 59 are realleged and

incorporated as if fully set forth in this paragraph.

61.    In or about and between May 2023 and June 2025, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants EMMANUEL CLASE DE LA CRUZ, ROBINSON VASQUEZ GERMOSEN, █████

████████████████ and LUIS LEANDRO ORTIZ RIBERA, together with others,

did knowingly and intentionally conspire to devise a scheme and artifice to defraud betting

platforms, including the Betting Platforms, and to obtain money and property from betting

platforms, including the Betting Platforms, by means of one or more materially false and

fraudulent pretenses, representations, and promises, and for the purpose of executing such

scheme and artifice, to transmit and cause to be transmitted by means of wire communication in

24

interstate and foreign commerce writings, signs, signals, pictures, and sounds, contrary to

Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

COUNT TWO
(Honest Services Wire Fraud Conspiracy)

62.     The allegations contained in paragraphs one through 59 are realleged and

incorporated as if fully set forth in this paragraph.

63.     In or about and between April 2025 and June 2025, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants EMMANUEL CLASE DE LA CRUZ and LUIS LEANDRO ORTIZ RIBERA,

together with others, did knowingly and intentionally conspire to devise a scheme and artifice to

defraud the Cleveland Guardians and the MLB of their intangible rights to the honest services of

CLASE and ORTIZ through bribery and kickbacks, to wit: one or more payments to CLASE and

ORTIZ, and for the purpose of executing such scheme and artifice, to transmit and cause to be

transmitted by means of wire communication in interstate and foreign commerce writings, signs,

signals, pictures, and sounds, contrary to Title 18, United States Code, Sections 1343 and 1346.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

COUNT THREE
(Conspiracy to Influence Sporting Contests by Bribery)

64.     The allegations contained in paragraphs one through 59 are realleged and

incorporated as if fully set forth in this paragraph.

65.     In or about and between April 2025 and June 2025, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants EMMANUEL CLASE DE LA CRUZ and LUIS LEANDRO ORTIZ RIBERA,

25

together with others, did knowingly and willfully carry into effect, attempt to carry into effect and conspire to carry into effect, a scheme in commerce to influence by bribery sporting contests with knowledge that the purpose of this scheme was to influence by bribery those contests, to wit: MLB games involving the Cleveland Guardians, in violation of Title 18, United States Code, Section 224.

(Title 18, United States Code, Sections 224 and 3551 et seq.)

## COUNT FOUR
(Money Laundering Conspiracy)

66.    The allegations contained in paragraphs one through 59 are realleged and incorporated as if fully set forth in this paragraph.

67.    In or about and between April 2025 and June 2025, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants EMMANUEL CLASE DE LA CRUZ and LUIS LEANDRO ORTIZ RIBERA, together with others, did knowingly and intentionally conspire to conduct and attempt to conduct one or more financial transactions, to wit: transactions in and affecting interstate and foreign commerce and transactions involving the use of a financial institution that is engaged in, and the activities of which affect, interstate and foreign commerce, which transactions involved the proceeds of one or more specified unlawful activities, to wit: (i) sports bribery conspiracy, in violation of Title 18, United States Code, Section 224; and (ii) wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the property involved in such financial transactions represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location,

26

source, ownership, and control of the proceeds of the specified unlawful activities, contrary to

Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

## COUNT FIVE
### (False Statements)

68.      The allegations contained in paragraphs one through 59 are realleged and

incorporated as if fully set forth in this paragraph.

69.      On or about January 9, 2026, within the Eastern District of New York and

elsewhere, the defendant ROBINSON VASQUEZ GERMOSEN did knowingly and willfully

make one or more materially false, fictitious, and fraudulent statements and representations in a

matter within the jurisdiction of the executive branch of the Government of the United States, to

wit: the FBI, in that VASQUEZ falsely stated and represented to FBI agents that he was only

aware of one instance of the defendant EMMANUEL CLASE DE LA CRUZ telling someone

what pitch he was going to throw ahead of time, when in fact, as VASQUEZ then and there well

knew and believed, CLASE had provided advance information about what pitch he was going to

throw to VASQUEZ and other co-conspirators on numerous occasions.

(Title 18, United States Code, Sections 1001(a)(2) and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
### AS TO COUNTS ONE, TWO, AND THREE

70.      The United States hereby gives notice to the defendants that, upon their

conviction of any of the offenses charged in Counts One, Two, and Three, the government will

seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title

28, United States Code, Section 2461(c), which require any person convicted of such offenses to

forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offenses.

71.    If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)    cannot be located upon the exercise of due diligence;

(b)    has been transferred or sold to, or deposited with, a third party;

(c)    has been placed beyond the jurisdiction of the court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT FOUR

72.    The United States hereby gives notice to the defendants charged in Count Four that, upon their conviction of such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offense to forfeit any property, real or personal, involved in such offense, or any property traceable to such property.

73.    If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

28

     (a)       cannot be located upon the exercise of due diligence;

     (b)       has been transferred or sold to, or deposited with, a third party;

     (c)       has been placed beyond the jurisdiction of the court;

     (d)       has been substantially diminished in value; or

     (e)       has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as

incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other

property of the defendants up to the value of the forfeitable property described in this forfeiture

allegation.

         (Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United

States Code, Section 853(p))

                   A TRUE BILL

                                     FOREPERSON

*By David Pitluck, Assistant U.S. Attorney*
JOSEPH NOCELLA, JR.
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK