

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

RCH:EWS/SMS/SME                     *271 Cadman Plaza East*
F. #2025R00435                      *Brooklyn, New York 11201*

March 20, 2026

By ECF

The Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

              Re:    United States v. Emmanuel Clase de la Cruz, et al.
                     Criminal Case No. 25-346 (S-1) (KAM)

Dear Judge Matsumoto:

      The government respectfully submits this letter in response to defendant Emmanuel Clase de la Cruz's ("Clase") motion to sever his trial from co-defendants Luis Leandro Ortiz Ribera ("Ortiz") and Robinson Vasquez Germosen ("Vasquez").  See ECF No. 98 ("Def.'s Br."). On March 2, 2026, the government proposed that the Court bifurcate Count Five of the Superseding Indictment to cure any potential prejudice to Clase from the introduction of Mr. Vasquez's statements at trial.[1]  The government re-iterates that proposal and incorporates its March 2, 2026 letter response by reference herein.

      In particular, the government proposes to bifurcate Count Five in the following manner:[2]  The jury would first deliberate on Counts One through Four (the only counts in which Clase is charged) without hearing testimony or other evidence of Vasquez's proffer statements,

---

[1]    By electronic order dated March 2, 2026, in response to the government's request for a briefing schedule, the Court directed the government to adhere to the pre-existing briefing schedule for pre-trial motions, which requires the government to respond by today, March 20, 2026.

[2]    Bifurcation is regularly employed in this District to mitigate any potential prejudice from evidence related to one count impacting consideration of other counts.  For example, judges have bifurcated trials where a defendant was charged in multiple counts, one of those counts charged that the defendant was a felon in possession of a firearm, and the court sought to mitigate any potential prejudice to other counts that might arise from the jury learning that the defendant was a felon.  See, e.g., United States v. Lake, 229 F. Supp. 2d 163, 172 (E.D.N.Y. 2002) (granting a motion to bifurcate a felon-in-possession charge in order to prevent "possible prejudicial spillover" on the other counts); United States v. Robert Smith, No. 15-CR-448 (BMC) (E.D.N.Y.); United States v. Shameke Walker, No. 15-CR-388 (JBW) (E.D.N.Y.).

and the government would present testimony or evidence of such statements only after the jury first reached a verdict on Counts One through Four.

If the bifurcation proposal is adopted, Clase's concerns from Count Five will be moot.  There is, however, one potential (albeit unlikely) scenario where proffer statements by Vasquez could still feature at a joint trial, even where Count Five is bifurcated: if counsel for Vasquez offered evidence or made arguments that triggered the "waiver" provision[3] of the proffer agreement between Vasquez and the government, the government could elect to introduce Vasquez's statements through an FBI agent who was present for the interview.  See, e.g., United States v. Barrow, 400 F.3d 109, 121 (2d Cir. 2005) (defense counsel's factual assertions triggered proffer agreement waiver provision).  In this scenario, the standard and well-established principles for redaction of Vasquez's statement would apply, and the government would request that the Court instruct the jury that it may consider such statements only as to Vasquez.

Even in that unlikely scenario, severance would be unwarranted.  It is well-settled that, in a joint trial, statements by one defendant to law enforcement that implicate a co-defendant are admissible and do not violate the Sixth Amendment's Confrontation Clause as long as they are redacted such that the declarant's statements, when viewed in isolation, do not implicate his co-defendant.  See United States v. Williams, 936 F.2d 698, 699 (2d Cir. 1991).  The Second Circuit has established a framework for the appropriate redactions to a defendant's statements or sanitization of a witness's testimony.  Specifically, "a redacted statement in which the names of co-defendants are replaced by neutral pronouns, with no indication to the jury that the original statement contained actual names, and where the statement standing alone does not otherwise connect co-defendants to the crimes, may be admitted without violating a co-defendant's Bruton rights."  United States v. Jass, 569 F.3d 47, 56 (2d Cir. 2009) (quoting United States v. Tutino, 883 F.2d 1125, 1135 (2d Cir. 1989) (internal quotation marks omitted) (approving substitution of neutral words "others," "other people," and "another person" for names of co-defendants)); see also United States v. Benitez, 920 F.2d 1080, 1087 (2d Cir. 1990) (upholding redaction of co-defendant's name to "friend").

The Second Circuit has further held that there is no error from admission of such a statement at a joint trial even if other evidence introduced at trial sheds light on the identity of that "other person" in the sanitized statement.  See United States v. Lung Fong Chen, 393 F.3d 139, 150 (2d Cir. 2004) (no Bruton violation even where other evidence "link[ed]" the complaining defendant to the incriminating statement), accord In re Terrorist Bombings of U.S. Embassies in E. Afr. v. Odeh, 552 F.3d 93, 133-34 (2d Cir. 2008) (same, where moving defendant complained that the combination of grand jury testimony and the incriminating statement violated Bruton; reaffirming that incriminating inference must be compelled by the statement alone).

---

[3]    The proffer agreement that Vasquez signed provided, in what is commonly referred to as the "waiver" provision, that the government may use Vasquez's proffer-protected statements "as substantive evidence to cross-examine [Vasquz], should [Vasquez] testify," and "as substantive evidence to rebut, directly or indirectly, any evidence offered or elicited, or factual assertions made, by or on behalf of [Vasquez]" at any stage of a criminal prosecution including trial.

The Supreme Court reaffirmed this framework in Samia v. United States, 599 U.S. 635 (2023). In Samia, the confession of Samia's co-defendant, which implicated Samia by name in its original form, was admitted at trial through a testifying agent "in a way that eliminated Samia's name while avoiding any obvious indications of redaction." Id. at 641. Specifically, in Samia, two men — Stillwell and Samia — committed a murder together. See id. at 640. Stillwell gave a post-arrest statement in which he admitted to driving the van used in the murder but claimed that Samia had been the shooter. See id. At trial, the government called an agent to testify to Stillwell's confession, during which the agent described Stillwell's confession without identifying Samia by name. See id. at 641-42. In particular, each time the agent referred to Samia, he referred to him only as "the other person." See id. ("He described a time when the other person he was with pulled the trigger on that woman in a van that he and Mr. Stillwell was driving." (emphasis added by Samia Court)). The trial court "instructed the jury that [the agent's] testimony was admissible only as to Stillwell and should not be considered as to Samia or [a third defendant]." Id. at 642. Samia argued that this procedure violated his rights. The Supreme Court disagreed, explaining that "the District Court's admission of Stillwell's confession, accompanied by a limiting instruction, did not run afoul of this Court's precedents" because it "was redacted to avoid naming Samia." Id. at 653.

Thus, even if Vasquez triggered the waiver provision of the proffer agreement, and even if the government sought to rebut him with proffer statements, no severance would be warranted.[4] But because none of those events have come to pass, let alone all, and because the parties cannot predict today the precise way in which counsel for Vasquez might trigger the waiver provision, it is premature to address this scenario now. See United States v. Lingat, No. 21-CR-573 (MKV), 2024 WL 1051633, at *9 (S.D.N.Y. Mar. 11, 2024), aff'd sub nom. United States v. Lemay, No. 24-2328-CR, 2025 WL 1873404 (2d Cir. July 8, 2025) (premature to rule pre-trial on motion in limine seeking admission of proffer protected statements in the event of a future waiver or on redactions needed to avoid identification of a co-defendant; issues should be addressed at trial if and when defendant opens the door to the statements). In addition, the government intends to include in its motions in limine a full set of potential Vasquez proffer statements the government could conceivably seek to admit in which Clase is named (under the circumstances outlined above where Vasquez triggers the waiver provision of his proffer agreement) and proposed redactions so that the Court can, if it so chooses, consider those issues before trial. To the extent the Court determines that any such statements cannot be appropriately redacted pursuant to Samia (a further contingent hypothetical), the government would simply not admit those statements, again removing any need for a severance.

The government has continued to discuss these issues with counsel for Clase, but the parties have been unable to reach agreement. On March 13, 2026, the government produced Vasquez's proffer statements to Clase, and the government has agreed, at counsel's request, that

---

[4] To be clear, even if Vasquez triggered the waiver provision of the proffer agreement and his statements were admitted in redacted/amended form during trial, the government respectfully submits that Count Five should still be adjudicated in a bifurcated proceeding. In a prosecution for a violation of 18 U.S.C. § 1001, the jury should be informed of the precise statements made by Mr. Vasquez that are alleged to be false, and redaction or substitution would be inappropriate.

it would not seek to affirmatively introduce evidence of the proffer at a joint trial. However, the government noted that it might need to admit certain statements in the proffer waiver scenario. Counsel for Clase subsequently requested that the government include the following, setting forth Clase's position, in this letter:

> We agree to bifurcation if the government agrees that it cannot introduce any statements from Vasquez's proffer in a joint trial. Even if something occurs during the joint portion of a trial which could trigger use the statements [sic], it could still introduce that evidence solely against Mr. Vasquez in the bifurcated portion. Because the alleged Vasquez statements are testimonial and cannot be sanitized, they violate Bruton and Crawford and cannot be used in any manner that would prejudice Mr. Clase. If the government agrees to this arrangement, we are happy to jointly represent to the Court that we have reached an accommodation to avoid further draining the Court's resources on what should be a non-controversial issue.

The government respectfully submits that Clase's position is without merit. The government has proposed bifurcation—a solution that prejudices only the government in limiting its affirmative evidence—to address any concerns that arise from the inclusion of Count Five in a joint trial. Bifurcation fully cures any prejudice to Clase from the false statements count. It puts the parties to the joint trial squarely in the position they would be were Count Five not included in the superseding indictment at all. Unsatisfied, Clase demands that the government *also* agree to forgo the introduction of Bruton-ized statements in the unlikely event that counsel for Vasquez triggers the waiver provision of the proffer agreement. In short, though his concerns from Count Five are rendered moot by bifurcation, Clase insists on a further accommodation, untethered to any concerns regarding Count Five.

The government does not agree to forgo admission of Vasquez's statements, should he trigger the waiver provision of the proffer agreement. That would leave the government without remedy, even if counsel for Vasquez *directly* contradicted the proffer statements. For example, if counsel for Vasquez argued that Vasquez was unaware of a single instance of any major league baseball player ever fixing a pitch, the government would be left unable to rebut that assertion with evidence of Vasquez's own statements. Counsel for Clase suggests that the government is not prejudiced because "it could still introduce the evidence. . . in the bifurcated portion." That is wrong. At the bifurcated portion of the trial, the jury has already returned a verdict on the wire fraud count, and it would have done so without critical evidence disproving improper arguments.

In the proffer waiver context, this Court is bound by black-letter Second Circuit and Supreme Court law on the admission of redacted statements. But as set forth above, the Court need not—and in fact, cannot—address that now, because the relevant contingencies have not come to pass. For that reason, the government respectfully reiterates its position: bifurcation is a simple solution that cures any prejudice to Clase from Count Five. Having addressed any prejudice from Count Five, the Court can adjudicate standard disputes over the admission of proffer-protected statements at the appropriate juncture. No aspect of that dispute implicates severance;

4

if the Court disagrees with the government that the statements are appropriately redacted or amended, the government would simply not admit those statements.

Accordingly, for the foregoing reasons, the government respectfully submits that the Court should bifurcate Count Five of the Superseding Indictment and deny Clase's motion for severance.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:    _____/s/_____
Eric Silverberg
Sean M. Sherman
Sarah M. Evans
Assistant U.S. Attorneys
(718) 254-7000

cc:    Clerk of the Court (KAM) (by ECF)
Defense Counsel (by ECF)