TODD ANDREW SPODEK, ESQ.
NY Reg. #4489399
Spodek Law Group, P.C.
233 Broadway, Rm. 710
New York, New York 10279-0700
Telephone: (212) 300-5196
Email: ts@spodeklawgroup.com

Attorney for Defendant
ROBINSON VASQUEZ GERMOSEN

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

      Plaintiff

                                 Case Number: 1:25-cr-00346-KAM

ROBINSON VASQUEZ GERMOSEN,

      Defendant.

_____/

### ROBINSON VASQUEZ GERMOSEN'S MEMORANDUM IN OPPOSITION TO DEFENDANT, EMMANUEL CLASE DE LA CRUZ'S MOTION TO SEVER

COMES NOW, the Defendant, ROBINSON VASQUEZ GERMOSEN'S ("Mr. Vasquez"), by and through his undersigned attorney, and, files his Memorandum in Opposition to Defendant, EMMANUEL CLASE DE LA CRUZ'S ("Mr. Clase") Motion to Sever trial of his case from Mr. Vasquez's case, and states that:

### Table of Contents

Introduction                                2-8

Law and Argument                8-12

### Table of Authorities

*Bruton v. United States*, 391 U.S. 123 (1968)        9-13

*Richardson v. Marsh*, 481 U.S. 200 (1987)        10-12

*United States v. Bryant*, 364 F.2d 598 (4th Cir. 1966)      9

*United States v. Goldman*, 750 F. 2d 1221 (4th Cir. 1984)        9

*United States v. Locklear*, 24 F.3d 641 (4th Cir. 1994)        11

*United States v. Lurz*, 666 F.2d 69 (4th Cir. 1981)        9

*Zafiro v. U.S.*, 506 U.S. 534, 538 (1993)        9

## Introduction

Mr. Vasquez is currently charged with one count each of wire fraud conspiracy (Count 1 of the Superseding Indictment), and making a false statement (Count 5 of the Superseding Indictment). See doc 80.

The Superseding Indictment (Doc. 80) alleges that Defendant, Mr. Clase, a major league baseball pitcher during the relevant time frame (between May 2023 and June 2025), told Mr. Vasquez, that he was going to throw particular pitches. Mr. Vasquez would then tell bettors which pitches Mr. Clase was going to throw, so the bettors could place wagers on the pitches through sports betting platforms, knowing in advance that they'd likely win those bets since the person throwing the pitch, Mr. Clase, told Vasquez what pitches he was going to throw. Mr. Ortiz would receive a portion of the winnings. The Superseding Indictment further alleges that, in June 2025, Defendant, Mr. Ortiz, joined the scheme, and on two occasions, told Mr. Clase as to what pitches he was going to throw.

The Superseding Indictment alleges that Major League Baseball's rules and policies prohibit major league baseball players, including Messrs. Clase and Ortiz, from 1) wagering any amount of money on any baseball game in connection with which the player has a duty to perform; 2) asking others to place bets on their (the players') behalf; and 3) knowingly benefit financially from, or knowingly assist with bets placed by others. The players' contractual requirements with their team (the Cleveland Guardians) required Clase and Ortiz to abide by all Major League Baseball rules, including the prohibition on betting on baseball, owe a duty of

2

loyalty to the Cleveland Guardians and pledge themselves to conform to high standards of personal conduct, fair play and good sportsmanship.

The superseding Indictment further alleges that the betting platforms, including the platform used by Mr. Vasquez, required participants to agree to their terms of use, which prohibited users from 1) wagering in connection with sports contests or individual players' statistical performances if the users had access to any pre-release, confidential information or other information that was not available to all other wagerers, including any information provided by a professional athlete, such as non-public advance information about pitches; and 2) placing wagers as an agent or proxy for any individual other than the account holder.

The Superseding Indictment details several instances in which Mr. Clase, and to a far lesser extent, Mr. Ortiz, told others what pitches they were going to throw, and when they were going to throw them.

It is alleged that the bettors involved in this conspiracy won "at least" $450,000. It is also alleged that the scheme's participants used mobile devices to communicate, *inter alia*, information regarding pitches, bets to be made, winnings, and distribution of winnings. Parenthetically, one of the mobile devices was a cell phone belonging to Mr. Vasquez, which was seized and searched pursuant to a search warrant.

On May 19, 2023, Bettor-1 and several other Bettors received information from Mr. Clase concerning what pitch he was going to throw. There is no allegation that the information was given to or conveyed by Mr. Vasquez.

The Superseding Indictment alleges that Bettor-1 sent $1,000 to Mr. Vasquez. It is not alleged that the $1,000 was a portion of the proceeds the bettors won on May 19th, nor is it alleged that Mr. Vasquez was paid for doing anything illegal.

It's alleged in paragraph 25 of the Superseding Indictment, that on June 3, 2023, Mr. Clase conveyed pitch information to the redacted Defendant who then conveyed the information to Bettor-1. It is not alleged that Mr. Vazquez participated in this transaction, nor is it alleged that Mr. Vasquez was paid for doing anything illegal.

Paragraph 26 also alleges that Mr. Clase tipped redacted Defendant who then conveyed the information to Bettor-1. It is not alleged that Mr. Vazquez participated in this transaction, nor is it alleged that Mr. Vasquez was paid for doing anything illegal.

Paragraph 27 of the Superseding Indictment alleges that on June 7, 2023, Mr. Clase pitch tipped Bettor-1 and several other bettors who used that information to win money from one of the sports betting platforms. It is not alleged that Mr. Vazquez participated in this transaction, nor is it alleged that Mr. Vasquez was paid for doing anything illegal.

Paragraph 31 of the Superseding Indictment alleges that, on June 13, 2023, the redacted Defendant provided Bettor-1 with the pitch Mr. Clase was going to throw which, two days later, resulted in Bettor-1 and other bettors winning money. It is not alleged that Mr. Vazquez participated in this transaction, nor is it alleged that Mr. Vasquez was paid for doing anything illegal.

Paragraphs 35, 39, 41, 42, 44, 48, 49, 50, 51, 52, 53, 54, 55, 56 and 58 of the Superseding Indictment, do not allege any wrongdoing by Mr. Vasquez.

With regard to the allegations of wrongdoing by Mr. Ortiz (paragraphs 48-58 of the Superseding Indictment), there is no mention that Mr. Vasquez had knowledge of Mr. Ortiz's intent to throw a particular pitch before the pitch was thrown, that Mr. Vasquez ever communicated with Mr. Ortiz or anyone else regarding the tipped pitches, that Mr. Vasquez bet

4

on or won or was paid any money for any successful wager made on a tipped pitch thrown by Mr. Ortiz.

Paragraphs 44 through 46 recite wagers that were lost because the information conveyed by Mr. Clase that he was going to throw a ball didn't pan out when the batter swung and missed at the pitch.

Though paragraph 36 alleges that Mr. Clase, via text message, confirmed with Bettor-1 that Bettor-1 had won money on a wager (though, what the wager involved and when it was made, is absent from paragraph 36), that Bettor-1 should send some of the money to an unidentified recipient in the Dominican Republic. According to the Inditement, Bettor-1 sent a copy of Mr. Clase's text to Mr. Vasquez who then received $5,840 from 3 bettors, including Bettor-1. There is no allegation that Mr. Vasquez conveyed the pitch information from Mr. Clase to anyone, that Mr. Vasquez was aware of the pitch information, whom the information had been conveyed to, or that the $5,840 was the product of the aforesaid wager.

Paragraph 37 alleges that on May 17, 2025, Mr. Vasquez, and other bettors won money by placing bets on a pitch thrown by Mr. Clase. It is not alleged that Mr. Vasquez knew, in advance, what the pitch was going to be. Indeed, all paragraph 37 alleges is that Mr. Clase sent Bettor-1 if he was "ready."

Paragraph 40 alleges that on April 25, 2025, Bettor-1 visited Mr. Clase at Clase's home, on April 26, 2025, Bettor-1 attended one of Mr. Clase's games with tickets Mr. Clase left for Bettor-1, during the game Mr. Clase texted Bettor-1, Bettor-1 then had a phone conversation with Mr. Clase, and that shortly thereafter, Bettor-1 and other bettors won money on a wager they made that Mr. Clase was going to throw a certain pitch. Though it is alleged that Bettor-1 later sent $3,200 to Mr. Vasquez, the Indictment fails to allege that the money was a portion of the

5

proceeds the bettors won on April 26th, nor is it alleged that Mr. Vasquez was paid for doing anything illegal.

Paragraph 43 of the Superseding Indictment alleges that after receiving information from Mr. Clase concerning what pitch he was going to throw, Mr. Vasquez, Bettor-1 and several other bettors used that information to win money on one of the sports betting platforms.

With regard to Mr. Vasquez's alleged false statement made during a proffer, the Superseding Indictment alleges that Mr. Vasquez lied when he said he was aware of one instance in which Mr. Clase (Mr. Ortiz was never mentioned by Mr. Vasquez) told someone which pitch he was going to throw ahead of time, and that was on May 17, 2025, when he received a screenshot of Bettor-1's winning wager. See paragraph 59 of the Superseding Indictment. By the way, that statement isn't inconsistent with the other allegations of the Superseding Indictment which directly attributes knowledge of Mr. Clase's tipping pitches to Mr. Vasquez on only one occasion – May 13, 2025, which, given the plausibility that Mr. Vasquez didn't have the precise date straight in his head when he proffered, could be attributable to Mr. Vasquez's just not remembering the precise date at the time of his proffer.

Mr. Clase has moved to sever his trial from Mr. Vasquez's. See Doc. 98. With regard to that portion of the Motion that pertains to Mr. Vasquez, Mr. Clase's argument, essentially, is that severance is mandated because Mr. Vazquez's lone statement to the Government – that he was aware of one instance in which Mr. Clase's telling someone which pitch he was going to throw ahead of time, was on May 17, 2025, when he received a screenshot of Bettor-1's winning wager – was testimonial and constituted a confession, so that admitting the statement in Mr. Vasquez's trial would violate the Confrontation Clause because Mr. Vazquez could not be cross-examined on the statement. Before Mr. Vasquez addresses the problems with this argument, a quick review

6

of the law regarding severance (or, more particularly how difficult it is to secure a severance of trials) is in order.

## Severance in General

Federal decisions consistently have held that judicial economy favors joinder of defendants for trial of charges growing out of the same events. *U.S. v. Lurz*, 666 F.2d 69, 80 (4th Cir. 1981) *cert. denied*, 102 S.Ct. 1642. Also, joinder is appropriate in conspiracy cases. *United States v. Bryant*, 364 F.2d 598, 601-03 (4th Cir. 1966). "A defendant making a motion for severance pursuant to Rule 14 has the burden of demonstrating a strong showing of prejudice." *United States v. Goldman*, 750 F. 2d 1221, 1225 (4th Cir. 1984) (citing *United States v. Niederberger*, 580 F.2d 63 (3d Cir. 1978), *cert. denied*, 439 U.S. 980, 99 S.Ct. 567, 58 L.Ed.2d 651 (1978), "and it is not enough to simply show that joinder makes for a more difficult defense." *Id*. (citing *United States v. Jordan*, 602 F.2d 171 (8th Cir. 1979), *cert. denied*, 444 U.S. 878, 100 S.Ct. 165, 62 L.Ed.2d 107 (1979). The fact that a separate trial might offer a better chance of acquittal is not a sufficient ground for severance. *Id*. (citing *United States v. Hopkinson*, 631 F.2d 665 (10th Cir. 1980) *cert. denied*, 450 U.S. 969, 101 S.Ct. 1489, 67 L.Ed.2d 620 (1981). "Mutually antagonistic defenses are not prejudicial *per se*." *Zafiro v. U.S.*, 506 U.S. 534, 538 (1993).

## The Bruton Issue

Regarding a *Bruton* issue (relevant here because Mr. Clase has raised the limitations of *Bruton v. United States*, 391 U.S. 123 (1968) in support of his demand for severance), the mere fact that a co-defendant may have given a statement does not necessarily entitle one to a severance. After *Bruton*, cases interpreting *Bruton* explained under what circumstances a non-

testifying co-defendant's statement could be redacted by the prosecutor to make the statement "*Bruton* proof" such that the prosecution could use it in a joint trial.

In *Richardson v. Marsh*, 481 U.S. 200 (1987), the Supreme Court held that the admission of a non-testifying co-defendant's confession did not violate the defendant's right under the confrontation clause where the court instructed the jury not to use the confession in any way against the defendant, and the confession was not incriminating on its face, but only became so when linked with evidence introduced later at trial. *Id*. at 205, 208. As explained by the Supreme court, the differences between *Bruton* and *Richardson* were that (1) in *Bruton*, the co-defendant's confession expressly implicated the defendant as his accomplice whereas in *Richardson* the confession was not incriminating on its face but only when linked to evidence introduced at trial and (2) evidence requiring a linkage differs from evidence incriminating on its face. *Id*. at 208.

Such is the case here. Mr. Vasquez's statement did not expressly implicate Mr. Clase. Rather, all Mr. Vasquez said during his proffer was that on May 17, 2025, he received a screenshot of Bettor-1's winning wager. Nothing in that statement directly implicated Mr. Clase as having provided pitch information which resulted in the winning wager Bettor-1 displayed on a screenshot. Mr. Vasquez didn't say he had personal knowledge of: 1. any incriminating statement made by Mr. Clase to anyone, including Bettor-1, 2. the wager itself, or 3. that the wager had been based on advance information from anyone as to what the pitch was going to be. As was the case in *Richardson*, Mr. Vasquez's statement was not incriminating on its face; instead, it is *potentially* incriminating, but only when linked to other evidence introduced at trial, which takes the statement out of the purview of *Bruton*. Moreover, if Mr. Vasquez mentioned Mr. Clase's name in the subject statement, any prejudice accruing to Mr. Clase as a result, would be eliminated by redacting Mr. Clase's name. Redacting Mr. Clase's name from the statement

8

would not bear an absurd result, because, as just noted, the statement – that on May 17, 2025, Mr. Vasquez received a screenshot of Bettor-1's winning wager – didn't directly implicate Mr. Clase in the criminal wrongdoing which is the subject of the Superseding Indictment.

Likewise, in *U.S. v. Locklear*, 24 F.3d 641 (4th Cir. 1994) the Fourth Circuit held that a *Bruton* problem exists only to the extent that the co-defendant's statement in question, on its face, implicates the defendant. *Id*. at 646. A co-defendant's statement, which was not a confession, did not violate *Bruton* because *Bruton* is limited under *Richardson v. Marsh*, to cases involving "facially incriminating confessions" (*Id*.), which brings up another distinction apposite to Mr. Vasquez's statement.

Though Mr. Vasquez's statement did not directly implicate Mr. Clase, there *is* the possibility of inferential incrimination. Such a problem does not mandate severance under *Bruton* or any other authority. Instead, the issue of inferential incrimination is cured by an appropriate instruction from the Court. To be sure, a "judge's instruction may well be successful in dissuading the jury from entering onto the path of inference in the first place, so that there is no incrimination to forget. In short, while it may not always be simple for the members of a jury to obey the instruction that they disregard an incriminating inference, there does not exist the overwhelming probability of their inability to do so that is the foundation of *Bruton*'s exception to the general rule." *Richardson*, 481 U.S. at 208.

Then there are other factors militating against severance here, and in most trials. Specifically, joint trials play a vital role in the criminal justice system. *Richardson*, 481 U.S. at 209. Moreover, the Court in *Richardson* observed:

> "Many joint trials … involve a dozen or more codefendants. Confessions by one or more of the defendants are commonplace — and indeed the probability of confession increases

9

with the number of participants, since each has reduced assurance that he will be protected by his own silence. It would impair both the efficiency and the fairness of the criminal justice system to require, in all these cases of joint crimes where incriminating statements exist, that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand. Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability — advantages which sometimes operate to the defendant's benefit. Even apart from these tactical considerations, joint trials generally serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts. The other way of assuring compliance with an expansive *Bruton* rule would be to forgo use of codefendant confessions. That price also is too high, since confessions 'are more than merely 'desirable'; they are essential to society's compelling interest in finding, convicting, and punishing those who violate the law." *Moran v. Burbine*, 475 U.S. 412, 426 (1986) (citation omitted))."

*Id*. at 209-10.

Mr. Clase doubts that *any* instruction by the District Judge could cure the prejudice he claims Mr. Vasquez's statement causes him. This position is untenable in light of the fact that the statement didn't directly implicate Mr. Clase. That being the case, Mr. Vasquez's statement is not the type of "powerfully incriminating extrajudicial statement(s) of a codefendant" which creates "the risk that the jury will not, or cannot, follow instructions" which is "so great, and the

10

consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." *Id.* at 207.

Mr. Clase ignores the fact that the supposed Confrontation Clause issue can be avoided entirely by one party or the other's (most logically, the Government's) calling one or more of the agents who witnessed Mr. Vasquez's statement, to testify as to what Mr. Vasquez said. Such testimony is non-hearsay because it would not be introduced to prove the truth of the matter asserted, but, instead, would be offered to show its effect upon the listener.

Furthermore, inasmuch as Mr. Vasquez's statement does not directly implicate Mr. Clase, and, at most, recounts an instance in which Bettor-1 shared a screenshot with Mr. Vasquez showing that Bettor-1 had won money. If the potential for undue prejudice, confusion of the issues, etc. outweighed the probative value of the evidence, then Mr. Clase could move *in limine* to exclude the statement.

Based upon the aforesaid arguments and authorities, there is no legitimate basis for severing Mr. Clase's trial from Mr. Vasquez's.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that that on May 22, 2026, I served Defendant Robinson Vasquez Germosen's Memorandum in Opposition to Defendant, Emmanuel Clase de la Cruz's Motion to Sever via email to the parties listed below. I further certify that on this 22nd day of May, 2026, I served all counsel of record via the Court's electronic filing system.

s/ Todd Andrew Spodek

TODD ANDREW SPODEK, ESQ.
NY Reg. #4489399
Spodek Law Group, P.C.
233 Broadway, Rm. 710
New York, New York 10279-0700

11

Telephone: (212) 300-5196
Email: ts@spodeklawgroup.com

To: AUSA Eric W. Silverberg
    AUSA Sean Michael Sherman
    AUSA Sarah Evans
    Christos Nicholas Georgalis, Esq.
    For Defendant, Luis Leandro Ortiz Ribera
    Lindsey K. Gerdes, Esq.
    For Defendant, Emmanuel Clase de la Cruz