## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

          Plaintiff,

          v.

EMMANUEL CLASE DE LA CRUZ,

          Defendant.

Case No. 25-CR-346 (S-1) (KAM)

## DEFENDANT EMMANUEL CLASE DE LA CRUZ'S
## REPLY IN SUPPORT OF MOTION TO DISMISS COUNT ONE OF INDICTMENT

## I. PRELIMINARY STATEMENT

The government's opposition confirms rather than cures the fundamental defect in Count One: the conduct alleged—betting on inside information in violation of a private sportsbook's terms of use—does not constitute wire fraud as a matter of law, regardless of how the indictment is worded. Unable to point to a single material misrepresentation or actionable omission alleged *in the Indictment*, the government resorts to three strategies: (1) invoking the truism that an indictment may track statutory language, while ignoring that this Court must still determine whether the facts alleged constitute an offense; (2) incorrectly arguing that any "deceptive conduct" or "trickery" constitutes a scheme to defraud for purposes of the wire fraud statute; and (3) citing facts not in the Indictment, which still fail to state an offense. Moreover, the government ignores the Supreme Court's clear limitations on wire fraud in favor of its own overbroad interpretation that infringes on state police powers.

None of these strategies cures the Indictment as drawn. Mr. Clase does not seek criminal summary judgment or ask the Court to resolve disputed facts. Rather, Mr. Clase asks the Court to accept Count One on its face and determine whether it states a wire fraud conspiracy within 18 U.S.C. §§ 1343 and 1349. It does not. Because the alleged conduct does not "constitute an offense," *United States v. Aleynikov*, 676 F.3d 71, 76 (2d Cir. 2012), the Court must dismiss Count One.

## II. ARGUMENT

### A. The Wire Fraud Conspiracy Must Be Dismissed Because the Indictment Fails to Allege a Required Material Misstatement or Omission.

#### 1. Tracking the Statutory Language Does Not Cure the Indictment's Deficiency.

The government devotes numerous pages to the unremarkable proposition that an indictment need "do little more than track the language of the statute charged." U.S. Opp. at 7, ECF No. 167. Mr. Clase does not dispute the general rule, but it is not absolute. Specifically, a

federal indictment may be dismissed because "it fails to allege a crime within the terms of the applicable statute"—that is, where the alleged conduct does not "constitute an offense." *Aleynikov*, 676 F.3d at 76.

The government mischaracterizes Mr. Clase as asking the Court to "evaluate the adequacy of the facts." U.S. Opp. at 7-8, ECF No. 167. He is not. Mr. Clase accepts the Indictment's factual allegations for the purpose of his motion and argues that those allegations—placing wagers with inside information and violating private sportsbook terms—do not, as a matter of law, constitute wire fraud. That is precisely the inquiry contemplated by *Aleynikov* and Federal Rule of Criminal Procedure 12(b)(3)(B)(v).

The government's reliance on *Dawkins*, *Wedd*, and *Sampson*, *see* U.S. Opp. at 7-8, ECF No. 167, is misplaced. Those cases involved indictments that actually alleged the essential elements and defendants who asked courts to resolve disputed evidentiary questions. *See United States v. Dawkins*, 999 F.3d 767, 780 (2d Cir. 2021) ("The defendants argue that the district court should have gone further and weighed whether certain factual allegations in the Superseding Indictment—specifically that the coaches were 'agents' of the universities and that the bribery scheme was 'in connection' with the universities' 'business' of running an athletic program—were consistent with the charged violations."); *United States v. Wedd*, 993 F.3d 104, 121 (2d Cir. 2021) ("[T]here is no merit in Wedd's argument that the district court should have looked beyond the four corners of the Indictment to evaluate the adequacy of its aggravated identity theft pleading."); *United States v. Sampson*, 898 F.3d 270, 281-82 (2d Cir. 2018) ("Sampson's Rule 12(b) motion effectively asked the district court to make a factual finding about the precise moment at which he acted with fraudulent intent to convert the funds at issue in this case."). Here, the issue is not whether the alleged facts are adequate but whether the Indictment alleges an essential element *at*

*all*: a material misstatement, an actionable omission, or a cognizable scheme to obtain money by fraud. As explained below, it does not.

2.  Wire Fraud Requires a Material Misrepresentation or Deceptive Conduct Directed at the Victim.

The government contends that "wire fraud does not require proof of an explicit lie and may be based on deceptive conduct alone" and that the Indictment adequately alleges "(non-verbal) deceptive conduct," namely, "Clase's and Ortiz's rigged pitches." U.S. Opp. at 22-23, ECF No. 167. This argument fails for two reasons. First, the "deceptive conduct" cases cited by the government predate the Supreme Court and Second Circuit cases that have both narrowed federal fraud statutes and stressed that a material misrepresentation is a *required* element of wire fraud. *See Ciminelli v. United States*, 598 U.S. 306, 316 (2023) (rejecting reading of wire fraud statute that would "criminalize[] traditionally civil matters and federalize[] traditionally state matters"); *United States v. Chastain*, 145 F.4th 282, 296 (2d Cir. 2025) (recognizing that the federal wire fraud statute cannot be read to criminalize conduct that "merely depart[s] from traditional notions of fundamental honesty and fair play"); *United States v. Calderon*, 944 F.3d 72, 85 (2d Cir. 2019) ("[T]o establish the existence of a scheme to defraud, the Government must prove the *materiality* of a defendant's false statements or misrepresentations."). The government's claim that the Second Circuit "reaffirmed" the "deceptive conduct" theory last year is incorrect. *See* U.S. Opp. at 22, ECF No. 167 (citing *United States v. Hild*, 147 F.4th 103, 111 (2d Cir. 2025)). In *Hild*, the Second Circuit found that, even if the defendant's statements to lenders were not *factually* false, there was sufficient evidence for the jury to find that his "omissions and misstatements" created a false impression in the lenders' minds. *Hild*, 147 F.4th at 111. In other words, the criminal conduct involved a material misrepresentation by the defendant. *Id.*

Second, even assuming wire fraud can be proven through "deceptive conduct" and not a material misrepresentation, the cases cited by the government share a feature absent here: the deceptive conduct was directed *at the fraud victim*. In *United States v. Trapilo*, the smuggler's conduct deceived the taxing authority—the victim. 130 F.3d 547, 550 (2d Cir. 1997); *see also A. Terzi Prods. v. Theatrical Protective Union, Local No. One*, 2 F. Supp. 2d 485, 501 (S.D.N.Y. 1998) (Sotomayor, J.) ("[W]hile smuggling might involve no statement at all, its sole purpose is to conceal what the smuggler is carrying; it is thus inherently a dishonest and deceptive act."). In *United States v. Martin*, the horse trainer deceived other bettors who placed pari-mutuel wagers on non-doped horses—the victim. 411 F. Supp. 2d 370, 373 (S.D.N.Y. 2006).[1]

Here, the only "deceptive conduct" cited by the government are the allegedly "rigged pitches," which were not directed at the Betting Platforms at all. The Betting Platforms had no interest in—and received no representation about—what Mr. Clase would throw. Rather, the Betting Platforms accepted bets from third-parties, evaluated whether those bets resolved correctly, and paid winning bets, all without any interaction with Mr. Clase or his pitching decisions. The Second Circuit has held that "[b]road as the concept of 'deception' may be, it irreducibly entails some act that gives the victim a false impression." *United States v. Finnerty*, 533 F.3d 143, 148 (2d Cir. 2008). The government has not identified any such act directed at the Betting Platforms from within the four corners of the Indictment, because none is alleged.

---

[1] In pari-mutuel wagering—literally "betting among ourselves"—every dollar wagered is pooled together; the track removes a percentage to pay itself, the state, and the horsemen; and the remainder is distributed equally among all winning bettors. Bettors are competing against each other, and odds fluctuate based on the amount of money paid into the pool. Accordingly, in *Martin*, the only way the scheme could work was by inducing bettors to place bets on other, non-doped horses. This both increased the amount of money in the pool and the odds on the doped horse. By contrast, in sportsbook wagering, an individual bettor is betting against the "house," odds are fixed, and the total amount wagered by other bettors does not impact the payout. *See generally* https://www.twinspires.com/edge/racing/pari-mutuel-vs-fixed-odds-wagering-how-are-they-different/.

The government contends that even if a material misrepresentation is required, paragraph 15 of the Indictment—alleging that Bettors "were required to agree" to Terms of Use—satisfies this requirement. *See* U.S. Opp. at 24, ECF No. 167. This argument fails for two independent reasons.

First, a standard, click-through Terms of Use agreement is a general contractual assent, not a specific representation—made at the moment of each individual wager—about the bettor's information sources for that particular bet. The government's footnote 8 disclosure—that Bettor-1 re-affirmed platform terms two minutes before placing a specific wager on June 27, 2025—does not change the analysis. That disclosure is (1) outside the four corners of the Indictment and cannot be considered on a motion to dismiss, *United States v. Binday,* 908 F.Supp.2d 485, 491 (S.D.N.Y. 2012); and (2) legally insufficient even if credited. A boilerplate platform re-affirmation is not a specific warranty about any individual bet, nor does it "mislead the putative victim into parting with money" in any targeted sense. *See Klein*, 476 F.3d at 113. The government's theory, taken to its logical end, would render any platform-terms violation a potential federal fraud.[2] The Supreme Court rejected precisely that kind of boundless federal jurisdiction in *Ciminelli*, because theories that would make "almost any deceptive act . . . criminal" are incompatible with the wire fraud statute's proper scope. 598 U.S. at 315.

Second, the private, contractual Terms of Use did not create a criminally enforceable duty to disclose. A material omission only violates the wire fraud statute where "the defendant has a duty to disclose." *United States v. Autuori*, 212 F.3d 105, 118 (2d Cir. 2000). A duty to disclose

---

[2] For example, Netflix's terms of use state that a user "may not share your Netflix account outside of your household." *See* help.netflix.com/en/node/123277. Under the government's theory, any Netflix user who knowingly allowed another person outside their household to watch a movie or show could be charged with a federal felony and exposed to a twenty year prison sentence for wire fraud.

may arise from a fiduciary relationship, *see United States v. Moses*, 109 F.4th 107, 114 (2d Cir. 2024), a regulatory framework, *see United States v. Zemlyansky*, 945 F. Supp. 2d 438, 448 n.3 (S.D.N.Y. 2013), or the defendant's partial disclosure, *see United States v. Kahale*, 789 F. Supp. 2d 359, 379 (E.D.N.Y. 2009). None are alleged in the Indictment. The government's contention that "every time a co-conspirator bet on inside information or affirmed the Terms of Use while engaged in the scheme, he engaged in or made a 'false or fraudulent pretense,'" U.S. Opp. at 26, ECF No. 167, is circular. Simply, the government asks the Court to conclude that *any* failure to affirmatively disclose a private contractual breach or rule violation can constitute federal wire fraud. A contractual promise may support civil remedies or state gambling enforcement, but it does not transform every wager placed in breach of terms into federal wire fraud. If it did, the wire fraud statute would criminalize every knowing breach of contract involving interstate communications—a result the Supreme Court has emphatically rejected. *See Cleveland v. United States*, 531 U.S. 12, 26 (2000); *Ciminelli*, 598 U.S. at 315-16.

Moreover, the government's argument that it need not allege a material misstatement or omission because "the conspiratorial agreement itself is the crime," U.S. Opp. at 24, ECF No. 167, is misplaced. Conspiracy liability still requires that the *object* of the conspiracy be a cognizable offense. *See United States v. Giordano*, 693 F.3d 245, 249 (2d Cir. 1982) (recognizing that federal conspiracy jurisdiction requires that "the accused planned to commit a substantive offense which, if attainable, would have violated a federal statute."). Where, as here, the underlying scheme does not constitute wire fraud—because no material misrepresentation or actionable omission is possible—then an agreement to pursue that scheme is not a conspiracy to commit wire fraud under § 1349.

**B.      The Indictment Attempts to Impermissibly Transform Alleged Violations of State-Regulated Sportsbook Rules into a Federal Wire Fraud Conspiracy.**

The government misconstrues Mr. Clase's arguments to contend that he advocates for "reverse preemption" and characterizes Mr. Clase's argument as a claim that "state regulation of sports betting immunizes sports-betting fraud from federal wire fraud." U.S. Opp. at 14, ECF No. 167. Mr. Clase has never argued that *actual* fraud is immune from federal prosecution merely because it touches a state-regulated industry. The argument is narrower: because the indictment failed to plead a material misrepresentation, actionable omission, or cognizable property-fraud theory, it must be viewed as an impermissible attempt to use generic federal fraud language to police sports integrity and sportsbook rule compliance—an area the federal government has unequivocally left to the states. *See Murphy v. Nat'l Collegiate Athl. Ass'n*, 584 U.S. 453, 484 (2018).

The government's cited authorities involved proved or pled traditional fraud. *See United States v. Rybicki*, 38 F. App'x 626, 629 (2d Cir. 2002) (fraudulent payments to insurance adjustors to induce favorable settlements); *United States v. De Fiore*, 720 F.2d 757, 760 (2d Cir. 1983) (smuggling of cigarettes to avoid New York state taxes); *United States v. Almaleh*, 2022 U.S. Dist. LEXIS 35260, at *1 (S.D.N.Y. Feb. 28, 2022) (fraudulent and forged real estate transfer documents). And the two cited authorities related to gambling involved guilty pleas, not a challenge to the sufficiency of the indictment. *See United States v. Rubin*, 743 F.3d 31, 35 (2d Cir. 2014) (describing a scheme to "disguise[] gambling transactions as payments" to non-existent businesses and explaining that the defendant "pleaded guilty to . . . conspiracy to commit bank fraud and wire fraud"); *United States v. Battista*, 575 F.3d 226, 228 (2d Cir. 2009) (summarizing guilty pleas of co-conspirators). None holds that private sportsbook terms plus nonpublic information can be transformed into wire fraud absent a material lie or disclosure duty.

The Second Circuit has held squarely that the wire fraud statute "cannot be read to criminalize conduct that 'merely departs from traditional notions of fundamental honesty and fair play.'" *Chastain*, 145 F.4th at 296. Violating private sports wagering terms by betting with inside information—without any cognizable misrepresentation, duty to disclose, or deceptive act directed at the Betting Platforms—is exactly the kind of conduct that falls outside § 1343. It is already addressed by a comprehensive state regulatory scheme that provides for civil penalties, void wagers, and referral for criminal enforcement.

## III.    CONCLUSION

For the foregoing reasons, Mr. Clase respectfully requests that the Court grant his motion to dismiss Count One of the Indictment.

Respectfully submitted,

/s/ *J. Riley Able*
J. Riley Able (*pro hac vice*)
Michael Ferrara (*pro hac vice*)
Lindsay Gerdes (NY Bar No. 4581690)
Michael Bronson (*pro hac vice*)
Dinsmore & Shohl LLP
255 East Fifth Street, Suite 1900
Cincinnati, OH 45202
Phone: (513) 977-8200
riley.able@dinsmore.com

***Counsel for Emmanuel Clase***

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 23, 2026, the foregoing document was filed in this matter using the Court's electronic filing system. Notice of this filing will be sent to all represented parties via the Court's electronic filing system.

Respectfully submitted,

<u>/s/ *J. Riley Able*</u>
J. Riley Able (*pro hac vice*)
Michael Ferrara (*pro hac vice*)
Lindsay Gerdes (NY Bar No. 4581690)
Michael Bronson (*pro hac vice*)
Dinsmore & Shohl LLP
255 East Fifth Street, Suite 1900
Cincinnati, OH 45202
Phone: (513) 977-8200
riley.able@dinsmore.com

***Counsel for Emmanuel Clase***