United States District Court
Eastern District of New York

-----------------------------------X

United States of America,

- against -

Emmanuel Clase de la Cruz, et al,

Defendants.

-----------------------------------X

**Memorandum and Order**

No. 25-cr-346 (KAM)

**Kiyo A. Matsumoto, United States District Judge:**

Pending before the Court are multiple motions by the parties. First, on April 24, 2026, the Government moved to disqualify Defendant Emmanuel Clase de la Cruz's attorneys, Michael Ferrara, Esq., Michael Bronson, Esq., Riley Able, Esq., (collectively, "Mr. Clase's counsel") and Pablo Davis, Esq., (the "Interpreter-Witness"), as well as their firm, Dinsmore & Shohl LLP, ("Dinsmore"), from participating in Mr. Clase's trial on his behalf. (ECF No. 131.) Mr. Clase filed a response in opposition on May 8, 2026, (ECF No. 135), and the Government filed a reply on May 15, 2026 (ECF Nos. 136, 137).

Second, Luis Leandro Ortiz Ribera's ("Mr. Ortiz") moves to sever his trial from that of Mr. Clase, (ECF Nos. 77, 92 (reply)), which is not opposed by Mr. Clase, (ECF No. 84). Mr. Clase moves to sever his trial from those of Mr. Ortiz and Robinson Vasquez Germosen ("Mr. Vasquez"), (ECF Nos. 99, 102 (reply)), which is

opposed by Mr. Vasquez, (ECF Nos. 150, 156 (reply)).

The Government has opposed severance between Mr. Ortiz and Mr. Clase, (*see* ECF No. 86 (opposition to Mr. Ortiz's motion), 95 (Government's sur-reply to Mr. Ortiz's motion), 101 (opposition to Mr. Clase's motion)), and has opposed in part severance between Mr. Clase and Mr. Vasquez, (*see* ECF Nos. 101 (opposition to Mr. Clase's motion), 111 (sur-reply to Mr. Clase's motion)). Mr. Clase filed a sur-sur-reply to the Government's sur-reply. (ECF No. 116.)

**Background**

The Court assumes familiarity with the facts and background of this case, much of which is recounted in the Court's Memorandum and Order dated February 2, 2026. (*See* ECF No. 75.) In sum, a grand jury returned a four-count indictment charging Mr. Clase and Mr. Ortiz with conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1343, 1349 (Count One); conspiracy to commit honest services wire fraud, in violation of 18 U.S.C. §§ 1343, 1346, 1349 (Count Two); conspiracy to influence sporting contests by bribery, in violation of 18 U.S.C. § 224 (Count Three); and money laundering conspiracy, in violation of 18 U.S.C. § 1956 (Count Four). (*See* ECF No. 1, "Indictment.") The grand jury returned a five-count Superseding Indictment on February 12, 2026, adding two defendants, Robinson Vasquez Germosen and Defendant-4. (*See* ECF No. 80, "Superseding Indictment.") Mr. Vasquez was charged by the

Superseding Indictment with Count One, conspiracy to commit wire fraud, and with Count Five, making materially false statements to law enforcement agents in violation of 18 U.S.C. § 1001(a)(2), based on Mr. Vasquez's January 9, 2026 proffer meeting with the FBI. (*See id.* ¶¶ 68-69.) At this meeting, Mr. Vasquez allegedly "falsely stated and represented to FBI agents that he was only aware of one instance" in which Mr. Clase informed others of his pitching strategy ahead of time. (*Id.*) The Government contends that Mr. Vasquez was aware of more instances of Mr. Clase's pitch-rigging than he had disclosed. (*Id.*)

The events central to the motions to disqualify and for severance occurred prior to either indictment. In July 2025, Mr. Ortiz and Mr. Clase were alerted to the Government's investigation when law enforcement agents executed warrants to seize their electronic devices. (*See* ECF No. 135 at 5.) Mr. Clase retained his counsel shortly thereafter. (*Id.*) While investigating the case, Mr. Clase's counsel at Dinsmore & Shohl LLP -- Michael Ferrara, Esq., Michael Bronson, Esq., and James Riley Able, Esq., as well as Pablo Davis, Esq., an attorney at Dinsmore who allegedly participated in the interviews only as an "interpreter" -- interviewed and prepared statements from four witnesses -- [redacted] Robinson Vasquez, [redacted] (collectively, the "Witnesses" and their attendant "Witness Declarations")). Three of four of

these Witness Declarations were signed and sworn to under penalty of perjury; Mr. Vasquez allegedly verbally affirmed to Mr. Clase's counsel that his statements were true but never executed a signed copy. (*Id.* at 6.) All four Witness Declarations were provided to the Government. (ECF No. 131 at 4.)

The Government has represented that two of these witnesses -- [redacted] and Mr. Vasquez, a defendant in this case -- have since recanted. (*Id.* at 21). The Government suggests that Mr. Clase's counsel provision of these Witness Declarations to the Government may constitute obstruction of justice and making false statements in violation of the Criminal Code. (*Id.* at 2.) Besides the Witnesses themselves, Mr. Clase's counsel and Mr. Davis are the only witnesses to the interviews giving rise to the now-recanted exculpatory Witness Declarations. (*Id.* at 4.) The Government expects [redacted] to testify at the November trial (the "Government Witness"). (*Id.* at 14 & n.5.)

On January 16, 2026, after being notified by the Government of the possible conflict between Mr. Clase's counsel and Mr. Clase, the Court held a *Curcio* hearing, in which Mr. Clase knowingly and voluntarily chose to continue being represented by Dinsmore after being fully informed of the potential conflicts of interest, including the inability of his attorneys to examine or cross-examine the Witnesses regarding their exculpatory statements without violating the unsworn witness rule. (*See* Jan. 16, 2026

Hr'g Tr. 10:21-11:6.) The Court also informed Mr. Clase that his attorneys could not take the stand and testify about these exculpatory conversations without running afoul of the Advocate-Witness rule, which bars an attorney in a trial from also being a witness. (*Id.* 10:9-20.)

Since then, the Government has taken the additional step of moving to disqualify Mr. Clase's counsel, arguing that their representation of Mr. Clase constitutes either an unwaivable conflict of interest or a potential conflict requiring court intervention, and because Mr. Clase's counsel are poised to become either sworn or unsworn witnesses at the trial. (*See* ECF No. 131.) The Government bases this request on Mr. Clase's counsel's involvement in the procurement of the purportedly perjured Witness Declarations.

Relatedly, Mr. Ortiz has moved to sever his trial from that of Mr. Clase because (i) Mr. Ortiz may call Mr. Clase's counsel to impeach the Government Witness' credibility, making Mr. Clase's counsel sworn witnesses of the same trial in which they represent a defendant, (ii) Mr. Ortiz's defense is mutually antagonistic to Mr. Clase's, (iii) Mr. Ortiz' alleged involvement in the pitch-rigging conspiracy is minor compared to Mr. Clase's, and (iv) Mr. Ortiz's intention to adjourn the trial date, which was then scheduled for May, would prejudice Mr. Clase's right to a speedy trial. The fourth reason for Mr. Ortiz's severance motion has

been mooted by the continuance of the trial to November.

Mr. Clase does not object to severance from Mr. Ortiz, and cross-moves to sever their trials due to their antagonistic defenses and to preserve Mr. Clase's speedy trial rights. Mr. Clase also moves to sever his trial from that of Mr. Vasquez on the grounds that allowing Mr. Vasquez's inculpatory out-of-court statement to the FBI from January 9, 2026 would violate the Confrontation Clause under *Bruton v. United States*, in which the Supreme Court held that "where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant," are admitted at a joint trial, courts "cannot accept limiting instructions as an adequate substitute for [the defendant's] constitutional right of cross-examination." 391 U.S. 123, 135-37 (1968); (*see* ECF No. 99-1 at 16). In other words, Mr. Clase argues that Mr. Vasquez, by virtue of being a defendant in this trial, cannot be cross-examined by Mr. Clase's attorneys, so admitting Mr. Vasquez's proffer statements on January 9, 2026 would violate Mr. Clase's Sixth Amendment rights. Mr. Vasquez opposes Mr. Clase's motion to sever their trials because "[n]othing" in Mr. Vasquez's proffer statement "directly implicated Mr. Clase as having provided pitch information which resulted in the winning wager." (ECF No. 150 at 8.)

The Court next considers the legal standards for

disqualification and severance.

**Discussion**

**I. Disqualification**

**A. Legal Standards**

Disqualification of counsel is an extraordinary remedy. At a minimum, disqualification is disruptive to a defendant's trial preparation process. *Pacheco v. 1454 Diner, Inc.*, 2026 WL 279832, at *2 (E.D.N.Y. Feb. 3, 2026). But the risks of disqualification can be far greater than mere inconvenience: rather, the improper deprivation of a criminal defendant's choice of counsel is a Sixth Amendment violation bearing "directly on the framework within which the trial proceeds." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 142, 150 (2006) (citations omitted). Improper disqualification is therefore a "structural error" meriting "reversal of [the defendant's] conviction" without any showing prejudice. *Id.* (citations omitted).

Given the adverse effects of disqualification on a party's ability to prepare for trial, motions to disqualify are ripe for "tactical use" by opposing counsel, *Lamborn v. Dittmer,* 873 F.2d 522, 531 (2d Cir. 1989), and are "viewed [by courts] with disfavor," *First Trust Nat'l Assoc. v. Moses & Singer*, 2000 WL 1093054, at *6 (S.D.N.Y. Aug. 4, 2000). The party seeking disqualification thus bears a heavy burden in demonstrating that disqualification is warranted. *Evans v. Artek Sys. Corp.*, 715

F.2d 788, 791 (2d Cir. 1983). The district court's authority to disqualify counsel stems from its "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat v. United States*, 486 U.S. 153, 159 (1988). In practice, this means the district court has "wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar." *Gonzalez-Lopez*, 548 U.S. at 152 (internal citation omitted).

The Government makes two distinct, but related, arguments for why Mr. Clase's counsel must be disqualified. First, the Government contends that an attorney must be disqualified if she or he suffers from an "actual or potential conflict such that no rational defendant would knowingly and intelligently desire that attorney's representation." (ECF No. 131 at 8 (citing *United States v. Lussier*, 71 F.3d 456, 461 (2d Cir. 1995)).) An actual conflict exists "when the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action, or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client." *United States v. Jones*, 381 F.3d 114, 119 (2d Cir. 2004) (internal quotation marks and citations omitted). A potential conflict exists if "the interests of the defendant could place the attorney under inconsistent duties in the future." *Id.* (emphasis and

citations omitted). A court may determine "whether the attorney has an actual conflict, a potential conflict, or no conflict at all" through a *Curcio* hearing. *United States v. Ash*, 464 F. Supp. 3d 621, 632 (S.D.N.Y. 2020) (citing *United States v. Stein*, 410 F.Supp.2d 316, 323-24 (S.D.N.Y. 2006)). There is only a "very narrow" "class of cases in which an attorney conflict is truly unwaivable," which would mandate the disqualification of counsel. *United States v. Cain*, 671 F.3d 271, 294 (2d Cir. 2012); *Jones*, 381 F.3d at 119. For that class of cases, the conflict must be so "severe" that "no rational defendant would knowingly and intelligently desire the conflicted lawyer's representation." *United States v. Levy*, 25 F.3d 146, 153 (2d Cir. 1994).

Aside from any conflict of interest, disqualification is also required when a trial attorney is poised to become an unsworn or sworn witness at trial. *United States v. Kliti*, 156 F.3d 150, 156 (2d Cir. 1998); *United States v. Cunningham*, 672 F.2d 1064, 1074 (2d Cir. 1982) ("If [the attorney] were to be sworn as a witness it is clear that he should not serve as trial attorney."); *see also United States v. Cruz*, 1995 WL 463107, at *1 (S.D.N.Y. Aug. 4, 1995) (analyzing attorney's conflict of interest with his client and his potential as a witness as separate grounds for disqualification). The requirement to disqualify any attorney serving as a sworn witness stems from ethical codes prohibiting an attorney from serving as both a witness and an advocate. *Kliti*,

156 F.3d at 156 n.8. The requirement to disqualify an attorney who is an unsworn witness -- meaning he or she as "first-hand knowledge of the events presented at trial" -- stems from the fact that his or her involvement in the trial may give one side an unfair advantage in being able to subtly impart knowledge to the jury "without having to swear an oath or be subject to cross examination." *United States v. Locascio*, 6 F.3d 924, 933-34 (2d Cir. 1993) (citing *United States v. McKeon*, 738 F.2d 26, 35 (2d Cir. 1984)). Practically speaking, an attorney's conflict with his client with respect to charges presented at trial likely means that the attorney would be a sworn or unsworn witness. *See, e.g.*, *Cain*, 671 F.3d at 292; *Cunningham*, 672 F.2d at 1074.

Disqualification on the basis of the advocate-witness rule is subject to "fairly strict scrutiny" because such motions lend themselves to "opportunistic abuse." *Murray v. Metro. Life. Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009). Thus, "[i]n order to succeed on a motion seeking disqualification" on the grounds that an attorney might become a sworn or unsworn witness, "the moving party must [first] demonstrate the necessity of the testimony." *Locascio*, 357 F. Supp. 2d 536, 554 (E.D.N.Y. 2004); *Pacheco*, 2026 WL 279832, at *3-4 (E.D.N.Y. Feb. 3, 2026) (same). "In evaluating necessity, courts consider 'the significance of the matters, the weight of the testimony, and the availability of other evidence.'" *Pacheco*, 2026 WL 279832, at *3-4 (quoting *Finkel v. Frattarelli*

*Bros., Inc.*, 740 F. Supp. 2d 368, 373 (E.D.N.Y. 2010)). "The existence of additional witnesses with the ability to testify to the same facts is often fatal to a claim for disqualification under the lawyer as witness rule." *Rothman v. Complete Packaging & Shipping Supplies, Inc.*, 2023 WL 2740862, at *2 (E.D.N.Y. Mar. 31, 2023).

Next, "to the extent that the attorney would not be providing testimony on his client's behalf, the party seeking to disqualify the attorney must show that there is a substantial likelihood that the testimony would be prejudicial to the witness-advocate's client." *Finkel*, 740 F. Supp. 2d at 373. A finding of prejudice requires a showing that "the testimony of the opposing party's attorney will be 'sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony.'" *Pacheco*, 2026 WL 279832, at *3-4 (citing *Murray*, 683 F.3d at 178). The moving party "bears the burden of demonstrating specifically how and as to what issues in the case the prejudice may occur and that the likelihood of prejudice occurring . . . is substantial." *Murray*, 583 F.3d at 178 (internal quotations omitted).

**B. The Government's Motion to Disqualify**

As previously noted, the Government moves to disqualify Mr. Clase's counsel and Dinsmore & Shohl, LLP at large, arguing that

(i) Mr. Clase’s counsel have an unwaivable conflict of interest with Mr. Clase, and relatedly, that (ii) that they are poised to become sworn or unsworn witnesses at trial, both of which mandate their disqualification. (*See* ECF No. 131 at 7-13.) The Court next addresses these arguments in turn.

The Government appears to argue that Mr. Clase’s counsel are laboring under an unwaivable conflict of interest in their representation of Mr. Clase, although the Government does not make the actual contours of that conflict clear. (ECF No. 131 at 8 (discussing the standards for actual versus potential conflicts).) Presumably, any conflict arises out of the assumption that Mr. Clase’s counsel would testify *adversely* to Mr. Clase and against his interests if called upon to discuss the circumstances surrounding their procurement of the Witness Declarations. This argument is unavailing at this stage for two reasons. First, the Court conducted an *ex parte* evidentiary hearing and discussed at length Mr. Clase’s counsel’s process in planning and conducting the Witness Interviews. (*See* July 1, 2026 Minute Entry.) Nothing about that testimony suggested any impropriety on behalf of Mr. Clase, who left the decisions surrounding who to interview and how to interview them to his counsel. In other words, Mr. Clase’s counsel do not appear to have any testimony or account of the facts surrounding the Witness Declarations that would place their interests in conflict with Mr. Clase’s. Second, the Government

has not yet indicted Mr. Clase on any obstruction-related charge. Had they done so, Mr. Clase's counsel may not be able to represent Mr. Clase at this trial while testifying in a forthcoming obstruction trial.

Many of the cases cited by the Government which purportedly compel the disqualification of Mr. Clase's counsel can be distinguished on these grounds alone. *See United States v. Cain*, 671 F.3d 271, 292 (2d Cir. 2012) (upholding disqualification based on magistrate judge's "belief that if [the attorney] were compelled to testify [to a grand jury] pursuant to the crime-fraud exception to the attorney-client privilege, it would create a per se, unwaivable conflict"); *see id.* at 295 (the "risk" that an attorney "would become a witness *against* his client was sufficient to justify his disqualification" (emphasis added)); *United States v. Kerik*, 531 F. Supp. 2d 610, 619-20 (S.D.N.Y. 2008) (unwaivable conflict where attorney's statements were subject to the crime-fraud exception for obstruction and made in furtherance of his client's underlying crime, to which his client pled guilty in state court); *United States v. Cunningham*, 672 F.2d at 1075 (reversing disqualification and remanding for a hearing to determine the admissibility of a witness's testimony of a conversation between the defendant's counsel and the witness inculpating the attorney's client); *United States v. Briggs*, 2025 WL 2106670, at *4-5 (S.D.N.Y. July 28, 2025) (attorney's financial stake in outcome of

the criminal trial, and personal involvement in the charged conduct constituted unwaivable conflict). Thus, because Mr. Clase's counsel did not further any charged conduct and indeed, do not appear to have engaged in any misconduct on behalf of themselves or Mr. Clase, there is no actual or potential conflict inherent in their representation of Mr. Clase requiring their disqualification.

Secondly, and primarily, the Government argues that Mr. Clase's counsel must be disqualified because they are poised to become either sworn or unsworn witnesses at Mr. Clase's trial. (ECF No. 131 at 11.) By the Government's own account, "there are three distinct bases for calling [Mr. Clase's attorneys] as witnesses": "(1) the impeachment of government witnesses, (2) evidence of Vasquez's false statements, and (3) evidence of obstruction of justice or false statements to the government." (ECF No. 131 at 19.) The third avenue may be dispensed of on the record that has been created regarding the Court's decision dated July 27, 2026 in quashing the grand jury subpoenas directed at Mr. Clase's counsel. As noted, Mr. Clase has not been charged with obstruction or making false statements, and the Court's *in camera* review of documents and communications in possession of Mr. Clase's counsel with respect to the Witness Declarations and the Pre-Charge Presentation, as well as the Court's *ex parte* evidentiary hearing, found that Mr. Clase's counsel possess no such evidence.

As for the first two bases -- impeachment of government witnesses or evidence of Mr. Vasquez's false statements -- the Court finds that disqualification of Mr. Clase's counsel is not necessary to protect the interests of the Government (or Mr. Ortiz). Fatal the Government's motion is that the Government has not "demonstrate[d] the necessity of the testimony" of trial counsel, *Locascio*, 357 F. Supp. 2d at 554, in part in light of its own briefing opposing severance, which argues that extrinsic impeachment evidence is not necessary in the first place because the government's witness "will admit on the stand that he had given a prior inconsistent statement," (ECF No. 86 at 12). Under Second Circuit precedent, the Court has discretion to exclude extrinsic testimony that would have been "consistent with and duplicative of" admission of inconsistency by the witness. *United States v. Arena*, 180 F.3d 380, 400 (2d Cir. 1999) (upholding exclusion of extrinsic evidence of prior inconsistent statement when declarant admitted to inconsistency). Even if the Court were inclined to allow further extrinsic impeachment evidence, the Witness Declarations are themselves also sufficient to impeach the Government Witness' credibility. Fed. R. Evid. 613.

The availability of Mr. Pablo Davis' testimony also underscores that Mr. Clase's trial counsel's testimony is not necessary. Mr. Davis, an interpreter and attorney who will not act as Mr. Clase's trial counsel and who executed his own sworn

declaration as to the circumstances surrounding the procurement of the Witness Declarations, is capable and available to testify regarding all interactions between counsel and the witnesses, including regarding Mr. Vasquez, who did not sign his Witness Declaration. *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 126 F. Supp. 3d 413, 423 (S.D.N.Y. 2015); *City of New York by & through FDNY v. Henriquez*, 2023 WL 6358098, at *4 (E.D.N.Y. Sept. 29, 2023) (same and collecting cases). Contrary to the Government's assertion, Mr. Davis's status as a potential witness does not necessitate the disqualification of Mr. Clase's trial counsel. In making this argument, the Government conflates the imputation standard for firm-wide conflict for when a lawyer labors under actual conflict with the imputation standard for when an attorney -- here, Mr. Davis -- acts as witness. In fact, the very rule cited by the Government in support of its argument applies the imputation standard only when "another lawyer in the lawyer's firm is likely to be called as a witness on a significant issue other than on behalf of the client, and it is apparent that the testimony may be prejudicial to the client." (*See* ECF 136 at 15). The Second Circuit has confirmed as much. *Murray*, 583 F.3d at 178 (imputations of conflict firm-wide are only appropriate when (i) the attorney is called on a significant issue other than on behalf of the client, and (ii) it is apparent that testimony may be prejudicial). Here, Mr. Clase's counsel and Mr. Davis possess no

information with respect to the allegedly obstructive acts that is prejudicial to Mr. Clase or against his interests, so imputation of any conflict to disqualify Dinsmore at large is inappropriate. *See also Schulte*, 2019 WL 4688707, at *2 (declining to disqualify trial counsel when another lawyer in her organization was set to testify, because that testimony would be "favorable and *on behalf of her client*" (emphasis in original)).[1] Based on the foregoing, the Government has failed to demonstrate that Mr. Clase's trial counsel's testimony is necessary at trial.

The Court next turns to whether Mr. Clase's counsel are nonetheless poised to become "unsworn witnesses." Unsworn witnesses are those that, by virtue of "[their] relationship to [their] client," have "first-hand knowledge of the events presented at trial." *Locascio*, 6 F.3d at 933-34. The danger and prejudice of an unsworn witness is that they are not subject to cross-examination even though their credibility may be at issue." *United States v. McKeon*, 738 F.2d 26, 35 (2d Cir. 1984).

---

[1] The Government's continued emphasis on Mr. Davis being not only an "interpreter" but one of Mr. Clase's counsel is misplaced. Even if Mr. Davis were one of Mr. Clase's attorneys, the Second Circuit has explicitly held that an attorney disqualified from participating as trial counsel due to his status as a potential witness could otherwise continue to "participate in all [other] aspects of the defense." *United States v. Cunningham*, 672 F.2d 1064, 1074 (2d Cir. 1982) (attorney that could possibly be disqualified from participating as trial counsel due to his status as a potential witness could otherwise continue to "participate in all [other] aspects of the defense"); *Schulte*, 2019 WL 4688707, at *2 (declining to impute non-trial-counsel's status as a witness to disqualify defendant's trial team because the moving party "has not identified any additional testimony that only trial counsel . . . possess").

The Government has not indicted Mr. Clase on obstruction and the events surrounding the procurement of the Witness Declarations are thus not likely to be directly introduced at trial. Notably, the pitch-rigging conspiracy allegedly ended in June 2025, while the Witness Declarations were procured afterwards, from July 2025 to October 2025. But this alone does not close the inquiry, because Mr. Clase's counsel may have "first-hand knowledge" of events at trial if Mr. Ortiz's counsel seek to impeach the Government Witness using his exculpatory statements to Mr. Clase's counsel. The government's witness may also discuss the circumstances of the Witness Declarations on redirect examination. The issue, then, is whether these indirect avenues through which the Witness Declarations may be discussed require Mr. Clase's trial counsel's disqualification. The Court finds that they do not.

*United States v. Sanchez*, 2004 WL 315266 (S.D.N.Y. Feb. 18, 2004) is instructive. In that case, the defendant was charged with conspiracy to obstruct justice and making false statements to the Government and moved to disqualify the Assistant United States Attorney from his case. *Id.* at *1. The AUSA, along with two Drug Enforcement Administration ("DEA") Agents, had conducted an investigative interview with the defendant and planned to introduce the report produced from that interview at the defendant's obstruction of justice trial. The defendant argued that the AUSA would "become an unsworn witness if the Government

introduces the [interview] at trial." *Id.* The Court disagreed, finding that the presence of other witnesses -- the DEA agents -- meant that the "defense does not have a legitimate or compelling reason to call [the AUSA] as a witness," even if the other witnesses testified as to the "manner in which the interview was conducted." *Id.*; *see also United States v. Regan*, 103 F.3d 1072, 1083 (2d Cir. 1997) (no legitimate need to call the prosecutor as a witness because a third party could testify as to whether the prosecutor created a "hostile or aggressive atmosphere during his questioning"). As pertinent to the unsworn witness problem, the *Sanchez* court held that the disqualification of the AUSA is not warranted "[e]ven if the jury is aware of [the AUSA's] participation in the [investigative] interview" that was the subject of the testimony. *Id.* at *2; *see also United States v. White*, 545 F. App'x 69, 70 (2d Cir. 2013) (no plain error where district court allowed prosecutor to elicit testimony from two government witnesses regarding prosecutor's own role in the events leading to the filing of the false statements charge against defendant).

This principle holds when applied to the instant case: whereas the prosecutor in *Sanchez* was present at events which were *certain* to be explored at trial and are central to and constitute the charged conduct, Mr. Clase's counsel were present at events that *may* be explored at trial and are *ancillary* to the charged

conduct. *See Henriquez*, 2023 WL 6358098, at *5 (the attorney's "testimony is too speculative at this point to warrant the severe sanction of [attorney's] disqualification"); *Paramount Comm., Inc. v. Donaghy*, 858 F. Supp. 391 398 (S.D.N.Y. 1994) ("The conjuring of perhaps possible scenarios is inadequate grounds for a demonstration of the need to call an attorney to testify, or a demonstration that such testimony would be prejudicial" (internal quotation marks omitted)). Indeed, no party before this Court has insinuated that AUSA Sean Sherman, who is trial counsel for the Government, should be disqualified from the trial because he was present for Mr. Vasquez's January 9,2026 proffer, (*see* ECF No. 156-2), the very meeting where Mr. Vasquez made the allegedly false statements to law enforcement underpinning Count Five. Just as AUSA Sherman would sit at the Government's side of the trial table while his co-counsel questions witnesses and presents portions of the Government's case that AUSA Sherman knows first-hand, Mr. Clase's counsel, too, can be present if Mr. Ortiz's counsel questions Mr. Davis, should his testimony become necessary to "complete" any impeachment.

At bottom, the Court's review of the caselaw suggests that disqualification of attorneys as unsworn witnesses is reserved for the most serious instances "where they have become enmeshed in their clients' alleged criminal acts." *United States v. Finkelstein*, 2021 WL 2555832, at *4 (S.D.N.Y. June 22, 2021)

(collecting cases). There is no evidence before the Court that such circumstances are present here. Accordingly, the Court **DENIES** the Government's motion to disqualify Mr. Clase's counsel.

## II. Severance

### A. Legal Standards

In the federal system, there is "preference . . . for joint trials of defendants who are indicted together" to promote efficiency and prevent the injustice of inconsistent verdicts." *Zafiro v. United States*, 506 U.S. 534, 537 (1997). That preference is especially strong when "defendants are charged with participating in the same criminal conspiracy." *United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003); *United States v. Ventura*, 724 F.2d 305, 312 (2d Cir. 1983) (the Second Circuit has "held repeatedly that, absent a showing of substantial prejudice, defendants who are jointly indicted should be jointly tried"). As the Supreme Court has explained, severance may "impair both the efficiency and the fairness of the criminal justice system" by forcing prosecutors to "present[] the same evidence again and again, requiring victims and witnesses to repeat the inconvenience . . . of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand." *Richardson v. Marsh*, 481 U.S. 200, 210 (1987). Joint trials thus "generally serve the interest of justice by avoiding the scandal and inequity of inconsistent verdicts. *Id.*

Consistent with these principles, a defendant seeking severance thus faces the "extremely difficult burden of proving that . . . the prejudice would be so great as to him deprive of his right to a fair trial." *United States v. Bellomo*, 954 F. Supp. 630, 649 (S.D.N.Y. 1997); *United States v. Page*, 657 F.3d 126, 129 (2d Cir. 2011) (for a denial of severance to be overturned, the defendant must demonstrate that "the failure to sever caused him substantial prejudice in the form of a miscarriage of justice" (internal quotations omitted)); *United States v. Walker*, 142 F.3d 103, 110 (2d Cir. 1998) ("A defendant seeking severance must show that the prejudice to him from joinder is sufficiently severe to outweigh the judicial economy that would be realized by avoiding multiple lengthy trials."). Even when a defendant may establish some prejudice from a joint trial, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro*, 506 U.S. at 539. Accordingly, "rarely" should "motions [to sever] be granted; even more rarely are convictions reversed when severance motions have been denied." *United States v. Holmes*, 44 F.3d 1150, 1158 (2d Cir. 1995) (citing *Zafiro*, 506 U.S. at 538-39)).

**B. Mr. Ortiz's Motion to Sever**

Given that Mr. Ortiz's speedy trial argument was mooted by a continuance in the trial date, Mr. Ortiz has three remaining arguments in favor of severance: (i) he will seek to call Mr.

Clase's Attorneys as impeachment witnesses; (ii) he will put forth a defense theory that inculpates Mr. Clase but exculpates himself; and (iii) he will be prejudiced by the fact that Mr. Clase is alleged to have thrown multiple suspect pitches in 48 games, while Mr. Ortiz is alleged to have thrown just two suspect pitches at two games. The Court addresses each of these arguments in turn and finds them unavailing.

First, Mr. Ortiz claims that he will seek to call Mr. Clase's attorneys as "critical impeachment witnesses" to "complete the impeachment" of Bettor-1. (ECF No. 77-1 at 4, 9, 7-10.) He argues that because Mr. Clase's counsel can provide "exculpatory evidence," a "violation of due process and compulsory process" "and therefore severe prejudice" would "arise[]" if Mr. Ortiz is "prevented from introducing [that] evidence." (ECF No. 77-1 at 8 (internal citations and quotations omitted).) This argument overstates the importance of Mr. Clase's counsel's testimony to Mr. Ortiz's case in key respects. At the substantive level, Mr. Clase's counsel could provide testimony for purposes of impeaching the Government Witness' credibility, not for providing exculpatory evidence for the truth of the matter asserted. *See* Fed. R. Evid. 613(b); 802 (d)(1)(A). Mr. Clase's trial counsel do not speak Spanish and would not be able to offer first-hand knowledge of what the witnesses said during their interviews, and their knowledge about any of the Government Witness' statements

would be based on hearsay. At the procedural level, the Government correctly points out that the district court retains the discretion to allow extrinsic evidence of a prior inconsistent statement when that inconsistent statement is admitted to by the witness, as the Government expects its witness to do. *United States v. Arena*, 180 F.3d 380, 400 (2d Cir. 1999); (ECF No. 86 at 13 (Government represents that it anticipates its witness to "*admit* that he denied participation in or knowledge of the alleged gambling conspiracy" (emphasis in original) (internal quotations omitted)).) Contrary to Mr. Ortiz's argument, Second Circuit precedent does not compel a different result. *United States v. Strother* held that testimony of the inconsistent statement is admissible because "[e]xtrinsic evidence of a prior inconsistent statement is more persuasive to a jury than a witness' acknowledgment of inconsistencies in a prior statement." 49 F.3d 869, 876 (2d Cir. 1995). But the later-decided *Arena* clarified that the discretion remains with the district court to assess the probative value of the additional extrinsic evidence. *Arena*, 180 F.3d at 400. Furthermore, even if the Court decides that extrinsic evidence of the Government witness' prior inconsistent statement is more probative than cumulative under Fed. R. Evid. 403, Mr. Ortiz can use both the exculpatory Witness Declaration itself or avail himself of the testimony of Mr. Davis. Neither, as explained in the Court's reasons denying the Government's motion to disqualify, would

require calling Mr. Clase's trial counsel as witnesses, so neither necessitates severance. Accordingly, due to the narrow purpose for which counsel's testimony can be introduced and the availability of other evidence, Mr. Ortiz cannot be said to be deprived of "essential exculpatory evidence that would be [un]available" unless the Court grants severance. *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

Second, Mr. Ortiz argues that the defendants are likely to have mutually antagonistic defenses, which mandates severance. (ECF No. 77-1 at 10.) Severance may indeed be appropriate when defendants have "mutually antagonistic" or "irreconcilable" defenses, but the existence of antagonistic defenses is not a *per se* basis for severance. *Zafiro*, 506 U.S. at 538; *see also United States v. Cardascia*, 951 F.2d 474, 482 (2d Cir. 1991). To "mak[e] a showing" of "irreconcilable defenses, the defendant must make a factual demonstration that acceptance of one party's defense would tend to preclude the acquittal of the other." *United States v. Salameh*, 152 F.3d 88, 116 (2d Cir. 1998) (per curiam) (citation modified). "[M]ere finger pointing is not sufficient." *United States v. DiFilippo*, 2006 WL 1025754 (E.D.N.Y. Apr. 14, 2006) (citing *United States v. Haynes*, 16 F.3d 29, 31-32 (2d Cir. 1994)).

Mr. Ortiz's speculation that his defense theory "may be mutually antagonistic to Mr. Clase's defense" does not meet this high bar for several reasons. (ECF No. 77-1 at 12.) Mr. Ortiz

claims that he "may" argue that "Mr. Clase told . . . the Bettors that Mr. Ortiz could be expected to throw certain pitches or had joined the conspiracy" and that Mr. Clase "did so without Mr. Ortiz's knowledge or consent." (*Id.* at 10-11.) But this is not "mutually antagonistic" with Mr. Clase's defense of innocence, because, as the Government points out, "if the jury accepted [Mr. Clase's] anticipated defense that Clase did not share inside information about fixed pitches, both defendants would be acquitted." (ECF No. 86 at 18.) Critically, "even a jury's acceptance of [Mr. Ortiz's] defense would not require a guilty verdict against [Mr. Clase]," because the jury could find that Mr. Clase did not share such information with the Bettors "in furtherance of a conspiracy to defraud." (*Id.* at 18-19.) In those respects, Mr. Ortiz's purported defense strategy is akin to "finger[-]pointing," whereby a defendant blames the other for his culpability, *United States v. Hameedi*, 2017 WL 5152991, at *4 (S.D.N.Y. Nov. 3, 2017), rather than an irreconcilable defense with that of Mr. Clase. *See also United States v. Villegas*, 899 F.2d 1324, 1346 (2d Cir. 1990) ("The mere fact that codefendants seek to place the blame on each other is not the sort of antagonism that requires a severance.")

The Court is also not convinced that Mr. Ortiz's mere speculation about the possibility of a conflicting defense theory suffices to establish grounds for severance, which, in the Second

Circuit, requires a "factual demonstration that acceptance of one party's defense would tend to preclude the acquittal of the other." *Salameh*, 152 F.3d at 116 (citation modified). Although neither the Court nor the Government is entitled to the defense's trial theory at this stage, the extraordinary relief Mr. Ortiz seeks requires more than conjecture that one of the defendant's many available defenses is purportedly antagonistic to that of another defendant. Without more, the Court is neither convinced at this juncture that jury instructions are insufficient to cure any prejudice, *Hameedi*, 2017 WL 5152991, at *4-5, nor that Mr. Ortiz would suffer a "miscarriage of justice" from a joint trial, *Zafiro*, 506 U.S. at 539-40 (even "when two defendants both claim they are innocent and each accuses the other of the crime," severance is not warranted if a defendant cannot "articulate any specific instances of prejudice"). *See also United States v. Horge*, 2020 WL 6273932, at *2 (S.D.N.Y. Oct. 26, 2020) (rejecting "speculative" showing that one defendant may implicate the other in the crime, who then may try to impeach the first defendant, as a basis for severance, given that "neither defendant's trial strategy is certain, and proper instructions can provide sufficient protection in all but the rarest of circumstances"); *United States v. DiPietro*, 2005 WL 783357, at *5 (S.D.N.Y. Apr. 6, 2005) (declining to sever based on defendant's "wholly speculative" showing of antagonism).

Third, Mr. Ortiz argues that the "extent of Mr. Clase's involvement and communications with coconspirators could lead a jury to erroneously confer guilt upon Mr. Ortiz despite a lack of evidence." (ECF No. 77-1 at 14.) This, too, is insufficient for severance, given the "well established" rule in this Circuit that "differing levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials." *United States v. Chang An-Lo*, 851 F.2d 547, 557 (2d Cir. 1988); *see also United States v. Locascio*, 6 F.3d 924, 947 (2d Cir. 1993) ("[T]his Court has repeatedly recognized that joint trials involving defendants who are only marginally involved alongside those heavily involved are constitutionally permissible."). Indeed, "[m]ulti-defendant trials are quite common in the federal system, and many involve evidence that is admissible against one defendant, but not against another." *United States v. Fishenko*, 2014 WL 4804215, at *7 (E.D.N.Y. Sept. 25, 2014) (citing *Richardson v. Marsh*, 481 U.S. 200, 209-10 (1987)). "Federal courts, quite routinely, have found juries able to follow and abide by appropriate cautionary instructions." *Id.; see Salameh,* 152 F.3d at 116-17 ("[A]ny possible prejudice was eliminated by the district court's repeated admonitions to the jury that each defendant's guilt had to be separately and individually considered."). Here, because "all the defendants are charged under the same conspiracy count," the Court

has a strong interest in maintaining fairness as to all parties and overseeing a speedy and efficient trial. *See Salameh*, 152 F.3d at 115. Mr. Ortiz has not shown that a joint trial will result in "substantial prejudice" to his right to "a fair trial," so severance is not warranted. *Zafiro*, 506 U.S. at 938. Accordingly, Mr. Ortiz's motion for severance is **DENIED**.

**C. Mr. Clase's motion to sever**

Mr. Clase's motion to sever his trial from that of Mr. Ortiz is based on the same reasons as articulated by Mr. Ortiz, so his motion is likewise **DENIED**. His motion for severance of Mr. Vasquez's trial is predicated on his argument that admission of Mr. Vasquez's January 9, 2026 statement implicating Mr. Clase violates Mr. Clase's rights under the Confrontation Clause as articulated in *United States v. Bruton*, 391 U.S. 123, 135-37 (1968).

"In *Bruton*, the Court held that the introduction of a codefendant's hearsay confession implicating the defendant violated the defendant's right of confrontation even when a limiting instruction was given." *United States v. Williams*, 936 F.2d 698, 700 (2d Cir. 1991). In such circumstances, the "prejudicial impact of such a confession was so great that a jury could not be expected to disregard it." *Id.* This contours of this right have since been clarified by the Supreme Court. In *Richardson v. Marsh*, 481 U.S. 200 (1987), the Court found no

Confrontation Clause violation where the confession was redacted to remove all references to other participants in the crime. Eleven years later in *Gray v. Maryland*, however, the Supreme Court held that a codefendant's confession was inadmissible where the prosecution's redactions so obviously implicated the other defendant that the jury will "realize" as much, even if other evidence does not "blatantly link the defendant to the deleted name." 523 U.S. 185, 185, 193 (1998). Recently, in *Samia v. United States*, the Supreme Court held that there was no Confrontation Clause violation where the confession was redacted to replace the other defendant's name with the phrase "other person" even if other evidence pointed to who that "other person" was. 599 U.S. 635, 642-43 (2023). The *Samia* Court, relying on the "broad[] assumption that jurors can be relied upon to follow the trial judge's instructions," found that a co-defendant's confession cannot directly implicate another, but that "indirect" association, when paired with a limiting instruction, was constitutionally permissible. *Id.* at 646, 652. Consistent with *Samia*, the Second Circuit has "on several occasions admitted redacted confessions in which names of codefendants were replaced by neutral pronouns and 'where the statement standing alone does not otherwise connect co-defendants to the crimes.'" *Williams*, 936 F.2d at 700-01 (quoting *United States v. Tutino*, 883 F.2d 1125, 1135 (2d Cir. 1989)). When the "redacted confession," "view[ed]

. . . in isolation from the other evidence introduced at trial . . . does not incriminate the defendant," "it may be admitted with a proper limiting instruction even [if] other evidence . . . indicates that the neutral pronoun is in fact a reference to the defendant." *Id.* (collecting cases); *Tutino*, 883 F.2d 1125 (2d Cir. 1989) ("[A] redacted statement in which the names of co-defendants are replaced by neutral pronouns, with no indication to the jury that the original statement contained actual names, and where the statement standing alone does not otherwise connect co-defendants to the crimes, may be admitted without violating a co-defendant's *Bruton* rights."); *United States v. Taylor*, 745 F.3d 15, 28-29 (2d Cir. 2014) (proper names may be replaced with terms like "among others," "another person," "others," "other people," "another person," "he," "this guy," "another guy," and "friend").

Presentation at trial of Mr. Vasquez's January 9, 2026 proffer implicates Mr. Clase's Sixth Amendment rights, a conclusion not opposed by the Government's briefing. To resolve any *Bruton* concerns, the Government proposes a "bifurcated trial," "at which a jury would first deliberate on Counts One through Four (the only counts in which [Mr. Clase] is charged) without hearing testimony or other evidence" of Mr. Vasquez's proffer statements. (ECF No. 101 at 2.) The Government would then present the January 9, 2026 statements and any related testimony only after the jury first reached a verdict on Counts One through Four. (*Id.*)

Mr. Clase does not oppose this bifurcation proposal, but requests that the Government additionally waive its right to use the January 9, 2026 statements if, in the trial for Counts One through Four, Mr. Vasquez triggers the "waiver provision" of the proffer agreement. (ECF No. 111 at 2, 4.) This "waiver provision" allows the Government to use Mr. Vasquez's proffer-protected statements "as substantive evidence to cross-examine" him, should Mr. Vasquez testify," and "as substantive evidence to rebut, directly or indirectly, any evidence offered or elicited, or factual assertions made, by or on behalf of [Mr. Vasquez]." (*Id.* at 2 n.3.)

Mr. Clase's request goes too far. If the Government had to forgo admission of Mr. Vasquez's statements completely, the Government would be left without a remedy at trial even if Mr. Vaquez "*directly* contradicted the proffer statements." (*Id.* at 4.) The Court is not convinced that any statement the Government wishes to introduce could not be appropriately redacted in accordance with the Supreme Court's recent guidance in *Samia* and the Second Circuit's precedents. The waiver provision also may not be triggered at all. Accordingly, the Court **GRANTS** Mr. Clase's motion to sever his trial from that of Mr. Vasquez in part, with respect to Count Five, and adopts the bifurcated trial procedure outlined in the Government's submission. (*See* ECF No. 11 at 1-2.) The Government may avail itself of the waiver provision of Mr.

Vasquez's proffer agreement at the trial for Counts One through Four, provided that the Government file "a full set of potential Vasquez proffer statements" along with "proposed redactions," as part of its motions in limine, for the Court's review. (*Id.* at 3.)

## Conclusion

For the foregoing reasons, the Government's motion to disqualify is **DENIED**. Mr. Ortiz's motion to sever is **DENIED**. Mr. Clase's motion to sever is **GRANTED** in part such that Counts One through Four will be presented in a trial bifurcated from that of Count Five, and is otherwise **DENIED.**

**So ordered.**

Dated: August 25, 2026
Brooklyn, New York

**Kiyo A. Matsumoto**
United States District Judge
Eastern District of New York