UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
UNITED STATES OF AMERICA

- against - Docket No. 25-CR-346 (S-1) (KAM)

EMMANUEL CLASE DE LA CRUZ,
ROBINSON VASQUEZ GERMOSEN, and
LUIS LEANDRO ORTIZ RIBERA,

Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**DEFENDANT ROBINSON VASQUEZ GERMOSEN'S MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S MOTIONS *IN LIMINE***

Defendant Robinson Vasquez Germosen respectfully submits this memorandum in opposition to certain applicable portions of the Government's motions in limine filed on August 28, 2026. Specifically, Mr. Vasquez opposes the Government's requests to (1) obtain advance authorization to introduce his proffer-protected statements in the event the waiver provision of his proffer agreement is triggered; and (2) admit evidence concerning his alleged concealment of a cellular telephone as direct or background evidence, or alternatively pursuant to Federal Rule of Evidence 404(b). For the reasons set forth below, those requests should be denied or, where appropriate, deferred until the Court can assess the relevant issue in the context of trial.

## I. THE COURT SHOULD DECLINE TO ISSUE AN ADVANCE RULING AUTHORIZING THE GOVERNMENT TO INTRODUCE MR. VASQUEZ'S PROFFER-PROTECTED STATEMENTS

The Government seeks an advance ruling permitting it to introduce statements made by Mr. Vasquez during his January 9, 2026 proffer if the Government determines

that the waiver provision of his proffer agreement has been triggered at trial. Mr. Vasquez does not dispute that, under the terms of the agreement and applicable Second Circuit law, certain defense conduct may trigger the waiver and permit the Government to use otherwise protected proffer statements for rebuttal. The Government's request, however, goes further. It identifies numerous statements from the proffer that it seeks authorization to use and asks the Court to sanction their introduction before the nature of any purportedly triggering defense argument, question, or evidence is known. Such an anticipatory ruling is unnecessary and would risk extending the waiver beyond its proper scope.

As the Government recognizes, the Second Circuit's decision in *United States v. Barrow*, 400 F.3d 109 (2d Cir. 2005), does not provide the Government with an unrestricted right to introduce proffer statements whenever the defense challenges its case. Although *Barrow* holds that a waiver may be triggered by factual assertions made through opening statements, cross-examination, or other defense presentations, it draws an important distinction between an affirmative factual assertion inconsistent with a defendant's proffer and an argument that merely challenges the sufficiency or credibility of the Government's evidence. *Id.* at 118–19. Thus, a defendant may challenge whether the Government has carried its burden of proving matters such as knowledge or intent without necessarily triggering a proffer waiver. *Id.* Indeed, the Government expressly acknowledges this limitation, recognizing that challenges to the sufficiency of its evidence or to a witness's credibility that do not assert facts contradicting the proffer do not trigger the waiver.

That distinction is particularly important in the instant case. Mr. Vasquez must remain free to argue, based on the evidence presented at trial, that the Government has failed to prove that he knowingly joined the charged pitch-rigging conspiracy; to challenge the credibility, recollection, or motives of Government witnesses; to contest the Government's interpretation of communications and other evidence; and to argue that the evidence does not establish that he knew a particular pitch had been fixed. Such arguments test the Government's proof and do not, without more, constitute affirmative factual assertions inconsistent with Mr. Vasquez's proffer. Whether a particular argument or question crosses that line necessarily depends upon what is actually said and the context in which it occurs.

The breadth of the Government's present request underscores why an advance ruling is inappropriate. The Government identifies a substantial number of statements that it proposes to use if the waiver is triggered, ranging from Mr. Vasquez's statements concerning his knowledge of an instance in which Clase provided advance pitch information to statements concerning his relationship with Clase, their social interactions, food Mr. Vasquez brought to Clase, and communications involving Clase's attorneys. The mere fact that some defense assertion might trigger the waiver as to one subject does not render every identified proffer statement admissible. Rather, the Government may use only those otherwise protected statements that fairly rebut the particular factual assertion that triggered the waiver. See *Barrow*, 400 F.3d at 118–21.

Nor does *Barrow* require an anticipatory determination divorced from the circumstances of trial. To the contrary, the Second Circuit recognized that application of a proffer waiver depends upon the particular defense conduct at issue and that district

courts retain discretion in addressing an asserted trigger. *Id.* at 121. In appropriate circumstances, the court may address an inadvertent factual assertion by striking it or providing a curative instruction rather than permitting the Government to introduce otherwise protected proffer statements. *Id.* at 119. That contextual inquiry cannot meaningfully occur before the allegedly triggering statement, question, or evidence exists.

Accordingly, the Court should decline to grant the Government blanket advance authorization to introduce the identified proffer statements. If the Government believes at trial that Mr. Vasquez has triggered the waiver, it should first raise the issue with the Court outside the presence of the jury and identify (1) the specific defense statement, question, or evidence alleged to have triggered the waiver; (2) the factual assertion the Government contends was thereby made; (3) the particular proffer statement or statements that purportedly rebut that assertion; and (4) the basis upon which those statements fairly rebut the assertion. The Court can then determine, in the context in which the issue actually arises, whether the waiver has been triggered and, if so, the appropriate scope of any rebuttal.

This procedure would fully preserve the Government's rights under the proffer agreement and *Barrow* while ensuring that the waiver does not become a vehicle for the wholesale admission of statements that otherwise remain protected. The Government's request for an advance ruling should therefore be denied, without prejudice to its ability to seek an appropriate ruling outside the presence of the jury if and when it believes the waiver has actually been triggered.

## II. THE COURT SHOULD EXCLUDE EVIDENCE THAT MR. VASQUEZ ALLEGEDLY CONCEALED HIS CELLULAR TELEPHONE

The Government seeks to introduce evidence concerning a brief interaction between Mr. Vasquez and law enforcement at the time of his arrest as direct evidence of the charged conspiracy or, alternatively, pursuant to Federal Rule of Evidence 404(b). The Government characterizes Mr. Vasquez's conduct as an attempt to "conceal his primary phone," describes his response to agents as a "lie" and "misrepresentation," and argues that the incident demonstrates consciousness of guilt. *See* ECF No. 213 at 40, 45. The body-worn camera footage upon which the Government relies, however, does not support that characterization.

Immediately before Mr. Vasquez's arrest, agents were receiving location information for a cellular telephone that the Government refers to as "Phone-1." *See* ECF No. 213 at 40. At the conclusion of the arrest, an agent asked Mr. Vasquez, "do you wanna go back inside and get your phone?" Another agent translated the question into Spanish. During the brief response and translation that followed, the translating agent indicated that the phone was "here," and the exchange then turned to whether it was in Mr. Vasquez's vehicle. The questioning agent asked, "is it in your car, so do you mind if we grab that?" After the question was translated, Mr. Vasquez responded that he had no problem with the agents doing so. *See* BWC F3095278_Mariani at 11:52–12:24. Agents then retrieved a different cellular telephone, which the Government refers to as "Phone-2," from the vehicle.

Nothing about that exchange was false. Phone-2 was, in fact, in the vehicle, where Mr. Vasquez told the agents they could retrieve it. Phone-1 was also "here"—at

Mr. Vasquez’s residence. After leaving the residence with Mr. Vasquez in custody, agents observed that the location data for Phone-1 continued to place that device at the residence. Agents later returned and obtained Phone-1 from Mr. Vasquez’s girlfriend after Mr. Vasquez, through counsel, authorized them to do so. *See* ECF No. 213 at 40–41. Thus, whether the brief translated exchange is understood as indicating that Mr. Vasquez’s phone was “here,” in his vehicle, or both, the Government has identified no false factual representation made by Mr. Vasquez.

More fundamentally, the agents never asked Mr. Vasquez the question that the Government’s argument now presupposes. They did not ask for his “primary phone,” identify Phone-1 as the device they were seeking, ask whether he possessed multiple phones, or ask whether another phone remained inside the residence. Mr. Vasquez likewise never denied possessing another phone. It was only after agents retrieved Phone-2 and observed that the location data for Phone-1 continued to place another device at the residence that they “concluded that Vasquez Phone-2 was not Vasquez’s primary phone.” *Id.* The Government’s theory therefore depends upon retrospectively converting a generic question about “your phone” into a request for a particular device. The agents’ subsequent conclusion that Phone-1 was Mr. Vasquez’s “primary phone” cannot transform his truthful response concerning Phone-2 into a lie about a device he was never asked to identify.

The fact that Phone-1 was later found turned off and, when turned on, in airplane mode does not establish concealment either. The Government does not allege when the phone was placed in airplane mode, that Mr. Vasquez placed it in that mode, or that he did so to prevent law enforcement from locating or accessing it. What the Government

does allege is that the phone remained at Mr. Vasquez's residence and that, once agents specifically sought that device, Mr. Vasquez authorized them through counsel to return to the residence, where his girlfriend provided it. *Id.*

Against this factual record, the incident is neither direct evidence of the charged conspiracy nor admissible other-act evidence of consciousness of guilt. Although uncharged conduct may constitute direct evidence when it proves the charged offense, arises from the same transaction or series of transactions, or provides necessary background, *see United States v. Gonzalez*, 110 F.3d 936, 941 (2d Cir. 1997), this arrest-day interaction does none of those things. Its relevance to the charged pitch-rigging conspiracy depends entirely upon the Government's additional inference that Mr. Vasquez intentionally deceived agents to conceal incriminating evidence. Because the underlying exchange does not establish any deception, characterizing the incident as necessary to "complete the story of the crime" does not make it direct evidence.

The Government's alternative reliance on Rule 404(b) fails for the same reason. While the Second Circuit follows an inclusionary approach to other-act evidence, the evidence must still be relevant to a proper non-propensity purpose. See *United States v. LaFlam*, 369 F.3d 153, 156 (2d Cir. 2004). The Government argues that Mr. Vasquez "was aware of his guilt and took affirmative steps to avoid being caught." *See* ECF No. 213 at 46. But the alleged "affirmative step" is the supposed deception that the recorded exchange does not establish. Identifying the actual location of a cellular telephone and consenting to its retrieval does not become evidence of consciousness of guilt simply because agents later determined that Mr. Vasquez possessed another telephone.

For the same reason, *United States v. George*, 779 F.3d 113 (2d Cir. 2015), upon which the Government relies, is readily distinguishable. There, the Second Circuit held that consciousness of guilt could be inferred from actual obstructive conduct, including efforts to persuade a witness to lie to law enforcement and the defendant's own lying at trial. *Id.* at 122. Here, there was no comparable false statement or act of obstruction. Mr. Vasquez identified a phone, consented to its retrieval, and subsequently authorized agents to retrieve the other phone once the Government specifically identified the device it sought. *George* does not support treating such conduct as evidence of consciousness of guilt.

Finally, any marginal probative value is substantially outweighed by the danger of unfair prejudice and misleading the jury. *See* Fed. R. Evid. 403. The Government seeks not merely to establish how the two phones were recovered, but to tell the jury that Mr. Vasquez "lie[d] to agents," made "misrepresentations about his primary device," and engaged in an "ongoing attempt to conceal the illegal scheme." *See* ECF No. 213 at 46. Those labels would present a disputed inference as fact and invite the jury to view an ambiguous, seconds-long exchange as affirmative evidence of Mr. Vasquez's guilt of the charged conspiracy.

That prejudice is amplified by the Government's attempt to connect the incident to the separately charged false-statement offense, arguing that the purported "lie to agents is of a piece with the false statement charge" and falls "within the same course of conduct" as that offense. S*ee* ECF No. 213 at 45–46. Count Five has been bifurcated from the trial on Counts One through Four. Although the Government proposed bifurcation to address potential prejudice to Mr. Clase arising from the introduction of Mr.

Vasquez's proffer statements, its effort to characterize this separate arrest-day interaction as another "lie" and expressly connect it to the bifurcated false-statement charge only underscores the potential for unfair prejudice. See ECF No. 211 at 32; ECF No. 213 at 28 n.14.

Accordingly, the Court should deny the Government's request to introduce the alleged concealment of Phone-1 as direct evidence or pursuant to Rule 404(b). The recorded interaction does not establish that Mr. Vasquez lied to law enforcement or intentionally concealed a device and therefore does not support the consciousness-of-guilt inference for which the Government seeks to offer it. At a minimum, the Government should not be permitted to characterize the interaction as a "lie," "misrepresentation," or "concealment" where the underlying exchange does not support such characterizations.

## CONCLUSION

For the foregoing reasons, Mr. Vasquez respectfully requests that the Court deny the Government's motions in limine to the extent they seek (1) advance authorization to introduce Mr. Vasquez's proffer-protected statements without a contextual determination that the waiver provision has been triggered; and (2) admission of evidence that Mr. Vasquez allegedly lied to law enforcement or concealed his cellular telephone as direct evidence or pursuant to Rule 404(b).

Dated: New York, New York
September 11, 2026

Respectfully submitted,

**SPODEK LAW GROUP P.C.**
*/s/ Todd A. Spodek*
Todd A. Spodek
233 Broadway, Suite 710
New York, NY 10279
Tel.: (212) 300-5196
Fax: (212) 300-6371
ts@spodeklawgroup.com
*Counsel for the Defendant,*
*Robinson Vasquez Germosen*

cc: All Counsel of Record (By ECF).