**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

RCH:EWS/SMS/RMU
F. #2025R00435

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 11, 2026

By ECF & E-mail

The Honorable Kiyo A. Matsumoto
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Emmanuel Clase de la Cruz, et al.
Criminal Docket No. 25-346 (S-1) (KAM)

Dear Judge Matsumoto:

The government respectfully submits this letter in opposition to the motions in limine submitted by defendants Luis Leandro Ortiz Ribera (ECF No. 214 ("Ortiz MIL")) and Emmanuel Clase de la Cruz (ECF No. 215 ("Clase MIL")). Ortiz and Clase both argue that the anticipated testimony regarding the extractions of cellular telephones constitutes improper lay testimony that should be excluded; and that the government's expert disclosures do not comport with Rule 16 and should be supplemented. In addition, Ortiz moves to preclude the government from referring to his obligation to repay a $1.7 million loan as being "in debt." And Clase has asked the Court to set September 18, 2026, as the deadline for the government to notice any rebuttal expert(s) it intends to call. Clase MIL at 4 n.3. All four motions should be denied.

I. Cellphone and Electronic Account Extractions Need Not Be Offered Through Expert Testimony

At trial, the government anticipates that it will offer evidence derived from forensic extractions of cellular telephones belonging to the defendants and some of the Bettors, as well as from a Google account for Defendant-4. To introduce this evidence, the government may call digital forensic examiners from the Federal Bureau of Investigation's Computer Analysis and Response Team ("CART") who can authenticate the forensic extractions of the cellular telephones and of the Google account. In an abundance of caution, on August 24, 2026, and as part of the government's disclosure of expert witnesses, the government notified the defendants that it intended to call FBI CART forensic examiners for the purpose of eliciting such testimony, despite such testimony constituting lay witness testimony. See ECF Nos. 200, 205. Following that disclosure, the defendants did not contact the government to request additional information. Instead, Clase and Ortiz move to preclude such testimony (and incidentally, by virtue of such preclusion, the introduction of the evidence derived from the cellular telephones and the Google

account), claiming that the government should have noticed the FBI CART forensic examiners as expert witnesses under Federal Rule of Criminal Procedure 16(a)(1)(G).

The defendants' motion should be denied. As an initial matter, it is well established that forensic extractions of digital devices and cloud-based accounts, such as those at issue here, may be authenticated through record certifications, which would not obligate the government to call any witness, expert or lay. But, in the event the government does call FBI CART forensic examiners to authenticate the forensic extractions and the Google account evidence, such testimony would constitute lay witness testimony under Federal Rule of Evidence 701.

### A. Extractions May Be Authenticated Through Record Certifications

At the outset, it is well established that the government need not call any witness to authenticate the types of forensic extractions and data at issue here. Accordingly, in the interest of streamlining trial, the government plans to authenticate the forensic extractions of the aforementioned cellular telephones and the data from the Google account through record certifications pursuant to Federal Rules of Evidence 902(13) and 902(14). Federal Rules of Evidence 902(13) and 902(14) provide a mechanism for parties to authenticate evidence generated by electronic processes or systems such as cellphone extractions. Specifically, Rule 902(13) allows authentication by certification of "[a] record generated by an electronic process or system that produces an accurate result," and Rule 902(14) does the same for "[d]ata copied from an electronic device, storage medium, or file, if authenticated by a process of digital identification." Extractions of cellular telephones and cloud-based accounts, which are generated by FBI CART digital forensic examiners using standard electronic systems and processes to generate copies for use in discovery and as trial exhibits, are examples of data copied from an electronic device, storage medium, or file which may be authenticated by a process of digital identification. Accordingly, this electronic evidence is self-authenticating and may be admitted by certification rather than through the live testimony of a non-expert examiner.

This Court has repeatedly ruled that Federal Rules of Evidence 902(13) and 902(14) permit the authentication of records generated by electronic processes or systems involving cellphones. See United States v. Forney, No. 24-CR-146 (KAM), 2025 WL 2208298, at *18 (E.D.N.Y. Aug. 4, 2025); United States v. Terranova, 23-CR-516 (KAM), at *37-38 (E.D.N.Y. Sept. 26, 2024) (permitting authentication of cellphone extraction without live testimony); United States v. Otufale, No. 24-CR-170 (KAM), at *9-10 (E.D.N.Y. July 12, 2024) (finding that records generated by an electronic process or system 'may constitutionally be admitted in a criminal trial absent live testimony from the custodian because such records are not testimonial'") (quoting United States v. Melendez-Diaz, 557 U.S. 305 at 311 n.1 (2009)). Other courts in this district have reached the same conclusion. See, e.g., United States v. Nudelman, 23-CR-437, Min. Entry dated Feb. 24, 2026, (AMD) (E.D.N.Y. Feb. 24, 2026) ("Given that the '[t]he bar for authentication of evidence is not particularly high' the certifications are sufficient for authentication purposes.") (quoting United States v. Gagliardi, 506 F.3d 140, 151 (2d Cir. 2007)); United States v. Merchant, No. 24-CR-362(EK), 2026 WL 457435, at *1-2 (E.D.N.Y. Feb. 18, 2026) (granting government's motion in limine to authenticate forensic extractions over defendant's objection). Other courts around the country have held the same. See, e.g., United States v. Dunnican, 961 F.3d 859, 872 (6th Cir. 2020) (affirming district court's decision to admit text message evidence extracted from defendant's phone as self-authenticating under Rule 902(14)); United States v. Franco, No.

3:22-CR-43-1 (VAB), 2025 WL 501843 (D. Conn. Feb. 14, 2025) (during briefing on motions in limine, court held Cellebrite extractions would be admissible as self-authenticating under 902(14) if government provides additional certification under 902(11) & (12)); United States v. Anderson, 563 F. Supp. 3d 691, 695-96 (E.D. Mich. 2021) (finding text messages self-authenticating under Rule 902(14)); United States v. Penn, 568 F. Supp. 3d 1135 (D. Colo. 2021) (court held that device extractions were sufficiently authenticated using 902(14) certificate).

Here, law enforcement lawfully seized the defendants' and Bettors' cellphones and Defendant-4's Google account, and the government intends to introduce relevant communications, images, contacts, and other content extracted from these sources. Consistent with the weight of authority in the Second Circuit and around the country, hese records are properly self-authenticating with certifications from the FBI CART forensic examiners who performed the extractions and the processing of the Google data. Accordingly, in the event the government obtains the necessary certifications (which it intends to do sufficiently in advance of trial, in accordance with the notice requirement set forth in Federal Rule of Evidence 902(11)), the defendants' motion to preclude the lay testimony of FBI CART digital forensic examiners should be denied because no witness—lay or expert—will be necessary to authenticate the evidence.

### B. In The Event the Government Calls a Forensic Examiner to Offer Forensic Extractions into Evidence, Such Testimony Would Constitute Lay Witness Testimony

In the event the government is forced to call FBI CART digital forensic examiners to authenticate any of the forensic extractions or the Google data, such witness testimony would be admissible lay testimony.[1] These witnesses would be expected to testify as to their respective training involving electronic evidence, how data is extracted or formatted from a source (e.g., an electronic device or Google account), how they performed the extractions and formatting in this case, and their observations about the data that was extracted or placed in a format that is readable to a person.

Testimony from FBI CART forensic examiners regarding extractions and formatting that they performed is permissible lay witness testimony under Federal Rule of Evidence 602. "The Federal Rules of Evidence allow the admission of fact testimony so long as the witness has personal knowledge, see Fed. R. Evid. 602, while opinion testimony can be presented by either a lay or expert witness, see Fed. R. Evid. 701 & 702." United States v. Cuti, 720 F.3d 453, 457–58 (2d Cir. 2013) (internal quotation marks, punctuation, and citation omitted). "A witness's specialized knowledge, or the fact that he was chosen to carry out an investigation because of this knowledge, does not render his testimony 'expert' as long as it was based on his investigation and reflected his investigatory findings and conclusions, and was not rooted exclusively in his expertise[.]" United States v. Rigas, 490 F.3d 208, 224 (2d Cir. 2007). Courts in this circuit and across the country have routinely permitted forensic examiners to offer lay

[1] Given the number of electronic devices and accounts containing evidence the government may seek to offer at trial, in the event the defendants dispute the authenticity of electronic evidence, the government will be forced to call up to eleven FBI CART digital forensic examiners.

testimony regarding extractions and formatting of data that they conducted during the course of an investigation. See, e.g., United States v. Marsh, 568 F. App'x 15, 16 (2d Cir. 2014) (summary order); United States v. Daskal, No. 21-CR-110 (NGG) (LB), 2023 WL 9424080, at *18 (E.D.N.Y. July 12, 2023) (concluding expert qualification unnecessary for forensic examiner and citing Marsh); see also United States v. Chavez-Lopez, 767 F. App'x 431 (4th Cir. 2019) ("At most, [the witness] offered the opinion that Cellebrite copies data from a cellphone, which he derived from his personal experience using the software" and that testimony "didn't require a technical understanding of Cellebrite, and he made no claims about the program's effectiveness or reliability."); United States v. Ovies, 783 F. App'x 704 (9th Cir. 2019) ("The district court did not abuse its discretion by allowing Agent Ambrose to testify about using Cellebrite to extract data from Ovies's cell phone without first qualifying him as an expert witness under Federal Rule of Evidence 702. Agent Ambrose testified only about the steps he took using the Cellebrite program; he did not opine as to the reliability or any other aspect of the Cellebrite technology and his testimony was not based on technical or specialized knowledge."); Nudelman, 23-CR-437 (AMD), supra at 2 ("The Court follows the approach of multiple courts in this Circuit and finds that testimony regarding the process of producing and contents of forensic extracts is not the proper subject of expert testimony" (citing, inter alia, Daskal and Marsh)).

Marsh is instructive. There, the district court permitted an FBI special agent to offer lay testimony that he had used Cellebrite hardware to download and review the contents of two cellular telephones. 568 F. App'x at 16. The defendant argued on appeal that this was improper expert testimony. Id. The Court of Appeals disagreed, explaining that based on the nature of the testimony, the district court did not abuse its discretion in permitting the agent to testify:

> Special Agent Tortorella explained his training in the use of Cellebrite technology to retrieve text messages and other data from a cellular phone; described how he used Cellebrite to do so in this case; and testified that he confirmed the results by checking the messages on the phone itself. He then testified to the contents of the messages retrieved from the phone. Tortorella did not purport to render an opinion based on the application of specialized knowledge to a particular set of facts; nor did his testimony turn on or require a technical understanding of the programming or internal mechanics of the technology.

Id. Here, as described above, the government anticipates that, should the government call FBI CART forensic examiners to testify, similar testimony would be elicited regarding the relevant cellular telephones and Google account. Because the witnesses' testimony will not turn on any technical mechanics and will not render any opinions based on the application of specialized knowledge, they may properly testify as lay witnesses.

Counsel for Ortiz points to the standard of review applied by the Second Circuit on appeal, arguing that the Marsh court "did not hold that [] [the examiner's] testimony was not expert in nature, but rather, it found only that the 'district court did not abuse its considerable discretion' in admitting lay testimony." See ECF No. 214 at 12 (citing Marsh, 568 F. App'x at 16-17). But Ortiz fails to acknowledge that the Second Circuit arrived at this conclusion because it reasoned

that the examiner witness did "not purport to render an opinion based on the application of specialized knowledge to a particular set of facts; nor did his testimony turn on or require a technical understanding of the programming or internal mechanics of the technology." See id. at 17. So too here.

Further, the Second Circuit's holding in Marsh does not run contrary to its opinion in United States v. Buyer, No. 23-7202-cr, 2025 WL 855773 (2d Cir. 2025) (summary order), cert. denied, 224 L. Ed. 2d 830 (May 18, 2026). In Buyer, the Second Circuit assumed, without deciding, that the testimony of the forensic examiner constituted expert testimony. See id. at *4 ("But even assuming that portions of the challenged testimony were based on "scientific, technical or otherwise specialized knowledge," requiring Volchko's qualification as an expert, we conclude that any error in the admission of this testimony was harmless."). It also concluded that the admission of the forensic examination as lay witness testimony was harmless. Id. And the precise nature of the testimony at issue there—(1) an explanation that a "cookie" on a phone indicated that a website had been visited at a certain time, and (2) the fact of the restoration of the contents of a phone on a given date—was decidedly more specialized than the mere introduction of extraction reports into evidence, and even that more specialized testimony was deemed a "close call." Buyer therefore reinforces that a forensic examiner need not be qualified as an expert witness to offer a forensic extraction into evidence.

Accordingly, the Court should reject the defendants' attempt to preclude the government from calling FBI examiner witnesses.

## II. The Government's Expert Disclosures Comported with Rule 16

At trial, the government anticipates calling two expert witnesses to respectively testify about sportsbook and location information data. In accordance with the Court's scheduling order, the government noticed both experts on August 24, 2026. See ECF No. 205. The notices included signed statements from the experts describing their qualifications, materials they reviewed, and the testimony they anticipate offering at trial. Following the provision of this notice, the defendants similarly never contacted the government to seek additional information, instead electing to file the instant motion in which they claim that the government's expert notice was insufficient.

As an initial matter, the government's expert disclosures were sufficient under Rule 16, so the defendants' application can be denied on that basis alone. But, even assuming that additional information is required under Rule 16, earlier today, the government provided the defendants with supplemental disclosures for both experts. See ECF No. 225. As such, no additional relief is necessary.

Fed. R. Crim. P. 16(a)(1)(G)(iii) requires that the government proffer a written summary of (1) the "opinions that [it] will elicit from the [expert] witness" as well as (2) "the bases and reasons for them" and (3) the witness's qualifications, including both the expert's prior publications within the last ten years and a list of any other cases in connection to which the witness has offered testimony in the last four years." United States v. Clanton, No. 23-CR-328 (KAM), 2024 WL 1072050, at *24 (E.D.N.Y. Mar. 12, 2024) (quoting Fed. R. Crim. P. 16(a)(1)(G)(iii)). The Rule was modified in 2022 to better "facilitate trial preparation, allowing the parties a fair

opportunity to prepare to cross-examine expert witnesses and secure opposing expert testimony if needed." Fed. R. Crim. P. 16 advisory committee's note to 2022 amendment.

The Rule requires "a complete statement of all opinions the expert will provide, but does not require a verbatim recitation of the testimony the expert will give at trial." Id.; see also United States v. Ramsey, No. 21-CR-495 (ARR), 2023 WL 2598682, at *3 (E.D.N.Y. Mar. 22, 2023) (explaining that the 2022 amendment does not require "verbatim recitation" of trial testimony). Even after the 2022 amendment, the Rule 16 standard is "not overly demanding" and "does not 'replicate all aspects of practice' under the analogous civil rule." United States v. Yandell, No. 19-CR-107 (KJM), 2023 WL 8948267, at *3 (E.D. Cal. Dec. 28, 2023) (citations omitted). While Federal Rule of Civil Procedure 26 requires that an expert disclosure in a civil case be accompanied by a written report including the data analyzed by the witness and exhibits that will be used to summarize them, Federal Rule of Criminal Procedure 16(a)(1)(G) contains no such requirement. Cf. Fed. R. Civ. Pro. 26(2)(B).

In describing the "bases and reasons" for an expert's opinions, the disclosure should "provide 'some explanation as to how the expert came to his conclusions and what methodologies or evidence substantiate that conclusion.'" United States v. Gentile, No. 21-CR-54 (RPK), 2024 WL 3251702, at *3 (E.D.N.Y. June 20, 2024) (quoting Riegel v. Medtronic, Inc., 451 F.3d 104, 127 (2d Cir. 2006)). However, simply because an expert's "opinions and conclusions . . . will require some 'interpretive testimony' does not mean that the government has failed to satisfy Rule 16." Ramsey, 2023 WL 2598682, at *3. "Generally speaking, a disclosure suffices if it allows opposing counsel to prepare a pretrial motion to exclude the expert's opinions." Yandell, 2023 WL 8948267, at *3.[2]

The government's expert disclosures comported with Rule 16. Each described the bases and reasons for the experts' opinions, explained the opinions they expect to offer at trial, and how they came to their conclusion. However, in an abundance of caution, the government provided supplemental expert disclosures to the defendants earlier today. ECF No. 225. These supplemental disclosures are more than sufficient in providing the defendants with the notice they need to prepare for trial. Professor Taylor's supplemental notice describes different statistical analyses he performed, including of Bettors' wager amount and wager profitability. He provided specific, detailed examples of calculations he performed. And he provided several figures and tables illustrating those analyses. FBI Special Agent Busick's supplemental notice, in turn, describes, among other things, the instances in which location data associated with one or more of the individuals described in his disclosure were in particular locations, the methodology he will

---

[2] Rule 16(d) vests district courts with broad discretion to determine what remedial action, if any, is appropriate where the government has failed to comply with Rule 16. Fed. R. Crim. P. 16(d)(2). It provides that a court may order a noncompliant party to permit discovery, "grant a continuance," "prohibit [a noncompliant] party from introducing the undisclosed evidence," or "enter any other order that is just under the circumstances." Id. Nothing in Rule 16(d) limits the court's broad remedial discretion, and the requirement for timely disclosure "certainly does not indicate that untimely disclosures must always, or even usually, result in exclusion." United States v. Aryeetey, 168 F.4th 138, 143 (2d. Cir. 2026). Preclusion remains "a drastic remedy and is not warranted where . . . nondisclosure was not a product of bad faith. United States v. Wynder, 147 F.4th 200, 215 (2d Cir. 2025).

employ, and the precise items from discovery that he is relying upon. These notices go above and beyond what Rule 16 requires. The defendants now possess more than enough information to prepare for the experts' testimony and consider what, if any, challenges to mount in response.

III. Ortiz's Obligation to the Lending Company is Properly Characterized as a Debt

Ortiz asserts that the government should be precluded from describing him as "in debt," because it would be inaccurate, unfairly prejudicial, and likely to mislead the jury. Ortiz MIL at 21–23.[3] But it is the defendant who mischaracterizes the terms of his agreement with the Lending Company—which is a debt—and the motion to preclude the government from using plain English should be denied. Instead, the parties should be permitted to make such arguments to the jury.

By any common-sense reading of the contract, Ortiz was indebted to the Lending Company. The document is captioned "Player Loan Agreement" and the agreement describes the obligation as a "loan" over 100 times. See Ortiz MIL Ex. A. The Lending Company is defined in the agreement as the "Lender." See id. The Lending Company loaned Ortiz $1.7 million in the form of an advance on his future MLB earnings, and the loan charged interest—which is a cost associated with borrowing money. See, e.g., id. § 4. Among the covenants undertaken by the defendant, he agreed not to "create, incur, assume or suffer to exist any lien or other debt or equity obligation upon with respect to" his future baseball earnings. Id. § 10.2 (emphasis added). He also agreed that the loan documents "constitute your legal, valid and binding obligations, enforceable against you in accordance with their terms." Id. § 9.1(c). The fact that the Lending Company agreement set a repayment schedule tied to when Ortiz was earning an MLB salary does not alter the fundamental nature of the agreement. It is a debt instrument.

The defendant makes much of the agreement's supposed "limited-recourse" character, arguing that, "[i]f Mr. Ortiz never plays another game, he will never owe [the Lending Company] a cent, and for the several months this case has been pending, during which Mr. Ortiz has earned no baseball compensation, he has in fact owed [the Lending Company] nothing." See Ortiz MIL at 6. This claim is both irrelevant and incomplete. Whether or not Ortiz owes the Lending Company money during the pendency of this case says nothing about whether the obligation is a debt. Nor does it account for the significant sum he owed the company when he agreed to throw two rigged pitches in exchange for money. In June 2025, Ortiz owed the Lending Company more than $1.8 million, a debt that had steadily grown with interest every two weeks. Indeed, while payments are not presently due, he continues to owe that debt today. What's more, as Ortiz later acknowledges, Mot. at 7, the outstanding balance of the loan will become automatically due and payable, regardless of whether he plays baseball again, if a "recourse event" is triggered, id. § 12, which includes being suspended from MLB for more than one championship

[3] It is not clear to the government whether Ortiz's motion to preclude is premised on both Rule 402 and 403. Although virtually all his arguments sound in Rule 403, he cites both rules, and claims "the government's characterization of the debt of the [Lending Company] Agreement is not relevant." Ortiz MIL at 21. Though the government is dubious that the defendant can mount a Rule 402 challenge to the "characterization" of a piece of evidence that is readily admissible, this opposition assumes that the defendant is moving under both Rules 402 and 403.

season, id. § 11(n), being permanently banned from the league, id. § 11(n), and being suspended pursuant to MLB's policy on sports betting. Accordingly, Ortiz's debt to the Lending Company may be a limited recourse event, but that debt has not vanished. Far from it. It is not unfairly prejudicial to describe the debt for what it is.

The "debt" label is not misleading either. The defendant writes, "A magistrate reading a warrant affidavit is not the audience Fed. R. Evid. 403 protects. A jury is. Whatever technical cover 'nonrecourse debt' may have provided in the former context, it supplies none in the latter. And, an average juror cannot be expected to know, without being told, that difference." Mot. at 23. But that's what a trial is for. Each side has the opportunity to introduce information to jurors through witness testimony and other evidence, and then argue to the jury about what inferences are to be drawn from that evidence. This trial should function no differently. The defendant's attempt to censor the government from using a straightforward, commonly-understood term is both improper and itself an effort to confuse the jury. It should be rejected.

IV. Clase's Request That the Court Set an Expert Rebuttal Notice Deadline in Eight Days—More than Six Weeks Before Jury Selection—is Unreasonable

On August 24, 2026, Clase noticed two defense expert witnesses. ECF Nos. 202-03. The first witness, Sameer Deshpande, was retained to provide an expert opinion based on his analysis of sports betting and publicly available baseball data. In sum and substance, Dr. Deshpande is expected to offer a series of opinions at trial to rebut the notion that the Bettors successfully bet on Clase's pitches using advance pitch information. The second witness, Scott Powers, was retained by Clase to analyze his pitches and provide several opinions to suggest that those pitches were strategically sound from a baseball perspective. Among other data analyzed, Dr. Powers analyzed Clase's release point, velocity, spin, and baseball movement on all of the pitches thrown by Clase between 2023 and 2025. In addition to the defendant's expert disclosures, Clase made his first Rule 16 production to the government on or about September 2, 2026,[4] which consisted of records received from MLB and sports betting companies. In his motion in limine, Clase asserts, "now that Mr. Clase has disclosed the opinions of his own experts, Drs. Deshpande and Powers, Mr. Clase requests that the government disclose any expert opinions it intends to use 'during its rebuttal to counter testimony that [Mr. Clase] has timely disclosed' no later than September 18, 2026." Clase MIL at 4 n.3 (citing Fed. R. Crim. P. 16(a)(1)(G)(i)).

Clase's request is unreasonable. Rule 16(a)(1)(G)(i) provides that "[a]t the defendant's request, the government must disclose to the defendant, in writing, the information required by (iii) for any testimony that the government intends to use at trial under Federal Rule of Evidence 702, 703, or 705 during its case-in-chief, or during its rebuttal to counter testimony that the defendant has timely disclosed under (b)(1)(C)." In turn, Rule 16(a)(1)(G)(ii) provides that, "[t]he court, by order or local rule, must set a time for the government to make its disclosures. The time must be sufficiently before trial to provide a fair opportunity for the defendant to meet the government's evidence." While the EDNY Local Rules set a default time for the government to disclose any experts it intends to use in its case-in-chief, it does not specify when the government

[4] The material was not received and loaded for the government's review until on or about September 9, 2026.

must disclose rebuttal experts. See EDNY Local Criminal Rule 16.2 ("Unless otherwise ordered by the court, the government must make any disclosures required by Fed. R. of Crim. P. 16(a)(1)(G) at least 60 days prior to trial, and the defense must make any such disclosures at least 30 days prior to trial."). Other courts, however, have set the deadline for making expert rebuttal disclosures much closer to trial. See, e.g., In re Expert Witness Disclosure Deadline in Criminal Cases, Standing Order 22-06 (D.S.D. Nov. 30, 2022) (seven calendar days before trial); In re Expert Witness Disclosure/Time to Disclose, 23-MC-165 (TLW) (D.S.C. Mar. 7, 2023) (two weeks before trial).

Here, apart from citing generally to Rule 16, Clase has not pointed to any authority justifying his extraordinary request that the government be ordered to notice an expert rebuttal witness (1) approximately three-and-half weeks after the defense noticed its own expert and (2) more than six weeks before jury selection. To state the obvious, the government has not and will not conclusively determine whether to put on a rebuttal case until trial. The government is still assessing the defense's expert disclosures, which it only received two-and-a-half weeks ago, see ECF Nos. 202-03, and it needs time to review the defense's first Rule 16 production, which was only recently disclosed despite the government having repeatedly asked the defense, from its very first Rule 16 production in this matter nearly a year ago and in every production since, for reciprocal discovery.[5] In light of these considerations, the government respectfully requests that the Court order the government to notice any rebuttal expert it intends to call on or before

[5] Based on the government's initial review of materials in the production, the government understands that the defense has been in possession of some of these materials since July 6, 2026.

October 19, 2026, which is two weeks before trial and thus will afford the defense ample time to review the disclosure(s) and respond accordingly.

V. Conclusion

Based on the foregoing, the government requests that the defendants' motions in limine be denied in full.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By: /s/
Eric Silverberg
Sean M. Sherman
Rebecca M. Urquiola
Assistant U.S. Attorneys
(718) 254-7000

cc: Clerk of Court (KAM) (by ECF and Hand Delivery)
Counsel of Record (by ECF and E-Mail)