**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

RCH:EWS/SMS/RMU
F. #2025R00435

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 18, 2026

By ECF & E-mail

The Honorable Kiyo A. Matsumoto
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Emmanuel Clase de la Cruz, et al.
Criminal Docket No. 25-346 (S-1) (KAM)

Dear Judge Matsumoto:

The government respectfully submits this reply brief in response to the oppositions to the government's motions in limine submitted by defendants Robinson Vasquez (ECF No. 220 ("Vasquez Opp.")), Emmanuel Clase de la Cruz (ECF No. 221 ("Clase Opp.")), and Luis Leandro Ortiz Ribera (ECF No. 228 ("Ortiz Opp.")). For the reasons stated in the government's original motions (ECF No. 212 ("Gov't MIL")) and below, the government's motions should be granted in full.

[redacted]

[redacted]

[redacted]

[redacted]

---

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

---

2 [redacted]

[redacted]

II. The Court Should Admit Defendant Vasquez's Proffer Protected Statements at Trial if He Triggers the Waiver Provision of His Proffer Agreement

All three defendants oppose the government's motion to admit Vasquez's proffer statements in the event he triggers the waiver provision of his proffer agreement. Their arguments are without merit.

At the outset, both Vasquez and Clase argue that any decision by the Court as to the admissibility of Vasquez's proffer statements is premature. See Clase Opp. at 11; Vasquez Opp. at 1-4. But the government's motion in limine was conditional: it sought to admit the proffer statements "in the event that Vasquez or his counsel offer evidence or make arguments that trigger the waiver provision of his proffer agreement." Gov't MIL at 18 (emphasis added). The motion is also consistent with the Court's April 25, 2026, Order, which expressly permitted the government to "avail itself of the waiver provision of Mr. Vasquez's proffer agreement at the trial for Counts One through Four, provided that the Government file 'a full set of potential Vasquez proffer statements' along with 'proposed redactions,' as part of its motions in limine, for the Court's review." See ECF No. 208 at 32-33. The government's motion in limine did just that.

Next, Clase challenges the government's proposed redactions, arguing that replacing his name with "Person-1" would not comport with Samia v. United States, 599 U.S. 635 (2023). But the government's proposed redactions are on all fours with Samia. There, the Supreme Court determined that an altered confession implicating a triggerman in a three-defendant murder-for-hire case did not violate the Constitution where the co-defendant's name was replaced with "the other person." Samia, 599 U.S. at 641-642. That is substantively the exact procedure proposed by the government here, which is to anonymize the co-defendant in Vasquez's proffer statements. See Gov't MIL at 35-36. Clase asserts that anonymization "would be completely inadequate" because of the contextual statements in Vasquez's proffer that could indicate that Clase is Person-1. See Clase Opp. at 13. But "the Bruton rule is not violated even where the interlocking of the redacted statements with other evidence at trial could conclusively lead to the identification of the individual referred to through neutral pronouns as the codefendant." United States v. Martinez-Montilla, 135 F. Supp. 2d 422, 424 (S.D.N.Y. 2001) (citing United States v. Williams, 936 F.2d 698, 700 (2d Cir. 1991)); United States v. Smith, 198 F.3d 377, 385 (2d Cir. 1999)). Nor is it inevitable that the sanitized version proposed by the government would point to Clase. In fact, Ortiz makes this very point in expressing concern that the jury could infer that "Person-1" referred to him. As Ortiz notes in his own opposition, "Person-1" could refer to any professional pitcher on the Cleveland Guardians. See Ortiz Opp. at 12–13. The Court can ameliorate any potential harm or juror confusion by issuing a limiting instruction advising the jury to consider the statement only against Vasquez, and not against Ortiz or Clase. Williams, 936 F.2d at 701.

As the Court observed in its August 25, 2026, Order, there is a constitutionally permissible way to redact Vasquez's proffer statements. ECF No. 208 ("The Court is not

convinced that any statement the Government wishes to introduce could not be appropriately redacted in accordance with the Supreme Court's recent guidance in Samia and the Second Circuit's precedents."). The government's proposed redactions protect Clase's Confrontation Clause rights and while also achieving Rule 403 balancing as to both Clase and Ortiz.

## III. Evidence of Other Acts Taken by Clase, Ortiz, and Vasquez Are Admissible

### A. Clase's Notice of Rule 21

Clase does not dispute the admission of Rule 21 evidence, Clase Opp. at 14, but argues that the government should not be able to argue that Clase violated Rule 21, id. at 15. The government will not argue or suggest to the jury that Major League Baseball ("MLB") has determined that Clase violated Rule 21.[3] Nor will it argue that violating Rule 21 amounts to a criminal offense. Rather, the government intends to offer Rule 21 evidence to give context to why the defendants went to great lengths to conceal their pitch-rigging efforts and association with certain Bettors, which included using intermediary financial conduits, straw Bettors, and code words to communicate rigged pitches. Rule 21 evidence will also illustrate that the defendants were on notice that certain sports betting not only violated Rule 21, but also could give rise to criminal liability, which was covered in annual Rule 21 training. These are permissible uses of the other acts evidence. The government's motion in limine should thus be granted.

### B. Clase's Notice of MLB's Cell Phone Use Policy

Clase seeks to bar evidence that he violated MLB's policy against using cell phones during games, arguing that the evidence is hearsay, that it not inextricably intertwined with the charged conduct, and that it fails under Rule 404(b). Clase Opp. at 18-20. Each argument rests on a mischaracterization of what evidence the government intends to offer and why.

The government does not intend to offer evidence of Clase's violation of MLB's cell phone policy to prove that Clase in fact used his phone on April 24, 2024, or June 23, 2024. Rather, the government is offering this evidence for the same reason that it seeks to offer the relevant Rule 21 trainings to which Clase does not object: to prove that Clase was on notice that the MLB prohibits using his phone during games. "[A]n out of court statement offered not for the truth of the matter asserted, but merely to show that the defendant was on notice of a danger, is not hearsay." George v. Celotex Corp., 914 F.2d 26, 30 (2d Cir. 1990). A letter from MLB, dated June 24, 2024, reinforces the point. See Ex. A. MLB addressed its letter to Clase directly and warned him against violating MLB's policy. Id. A warning letter delivered to the defendant, offered to prove that he received the warning, is paradigmatic non-hearsay notice evidence.[4]

---

[3] The government understands that MLB's investigation into whether Clase and Ortiz violated Rule 21 is ongoing and no final determination has been made.

[4] To the extent the letter includes some indication that the defendant violated MLB's phone use policy, any potential prejudice can be cured with a limiting instruction and/or redactions to the letter.

Clase counts nine months between the June 2024 warning and his cell phone use on May 17, 2025, declaring that this gap "requires application of Rule 404(b), not the 'inextricably intertwined' doctrine." Clase Opp. at 19 (internal citations omitted). That Clase threw no fixed pitch on either warning date, Clase Opp. at 19, is beside the point. The Second Circuit has not set a specific time limit for when events can be considered "inextricably intertwined." See United States v. Carboni, 204 F.3d 39 (2d Cir. 2000). Here, the indictment charges a scheme running from May 2023 to June 2025. That he received a warning nine months before communicating with Bettor-1 during a game tends to show that it was unlikely that Clase did not know about or forgot MLB's rule. And Clase's knowledge of MLB's rule gives important context to those communications. The jury can reasonably conclude that Clase would only break an MLB rule (particularly after receiving earlier warnings) if it were an important communication. And it was—it was about coordinating a rigged pitch.

Finally, Clase asserts that the government intends to use this evidence to argue that he has a propensity to break MLB rules. See Clase Opp. at 20. The government will not make any such argument based on the cellphone evidence and has no objection to a limiting instruction cautioning the jury from using the evidence in a similar vein. His reliance, therefore, on United States v. Cadet, No. 08-CR-458(NGG), 2009 WL 2959606 (E.D.N.Y. Sept. 11, 2009), is misplaced. There, the court found that the defendant's prior failure to file personal tax returns was inadmissible propensity evidence, because it did not have "substantial similarity" to the tax preparer charges in the indictment and was only relevant to show that he had a "propensity to disregard tax law." Id. at *2 (internal marks omitted). Here, evidence demonstrating that Clase was put on notice by MLB that he would face disciplinary action if he used his phone during MLB games is of a piece with his subsequent use of the phone during an MLB game to engage in the charged conduct. Clase Opp. at 20.

### C. Vasquez's Concealment of His Cell Phone Upon Arrest

Vasquez's statements about the location of his cell phone at the time of his arrest are admissible as direct evidence of the charged conspiracies and as evidence of consciousness of guilt. Vasquez raises three objections: (1) that the arrest-day exchange does not establish concealment, Vasquez Opp. at 5-6; (2) that it is neither direct evidence nor probative of consciousness of guilt, id. at 7-8; and (3) that Rule 403 bars admission of such evidence, id. at 8-9. Clase separately argues that the incident is not direct evidence of the charged crimes because Vasquez is not charged with obstruction of justice. Clase Opp. at 20-21. Each argument fails.

#### 1. The Record Establishes Concealment

When confronted by law enforcement officers and told they had a warrant for his arrest, Vasquez was asked in Spanish while exiting his residence whether he wanted to go back into his residence to get his phone. See Ex. B, December 17, 2025 BWC footage at 11:45-11:59; see also Ex. C, Transcript of Footage. In response, Vasquez gestured with his head outside of his residence and stated "it's here inside the thing." Id. The agent then asked him to confirm whether his phone and wallet were in his car, and he confirmed they were. Id. at 11:59-12:13. That is, Vasquez was asked whether he wanted to retrieve his phone from the very location where it was actually located, his residence, and he instead redirected the attention of the agents to another location, his car. Vasquez disputes that this evidence illustrates concealment because he was never

asked for his *primary* phone. Vasquez Opp. at 6. Of course, that is an argument he is free to make to the jury, just as the government is entitled to contend that his response ("*it's* here) clearly implied that he had only one phone that was in the car, was an effort to conceal his primary phone from law enforcement by redirecting the agents to a secondary phone with no battery power. The weight of the evidence decidedly favors the government's argument.

2. The Incident is Direct Evidence and Probative of Consciousness of Guilt

Both Vasquez and Clase argue that the concealment of the cellphone is not direct evidence of the conspiracy. But the use of cell phones—including by Vasquez—was instrumental to the charged offenses. The conspirators coordinated by phone and used coded terms to describe fixed pitches. Vasquez's attempt to keep agents from recovering the very device he used to commit his crimes is plainly relevant. See United States v. Inserra, 34 F.3d 83, 89 (2d Cir. 1994) ("[E]vidence of other bad acts may be admitted to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense.").

Vasquez contends that he took no affirmative steps to conceal his phone, so this evidence cannot be admitted as other act evidence. See Vasquez Opp. at 7–8. But the body-worn-camera footage demonstrates that Vasquez directed agents away from his home to his car to retrieve a different device, a device that coincidentally played no role in the criminal scheme. The jury is entitled to consider whether that conduct was an effort to prevent law enforcement from recovering the device that was an instrumentality of the criminal scheme and then uncovering incriminating evidence it contained. Concealment of evidence, as here, is classic consciousness-of-guilt proof. United States v. Roldan-Zapata, 916 F.2d 795, 803-04 (2d Cir. 1990) ("an apparent attempt to suppress evidence of the crime [] is plainly relevant to show [the defendant's] consciousness of guilt."); United States v. Steele, 390 F. App'x 6, 12 n.2 (2d Cir. 2010) (summary order) (quoting United States v. Myers, 550 F.2d 1036, 1049 (5th Cir. 1977) ("concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself.").

Clase's contention that the evidence is inadmissible because no obstruction count was charged, Clase Opp. at 20, fares no better. Rule 404(b) governs acts, not charges. And obstruction need not be charged to be relevant and admissible. See also United States v. Kelly, 551 F.3d 171, 176 (2d Cir. 2009) ("A scheme to defraud may well include later efforts to avoid detection of the fraud."). Here, for all the reasons described above, the evidence is highly relevant, probative, and should be admitted.

3. Rule 403 Does Not Bar This Evidence

The probative value here is substantial and the prejudice modest. Evidence that a defendant steered agents away from recovering the phone he used to commit the criminal scheme

and which contained evidence thereof goes directly to knowledge and intent, and is far less inflammatory than the charged fraud itself. Rule 403 does not bar the admission of this evidence.

## IV. The Court Should Admit the Defendants' Statements, Co-Conspirator Statements, and Summary Charts at the Appropriate Juncture

The government seeks to admit co-conspirator statements made in furtherance of the conspiracy pursuant to Federal Rule of Evidence 801(d)(2)(E). See Gov't MIL at 19-28. Both Clase and Ortiz contend that it would be premature to admit any co-conspirator statements at this time. See Clase Opp. at 9-11; Ortiz Opp. at 17-18. The government does not disagree. The government's motion in limine provides the parties and the Court with notice of the types of statements the government will seek to introduce, so the Court is well positioned to rule on admissibility questions when they arise. The government's motion to present voluminous evidence through summary charts under Rule 1006 is similarly designed. The government will identify in advance co-conspirator statements and summary charts it intends to use at trial, giving the defendants an opportunity to contest their admissibility before they are offered for admission.[5]

## V. The Court Should Admit Bettor-2's Sworn Declaration as a Prior Consistent Statement If the Defense Opens the Door During Cross-Examination

Clase asks the Court to deny the government's motion in limine to admit Bettor-2's prior consistent statement as premature, arguing that "until Bettor-2 actually testified at trial and the Court is in position to determine whether and how his credibility is attacked, it is 'premature to admit a prior consistent statement.'" Clase Opp. at 23 (citing cases). The government agrees that Bettor-2's credibility needs to be attacked to trigger Rule 801(d)(1)(B). For this reason, the government's motion was expressly conditional: it argued for admission only "if the defense opens the door during cross-examination." Gov't MIL at 48. Thus, rather than deny the government's motion as Clase argues, the proper course is to reserve judgment to see how trial unfolds.

## VI. The Court Should Preclude Evidence and Argument of the Defendants' "Good Acts" or Non-Commission of Other "Bad Acts"

Clase and Ortiz threw thousands of pitches. At trial, the government will not argue that all, most or even many of these were rigged. Instead, the government will only seek to prove that for one or more of approximately 18 of Clase's pitches, and for two of Ortiz's pitches, the defendants provided advance inside information about their pitches to others, who bet on them.[6] Clase and Ortiz want to inundate the jury with other acts—pitches the government does not allege are part of the charged scheme, and which they claim were competitive and strategic,

---

[5] Given the ongoing nature of trial preparation, the government reserves the right to offer additional co-conspirator statements and/or summary charts that it identifies and/or prepares after that date.

[6] A list of those 20 pitches—all of which were within the government's preliminary investigative list (and 14 of which were in the superseding indictment)—has been provided to the defendants, and is attached as Exhibit D.

i.e., "good pitches." See Clase Opp. at 23–30; Ortiz Opp. at 16–17. They want to do so to prove that the pitches in furtherance of the scheme were also good pitches, i.e., propensity. But just like in any other fraud case, the defendants' throwing "good pitches" on occasions that are not alleged to have been part of the fraud scheme are not relevant to the jury's determination of whether the alleged fraudulent pitches were part of the charged scheme. Thus, any evidence relating to other "good pitches" thrown by the defendants is irrelevant and should be excluded.

It is well-settled that, in fraud cases, evidence that a criminal defendant did not commit fraud in other instances is irrelevant. The Second Circuit has repeatedly held that evidence that a defendant engaged in legal, honest conduct is simply irrelevant to whether the defendant engaged in, and/or had knowledge of, fraudulent conduct charged by the government. United States v. Walker, 191 F.3d 326, 336 (2d Cir. 1999); United States v. Scarpa, 897 F.2d 63 (2d Cir. 1990) ("A defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions."); see also United States v. Boykoff, 67 Fed. Appx. 15, 20–21 (2d Cir. 2003) ("[E]vidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant.") (citation omitted); Levine v. SEC, 436 F.2d 88, 91 (2d Cir. 1971) (the testimony of some customers of a broker-dealer that misrepresentations had not been made to them "would not negate the testimony of the customers who testified that price predictions had been made to them"); see also United States v. Ellisor, 522 F.3d 1255, 1270 (11th Cir. 2008) (affirming district court's ruling precluding the defendant from offering evidence of his legitimate business activities in order to negate evidence of his fraudulent intent as to the charged conduct); United States v. Winograd, 656 F.2d 279, 284 (7th Cir. 1981) (finding defendant's performance of some legal trades irrelevant to his knowledge of illegal trades).

This Court's holdings in United States v. Nekritin and United States v. Golfo on this exact issue are particularly instructive. In Nekritin, the government sought only to prove that the defendants' Medicare and Medicaid billing practices were fraudulent with respect to a limited number of patients rather than a "ceaseless" and "all encompassing" fraud. United States v. Nekritin, No. 10-CR-491 (S-2) (KAM), 2011 WL 2462744, at *1 (E.D.N.Y. June 17, 2011); id. at *5 ("The government seeks to prove that defendants' Medicare and Medicaid billing practices with respect to a limited number of patients were fraudulent, and not that all of defendants' Medicare and Medicaid billings were fraudulent"). This Court granted the government's motion in limine to preclude evidence of instances where the defendants legitimately billed Medicare and Medicaid, explaining that because the government sought only to prove that defendants' Medicare and Medicaid billing practices were fraudulent with respect to a limited number of patients, evidence of non-fraudulent conduct was irrelevant. Id. at 5.

This Court applied the same reasoning in Golfo, precluding the defense from introducing instances of non-fraudulent therapy sessions in a case charging that certain therapy sessions were fraudulent. Golfo, 2020 WL 2513445, at *2–3. Clase attempts to evade the obvious application of these cases by claiming that he is seeking to introduce other "good pitches" to prove lack of intent to defraud because they evidence his "plans to conduct himself in a manner to get MLB hitters out," which is another way of saying, his modus operandi. See Clase Opp. at 28.[7]

[7] Clase also cites to a Seventh Circuit case, United States v. Santos for the notion that "good acts" evidence which refuted the government's theory of the case should have been

But Your Honor saw through that exact same argument in Golfo. See id. at *3 (rejecting defense argument that legitimate sessions were admissible to show "modus operandi, and ultimately her lack of intent to defraud" and noting that "defendant's therapeutic modus operandi is irrelevant" because that type of evidence was only admissible under Rule 404(b) to advance an "alternative perpetrator" defense).

In United States v. Damti, 109 F. App'x 454 (2d Cir. 2004) (summary order), another case that is directly on point, the Second Circuit applied the exact same reasoning as this Court in Nekritin and Golfo and reached the same result. There, the government charged a fraud scheme against defendants operating a moving business. Id. at 1. The government argued to the jury that ten specific moves were fraudulent out of over four thousand moves. Id. at 2. The defendants sought to introduce evidence of moves in which customers were satisfied and no fraud or extortion occurred. Id. at 1. The district court excluded these so-called "good moves" and the Second Circuit affirmed. The Court of Appeals explaining that because "a substantial portion [of moves] presumably were legitimate," the "[e]vidence of 'good moves,' therefore, would not have been probative of the key issue during trial." Id. at 2. Damti also approved of the district court's decision excluding "good moves" because the government agreed that it would not argue to the jury that the defendants engaged in "ceaseless" criminal conduct, that "all" of the defendants' customers were defrauded, or that the defendants' business was "permeated with fraud." Id.

So too here. The government will only argue that one or more of 18 pitches (for Clase) and two pitches for Ortiz were fraudulent out of thousands of pitches. The government will not argue to the jury that the defendants engaged in ceaseless criminal conduct or that all of the defendants' pitches were fraudulent. Just like the "good moves" in Damti and the good billing in Nekritin and Golfo, because a substantial portion of the defendants' pitches were "good pitches," the evidence of "good pitches" will not be probative of whether the defendants committed the charged conduct.

The defendants' additional arguments prove too much, would eviscerate the law against other good acts evidence, and are without merit. For example, the defendants claim that these other good pitches are "intrinsic" and "inextricable intertwined" with the charged conduct because the jury must see "good pitches" to understand the background and to determine whether the defendants committed the charged crimes. See Clase Opp. at 26. But this same argument could be made in every other case: the defendants in Nekritin, Golfo, and Damti would certainly have argued that evidence of their good billing and good moves were intrinsic background and inextricably intertwined with the charged conduct if those had been magic words to admit their other good acts evidence—they were in the healthcare and moving businesses, and engaged in

---

admitted. Clase Opp. at 29. But in Santos, contrary to the defendant's description of the facts, the government had argued that before the fraud/extortion period, low bidders *always* won the contract, and that, afterwards, low-bidding contractors who refused campaign contributions were denied business. United States v. Santos, 201 F.3d 953, 962 (7th Cir. 2000). The defendant sought to counter this claim with evidence that low bidders did not always get the office's business. Id. The government's representation in Santos that the low bidders "always won the contract" is very different than the government's representation here that Clase and Ortiz threw a select set of pitches and provided the Bettors with inside information as to those select pitches.

thousands of other good bills and good moves that were not alleged to be fraudulent. This Court has repeatedly and correctly recognized that there is no such exception to the rule against other specific acts evidence. Indeed, as this Court held in United States v. Innis, once again rejecting a similar argument, "[c]haracter evidence has long been admissible only in the form of reputation and not in the form of a recitation of good or bad acts." United States v. Inniss, No. 18-CR-134 (KAM), 2019 WL 6999912, at *7 (E.D.N.Y. Dec. 20, 2019).[8]

The defendants cite no authority for the proposition that a criminal defendant can evade the prohibition against other good acts by calling them "intrinsic," or claiming that somehow the fact that Clase threw good pitches is "inextricably intertwined" with the charged conduct. While "evidence of uncharged criminal conduct" is sometimes admissible because it is treated as "part of the very act charged," United States v. Quinones, 511 F.3d 289, 309 (2d Cir. 2007) (citation and quotation marks omitted), the opposite does not hold true precisely because other good acts are not relevant to whether the defendant committed the crimes charged.

Finally, as this Court explained in Golfo, "even if evidence of defendant's routine [good pitches] were at all relevant, under Federal Rule of Evidence 403, any probative value 'is substantially outweighed' by the dangers of confusing the issues before the jury, misleading the jury into believing that defendant's generally lawful conduct is determinative with respect to [the] allegedly unlawful conduct, and wasting time." Golfo, 2020 WL 2513445, at *4 (citing Fed. R. Evid. 403). At bottom, the premise of the defendants' argument for admitting other "good pitches" is a false dichotomy that will confuse the issues before the jury: the defendants want the jury to believe that a pitch must either be strategic or fraudulent. They want to introduce evidence of other uncharged good pitches that they claim are strategic and ask the jury to conclude that because the charged pitches may have also been strategic, they were not fraudulent. They want the jury to call balls and strikes: strategic or fraudulent. But that is not the government's case, nor is it the jury's role. The government will prove at trial that the defendants shared advance information about their pitches (strategic or not) with bettors, who then placed fraudulent wagers on those pitches.[9] Accordingly, because the introduction of other good pitches will only serve to confuse the issues and mislead the jury, they should also be excluded under Rule 403.

---

[8] Under Inniss, while the defendants cannot introduce specific good acts, they may be able to introduce general character evidence testimony regarding their reputations "for a pertinent trait of character," for example. See Inniss, 2019 WL 6999912, at *7. To the extent the defendants seek to offer such character evidence, the government will address its admissibility at trial.

[9] In the same way that a corrupt official action might have both legitimate and illegitimate purposes, the pitches that were thrown by the defendants may have had dual purposes (i.e., to pitch a ball in accordance with the team's strategy to win, while also pitching a ball so bettors could profit from their bet). See United States v. Woodward, 149 F.3d 46, 70–71 (1st Cir. 1998) (conduct need not have "exclusively illegal intent" to be criminally culpable, but conduct that is "exclusively legal" is insulated from prosecution); see also United States v. Coyne, 4 F.3d 100, 113 (2d Cir. 1993) ("[T]here could be dual purposes for payments," in that a "'valid purpose

VII. The Court Should Preclude the Defendants From Introducing Improper Evidence of Good Character Under Rule 404(a)

Clase argues that the government's motion to preclude good character evidence pursuant to Rule 404(a) should be denied because his background is "highly relevant." See Clase Opp. at 31–32. Specifically, Clase argues that his Dominican background will be relevant in understanding his relationship to rooster fighting, and his relationship with his co-conspirators. While the government does not object to admission of evidence pertaining to co-conspirator relationships, the government is unclear why Clase's involvement in rooster fighting would be relevant to the alleged crimes other than for the fact that Clase used similar terms when he bet on roosters as he did when he provided inside information on rigged pitches. Further, Clase alleges that his "performance as an All Star closer" is relevant to show "lack of motive." See Clase Opp. at 32. But Clase makes no effort to illustrate how his performance as a pitcher is relevant to his motive, or lack thereof, to commit the alleged crimes.

Clase alleges that the three cases cited by the government support the notion that his character evidence should be admissible. Id. Clase fails to acknowledge that in the three cases cited by the government, the courts in those cases made a determination to exclude background evidence, despite allowing for some evidence pertinent to honesty or truthfulness. Moreover, Clase simply wishes to admit background evidence as a tactic to distract the jury from the issues at hand. This case is not about Clase's fame as an MLB pitcher, nor is it about Clase's gambling on rooster fighting in the Dominican Republic.

Even if such evidence were relevant, its probative value would be outweighed by the danger of unfair prejudice to the government. As such, this evidence should be precluded under Rule 403. See United States v. Malpeso, 115 F.3d 155, 162-63 (2d Cir. 1997) (excluding evidence and precluding argument on issues that had "little or no relevance" to the charged crimes and might encourage jury nullification); United States v. Sterritt, No. 21-CR-193 (KAM), 2023 WL 7386660, at *4 (E.D.N.Y. Nov. 8, 2023) ("[P]articularly where such evidence [of personal, health, or family circumstances] has limited probative value and has potential to engender sympathy in an inappropriate effort to excuse a defendant's commission of the charged offenses, such evidence may be excluded, pursuant to Fed. R. Evid. 403.").

VIII. The Court Should Preclude the Defendants From Offering Inadmissible Hearsay in the Event They Seek to Offer It

Both Clase and Ortiz oppose the government's motion to preclude hearsay by arguing that they expect to offer non-hearsay into evidence. Clase Opp. at 32–36; Ortiz Opp. at 18–19. The government agrees with the non-controversial proposition raised by both defendants that out-of-court-statements may be admissible if they are not offered for their truth or are subject to an exception to the hearsay rule. To date, given certain deficiencies with their exhibit lists, the government has little visibility into what records the defendants intend to offer into evidence. See

---

that partially motivates a transaction does not insulate participants in an unlawful transaction from criminal liability.'") (quoting United States v. Biaggi, 909 F.2d 662, 683 (2d Cir. 1990)).

ECF Nos. 201, 203 (Ortiz and Clase exhibit lists).[10] Accordingly, the government does not dispute that the Court should reserve judgment on the government's motion in limine until seeing what, if any, out-of-court statements the defendants seek to introduce at trial.

## IX. The Court Should Preclude Ortiz from Admitting Hearsay Declarations as Direct or Impeachment Evidence

At trial, the government will introduce text and audio messages involving Bettor-1, Clase Associate-1, and Defendant-4. The government also anticipates witnesses will testify regarding Defendant-4's sharing of Clase's pitches in advance with others. Bettor-1 is an anticipated government witness, but neither Defendant-4 (who is currently a fugitive being sought for extradition) nor Clase Associate-1 will testify in the government's case at trial. At the behest of Clase's attorneys, Bettor-1, Defendant-4, and Clase Associate-1 each executed sworn declarations (the "Subject Declarations"). The government moved in limine to preclude the defendants from introducing the Subject Declarations as substantive evidence for their truth—because they are impermissible hearsay—or for impeachment purposes as prior inconsistent statements. See Gov't MIL at 59–61. The Court should grant the motion.

### A. The Subject Declarations Cannot Be Admitted for Their Truth

The Subject Declarations are impermissible hearsay statements that do not satisfy the exception for statements by a party-opponent—a point which the defendants do not contest. See Clase Opp. at 36–38; Ortiz Opp. at 5–12. Clase generally agrees that "the declarations are not admissible for their truth." Clase Opp. at 36.

Defendant Ortiz argues that Bettor-1's declaration will be admissible pursuant to a newly proposed version of Federal Rule of Evidence 801(d)(1)(A) which may come into effect on December 1, 2026. There is no dispute that under current Rule 801(d)(1)(A), Bettor-1's declaration is inadmissible hearsay. Furthermore, even under the proposed revised Rule, in order for the statements to be admissible, they must be "inconsistent with the declarant's testimony." However, because Bettor-1 will admit that he falsely denied to Clase's attorneys/translators that he participated in a scheme to wager on fixed pitches and that he signed a false declaration stating as much the contents of the declaration will not be "inconsistent with the declarant's testimony."

---

[10] In an effort to avoid burdening the Court with this issue, the government attempted to meet and confer by email with counsel for Ortiz and Clase asking them to address the deficiencies in their respective exhibit lists, which included, to take one example, categorical descriptions of voluminous betting records without identifying the materials by Bates stamp. To date, neither party has responded, though Ortiz later produced Rule 16 discovery addressing some but not all of the deficiencies. See Exs. E and F. The government respectfully requests that the Court order the defendants to supplement their exhibit lists to address the deficiencies identified by the government. Id.

See Fed. R. Evid. 801(d)(1)(A). Rather, he will testify to these very facts. Accordingly, the changes to the Rules do not aid the defendants' argument.[11]

Ortiz also seeks to make an end-run around the declaration's inadmissibility by invoking the residual hearsay exception. See Fed. R. Evid. 807. The Rule requires the following: "the statement is (1) supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." Id. Putting aside whether the declaration has sufficient guarantees of trustworthiness—Ortiz has put forward no evidence to corroborate the statement at all[12]—it is certainly not "more probative on the point for which it is offered than any other evidence." In particular, Bettor-1 will be testifying, and will be admitting the prior statements while explaining that they were lies. If the defendants want to cross-examine him and elicit the statements in the declaration, that will be far more probative.

B. The Subject Declarations Cannot Be Admitted for Impeachment Purposes Under Rules 806

The defendants try but fail to shoehorn the Subject Declarations into Federal Rule of Evidence Rule 806. That Rule provides, "[w]hen a hearsay statement—or a statement described in Rule 801(d)(2)(C), (D), or (E)—has been admitted in evidence, the declarant's credibility may be attacked, and then supported, by any evidence that would be admissible for those purposes if the declarant had testified as a witness." Fed. R. Evid. 806.

At the outset, with respect to Bettor-1—a prospective government trial witness—this argument makes no sense. By its terms, Rule 806 is limited to those instances when a declarant does not testify. See id. (allowing admission of those statements that would be admissible to attack credibility "*if the declarant had testified*.") (emphasis added). Clase's own authority says as much. See Clase Opp. at 37 ("The Rule 'makes an otherwise hearsay statement admissible when the declarant (co-conspirator) *has not taken the stand*, but his statements have nevertheless come into

---

[11] For the same reason, the government opposes continuing the trial. In the event that the Court concludes that the statements do qualify as inconsistent and there is a competent witness who provides the relevant testimony, the only difference from the new Rule will be the presence or absence of an instruction to the jury about the purpose for which the testimony may be considered. In the event that these events come to pass and the new proposed Rule has not been rejected, the government will not object to applying it toward the relevant statements.

[12] The Committee notes are clear that "[i]n deciding whether the statement is supported by sufficient guarantees of trustworthiness, the court should not consider the credibility of any witness who relates the declarant's hearsay statement in court." See Committee Notes on Rules–2019 Amendment. Thus, Ortiz's reliance on the mere fact that Bettor-1 will testify is not a basis on which to admit the declaration under Rule 807.

evidence as a statement in furtherance of the conspiracy.'") (emphasis added) (quoting United States v. Rosario, 111 F.3d 293, 296 (2d Cir. 1997)).[13]

The arguments regarding admitting the self-serving declarations of Defendant-4 and Clase Associate-1[14] fare no better for a number of reasons.

First, Rule 806 only applies if the declarant statements were admitted for their truth. United States v. Dipietro, No. S502CIR1237SWK, 2005 WL 1430483, at *1 (S.D.N.Y. June 17, 2005) ("It has long been the case in the Second Circuit that it is proper to preclude cross-examination of an individual whose statements are not admitted for their truth.") (citing Second Circuit cases including United States v. Wagner, 2004 WL 1340722 (2d Cir. June 15, 2004)). Here, the government anticipates that most if not all of the text and audio messages it will introduce involving Clase Associate-1 and Defendant-4 do not qualify for a number of reasons, including all those generally outlined in the defendant's motion. See Clase at 33–36 (explaining all the ways that co-conspirator statements are not hearsay). For example, on June 4, 2023, Defendant-4 wrote to Clase: "And the rooster, the same??" In response, Clase wrote, "yes the same rooster." Because Defendant-4's message is not a statement—it is a question—Rule 806 thus has no significance. The same is true for Clase Associate-1. For example, on June 19, 2025, after Clase asked Clase Associate-1 to send Ortiz Associate-1 90,000 pesos, Clase Associate-1 asked Clase, "Hey, Emmanuel, what should I put down for the transfer?" That too is not a statement offered for its truth.

Second, "[t]he purpose of Rule 806 is to allow a party to attack the credibility of the declarant." United States v. James, No. 02 CR 0778 (SJ), 2007 WL 1579977, at *4 (E.D.N.Y. May 31, 2007) (emphasis added); see United States v. Preldakaj, 456 F. App'x 56, 58 (2d Cir. 2012) ("Rule 806 … establishes the means of impeaching the credibility of an out-of-court declarant"). The defendants' arguments make it clear that they do not seek to use the Subject Declarations to impeach the credibility of Defendant-4 and Clase Associate-1—who they believe are telling the truth in their declarations—but rather, to attack the credibility of the government's case. For example, the government anticipates that multiple witnesses will testify that Defendant-4 provided information about Clase's pitches and was a member of the scheme. The defendants plainly seek to use Defendant-4's declaration impermissibly, to impeach these witnesses' account of events, and not, as is permissible, to attack the credibility of Defendant-4. In other words, the defendants would have to be asserting that Defendant-4 lied to the witnesses when he said that he was passing on information regarding fixed pitches, and that in reality he did not have that

---

[13] Indeed, Ortiz seems to recognize this point and limits his Rule 806 argument to only Clase Associate-1 and Defendant-4, who are not expected to testify at trial. See Ortiz Opp. at 12.

[14] Clase Associate-1 is listed as a prospective witness for Ortiz. If Clase Associate-1 is a defense witness, then, like Bettor-1, Rule 806 would not apply. However, in an abundance of caution, the government responds in the event that Clase Associate-1 is not called as a witness.

information—which they have never before argued and nowhere claim in their opposition papers.[15]

Similarly, Clase Associate-1's communications will show that Clase Associate-1 transferred funds on behalf of Clase. The government does not understand the defendants to be claiming that Clase Associate-1 was lying and did not transfer funds on behalf of Clase. Indeed, Clase Associate-1's declaration says as much.

Third, Rule 806 only authorizes attacking the credibility of a declarant "by any evidence that *would be admissible* for impeachment purposes if the declarant had testified as a witness." United States v. Preldakaj, 456 F. App'x 56, 58 (2d Cir. 2012) (summary order). "Thus, Rule 806 renders the rules regarding impeachment evidence—Rules 608 and 609—applicable to a declarant's out-of-court statements." See United States v. Moskowitz, 215 F.3d 265, 270 (2d Cir.2000); United States v. Robinson, 783 F.2d 64, 67 (7th Cir. 1986). "A hearsay declarant may also be impeached by showing that he made inconsistent statements." See United States v. Trzaska, 111 F.3d 1019, 1024 (2d Cir.1997) (citations omitted). "It is well settled that for two statements to be inconsistent, they 'need not be diametrically opposed.'" United States v. Trzaska, 111 F.3d 1019, 1024–25 (2d Cir. 1997). "Nevertheless, the statements must be inconsistent." Id. (internal citations omitted).

Here, the defendants have provided no basis by which they could admit the Subject Declarations against Clase Associate-1 or Defendant-4 if either testified as to the statements in their text and audio messages at trial. Take, for example, Clase Associate-1. The government anticipates that it will introduce text messages in which Clase Associate-1 discussed the receipt and transfer of money on behalf of Clase, including the transfer of 90,000 pesos to Ortiz Associate-1, purportedly for a horse. Clase Associate-1's declaration provides that he/she had "no knowledge that the money involved in the payment for this horse came from gambling on baseball." See Clase Opp. Ex. 13 ¶ 11. While the government anticipates that the evidence at trial will establish that the funds received by Clase Associate-1 were in-fact proceeds from the pitch-rigging scheme, Clase Associate-1's declaration is not inconsistent with his text and audio messages discussing the receipt and transfer of money on behalf of Clase. They are entirely consistent.

In the same vein, the government anticipates that it will introduce text and audio messages involving Defendant-4, such as the message on June 4, 2023, in which Defendant-4 wrote to Clase: "And the rooster, the same??" Even if they were offered for their truth, Defendant-4's declaration is not inconsistent with these messages. Imagine that Defendant-4 testified in Court that on June 4, 2023, he asked Clase, "and the rooster, the same?" Defendant-4's declaration would in no way contradict that testimony. The declaration does not say that Defendant-4 did not send these text and audio messages nor does the government understand the

[15] This "Defendant-4 lied" theory also seem at odds with the defense position that Bettor-1 lied about his access to Clase—unless their position is that Defendant-4 lied to Bettor-1, and Bettor-1 knew that this was a lie, but then also lied to others, in turn. Alternatively, perhaps the defendants are now claiming that Defendant-4 lied but Bettor-1 was an unwitting participant in his scheme.

defendants to be arguing that he did not send the messages.[16] The same is true for all of Defendant-4's text and audio messages the government anticipates introducing at trial. Rather, it is apparent that the defendants seek to use the Defendant-4 declaration to cast doubt on other witnesses' interpretations of those exchanges.[17]

If the defendants truly seek to press the theory that Defendant-4 lied to the witnesses and falsely claimed to have information from Clase, then the government agrees that the relevant portions of Defendant-4's declaration could be admissible solely for the purpose of impeaching Defendant-4's credibility. In that instance, the defendants could not argue that the other witnesses are lying because Defendant-4 said otherwise in his declaration—that would be an impermissible attempt to use the Defendant-4 declaration for its truth. Rather, they would be limited to arguing that Defendant-4 gave two conflicting accounts and thus his statements to the witnesses regarding information from Clase should not be believed. Furthermore, in that instance, the relevant portion of the Defendant-4 declaration would have to be authenticated (ostensibly by one of Clase's lawyers/interpreter), and the government would be permitted to introduce the circumstances surrounding Defendant-4's execution of the declaration, including that it was made after Clase was aware of the criminal and MLB investigations and had been publicly placed on administrative leave from baseball because of MLB's sports betting investigation into the pitch-rigging scheme; that it was made to lawyers and a lawyer/interpreter paid by Clase who were collecting declarations on his behalf; and that Defendant-4 is currently a charged co-conspirator in the case who is being sought for extradition. The Court should also present a limiting instruction to the jury.

C. The Bettor-1 Declaration Should Not Be Admitted for Impeachment Under Rule 613(b)[18]

At trial the government anticipates that Bettor-1 will admit to lying to Clase's attorneys/interpreter and will admit that he knowingly signed a false declaration denying his

---

16 With respect to Defendant-4, the defendants' argument is particularly brazen. The defendants are asking the Court to license backdoor false-exculpatory testimony that they procured from a charged co-defendant. The Court should not countenance this argument under the rubric of Rule 806.

17 These facts stand in stark contrast with the two out-of-circuit cases relied upon by the defendants, both of which involved flat-out contradictions. See United States v. Grant, 256 F.3d 1146, 1154 (11th Cir. 2001) (the declarant's hearsay statement that the defendant was his partner in drug dealing was contradicted by an affidavit in which the declarant indicated that he had lied when he said he had a partner in dealing drugs); United States v. Cotton, 823 F.3d 430 (8th Cir. 2016) (the declarant's hearsay statement that had engaged in drug dealing with the was contradicted by an affidavit in which the declarant said he had never had drug involvement with the defendant).

18 Rule 613(b) only allows extrinsic evidence of a witness's prior statement to be offered to impeach that witness's credibility if the statement is inconsistent with trial testimony. However, neither Clase Associate-1 nor Defendant-4 is expected to testify at trial. Thus, the arguments under Rule 613(b) solely relate to the declaration of Bettor-1.

participation in a scheme to wager on fixed pitches. As this Court previously explained in denying defendant Ortiz's motion to sever, "[t]he district court retains the discretion to allow extrinsic evidence of a prior inconsistent statement when that inconsistent statement is admitted to by the witness, as the Government expects its witness to do." See ECF No. 211, at 24 ("Aug. Mem. Op.") (citing United States v. Arena, 180 F.3d 380, 400 (2d Cir. 1999)). "United States v. Strother held that testimony of the inconsistent statement is admissible because '[e]xtrinsic evidence of a prior inconsistent statement is more persuasive to a jury than a witness' acknowledgment of inconsistencies in a prior statement.'" Id. (quoting United States v. Strother, 49 F.3d 869, 876 (2d Cir. 1995). "But the later decided Arena clarified that the discretion remains with the district court to assess the probative value of the additional extrinsic evidence." Id. (citing Arena, 180 F.3d at 400).

For the reasons described previously, the Court should exercise its discretion to exclude Bettor-1's declaration because Bettor-1 will admit to the prior inconsistent statements, thereby eliminating the need to impeach him with extrinsic evidence. See Gov't MIL at 60–61. The defendants' opposition is essentially a motion for the Court to reconsider its earlier ruling in this case correctly interpreting Second Circuit law. See Ortiz Opp. at 8–11. However, as the Court correctly concluded already, "Contrary to Mr. Ortiz's argument, Second Circuit precedent does not compel a different result." Aug. Mem. Op. at 59–60. Thus, the Court should find that the admission of Bettor-1's declaration would be "consistent with and duplicative of that portion of" Bettor-1's anticipated direct examination and exclude it under Arena. 180 F.3d at 400.

## X. The Court Should Preclude the Defendants from Calling Pablo Davis as an Impeachment Witness

The Court should grant the government's motion in limine to preclude the defense from calling Pablo Davis as an impeachment witness, because, as described above, Bettor-1 will admit to making the statements in his prior declaration. But in the event the Court permits the defense to call Mr. Davis as an impeachment witness, the Court should permit the government to impeach him for bias. See Fed. R. Evid. 607 (allowing any party to attack a witness's credibility).[19] Davis's association with the attorneys representing Clase at counsel's table, his employment by their firm, and his participation in Clase's defense—both in the investigative phase and, apparently, the trial preparation phase of this case[20]—are obvious sources of bias that the government is entitled to explore. Clase acknowledged the propriety of such cross-examination in his opposition to the government's motion for disqualification, see ECF No. 135 ("[t]he government can adequately address Mr. Davis's 'bias' through cross-examination"), so the

---

[19] The government is not asserting in its motion in limine that Davis should be precluded so as not to trigger disqualification. Contra Clase Opp. at 41 ("To the extent the government is implying that Mr. Davis's testimony could trigger disqualification, this Court has squarely rejected that argument."). The government understands that the Court has ruled on this issue and respects the Court's decision.

[20] See Clase Opp. at 41–42 ("Finally, the Court should prevent the government from inquiring into Mr. Davis's role in preparing the Pre-Charge Presentation and Mr. Clase's role [sic] in trial preparations.") (emphasis added).

opposite position he takes here is perplexing. In any event, in the event Mr. Davis is called, it is neither "offensive" nor "baseless," Clase Opp. at 41, for the government to impeach him for potential bias.

## XI. The Defendants Should Be Precluded from Impeaching Witnesses with Agent-Prepared Interview Reports

The defendants may not impeach witnesses with agent-prepared reports, because they are not the witnesses' prior statements. See Gov't MIL at 62–64. Clase and Ortiz both agree. See Clase Opp. at 42 ("Mr. Clase agrees that FBI 302 reports are statements of the law enforcement officers who authored them, not the witnesses interviewed."); Ortiz Opp. at 13 ("A third party's characterization of a witness's statement is not a prior statement of that witness unless the witness has subscribed to it or it offers a verbatim transcript of the witness's statement."). Indeed here, because many of the witnesses spoke only Spanish and the agent reports are statements of interpreters, there is an additional level of hearsay. Accordingly, the government's motion should be granted.

As the government previously explained, and as is standard practice, a report may be shown to the witness for purposes of refreshing the witness's recollection if the witness says he or she does not remember making a statement. This may only be done in a manner that does not suggest the report or its contents are the witness's prior statement and the report may not be published to the jury. See generally Order on Guidelines Regarding Appropriate Use of 302 Forms in Criminal Trials, United States v. Harrell, No. 20-CR-239 (BMC) (E.D.N.Y.), ECF No. 1634; Nov. 2, 2018 Order, United States v. Guzman Loera, No. 09-CR-466 (BMC) (E.D.N.Y.). This standard practice should be followed here as well.

Without citing any authority, counsel for Ortiz suggests that because law enforcement agent reports are in English, the Court must authorize a deviation from standard practice for attempting to refresh a witness's recollection, seemingly to put hearsay before the jury. See Ortiz Opp. at 13–14.[21] According to Ortiz, in that circumstance, counsel should be permitted to read the statement aloud to the witness with the jury listening in to this exchange. See id. However, refreshing non-English speaking witness with English-language documents is a regular occurrence at trials in this District, and in such situations, the procedure is to have counsel point out the portions to the interpreter, and to have the interpreter read the relevant passage to the witness without a microphone outside of the hearing of the jury. See, e.g., United States v. Genaro Garcia Luna, No. 19-CR-576 (BMC) (Jan. 24, 2023), Trial Tr. at 230–231 (interpreter requesting leave of court to turn off her/his microphone while conducting a read back to attempt to refresh the recollection of a witness), attached as Exhibit G; United States v. Velasquez Larin, No. 20-CR-228, Trial Tr. at 1721 (the Court noting in response to a request for the interpreter to translate five lines in a document that "I just want to make sure it's just for the witness, all right"), attached as Exhibit H. The same practice should be followed in this case.

---

[21] The government does not understand this argument to be directed at an instance where a witness affirmatively denies making the statement. In that circumstance, it is well-established that it would be improper to attempt to refresh the witness's recollection.

Finally, the government's motion was directed at precluding the impeachment of government witnesses with reports prepared by agents present at those witnesses' interviews. Neither defendant disagrees and so the motion should be granted. Though raised by the defendants in opposition, the government's motion was not directed at either the impeachment of witnesses through subsequent agent testimony about the witnesses' allegedly inconsistent statements or the impeachment of the agents themselves with their own reports for allegedly inconsistent statements. Given the speculative nature of these arguments, the Court should defer ruling on these issues unless there comes a time at trial where (1) there is testimony that is actually inconsistent with a prior statement; and (2) the defense identifies a competent witness to testify as to the specific alleged inconsistency.[22]

## XII. The Court Should Preclude Evidence or Arguments That Are Irrelevant, Unfairly Prejudicial, Misstate the Law or Invite Jury Nullification

The government moved to preclude the defendants from introducing evidence or making arguments before the jury that urge nullification, put the government on trial, or otherwise seek to impugn or put at issue the government's conduct or motive in its prosecution of this matter or invite the jury to render its decision based on improper legal and factual considerations. See Gov't MIL at 64–67. Defendants Vasquez and Ortiz rightly did not oppose the government's motion.

Clase asks the Court to allow him to introduce evidence and make arguments which he says show that the government conducted a "flawed investigation," including putting on trial the government's "investigative choices." See Clase Opp. at 43–44. But the defendant is on trial, not the government's investigation. It is well established that the jury must "base its decision on the evidence or lack of evidence that had been presented at trial, and to focus solely on whether, in light of that evidence or lack of evidence, the jury was convinced beyond a reasonable doubt that the defendant was guilty of the crimes with which he was charged," and that "the failure to utilize some particular technique or techniques does not tend to show that a defendant is not guilty of the crime with which he has been charged." United States v. Saldarriaga, 204 F.3d 50, 53 (2d Cir. 2000) (emphasis added). As a result, courts typically instruct the jury that the government need not use all investigative techniques, and that the jury's focus is properly on the evidence or lack of evidence at trial. See, e.g., United States v. Preldakaj, 456 F. App'x 56, 60 (2d Cir. 2012);

---

[22] The Court ordered the parties to confer and exchange witness lists by September 15, 2026. See ECF No. 166. Ortiz's list includes approximately 14 witnesses who are government employees. See ECF No. 231 (witnesses eight through 12 and 22–32). Clase has not provided the government with his witness list, but his opposition brief indicates that he plans to also call government agents for purposes of impeachment. See Clase Opp. at 42 (explaining that counsel "understands the Rules of Evidence governing impeachment and, if necessary, will call the relevant law enforcement agents as witnesses to complete impeachment"). However, to date, the government is not aware of any defendant submitting a request for the testimony of any employee under the Department of Justice's Touhy regulations, which is a mandatory prerequisite to any such testimony. See United States v. Chang, No. 18-CR-00681 (NGG) (CLP), 2024 WL 3361800, at *2 (E.D.N.Y. July 10, 2024) ("Should the Defense seek to elicit testimony from any FBI agent involved in this matter, it must follow the Touhy regulation").

United States v. Londono, 175 F. App'x 370, 375 (2d Cir. 2006) (affirming sustained objections to defense summation and noting that "a defendant may comment on the failure of proof in the record, such as the absence of forensic evidence in the form of voice, handwriting, or fingerprint analyses, but defense counsel here did more than that in this case because he argued that the government had failed to undertake to procure such evidence").

The well-settled distinction between arguments regarding the lack of proof in the record at trial (permissible) and the lack of steps taken by the government or the defendant's alleged "flaws" in the investigation (impermissible) is only one example of the broader prohibition on arguments and questioning regarding irrelevant aspects of the government's investigation. See, e.g., United States v. Knox, 687 F. App'x 51, 54–55 (2d Cir. 2017) (summary order) (instructing jury that the "government is not on trial" is "appropriate") (quotations omitted); United States v. Duncan, No. 18-CR-289 (SHS), 2019 WL 2210663, at *3 (S.D.N.Y. May 22, 2019) ("While [a defendant] may point to any asserted failure of proof in the record, any argument that the government has failed to carry its burden of proof because it conducted its investigation in a particular way is not relevant."); United States v. Reese, 933 F. Supp. 2d 579, 583–84 (S.D.N.Y. 2013) (holding that "a defendant may not argue before the jury issues relating to the overall propriety of the Government's investigation") (internal quotation marks omitted). Ultimately, the government's case "is not on trial . . . , and the jury will not be asked to pass on the adequacy of its investigation." United States v. Carton, No. 17-CR-680, 2018 WL 5818107, at *3 (S.D.N.Y. Oct. 19, 2018). Pursuant to the Second Circuit's clear command that the jury's attention belongs on "the evidence or lack of evidence that had been presented at trial," Saldarriaga, 204 F.3d at 52, the Court should preclude Clase from making arguments or introducing evidence that focus on the government's investigation, rather than on the proof of the defendant's guilt in the record.

Clase also seeks to put before the jury the fact that he may lose his job if he is convicted of the charged crimes. Clase MIL at 44. In every single criminal case, defendants would like to argue to the jury that the punishment (e.g., potential imprisonment, loss of work, deportation consequences) is a reason that he or she would not commit the crime. They are not permitted to do so, as courts routinely recognize that because the jury is not the arbiter of punishment, such arguments are irrelevant and invite nullification—because the jury may decide guilt based on whether the punishment fits the crime, rather than on the evidence at trial. See United States v. Clanton, No. 23-CR-328 (KAM), 2024 WL 1072050, at *22 (E.D.N.Y. Mar. 12, 2024) ("The principle that juries are not to consider the consequences of their verdicts is a reflection of the basic division of labor between the judge as sentencer and the jury as trier of fact." (quoting Shannon v. United States, 512 U.S. 573, 579 (1994)); see Gov't MIL at 67. Undaunted, Clase makes the same exact argument, claiming that he must be permitted to introduce the fact that the punishment for violating MLB Rule 21 is a lifetime ban from baseball "because it makes it *less* likely that Mr. Clase would knowingly join the alleged conspiracy." Clase MIL at 44 (emphasis in original). The same is true for every other criminal defendant, and the mere fact that Clase also may lose his job if convicted does not make him unique.[23]

[23] Clase also argues that Rule 21 includes the punishment—permanent ineligibility—within the same clause as the rest of the Rule, and thus it must be disclosed. But the court routinely redacts punishment from instructions to the jury and this is no different. The language could easily be modified to read "shall be [punished]."

XIII. The Defendants Should Be Ordered to Disclose Rule 26.2 Statements

Clase opposes the government's motion for the Court to issue an order setting the deadline for the production of Rule 26.2 material.[24] He does not appear to dispute the government's basic claim that "[c]ourts in this Circuit routinely order defendants to abide by their Rule 26.2 statement." Gov't MIL at 68. He instead distinguishes the authorities relied upon by the government and casts the government's 5-day request as "simply unworkable." Clase Opp. at 46. But the opposite is true. Ortiz noticed 33 witnesses, while Clase—who baselessly accuses the government of "gamesmanship"— did not even share his witness list with the government despite filing one under seal with the Court, leaving the government with no way of knowing at this time how many witnesses he intends to call. See ECF No. 232.[25] And Clase is noticeably non-specific about when, precisely, he intends to share Rule 26.2 material with the government, see Clase Opp. at 45 ("Mr. Clase's counsel understand their Rule 26.2 obligations and will ensure the government receives the materials to which it is entitled before any defense witness takes the stand."), making it all the more important that the Court set a clear deadline for him to do so.

The defendants sought a Court order setting a deadline for the provision of § 3500 material, ECF No. 112, which they have received well in advance of trial.[26] There is no reason for Clase to take an inconsistent position when it comes to setting a court order to enforce his own obligations. Particularly in a trial such as this one, where the defendants have signaled that they

[24] Neither Vasquez nor Ortiz opposed the government's motion.

[25] The Court should order both Clase and Vasquez to immediately disclose their respective witness lists to the government.

[26] Clase asserts that the government's early provision of 3500 material "neither identifies the witnesses that will testify nor the subject matter of their proposed testimony." Clase Opp. at 45. The government provided the materials in an organized fashion with an index describing their contents, which includes agent reports and notes of interviews, so the notion that the defense does not have notice of potential witness testimony is entirely baseless.

intend to present substantial defense cases, efficiency and reciprocity both dictate that the Court set a modest 5-day deadline for the defendants to disclose witness statements.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By: /s/
Eric Silverberg
Sean M. Sherman
Rebecca M. Urquiola
Assistant U.S. Attorneys
(718) 254-7000

cc: Clerk of Court (KAM) (by ECF and Hand Delivery)
Counsel of Record (by ECF and E-Mail)