**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EMMANUEL CLASE DE LA CRUZ,<br><br>Defendant. | Case No. 25-CR-346 (S-1) (KAM) |

**DEFENDANT EMMANUEL CLASE DE LA CRUZ'S**
**SUPPLEMENT TO REQUEST FOR SANCTIONS AND**
**SUR-REPLY TO UNITED STATES' MOTION *IN LIMINE***

Since Mr. Clase filed his motion seeking sanctions for the government's repeated *Brady* violations, ECF Nos. 223, and response to the government's motions *in limine*, ECF No. 222 (collectively, the "Pending Motions"), the government made yet another belated disclosure of exculpatory information.[1] This time, the government concedes that 174 of the 192 pitches it claimed in February 2026 as illegal acts were not crimes at all, but ordinary baseball plays.

The government admits that its case rests on a dramatically altered premise—but only after concealing the truth for months. After the Court ordered the government to identify the pitches it claimed were illegal, the government accused Mr. Clase of fixing 192 pitches. Days later, however, the government obtained plainly exculpatory *Brady* information from its only witness who claims to have received inside information—information showing that the government could not prove those accusations. Rather than disclose that information promptly or correct the record, the government suppressed it for the better part of a year and allowed Mr. Clase to prepare for trial

[1] Mr. Clase's motion for *Brady* sanctions, ECF No. 223, was originally filed under seal. With the government's consent, Mr. Clase publicly filed a redacted version of the motion, which is available at ECF No. 239-1.

against allegations it knew it could not sustain. Only on September 18, 2026, after Mr. Clase brought the *Brady* information to the Court's attention, did the government finally withdraw most of those false accusations.

This untimely disclosure goes to the heart of both Pending Motions. It further confirms the prejudice Mr. Clase has suffered from the government's ongoing discovery violations, undermines the veracity of the government's claim that 18 pitches remain criminal, and directly supports the admission of direct and intrinsic contextual evidence showing that Mr. Clase sometimes threw pitches in predictable sequences for legitimate baseball reasons—to retire hitters—not to help people he almost exclusively did not know win bets.

This supplement is therefore necessary to address the government's latest delinquent *Brady* disclosure and its substantial impact on the Pending Motions. For the reasons stated herein and in Mr. Clase's briefs related to the Pending Motions, Mr. Clase requests that the Court: (1) sanction the government, including by precluding Bettor-1's testimony and issuing an adverse inference instruction that the jury should consider the government's repeated obstructive acts in suppressing exculpatory information for months when considering the sufficiency of the government's evidence; and (2) admit direct, intrinsic evidence of pitches comparable to the 18 the government has alleged to be criminal acts so the jury can understand both the baseball strategy reasons why pitches were thrown and how that baseball strategy informed Bettor-1's ability to predict which pitches Mr. Clase would throw without inside information.[2]

[2] As explained below, the government waited until the day that motion *in limine* replies were due to disclose its intent to argue at trial that 18 of Mr. Clase's pitches were fraudulent and addressed it for the first time in its reply brief. Accordingly, a sur-reply to the government's motion *in limine* is appropriate and we respectfully request leave of the Court for the instant filing. *See Ramon v. Corp. City of N.Y.*, No. 17-CV-2307 (KAM), 2019 U.S. Dist. LEXIS 47406, at *4 (E.D.N.Y. Mar. 21, 2019) ("A sur-reply is appropriate only where the party against whom the sur-reply will be filed raises new arguments in its reply."); *United States v. Nekritin*, No. 10-CR-491(S-2) (KAM), 2011 U.S. Dist. LEXIS 64460, at *5 n.7 (E.D.N.Y. June 17, 2011) (considering sur-reply that was predicated on new *Brady* disclosures).

## I. BACKGROUND

### A. The Court Ordered the Government to Provide Mr. Clase with a List of the Pitches the Government Alleged Were Illegal.

During a status conference on January 15, 2026, the Court directed the government to identify the "pitches you claim are not legal pitches" in order to "make [a bill of particulars] unnecessary by giving [Mr. Clase's counsel] information that they could use to understand how to prepare the defense." Ex. A, Tx. Jan. 15, 2026 at 53-57. The government requested permission to withhold this information from the defense until the government's deadline to identify its trial exhibits (which the Court ultimately set for August 24, 2026 with respect to the current trial date of November 2, 2026; ECF No. 166). *Id.* at 55:13-14. The Court rejected the government's proposal as too late, and ordered the government to "provide the additional pitches that you claim are illegal pitches to Mr. Clase's attorney[s]" within two weeks. *Id.* at 55:21-56:1. The Court asked Mr. Clase's counsel whether it "could live with" the government producing a list without prejudice in that it may be subject to change. *Id.* at 56:5-6. Mr. Clase's counsel responded:

> Just to be clear, the defense has already identified at least or in excess of 250 pitches in which bets were placed and so the universe is great. And just to be clear, what will have to happen on the defense side, Your Honor, baseball is quite legal and gambling on baseball is also legal but for something that transforms as a result of those acts. So once the defense gets these accusations from the government, the defense will have to run down all of the surrounding circumstances for each of those pitches, the game circumstance, the opposing, the batter, the weather, all of that, consider expert testimony. We need substantial time to do that and so if we receive the government's list within two weeks in good faith and that's more or less the universe, yes, we can live with that . . . **But if [the pitch list] shifts dramatically over time, Your Honor, that would be a different thing**.

*Id.* at 56:7-25 (emphasis added). The Court then asked the government, "[d]o you expect it to shift dramatically over time?" *Id.* at 57:1-2. To which AUSA Sean Sherman responded, "No, Your Honor. We can provide a list. We just want to make sure that it's clear that as information continues

to develop as we prepare for trial, there may be some additional ones, it may change, so that's fine." *Id.* at 57:3-7.

### B. The Government Provided an Original List of 192 Alleged Illegal Pitches.

In response to the Court's clear instruction to identify allegedly illegal *pitches*, the government initially provided a list of 48 *dates*. Ex. B, Gov't Jan. 29 Letter. Specifically, two weeks after the status conference, the government sent a letter stating that it "anticipates that it will prove at trial that pitches thrown by defendant Clase on one or more of [48 dates] were in furtherance of the scheme charged in the indictment." *Id.* The government then tasked the defense with "referencing the sports betting data" provided in discovery (which consisted of dozens of disparate spreadsheets) and "filtering by the above dates" to identify potentially at issue pitches. *See id.*

On February 5, 2026, after a meet and confer where the defense explained that the government's letter did not comply with the Court's instruction, the government provided "a list of pitches . . . that the government may prove at trial were thrown by defendant Clase in furtherance of the charged schemes" (the "Original List"). Ex. C, Gov't Feb. 5 Letter. The Original List included 192 pitches thrown on 48 unique dates. Nowhere in its letter did the government claim that these pitches were merely under investigation or otherwise define the list as anything other than the government complying with the Court's order to identify "the pitches that you claim are illegal pitches." Ex. A at 55:22-23.

### C. Within Days of the Original List, Bettor-1 Affirmed that 144 of the 192 Alleged Illegal Pitches Were Not Criminal, and the Government Suppressed This *Brady* Information for More Than Six Months.

Ten days after the government provided the Original List, on February 19, 2026, AUSA Eric Silverberg, another (now-former) AUSA, and two FBI agents debriefed Bettor-1, the only

witness who will claim he received inside information from Mr. Clase. Ex. D, FBI 302 Report of Feb. 19, 2026 Interview of Bettor 1. Bettor-1 told the government there were many times he did not have inside information but lied to others that a bet was fixed, admitting: "[Bettor-1] would bet all the time and give information to [my] group of friends. [Bettor-1] was just trying to make money. [Bettor-1] did not always have exact certainty on a pitch." *Id.* at 10. Bettor-1 acknowledged that he told his "friends"—the Bettors alleged as unindicted co-conspirators in the indictment—to place bets on pitches "[Bettor-1] was highly confident" he could predict based on his own analysis, not information from Mr. Clase. *Id.* at 10, 14. Bettor-1 stated, "[t]here were a lot of times [Bettor-1] would sit down and look at the game and know what was going to happen without inside information." Despite Bettor-1 admitting that he falsely told the Bettors he possessed inside information, Bettor-1 told the government he did not view his false statements "as a lie because [Bettor-1] was sure [his prediction made without inside information] was going to happen." *Id.*

Bettor-1 further admitted that he told the Bettors—none of whom communicated with Mr. Clase—"information about a pitch without [Bettor-1] knowing how Clase was going to pitch." *Id.* at 9. The Bettors "did not know about this, but [Bettor-1] knew what the most probable pitch was" and Bettor-1 provided one pitch based on what Bettor-1 claimed was "inside information . . . [while t]he second pitch was based on Bettor-1's own assessment." *Id.* In other words, Bettor-1 lied to the Bettors "by giving the [false] impression that both pitches were fixed." *Id.* at 9. Bettor-1 provided the motivation for his lies, by admitting he told the Bettors that money Bettor-1 collected from the Bettors "would go to Clase. This was a lie. In reality, [Bettor-1] intended to keep all the money they sent for himself. [Bettor-1] told [the Bettors] the money was for Clase, but this was a lie." *Id.* at 12. Critically, Bettor-1 admitted, "**Clase would never give [Bettor-1] two fixed pitches in a**

**game**."[3] *Id.* at 10 (emphasis added). However, Bettor-1 lied to the Bettors and claimed that he possessed inside information about a "second one to make more money." *Id.*

As detailed in Mr. Clase's motion for Brady sanctions, ECF No. 223, the Government unlawfully suppressed this *Brady* information for more than six months, until August 21, 2026, in direct violation of the Court's 5(f) Order.

### D. The Government Amended its Original Pitch List in a Transparent Effort to Prejudice Mr. Clase's Trial Preparations and Preclude the Jury from Receiving Critical Context that Exculpates Mr. Clase.

On September 18, 2026—seven months and ten days after receiving wildly exculpatory *Brady* information from Bettor-1, three weeks after the deadline for motions *in limine*, and a week after Mr. Clase's responses to the government's motions *in limine* were due—the government disclosed new *Brady* information that it was withdrawing its previous allegation that 174 pitches from its Original List constituted criminal events. Specifically, without prior notice, the government sent Mr. Clase's counsel a letter containing a "list of potential pitches that may feature in the government's case at trial," which "supersedes the list that was previously provided." Ex. E,

[3] In addition to the FBI-302, the government also eventually produced raw notes from the interview. The notes were similarly suppressed for more than six months, and despite Mr. Clase's request for clarification, the government has refused to identify the author of the notes. However, the notes are equally unequivocal that Bettor-1 told the AUSAs and agents that he "did not need [inside] info to win with [C]lase." 3500-EP-015A. The notes make clear that the AUSAs and agents sought to rehabilitate Bettor-1's statement that he never received inside information twice in the same game, but Bettor-1 was unequivocal that "he added the second one to make more money" because Bettor-1 "thought both would win and needed money," so Bettor-1 falsely told the Bettors that Bettor-1 "needed to pay Clase." *Id.*

Gov't September 18, 2026 Letter (the "Amended List").[4] Even though the Amended List removed 174 of the 192 pitches the government originally alleged to be criminal, *a reduction of 92%*, the government provided no explanation whatsoever for the change in its position.[5]

The dramatic shift in the government's allegations can only be explained one of three ways: (1) the government initially identified scores of pitches as allegedly criminal without a good-faith basis for doing so, thereby imposing substantial and unnecessary burdens on Mr. Clase's trial preparation; (2) the government subsequently obtained exculpatory information that undermined its prior allegations and caused it to abandon the overwhelming majority of the pitches it previously characterized as evidence of criminal conduct; or (3) both. While any of those possibilities raises serious concerns and squarely implicates the government's continuing obligation to disclose material exculpatory and impeachment information under *Brady*, the record points unmistakably to the third explanation.[6] The government issued the Original List before fully debriefing its only witness with alleged firsthand knowledge of fixed pitches, Bettor-1 (which itself is problematic

---

[4] The government designated the Original List as sensitive and subject to the protective order. But any claim that the government's pitch allegations must remain shielded from public view was extinguished when the government filed its Amended List on the public docket. Having chosen to publicize its current allegation that Mr. Clase fixed 18 pitches—and having predictably generated adverse press coverage repeating those sensational accusations without the necessary exculpatory context—the government cannot fairly prevent Mr. Clase from filing the Original List as part of the same public record. *See*, *e.g.*, https://www.espn.com/mlb/story/_/id/49980924/emmanuel-clase-luis-ortiz-trial-rigged-pitches-list-prosecutors. The public record should not present only the government's revised accusation. If the public is to be told that the government now claims Mr. Clase fixed 18 pitches, it should also be told that the government previously accused him of fixing 192 pitches, only to abandon 174 of those allegations after suppressing exculpatory evidence for more than six months.

[5] Nor has the government provided an explanation for how it intends to square Bettor-1's statement that Mr. Clase would *never* give Bettor-1 two fixed pitches in a game with its inclusion of two pitches from the same game on May 30, 2023.

[6] Given these concerns, immediately upon receiving the Amended List, Mr. Clase sent the government a letter requesting: (1) a written summary identifying the factual basis on which the government included each of the 192 pitches on its initial list; and (2) a written summary of all exculpatory or impeachment information, together with all related reports, memoranda, notes, and other materials, that caused the government to withdraw its allegation that the 174 pitches omitted from its revised list were thrown in furtherance of the charged schemes. *See*, Ex. F, Mr. Clase's Sept. 18, 2026 Letter. Other than sending an amended letter fixing the government's failure to even track the 12 pitches the government alleged in the indictment were crimes—an error identified to the government by the defense—the government has not responded to Mr. Clase's letter.

given that, prior to the debrief, the government had twice gone to the grand jury to seek an indictment, and informed the Court that discovery was substantially complete and that it was ready for trial), obtained plainly exculpatory information within days of producing that list, and then suppressed that information for the more than half of a year—all with the knowledge that Mr. Clase continued to prepare to defend against allegations the government knew for months, and now concedes, it cannot sustain. That sequence caused precisely the prejudice the Court sought to avoid, forcing Mr. Clase to expend substantial time and resources responding to accusations the government lacked a good-faith basis to make in the first place and knew shortly thereafter it could not prove.

Equally troubling, the government used its letter to try to recast its Original List, not as the list of alleged illegal pitches the Court ordered it to provide within two weeks of the January 15, 2026 status, but rather "a preliminary list of potential pitches it was investigating." Ex. E at 1. Nowhere in the letter providing its Original List did the government suggest that it was merely "investigating" the 192 pitches such that it may later withdraw any of them—much less, almost all of them.

## II. LAW AND ARGUMENT

### A. The Government's Repeated Misconduct in Violation of Its *Brady* Obligations and the Court's Orders Warrants Severe Sanctions.

The actions detailed in Mr. Clase's and Mr. Ortiz's motions, ECF Nos. 223 and 237, plainly establish that the government willfully violated a Court order and suppressed *Brady* information for months. That conduct alone warranted sanctions. The newly revealed misconduct reinforces the conclusion that this government team will continue to defy the Court's Orders and fundamental constitutional and due process principles unless appropriately deterred.

Mr. Clase has spent the last seven months diligently preparing for a trial that the government dramatically shifted at the last moment through its misconduct. Mr. Clase has no burden, yet he engaged two separate experts and spent countless hours and substantial money preparing a defense case that will definitively establish the government cannot meet its burden to prove any of the 192 pitches identified in the Original List were executions of a fraud scheme.[7] These efforts were largely wasted, causing Mr. Clase to suffer immeasurable prejudice.[8] Within ten days of producing the Original List, the government knew it could not prove that 144 of the 192 identified pitches were criminal at all. Each of those 144 pitches corresponded to a second-or-later bet in the same game—some as late as the *seventeenth* wager in the same game—even though Bettor-1 told the government that no game ever involved more than one wager based on alleged inside information. That admission eliminated any good-faith basis to continue treating those 144 pitches as criminal conduct.

Rather than provide a prompt *Brady* disclosure, the government unlawfully suppressed this information for more than six months until it disclosed the report of Bettor-1's interview. Equally disturbing, the government did not withdraw its knowingly false allegation that 174 pitches were crimes until it was too late for Mr. Clase to incorporate that withdrawal into his expert disclosures, motions *in limine*, or responses to the government's abusive motions, including its attempt to force

[7] While the government is not entitled to this information, if useful to the Court's analysis and determination of appropriate sanctions, and with the express understanding that it would not constitute a waiver of any applicable privilege or protection, Mr. Clase is willing to provide a summary describing the number of hours and associated cost of Mr. Clase's efforts to prepare for a trial involving 192 alleged criminal pitches, as well as the cost of responding to the government's abusive attempts to disqualify his counsel and use of the grand jury to obtain privileged materials based, in part, on allegations the government's long-suppressed *Brady* disclosures definitively established as untrue. *See United States v. Zolin*, 491 U.S. 554, 568-69 (1989) ("[D]isclosure of allegedly privileged materials to the district court for purposes of determining the merits of a claim of privilege does not have the legal effect of terminating the privilege.").

[8] Mr. Clase persists in his specific objection to any continuance of the trial because it will irreparably harm his prospects of resuming his MLB career. Mr. Clase should not be forced to suffer more prejudice in response to the *Brady* violations singlehandedly caused by the government. Instead, exclusion of evidence and adverse inference instructions are the sanctions contemplated by the 5(f) Order that are necessary and warranted.

the jury to decide this case without the benefit of understanding how baseball works. In fact, it appears likely the government only amended its Original List after Mr. Clase alerted the Court in his motion seeking *Brady* sanctions that Bettor-1's statements made it impossible for the government to prove that 144 of the 192 pitches were crimes.[9] While it is obvious that Bettor-1's admissions about lying to the Bettors about ever receiving two or more fixed pitches in the same game negated 144 of these acts, the government has not confirmed in any communication to Mr. Clase's counsel that Bettor-1's statements were the cause of the government withdrawing its false allegations. In addition to the withdrawn 144 same-game pitches, the government has not provided any explanation or identified specific *Brady* information that led to it withdrawing the 30 additional pitches that were on the Original List but are not on the Amended List.

The government's actions are simply outrageous. The conduct of the assigned AUSAs violates due process, makes a mockery of the Court's 5(f) Order, and is completely opposite of the assurance AUSA Sherman provided to the Court that the government would not play games to prejudice Mr. Clase's trial preparations.

At this stage, Mr. Clase should possess *all* information in the case because the last remaining discovery deadline set by the Court—which required the production of all 3500 materials—came and went on September 18, 2026. If the government still possesses information, exculpatory, impeaching, or otherwise, that it has not provided to Mr. Clase, it is in violation of yet another Court order. Accordingly, ordering the government to produce information is fully

[9] See ECF 223 at 9 n. 4 ("The government's flagrantly improper efforts to frustrate Mr. Clase's trial preparation extends to something as basic as identifying which pitches it alleges were criminal acts. After repeated defense requests and multiple admonishments from the Court, on February 5, 2026, the government issued a letter containing a list of 192 pitches it *may* allege were fixed. But the government expressly reserved the right to revise that list and, despite repeated follow-up requests from Mr. Clase, has refused to say whether the list is accurate, overinclusive, underinclusive, or final. For context, the 192 subject pitches were thrown on only 48 unique dates. While the government will be unable to prove beyond a reasonable doubt that Mr. Clase fixed any pitches at all, the government's own star witness directly refuted approximately 144 of the 192 acts the government alleged were crimes based on this sole piece of *Brady* information, and the government covered that fact up for more than six months.")

redundant to an obligation that should have already been fulfilled, and therefore not an appropriate sanction. Instead, extraordinary sanctions are necessary to address the government's repeated violations of the Court's Orders—which need not be willful to warrant relief (although they are here)—and to remedy the extraordinary prejudice those violations have inflicted on Mr. Clase.

The sanction most directly tied to the government's misconduct is preclusion of Bettor-1's testimony. The government suppressed exculpatory information from Bettor-1 that would have fundamentally changed Mr. Clase's trial preparation. As a result, Mr. Clase spent more than six months preparing to defend against a case the government already knew it cannot prove and therefore will not bring. This was no mere harmless oversight, and the Court should infer that this suppression was intentional. The government obtained the relevant *Brady* information within ten days of making its accusations yet withheld it for more than six months and did not withdraw its false allegations about the number of allegedly fixed pitches until after Mr. Clase exposed their falsity to the Court. Given the timing, the violation of multiple applicable Court Orders and admonishments, and the direct causal connection between the prejudice to Mr. Clase and Bettor-1's suppressed statements, precluding Bettor-1's testimony is appropriate and necessary.

Similarly, the jury is going to be asked to decide whether the government's alleged proof is sufficient to meet its burden to establish that Mr. Clase specifically intended to defraud betting companies, deprive the Guardians of his honest services, and launder fraud proceeds. In making that assessment and weighing the credibility of the government's presentation, the jury should be made aware that the government suppressed information favorable to the defense and instructed that it may draw an adverse inference that the information was suppressed because it weakened the veracity of the government's allegations.

These sanctions are both expressly contemplated by the Court's 5(f) Order, and given the magnitude of the *Brady* violations, they are the only sanctions that are sufficient, but not greater than necessary, to cure the still-continuing prejudice, specifically deter this prosecution team from further misconduct in this case, and generally deter comparable government misconduct in future cases.

### B. The Government's Misconduct Highlights the Reasons Why the Jury Must Receive Non-Cumulative Evidence of Analogous Pitches to Determine Whether the Pitches in the Amended List Were Crimes.

The government's own conduct demonstrates why its effort to preclude Mr. Clase from presenting evidence of other pitches is untenable. Even setting aside the substantial likelihood that the government's Original Pitch list was not offered in good faith, the government's shifting position proves the fallacy of its motion to exclude: with virtually unlimited investigative resources and access to all evidence and surrounding context, it took the government seven months to decide whether 174 pitches were supposed criminal acts or ordinary pitches thrown in a baseball game. Yet the government now asks the Court to force the jury to decide (in a matter of hours or days of deliberation) whether the remaining 18 pitches were crimes in a vacuum, without the comparative evidence and baseball context necessary to make that determination fairly. *See* Gov't Reply at 9-12, ECF No. 241. That position would give the government the unilateral power to designate ordinary sporting conduct as criminal while preventing Mr. Clase from showing why those same types of pitches were consistent with legitimate baseball strategy. The government's attempt to narrow the trial record in this manner reflects the weakness of its proof, not any legitimate evidentiary principle.

The government's reliance on healthcare-fraud cases, *see id.* at 10, misses the point. In a Medicare-fraud prosecution, the legitimacy of a claim does not depend on comparison with other

claims and instead generally turns on whether information within the four corners of the claim complied with the robust regulatory framework that dictates what the government will and will not pay for: *e.g.*, whether a service was actually performed, whether it was medically necessary, whether the billing code accurately reflected the service provided, and whether the defendant submitted the claim knowing and intending that it failed to satisfy those objective regulatory requirements. This case is fundamentally different. There is no statute or regulation that requires or precludes a pitcher from throwing a fastball rather than a slider on an 0-0 count, hitting an intended target, missing a target, or choosing a pitch sequence that sophisticated baseball observers may be able to anticipate. The jury therefore cannot evaluate the government's theory of criminality by examining isolated pitches divorced from the game situations in which they occurred. The jury must be permitted to consider the baseball context that explains why those pitches were thrown and whether they were consistent with a legitimate, competitive, and at times, predictable strategy inconsistent with a specific intent to defraud. *See United States v. Cardenas*, 167 F.4th 569, 579 (2d Cir. 2026) (explaining that a defendant may admit evidence of other acts that "bear[] directly on [the defendant's] state of mind" because "[t]hat is not a propensity-based inference" and vacating the defendant's conviction because there was a substantial likelihood that other acts evidence excluded by the district court would have changed the jury's assessment of the defendant's intent).

That context is particularly important because the government will ask the jury to infer that Bettors won certain wagers only because they possessed inside information. Mr. Clase's defense is ***not*** that he acted in conformity with some generalized character for lawful conduct; it is that Bettor-1 used knowledge of baseball strategy, pitch sequencing, hitter tendencies, and Mr. Clase's own tendencies to predict what Mr. Clase would throw, and then falsely claimed to other Bettors

that those predictions were based on inside information.[10] That defense is consistent with Bettor-1's pre-charge declaration that he was often able to predict what Mr. Clase would throw because he only threw two pitches, and Bettor-1 closely studied his tendencies and used artificial intelligence to review how Mr. Clase approached certain batters and situations. Equally important, Mr. Clase's defense is consistent with the government's own *Brady* disclosures—which the government unlawfully suppressed for more than six months in direct violation of the Court's 5(f) Order, giving rise to the necessity of this supplement—admitting that Bettor-1 not only lied to the other Bettors about possessing inside information, but was so confident in his predictions that he did not even view his false claims as lies. Mr. Clase must be permitted to show the jury firsthand how and why Bettor-1 was, at times, able to make successful predictions. This evidence, which is neither cumulative nor offered to show propensity, is "central to the defense" and its exclusion at trial would constitute reversible error. *See Cardenas*, 167 F.4th at 580 (reversing conviction where excluded other-acts evidence "served a distinct and critical function" in a trial where "intent was the central disputed issue").

Similarly, the government's abusive exclusionary effort would even preclude the jury from seeing the pitches that Bettor-1 and the other Bettors wagered on and lost, many of which were included in the government's Original List. Losing bets are completely inconsistent with inside information, and the jury must receive the totality of the circumstances to understand that Bettor-1 did what all gamblers do—he predicted what he thought would happen, placed his bets (and caused the Bettors to place the same bets so Bettor-1 could enjoy any profits through his dual, admitted lies of claiming inside information and that he was paying Mr. Clase with money from the Bettors that he was actually keeping for himself), and ultimately won some bets and lost others.

[10] Mr. Clase is absolutely not required to disclose his trial strategy. The fact that he must divulge this information to prevent the unjust trial the government asks this Court to impose is yet another form of prejudice to Mr. Clase.

Moreover, the government's disclosures further confirm that Bettor-1 cannot even reliably remember or identify which pitches he now claims were fixed. For example, just last week, the government met with Bettor-1 and reminded him that he previously told the government that May 19, 2023 was the first time he bet on an alleged fixed pitch.[11] Ex. G, Notes from Sept. 14, 2026 Trial Prep at 1. His response now: "[N]ot possible." *Id.* The government met with Bettor-1 again the next day and asked about a pitch from June 9, 2023. *Id.* at 2. His response: "[P]ossible but not sure if fixed pitch." *Id.* Despite Bettor-1's retraction and equivocation, the government included both pitches on its Amended List. *See* Ex. G. Mr. Clase must be permitted to confront Bettor-1, and other witnesses, not just with the government's impermissibly narrow list, but with an appropriate (and non-cumulative) variety of comparable pitches to show the tendencies and baseball strategy that allowed Bettor-1 to make successful predictions and convince others that he possessed inside information when he did not. Said differently, the government claims that it once believed that 174 pitches were not just relevant to the trial, but actual crimes, until it reviewed the totality of circumstances and determined they were not. The government now claims that even those 174 pitches are inadmissible to the jury because they are merely impermissible "good acts" and could not possibly be used to challenge the veracity of the government's ever-changing positions. Once again, this is simply outrageous. For the same reasons the government needed to review a broader set of pitches to determine whether a subset were crimes, so does the jury.

That need for comparative context applies to multiple layers of required analysis by the jury: the jury must be permitted to evaluate analogous pitches not only from the Bettors' perspectives, but also from Mr. Clase's perspective. With respect to the Bettors' perspectives, considering comparable pitches will allow the jury to decide whether winning bets must have been

[11] Bettor-1 made this statement in a September 3, 2025 proffer. *See* Ex. H, FBI 302 Report from Sept. 3, 2025 Proffer of Bettor-1. Nevertheless, the Original List contained 19 pitches that occurred before May 19, 2023. *See* Ex. C.

the product of illicit information (as the government claims) or whether the same results could have been achieved by ordinary baseball analysis. Bettor-1 directly told the government that the latter was true in his long-suppressed interview with the AUSAs and agents. Bettor-1 admitted that he was so good at predicting what Mr. Clase would throw, that he assumed the Bettors must have believed he had information even when he was lying and did not. Mr. Clase must be permitted to demonstrate this phenomena to the jury directly by showing the jurors pitches on which successful bets were placed and near-identical pitches in analogous situations that drew no bets at all from the Bettors, thereby precluding any influence of fraud and corroborating Bettor-1's statements that Mr. Clase's pitches often fell into a predictable (yet still successful for baseball purposes) pattern. The relevancy of this evidence is underscored by Dr. Deshpande's expert opinions that the Bettors were statistically no more successful predicting the outcome of Mr. Clase's pitches than was the general public.

With respect to Mr. Clase's perspective, the jury's consideration of comparable pitches will inform their determination of why he made specific pitching decisions in particular situations. If Mr. Clase threw the same or similar pitches in comparable game circumstances when no one contends those pitches were fixed, that evidence directly bears on whether the charged pitches reflected criminal intent to defraud or ordinary efforts to retire major-league hitters.

Moreover, the government alleged an honest services fraud conspiracy. This charge will require the jury to determine whether Mr. Clase accepted a bribe to betray the duty of loyalty he owed to the Guardians. *United States v. Nouri*, 711 F.3d 129, 139 (2d Cir. 2013). This absolutely requires the jury to decide whether pitches were thrown for baseball or fraudulent purposes, and the jury cannot make that determination without understanding what constitutes a sound baseball pitch in the first instance—knowledge that can only be obtained by the jury observing example

pitches the government has not claimed were thrown to further a scheme. Excluding that evidence would leave the jury with a distorted record and invite precisely the type of speculative inference the rules of evidence are designed to prevent.

## CONCLUSION

For these reasons, Mr. Clase respectfully requests that the Court sanction the government for its misconduct and deny the government's motions *in limine*.

Respectfully submitted,

/s/ *Michael Ferrara*

Michael Ferrara (*pro hac vice*)
Lindsay K. Gerdes (NY Bar No. 4581690)
Michael J. Bronson (*pro hac vice*)
J. Riley Able (*pro hac vice*)
Dinsmore & Shohl LLP
255 East Fifth Street, Suite 1900
Cincinnati, OH 45202

***Counsel for Emmanuel Clase***

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2026, the foregoing document was filed in this matter using the Court's electronic filing system, and that an unredacted copy was served on all counsel of record via email.

/s/ *Michael Ferrara*
Michael Ferrara (*pro hac vice*)
Dinsmore & Shohl LLP
255 East Fifth Street, Suite 1900
Cincinnati, OH 45202
Phone: (614) 628-6975
michael.ferrara@dinsmore.com

***Counsel for Emmanuel Clase***