**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EMMANUEL CLASE DE LA CRUZ,<br><br>Defendant. | Case No. 25-CR-346 (S-1) (KAM) |

**DEFENDANT EMMANUEL CLASE DE LA CRUZ'S REPLY IN SUPPORT OF RENEWED MOTION TO COMPEL THE PRODUCTION OF EXCULPATORY *BRADY* MATERIALS AND REQUEST FOR SANCTIONS AND OTHER RELIEF**

The government's opposition confirms the central facts supporting Mr. Clase's motion. The government learned in February 2026 that its key cooperating witness, Bettor-1, admitted that he fabricated inside information attributed to Mr. Clase, falsely represented that pitches were fixed, and lied about sending betting proceeds to Mr. Clase. Those admissions directly negate the government's allegations that wagers resulted from information supplied by Mr. Clase and that Mr. Clase received proceeds from the scheme. Those admissions do not merely impeach Bettor-1. They directly negate essential components of the government's case. That is *Brady*.

Instead of disclosing the *Brady* information "promptly after" it became known to the government, as required by the Rule 5(f) Order governing this case, the government withheld the *Brady* information and other admissions (collectively, the "Suppressed Information") for over six months.

The government's opposition rests on three false premises: (1) knowledge of a witness's identity satisfies *Brady* in every case; (2) exculpatory information becomes mere impeachment material whenever a witness has also made inculpatory statements; and (3) the Court's 5(f) Order

is of no moment because the government did not have any obligation to disclose *Brady* material pre-trial. That is not the law. The Court should issue sanctions directed at the source and consequences of the government's *Brady* violation, including preclusion of the affected testimony, an adverse-inference instruction, sanctions against the responsible attorneys, and the additional relief requested in Mr. Clase's motion.

# I. LAW AND ARGUMENT

## A. The Government Did Not Disclose the "Essential Facts" of Witness Statements.

The government repeatedly draws a false equivalency between knowledge of witness identities with knowledge of the Suppressed Information. *See* U.S. Opp. at 15-20. According to the government, "[h]ad the government merely noticed Bettor-1 as a witness with potentially exculpatory information, that alone would have sufficed under *Brady.*" *Id.* at 16-17 (citing *United States v. Le Roy*, 687 F.2d 610, 618-19 (2d Cir. 1982)). Not so. Momentarily leaving to the side that the government's position would render the Court powerless to enforce its own 5(f) Order, the question under *Le Roy* is whether the defendant knows "the essential facts permitting him to take advantage of any exculpatory evidence." *Le Roy*, 687 F.2d at 618. In *Le Roy*, the government disclosed grand jury testimony from a witness who testified that he and three others were instructed by a third party to lie before the grand jury. *Id.* There was no *Brady* violation because the defendant was on notice that the three others "might have testified before the grand jury and that their statements might have supported his defense." *Id.* Here, identifying Bettor-1 is not the same as disclosing the government's knowledge that Bettor-1 admitted fabricating the very information attributed to Mr. Clase that forms the essential element of all charged offenses. *Cf. United States v. Espinal*, 96 F. Supp. 3d 53, 68 (S.D.N.Y. 2015) ("Merely providing the name of a witness who has said something exculpatory in the grand jury is not the equivalent of disclosing the exculpatory information."). Likewise, identifying Bettor-3 is not the same as disclosing that Bettor-3 (and

others) repeatedly denied that Bettor-3 knew Mr. Clase—a fact that the government alleged formed the basis of its attempt to disqualify counsel and obtain privileged materials.

Nor are Bettor-1's February admissions cumulative of his earlier categorical denials. *Cf.* U.S. Opp. at 17. The February account provided material facts about *how* Bettor-1 falsely created the appearance of a scheme for his own benefit. Knowing Bettor-1's identity and possessing general denials did not give Mr. Clase these essential facts. And the government's non-specific notice in January 2025 that Bettor-1 had made inconsistent statements that the government would disclose as *Giglio* did not reveal that Bettor-1 admitted inventing inside information, misleading downstream bettors, or lying about money supposedly intended for Mr. Clase. *Cf. id.* at 16. The government must disclose *Brady* information "in a manner that gives the defendant a reasonable opportunity either to use the evidence in the trial or to use the information to obtain evidence for use in the trial." *See United States v. Rodriguez*, 496 F.3d 221, 226 (2d Cir. 2007). And "[e]ven assuming the government is not required to provide more than a name, once it elects to provide more it must do in a straightforward and non-misleading manner." *Espinal*, 96 F. Supp. 3d at 68-69 (rejecting disclosures that "never explicitly purported to be comprehensive accounts of statements made by the witnesses" but "certainly belied the true extent of the exculpatory content"). A statement that undisclosed inconsistencies exist does not provide the substance needed to investigate which alleged tips were fabricated, which Bettors relied on them, or how the admissions affect the government's identification of allegedly fixed pitches.

The government's production of full device extractions likewise did not disclose what Bettor-1 told the FBI and prosecutors. *Cf.* U.S. Opp. at 9. The government cites the production of entire devices belonging to Bettor-1 and his brother, but the relevant information the government suppressed was Bettor-1's explanation, made directly to the assigned AUSAs and agents, that he

fabricated inside information and the destination of kickbacks. Producing underlying communications does not disclose a later admission concerning why those communications were sent or whether the information was truthful. Even if these explanations were in the produced communications (they were not), the Second Circuit has cautioned that a voluminous production does not automatically discharge the government's duty where favorable information is effectively buried in an undifferentiated mass. *United States v. Tang Yuk*, 885 F.3d 57, 85 (2d Cir. 2018). Here, the problem is more fundamental: the undifferentiated mass did not disclose Bettor-1's February admissions at all, nor could it because the exculpatory information was provided orally, privately, and directly to the prosecution team, approximately 7 months after Bettor-1's devices were seized.

Nor did the disclosure of Bettor-1's counsel reveal what Bettor-1 told the FBI or prosecutors. As the government is well aware, counsel for Bettor-1 informed the defense that he could not discuss Bettor-1. *See* ECF No. 252. Counsel would not even disclose whether Bettor-1 was cooperating with the government, let alone the substance of any information he may have provided, including exculpatory information. *Cf. Espinal*, 96 F. Supp. 3d at 68 (recognizing that a "witness may not be willing to speak to the defendant or defense counsel, and even if he is willing to talk, he may say something different from what he said" previously). The defense therefore had no meaningful ability to obtain that information from Bettor-1 or his counsel.

**B. The Suppressed Information Is Substantively Exculpatory, Not Merely Impeachment Material.**

The Suppressed Information is exculpatory *Brady* material, not *Giglio*. "The former directly tends to lessen a defendant's guilt, *e.g.,* a statement from another person which tends to relieve the defendant of responsibility for the crime, and the latter to *witness credibility* type evidence of a *collateral* nature, *e.g.*, evidence that the government's witness who is implicating the defendant is not to be trusted in his implications because of bias, previous misrepresentations

in similar matters, and so forth, *i.e.*, indirectly making it less likely that the defendant is guilty." *United States v. Hopkins*, No. S-05-0538 EJG (GGH), 2008 U.S. Dist. LEXIS 87434, at *4 (E.D. Cal. Oct. 3, 2008). *Giglio* material is ubiquitous with cooperating witnesses. *Brady* material is not, particularly once a witness is represented and is proffering with the government, as was the case with Bettor-1. The government knew or should have known that Bettor-1's statements were exculpatory, and there is no good-faith explanation for the government's conduct in withholding Bettor-1's statements. *See United States v. Nejad*, 521 F. Supp. 3d 438, 450 (S.D.N.Y. 2021) ("It is imperative that prosecutors fulfill their constitutional and ethical obligations with the same zeal with which they pursue convictions—not reluctantly, not only after prodding, and not with measured half-truths.").

The government's theory of criminal liability requires it to prove that Mr. Clase supplied advance information about pitches, which Bettor-1 transmitted to others for wagering. Bettor-1 supplied a different explanation. He admitted that he studied games, predicted pitches without inside information, and falsely represented those predictions to downstream Bettors as fixed.[1] That evidence supports the defense whether or not the jury treats Bettor-1 generally as credible. A jury could accept his admission that he fabricated inside information and conclude that particular wagers resulted from Bettor-1's predictions and lies, not any conspiracy with Mr. Clase. *See United States v. Triumph Capital Grp., Inc.*, 544 F.3d 149, 164 (2d Cir. 2008) (reversing conviction where suppressed evidence "directly tend[ed] to negate the intent element").

[1] The assigned AUSAs had an ethical obligation to disclose Bettor-1's admissions, which materially contradict his anticipated trial testimony that he received inside information and paid kickbacks to Mr. Clase, because a "prosecutor's knowing failure to disclose that testimony used to convict the defendant was false . . . [constitutes] a corruption of the truth-seeking function of the trial process." *United States v. Bagley*, 473 U.S. 667, 678-80 (1985) (internal quotations and citations omitted).

The same is true of Bettor-1's admission concerning money. The government alleges that Mr. Clase received scheme proceeds as part of the charged fraud and money laundering conspiracies and must prove a *quid pro quo* to sustain its honest services fraud allegations. Bettor-1 admitted that his representations to the Bettors that money was destined for Mr. Clase "was a lie" and that he intended to keep the money himself. That statement affirmatively negates the alleged transfer of proceeds. Its relevance does not depend on using one statement merely to discredit another. *Cf. United States v. Rivas*, 377 F.3d 195, 199-200 (2d Cir. 2004) (ordering new trial where the government suppressed a witness's admission, made during trial prep with the prosecution team, that he carried drugs aboard a ship supported defense's account, even though it remained compatible with other accusations against defendant).

Bettor-1's one-pitch-per-game admission is equally substantive. The government initially identified 192 alleged illegal pitches, including 144 second-or-later wagers within the same games, even though Bettor-1 told the prosecution that Mr. Clase would never provide two fixed pitches in a game. That admission does not merely impeach Bettor-1. It excludes an entire category of alleged acts from his claimed receipt of inside information and supplies an innocent explanation—Bettor-1's own analysis—for the resulting wagers.[2] *See United States v. Mahaffy*, 693 F.3d 113, 130-31, 135 (2d Cir. 2012) (finding that withheld testimony supported the defense, despite aspects being consistent with prosecution's theory).

The remaining statements negate relationships, knowledge, and communications that are central to the government's theory. Bettor-4 stated that he did not know whether Bettor-1 communicated directly with Mr. Clase and did not think they knew one another from the

[2] This exculpatory admission is material to the entirety of the government's allegations that must be proven through Bettor-1, the sole witness who will claim to possess inside information. However, the admission is material even to the jury's consideration of the government's Amended List, which still includes two alleged illegal pitches from the same game. *See* ECF No. 247 Ex. E.

Dominican Republic. Bettor-1's brother stated that he was not a gambler, did not know how sports betting worked, and was unaware of Bettor-1's relationships with baseball players. Bettor-1 stated that Bettor-3 and Mr. Clase did not know each other, and Bettor-3 himself initially likewise denied meeting Mr. Clase. Those statements substantively weaken the government's alleged network by negating firsthand knowledge of its asserted relationships and information flow. They also contradicted the factual premise the government advanced when it alleged that Mr. Clase concealed a relationship with Bettor-3 and invoked that alleged concealment to pursue privileged material and disqualification of counsel. Their materiality is therefore not confined to witness credibility.

The government misrepresents this Court's prior holding on the Defendants' original *Brady* motions. According to the government, this Court held that any exculpatory statements occurring before inculpatory statements "fall under *Giglio*." U.S. Opp. at 20 (quoting *United States v. De La Cruz*, 818 F. Supp. 3d 472, 483 (E.D.N.Y. 2026)). That is not the case. Instead, the Court held that "the *inculpatory* statements made after the witnesses' exculpatory statements are inconsistent statements" that are "relevant to the credibility of the witnesses who have made those inconsistent statements." *Id.* Statements that directly negate a defendant's guilt do not cease to be exculpatory because a witness later changes his story. Exculpatory statements remain exculpatory regardless of what came before them or what came after them. Yet the Court declined to order the immediate production of such statements based on the government's "good faith representations that it is meeting its *Brady* obligations regarding exculpatory statements and Defendants have not provided a reason for the Court to doubt the government's representations." *Id.* at 484. Mr. Clase's motion establishes that the government did not meet its *Brady* obligations.

### C. The Government's General Timing Authorities Do Not Override the Rule 5(f) Order.

The government principally argues that *Brady* permits delayed disclosure so long as the defense receives favorable information in time to use it at trial, and that 73 days necessarily satisfies that standard. U.S. Opp. at 21-22. That argument answers the wrong question.

Mr. Clase seeks enforcement of a case-specific Rule 5(f) Order.[3] That Order required disclosure "promptly after" favorable information became known so that the defense could use it not merely at trial, but in the preparation of its case. Rule 5(f) Order at 1, ECF No. 21. It also authorized the Court to specify disclosure conditions, impose evidentiary or attorney sanctions, dismiss charges, or enter any other just order for noncompliance. *Id.* at 2. The government's cases address whether disclosure at or before trial avoided a constitutionally unfair trial under *Brady*. *See* U.S. Opp. at 22. They do not hold that the government may disregard a binding order requiring earlier, prompt disclosure.

### D. The Delayed Disclosure Caused Concrete Prejudice that the Time Before Trial Does Not Cure.

The government treats prejudice as a countdown—because disclosure occurred 73 days before trial, effective use is possible and there can be no prejudice. *See* U.S. Opp. at 21. The prejudice to Mr. Clase, however, is concrete. For more than six months, Mr. Clase prepared to

---

[3] As further explained in Mr. Ortiz's motion for *Brady* sanctions, ECF No. 236, Rule 5(f) exists because of *Brady*-based prosecutorial misconduct violations which occurred in a different high-profile criminal prosecution of a public figure. Following the dismissal of Senator Ted Stevens's conviction upon the direct request of the Attorney General, congressional inquiries examined findings that federal prosecutors had withheld material exculpatory and impeachment evidence, including the court-appointed Schuelke Report's conclusion that certain prosecutors intentionally concealed significant evidence from the defense. Senate and House Judiciary Committee hearings used the Stevens prosecution as the central example of why internal Department of Justice reforms were insufficient and why courts needed express authority to enforce prosecutors' existing *Brady* obligations. Congress responded by enacting the Due Process Protections Act of 2020, which added Federal Rule of Criminal Procedure 5(f) and now requires courts, at the first scheduled appearance of counsel, to enter an oral and written order confirming the prosecution's *Brady* obligations and warning of the consequences of noncompliance. *See generally* Committee on the Judiciary United States Senate - Hearing on the Special Counsel's Report on the Prosecution of Senator Ted Stevens, *available online at* https://www.judiciary.senate.gov/imo/media/doc/12-3-28SchuelkeTestimony.pdf.

defend 192 pitches identified by the government as potential criminal acts. Ten days after providing that list, the government learned from its central witness that many of those pitches could not have resulted from inside information because Bettor-1 was making his own predictions and falsely presenting them as fixed. The government withheld that information for six months and did not reduce its intended trial presentation to 18 pitches until September 18, 2026, after motions *in limine* were due. By then, Mr. Clase had devoted substantial expert resources, attorney time, and trial preparation to the government's far broader case.

A continuance would compound rather than cure that harm.[4] Mr. Clase is under contract for the next baseball season, and further delay threatens his ability to resume his career, transferring the cost of the government's violation to the defendant. Courts possess discretion to remedy prejudicial *Brady* delay through "an appropriate remedy, whether it be exclusion of the witness, limitations on the scope of permitted testimony, instructions to the jury, or even mistrial." *United States v. Burke*, 571 F.3d 1048, 1054 (10th Cir. 2009). The Court must not choose a purported remedy that deepens the prejudice and fails to address the harm already inflicted.

### E. The Requested Sanctions Are Tailored to the Violations and Resulting Prejudice.

The Rule 5(f) Order expressly identifies evidentiary sanctions, attorney sanctions, dismissal, and any other just relief as potential consequences of noncompliance. *See* Rule 5(f) Order at 1, ECF No. 21. The sanctions that Mr. Clase requested in his motion are tailored to the government's misconduct and just under the circumstances.

First, preclusion of Bettor-1 and other witnesses is not a request to suppress favorable evidence. *Cf.* U.S. Opp. at 24. It is a request to prevent the government from benefiting from its decision to withhold substantive admissions while the defense prepared against a substantially

[4] Despite the government's misconduct, Mr. Clase will be ready to begin trial on November 2, 2026. Mr. Clase has not waived his speedy trial rights and expressly objects to the continuance of the trial date.

broader case. Bettor-1 is the government's sole witness alleged to be a conduit for inside information, and his withheld statements directly caused the wasted pitch-by-pitch preparation and the late restructuring of the defense. Preclusion is particularly appropriate because a continuance would burden Mr. Clase, reward the government with additional preparation time, and threaten an irreparable professional injury.

Second, sanctions against the responsible government attorneys are appropriate. The government was ordered to promptly disclose exculpatory evidence in November 2025, reminded of its obligations in December 2025, expressly ordered to comply in January 2026, and instructed to disclose promptly material that presented a close call. Nevertheless, the government withheld Bettor-1's February 2026 admissions until August, waited until September to withdraw unsupportable allegations regarding 92% of its case, and disclosed additional *Giglio* information after the Court's August *Giglio* deadline. This is not an isolated administrative mistake. The nondisclosure persisted after repeated warnings, all while the government advanced positions contradicted by information in its possession and forced Mr. Clase to prepare for a case the government knew it could not prove. At minimum, the Court should require the responsible attorneys to explain under oath when they learned each item of Suppressed Information, why it was not disclosed under the Rule 5(f) Order, and what measures will prevent recurrence. Because the government has failed to offer a good faith explanation to date, he Court should impose such additional attorney sanctions as it finds warranted after that submission.

Third, the government represents that it has produced all *Giglio* and Section 3500 material presently in its possession and will continue rolling productions. U.S. Opp. at 25. Given the demonstrated misclassification of favorable evidence, the Court should convert that representation

into an enforceable order requiring immediate disclosure of any remaining favorable or witness-statement material and prompt supplementation as new information arises.

Fourth, the government argues that adverse-inference instructions are generally associated with lost or destroyed evidence. U.S. Opp. at 25. But courts have discretion to respond to prejudicial *Brady* delay with jury instructions. *Burke*, 571 F.3d at 1055. The Rule 5(f) Order likewise expressly authorizes evidentiary sanctions and any other just order. *See* Rule 5(f) Order at 1, ECF No. 21. An appropriately tailored instruction would permit the jury to consider the government's delayed disclosure when evaluating the reliability and completeness of its presentation. That remedy is tied to the harm: the government controlled favorable information while refining its allegations, preparing its cooperators, and allowing the defense to prepare against 192 pitches. The jury should not be left with the mistaken impression that the government's present 18-pitch case emerged from a complete and timely disclosure process.

Fifth, the Court should also order disclosure of the requested portions of Pretrial Services materials. The government's belated summaries of selected inconsistencies do not provide confidence that all favorable information has been identified, particularly where the same prosecution team repeatedly classified substantively exculpatory statements as mere impeachment "at best." *See* U.S. Opp. at 20. Transparency is especially appropriate where the filings concern misuse of the grand jury process, abusive motions for disqualification, and the administration of a criminal prosecution.

### F. The Government's Suppressed Information Highlights the Reasons Why the Jury Must Receive Non-Cumulative Evidence of Analogous Pitches to Determine Whether the Pitches in the Amended List Were Crimes.

The government failed to address the link between the Suppressed Information and the government's abusive attempt to preclude the jury from considering evidence of other pitches thrown by Mr. Clase. Instead, the government argues that the pitches it does not intend to present

at trial cannot be *Brady* information because the pitches may have actually been acts in furtherance of the charged conspiracy. *See* U.S. Opp. at 11, 23. The government cannot have it both ways—Mr. Clase's other pitches cannot be both acts in furtherance of a conspiracy *and* inadmissible "good acts." The Court should reject the government's attempt to be the sole arbiters of pitches that the jury can consider and, instead, find that non-cumulative evidence of pitches beyond the 18 in the government's list is admissible to inform the jury's consideration of (1) Mr. Clase's intent; (2) whether to credit Bettor-1's exculpatory admission that, based on past pitches, Bettor-1 was able to deduce Mr. Clase's forthcoming pitches with enough accuracy to convince other Bettors to pay Bettor-1 for non-existent inside information; and (3) the other non-propensity bases detailed in Mr. Clase's briefs, *see* ECF Nos. 221, 223, & 247.

## II. CONCLUSION

For the foregoing reasons, Mr. Clase respectfully requests that the Court grant his motion and issue the requested sanctions.

Respectfully submitted,

/s/ *Michael Ferrara*
Michael Ferrara (*pro hac vice*)
Lindsay K. Gerdes (NY Bar No. 4581690)
Michael J. Bronson (*pro hac vice*)
J. Riley Able (*pro hac vice*)
Dinsmore & Shohl LLP
255 East Fifth Street, Suite 1900
Cincinnati, OH 45202

***Counsel for Emmanuel Clase***

**CERTIFICATE OF SERVICE**

I hereby certify that on September 25, 2026, the foregoing document was filed in this matter using the Court's electronic filing system, which will provide notice to all counsel of record.

/s/ *Michael Ferrara*
Michael Ferrara (*pro hac vice*)
Dinsmore & Shohl LLP
255 East Fifth Street, Suite 1900
Cincinnati, OH 45202
Phone: (614) 628-6975
michael.ferrara@dinsmore.com

***Counsel for Emmanuel Clase***