United States District Court
Southern District of Texas
**ENTERED**
April 14, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| VS. | § | CRIMINAL NO. 4:25-CR-00415 |
| | § | |
| RAMON ALEXANDRO ROVIROSA | § | |
| MARTINEZ (1) | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER DISMISSING INDICTMENT AND GRANTING AN ACQUITTAL**

## I. INTRODUCTION

On or about August 6, 2025, the United States ("the government"), filed a sealed Indictment against defendants, Ramon Alexandro Rovirosa Martinez and Mario Alberto Avila Lizarraga (referred to hereafter as Rovirosa and Avila or defendant(s)).[1] The government alleges, that the defendants committed criminal acts in violation of Foreign Corrupt Practices Act of 1977 ("FCPA"). Title 15 U.S.C. § 78dd.1, *et. seq*.[2] In summary fashion, the Court sets out the claims and, generally, the facts that the government states support the Indictment.

## II. FACTUAL BASIS ASSERTED IN THE INDICTMENT

The period under consideration commences around June 2019 and continuing to October 2021. The Indictment alleges that the defendants engaged in a bribery scheme in which they offered,

---

[1] Because Mario Alberto Avila had not been arrested at the time of trial, the Court granted Rovirosa's motion to sever Avila from the case before proceeding to trial.

[2] In a four Count Indictment, the government charged the defendants with Conspiracy to violate and for violating the Foreign Corrupt Practices Act of 1977 ("FCPA") Title 15 U.S.C. § 78dd-1 *et. seq*. Generally, the FCPA makes it unlawful to act corruptly by offering; promising, authorizing, or paying money or offering anything of value, either directly or indirectly, to a foreign official for the purpose of obtaining or retaining business for, oneself or directing business to another person or entity.

Case 4:25-cr-00340 Document 127 Filed on 01/29/26 in TXSD Page 2 of 9

paid, promised to pay, and authorized the payment of bribes in the form of cash payments, luxury items, and other things of value, to and for the benefit of three foreign officials in Mexico, identified by the government only as Foreign Official #1, Foreign Official #2, and Foreign Official #3. These alleged bribes were in exchange for favorable actions taken by the foreign officials and other employees of PEMEX[3] and/or PEP in order for three Mexican companies to obtain and/or retain business with PEMEX and/or PEP.[4]

## III. THE PARTIES' CONTENTIONS

The government secured a four-count Indictment against the defendants. Count 1 of the Indictment, charges the defendants with conspiracy to violate the FCPA by agreeing to pay money or provide gifts to PEMEX and/or PEP officials to influence, obtain or retain certain contracts awarded or sought by Mexico Energy Companies. In Counts 2, 3 and 4, the government charges that the defendants engaged in specific acts of bribery by giving money and gifts to PEMEX and/or PEP officials for specific favor concerning contract awards, or for the purpose of releasing payments that were held up in audits. The jury returned its verdict on December 5, 2025, finding Rovirosa "Guilty" on Counts 1, 2 and 3 and "Not Guilty" on Count 4.

---

[3] Petroleos Mexicanos ("PEMEX") is a Mexico, state-owned, oil company that operates through subsidiaries that are located in Mexico and foreign countries such as the United States. One such subsidiary is PEMEX Exploration Y Production ("PEP"), named in the Indictment that has offices and/or refineries located in the United States, one of which is located in the Southern District of Texas. In this case, the government refers to PEMEX and PEP as "instrumentalities of a foreign government, the foreign government being Mexico. The companies' officers and employees are referred to as "foreign officials," as defined om the FCPA. *See* 15 U.S.C. § 78 dd-2(h)(2)(A). Allegedly, the bribes were directed to PEMEX and/or PEP officers and employees, who handled internal audit and contract procurement functions for PEMEX and/or PEP. When audit disputes arose, relating to a contract held by one of the three Mexico Energy companies, PEP officials and/or employees were allegedly contacted and offered bribes for a favorably resolve the disputes.

[4] The Indictment suggests that Rovirosa either owns the Mexico Energy Companies or exercises control or authority over the companies, all of which are located in Mexico and had contractual relations with PEMEX or PEP. The companies were not Indicted. And, neither was Rovirosa alleged domestic company, Rovirosa Energy Holdings.

**A. Rovirosa's Contentions**

At pretrial proceedings, during trial and post-trial, Rovirosa asserted objections, primarily concerning his Sixth Amendment right to confront government witnesses whose testimony was necessary, he argued, to a fair trial and that was, instead offered through electronic messages. His objections focused primarily on the electronic messages between himself and Avila and between Avila and several alleged co-conspirators. These offerings, he contends violate *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620 (1968), as they involved conversations between Avila and alleged co-conspirators, and crucial Supreme Court precedent that addresses the interphase between the admission of "hearsay" statements allegedly made by Avila and co-conspirators, and the Sixth Amendment.

Rovirosa, therefore, contends that the electronic messages offered by the government are testimonial and, thus, are subject to the Confrontation Clause of the Sixth Amendment. In particular, he argues that the electronic messages that were translated from Spanish to English, were inadmissible because the Translators were not made available at trial for cross-examination. Further, he argues, their testimony was not offered to him prior to trial. As such, the admission of the Spanish or English translations violated the principles established in *Crawford v. Washington,* 541 U.S. 36 (2004) and *Ohio v. Clark*, 576 U.S. 237 (2015). As a result, during and at the conclusion of the government case and again after the jury verdict, Rovirosa presented a Rule 29(c)[5] motion to dismiss the Indictment and acquitted him on all charges based on violations of

[5] Rovirosa filed several motions that the Court either overruled or took under advisement early in the case as follows: motion for Bill of Particulars [DE 30]; motion to compel [DE 32]; motion to dismiss [DE 33]; motion to dismiss [DE 35]; motion *in limine* [DEs 43 and 45]; motion to dismiss Indictment [DE 60]; motion for judgment NOV [DE 109]; motion to dismiss the case with prejudice [DE 112]; and motion for acquittal [DE 123]. The innumerable issues, raised by Rovirosa, are resolved or rendered moot by the resolution of Rovirosa's Confrontation Clause

his Sixth Amendment right to confront his accusers.

**B. The Government's Contentions**

The government objected, then and now, to Rovirosa's claim that a Sixth Amendment violation occurred, arguing that: (a) the electronic messages (Spanish to English translations) are to be evaluated no differently than other foreign language statements, writings, or recordings because they are hearsay in nature and communication between co-conspirators; (b) the proper procedure, the government asserts, for the admission of electronic messages is set out in *United States v. Llinas*, 603 F.2d 50 (5th Cir. 1979) and (c) "the translations were prepared by qualified Translators that supported their translations with certifications attesting to the truthfulness and accuracy of their translations. In addition, the government argues that the translations, were re-reviewed by the case agent, Special Agent Maria Elena Varga[6], whom the government claims is equally, if not better, qualified then the Translators.

**V. STANDARD OF REVIEW ANALYSIS**

The defendant, Rovirosa, raises a Confrontation Clause claim by asserting that his "due process" of law rights, under the Sixth Amendment, have been violated. The Sixth Amendment provides that in all criminal cases; the accused enjoys the right to confront the witness(s) against him. *See United States v. Richardson,* 781 F.3d 237, 243, (5th Cir. 2015) (citing *Crawford v. Washington,* 541 U.S. 36, 68 (2004)). This fact is equally, if not more so true when critical parts of the evidence must be translated.

---

claim. Federal Rule of Criminal Procedure(s), Rule 29(b) and (c) permits a court to reserve ruling on a motion to dismiss or acquit until after a jury verdict.

[6] Special Agent Maria Elena Varga was designated the case agent shortly before the trial. She did not specifically participate in the investigation as the "in charge agent" or the development of the case. Special Agent Matthew Wood was the case agent and at the time of trial had been reassigned to the state of Colorado.

When a Translator is involved, the Translator may become a witness if the translation from a foreign language or native language is necessary to prove the elements of the crime charged. This occurs when the original language translations become critical evidence, the messages become testimonial in nature. *Michigan v. Bryant,* 562 U.S. 344, 359-69 (2011). As a such, foreign language statements or messages qualify as testimonial if the "primary purpose" for the use of the out of court message is a substitute for trial testimony. *Id.* at 369.

Courts must evaluate testimonial statements or messages for evidentiary purposes and does so by utilizing the "primary purpose" test. *Ibid*. Under this test, a trial court evaluates the purpose for the use of the statement(s) to determine admissibility. In doing so, a court considers all of the relevant circumstances that gave rise to the messages or statements and how the government intends to use them. *Bryant*, 562 U.S. at 359. If the court determines that the statements are "not" offered as a substitute for trial testimony, then admissibility is governed by the appropriate rules of evidence or rules of procedure. In this circumstance, an alleged Sixth Amendment violation may be addressed by an appropriate instruction to the jury on how to use the statement or message. *Ibid.*

However, there are instances when the statements or messages would ordinarily fall within the primary purpose test; and yet, are not automatically barred by the Confrontation Clause. *See Crawford,* 541 U.S. at 56, n.6; *see also Ohio*, 576 U.S. at 243-46. For example, *Crawford* and *Ohio* hold that "[s]tatements are nontestimonial when made in the course of public interrogation under circumstances [that] objectively [demonstrate] that the primary purpose of the interrogation is to enable police assistance [in] meet[ing] an ongoing emergency." *Ohio*, 576 U.S. at 243-46.

Another instance might arise when the statements used are those of co-defendant, charged in the same Indictment with the same offense(s). A Confrontation Clause concern may elude the

complaining defendant. *See Samia v. United States*, 599 U.S. 635 (2023)[7]. Nevertheless, a defendant enjoys the right to confront the witness or otherwise challenge the messages or statements that implicate him. *See Bruton*, 391 U.S. at 135-37. With these cases as parameters, the Court proceeds to analyze the government's arguments concerning the Spanish to English translations and Rovirosa's claim of a Confrontation Clause violation.

## V. ANALYSIS AND DISCUSSION

### A. Electronic Messages Are Testimonial

After considering the relevant circumstances surrounding the government's case, and its intended use of electronic messages between the alleged co-conspirators and the co-defendant, the Court determines that the messages are testimonial and are governed by common law and the Confrontation Clause of the Sixth Amendment. The Court finds that the messages of the co-conspirators and, in particular, the co-defendant Avila, while they constitute hearsay messages, and would be admissible in a conspiracy setting, they are not automatically admissible here because, as translations, and when used to establish the case, they are testimonial. The government's primary purpose for offering the messages was to convict Rovirosa, *i.e.* to prove the elements of the crimes charged in the Indictment. *See Crawford,* 541 U.S. at 51.

In reaching this conclusion, the Court finds that the government has not produced evidence

[7] In *Samia*, the Supreme Court addressed the issue of the admissibility of the statement of the co-defendant in a murder case. In his confession, the co-defendant claimed that *Samia* had actually shot the victim. However, Samia was referred to as "the other person" by the DEA agent who took the co-defendant's confession. The Supreme Court held that the Confrontation Clause was not violated by the admission of the co-defendant's confession/statement as long as there was a limiting instruction. 399 U.S. 635 at 6. *See also United States v. Gasper-Felipe*, 4 F.4th 330 (5th Cir. 2021). In *Gasper-Felipe,* aliens were returned to their country after they were deposed and cross-examination permitted. The Circuit Court held that: "A witness is unavailable for Confrontation Clause purpose if the prosecutorial authorities have made a good faith effort to obtain his presence at trial." 4 F4d at 337 (quoting *United States v. Tirads-Tirads,* 563 F.3d at 123, quoting *Ohio v. Roberts*, 448 U.S. 56, 74 (1980)). There is no such showing in this case.

showing that the Translators were unavailable or that Rovirosa was given an opportunity to cross-examine them prior to trial. *Ibid*. The precedent is clear, the government had a duty to produce the Translators for cross examination.

The government turns next to the certification sequence for admissibility. It argues that Google or Yahoo and WhatsApp recorded the transmittals between Rovirosa, and between the alleged co-conspirators that were made on their own electronic devices capturing them in the regular course of their business activities. Hence, the government argues the messages are admissible under the business [records] exceptions rules. *See* Fed. R. Evid. 803(6). The government also argues that the Translators certified their translations under oath; and that Special Agent Varga reviewed the Translators' translations and certified the accuracy of their translations. The Court will address these arguments, however, they are all unavailing.

**B. Business Records and other Exceptions**

Fed. R. Evid. 801(c) and (d) and 803(6), address hearsay exceptions that apply to business records or electronic messages when they are offered into evidence. Rovirosa does not argue that the translations were not properly certified by Google or others, or that the business records exception, generally, satisfies the hearsay rule exception such that out-of-court hearsay statements or documents may be admitted. Instead, he argues that, even if the federal rules of procedure or evidence are satisfied, the electronic messages must be excluded because: (a) the messages offered were translations from Spanish to English, between and among alleged co-conspirators and, as such, the Confrontations Clause prohibits admission if they are testimonial statements by a non-testifying witness. The precedent exceptions to this rule do not apply here because Rovirosa had no prior opportunity to cross-examine the witnesses.[8] *Crawford,* 541 U.S. at 54; *see also Ohio*,

---

[8]The proper procedure for admitting electronic messages, asserts the government is through

448, 576 U.S. at 243.

The record shows that the government intentionally did not call as witnesses the Translators. Hence, Rovirosa was not provided an opportunity to cross-examine them prior to or during trial. Moreover, there is no evidence that the government could not have produced them. Nor is there evidence that the government made an effort to produce them. Hence, the Court concludes that Rovirosa's right to cross-examine the Translators and the co-defendant, cannot be truncated by offering certifications, particularly since the Translators were available to the government. Moreover, Rovirosa's right to cross-examine the Translators is not satisfied by the government's tender of Special Agent Varga to testify that she re-examined the Translator's translations and is of the opinion that they are accurate. To permit this type of "expert" evidence, turns on its head the science and art of proper translation considerations.

It is well accepted that Translators fall into one of two camps, those who use the pedagogic/literal format – word for word, or exercise poetic/dynamic, where the Translator seeks the pulse and tone of expressions in order to capture words and expressions.[9] Cross-examination permits recognition of cultural sensitivity issues, specialized knowledge, and the level at which the

---

*Llimas*. To the extent *Llimas* contradicts *Crawford* and *Ohio*. Also, the government's reliance on Fifth Circuit authority, pronounced in *United States v. Bulac*, 930 F.3d 383 (2019); *United States v. Herman*, 997 F.3d 251 (2021); and *United States v. Hall*, 63 F.4th 335 (2023), fail to acknowledge the factual distinctions between those cases and the case at bar.

[9] *See Why Translations Matter,* Edith Grossman (2011). *See also* María Cecilia Salisbury (1993), *An Interview with Edith Grossman,* Translation Review. In remarks concerning the translations process, Dr. Grossman stated:

> Translations need to develop a keen sense of style in both languages, honing and expanding our critical awareness of the emotional impact of words . . . we endeavor to hear the first version of the work . . . struggling to discover the linguistic charge, the structural rhythms, the subtle implications, the complexities of meaning and suggestion . . . cultural inferences and conclusions . . .

Translator's education and usage of the language may rest. To that add regional nuances and contextual consideration as the occasion dictates. To ignore the art and science of the translation process is to render cross-examination of the Translators, useless or questionable.

The jury recognized that the English translations short-circuited its review of the evidence, an evidentiary fact missed by the Court. During deliberations, the jury requested that the Court provide the Spanish messages during deliberations. *See* [Jury Note Number 1, DE 98]. The Court could not provide the Spanish messages because they had not been offered into evidence the government. This failing by the government becomes more poignant when considered in th(1)e light of Rovirosa's complaint that the government failed to produce forensic copies of the Spanish messages taken from both defendants' electronic devices.

The government promised to produce the screen shots on at least two occasions. On September 26 and October 1, 2025, Department of Justice Attorney, Bennett Starnes, promised the materials. The materials were never produced, and this failing is also fatal to the government's case.

## VI. CONCLUSION

Based on the Court's findings and conclusions, the Court GRANTS the defendant Rovirosa's motion to dismiss the Indictment pursuant to Fed. R. Crim. Pro. 29(c); alternatively, to ACQUIT him of all charges based on lack of evidence to support his conviction in violation of the Confrontation Clause of the Sixth Amendment. He is ORDERED released, forthwith.

It is so Ordered.

SIGNED on April 14, 2026, at Houston, Texas.

Kenneth M. Hoyt
United States District Judge