SPODEK LAW GROUP P.C.
Treating you like family since 1976

**Todd A. Spodek, Esq.**
Direct Dial: (347) 292-8633
ts@spodeklawgroup.com

November 11, 2026

**By ECF & E-mail**

Hon. Kiyo A. Matsumoto, U.S.D.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *United States v. Emmanuel Clase de la Cruz, et al.*,
No. 25-CR-346 (S-1) (KAM)

Dear Judge Matsumoto:

As Your Honor is aware, Spodek Law Group, P.C. represents defendant Robinson Vasquez Germosen ("Mr. Vasquez") and respectfully submits this letter in opposition to Part II of the government's November 10, 2026 supplemental motions in limine (the "Motion"), which seeks to admit Mr. Vasquez's January 9, 2026 proffer statements on the theory that he has triggered the waiver provision of his proffer agreement. As will be discussed, *infra*, he has not.

The government's Motion rests on a reading of the trial record which the record does not support, and on a reading of *Barrow* that the Second Circuit has twice rejected. Nothing said in Mr. Vasquez's opening statement or elicited on cross-examination asserted an alternative version of events. Rather, counsel described what the government's own witnesses would and would not say, argued that the government's proof would not support the inferences it asks the jury to draw, and cross-examined a DraftKings witness on the government's own exhibit. The Second Circuit has held that each of those things falls on the permitted side of the proverbial line. *United States v. Rosemond*, 841 F.3d 95, 108–10 (2d Cir. 2016); *United States v. Oluwanisola*, 605 F.3d 124, 131–33 (2d Cir. 2010). Further, even if some factual assertion had been made, the proffer statements the government proposes do not fairly rebut it. Allowing the government to introduce these proffer-protected statements would violate Mr. Vasquez's Sixth Amendment rights and risk a reversal should Mr. Vasquez be convicted. Accordingly, the Motion should be denied.

## I. Legal Standard

Proffer agreements are contracts, interpreted "to give effect to the intent of the parties," and the scope of a waiver provision is a question of law. *Rosemond*, 841 F.3d at 107 (quoting *United States v. Barrow*, 400 F.3d 109, 117 (2d Cir. 2005)). The inquiry has two steps. The Court asks first whether there has been "any evidence offered or elicited, or 'factual assertion' made, by or on behalf of the defendant," and only if so, second, whether the proffer statement "fairly rebut[s]" the fact asserted. *Id.* at 107–08. The government's Motion collapses the two steps. While it quotes *Barrow*'s description of rebuttal evidence as anything that "fairly counters and casts doubt" on a defense

position (Motion at 10) as though that language defined the trigger, it does not. The rebuttal question is never reached unless the defense has first made a factual assertion.

The Second Circuit has drawn that line with precision. "[T]he mere fact that a defendant pleads not guilty and stands trial is not a factual assertion that triggers the proffer agreement waiver," and "a defense argument that simply challenged the sufficiency of government proof on elements such as knowledge, intent, identity, etc., would not trigger the waiver." *Barrow*, 400 F.3d at 118–19. In *Rosemond*, the Court catalogued what does **not** trigger the waiver: pleading not guilty; arguing generally that the government has not met its burden of proof; arguing specifically that the government has failed to prove particular elements of the crime, such as intent, knowledge, identity; cross-examining a witness in a manner to suggest that he was lying or mistaken or was not reporting an event accurately; cross-examining an officer about discrepancies between his testimony and his report; and arguing that the government failed to present corroborating evidence 841 F.3d at 109 (collecting cases).

By contrast, the waiver is triggered by an affirmative alternative account: asserting in opening that someone else was the real perpetrator; accusing a witness of fabricating a meeting in support of a mistaken-identity theory; arguing a shooting was "an intended kidnapping gone wrong" when the defendant had admitted an intentional murder; or offering documents to prove a fact that contradicts the proffer. *Id.* at 109–10. The important, dividing principle is whether the defense injects an alternate version of events; an argument that the evidence is insufficient "suggests no new facts and injects no alternate version of events inconsistent with the proffer statements." *Id.* at 111. Arguments that the evidence is insufficient "will often carry with them the inference that events did not actually occur consistent with the Government's theory," but they "are not 'factual assertions' as they do not propose an alternate version of events." *Id.*

Additionally, two further principles govern here. First, "[p]articular caution is required when the purported fact is asserted by counsel rather than through witness testimony or exhibits." *Id.* at 108 (quoting *United States v. Roberts*, 660 F.3d 149, 158 (2d Cir. 2011)). Secondly, the defense may draw the jury's attention to exculpatory facts the government itself put into evidence, and may argue that "certain inferences from the Government's proof should not be drawn," without triggering the waiver. *Id.* at 111–12.

These limits are constitutional in nature, not merely contractual. An overbroad reading of a proffer waiver that restricts counsel's opening, cross-examination, or argument violates the Sixth Amendment, and the Second Circuit has twice found such errors are not harmless. *Oluwanisola*, 605 F.3d at 133–34; *Rosemond*, 841 F.3d at 112–13. Even where a trigger is found, the remedy "has to be narrow, you can't leave the defendant totally defenseless." *United States v. Booker*, 825 F. App'x 4, 11 (2d Cir. 2020) (summary order).

## II. The Opening Statement Made No Factual Assertion That Contradicts the Proffer

The Motion attributes to defense counsel a statement counsel never made. According to the government, counsel "represented through opening statements . . . that Vasquez did not 'kn[o]w about anything illegal'" and took "the position at trial that he never knew that Clase provided anyone with inside information on any occasion." Motion at 9, 11. The transcript says something

different. Each passage the government cites is a description of what the government's evidence would and would not show, or an argument about what inferences that evidence supports, and does not support, and none asserts an alternative version of events.

**A. "Will not tell you once that Robinson knew about anything illegal."**

Counsel told the jury that Mr. Caraballo,

> "just like every other witness who comes into this courtroom and takes the stand, will not tell you once that Robinson knew about anything illegal," and that "[t]he closest you're going to hear is that maybe a bett[o]r thought that Robinson knew something was illegal." Trial Tr. 635:21–25.

This is simply a forecast of the government's proof, not a statement about Mr. Vasquez's state of mind. It is the same kind of statement the Second Circuit held permissible in *Rosemond*, where defense counsel told the jury the cooperator would testify that he "didn't know it was a murder; Jim Rosemond never told [him] to murder anybody," and then elicited that Rosemond never used the words "murder" or "kill." 841 F.3d at 104, 111–12. There, the Court held that this was not inconsistent with Rosemond's proffer admission that he knew the victim would die:

> "Just as the suggestion that <u>a witness did not see</u> the defendant rob the bank is not inconsistent with the defendant's admission that he robbed the bank, McCleod's testimony that he never heard Rosemond say 'murder' or 'kill' is not inconsistent with Rosemond's admission during the proffer session that he knew Fletcher would die (emphasis added)." *Id.* at 111 (citing *Oluwanisola*, 605 F.3d at 133).

The same applies here in the instant matter. The statement that no witness will testify Mr. Vasquez knew of illegal conduct is entirely consistent with a proffer in which he described what Pena told him. Pointing to the absence of proof on knowledge is exactly what *Barrow* protects. 400 F.3d at 119 (defense may challenge "the sufficiency of government proof on elements such as knowledge, intent").

**B. "They don't have a message from him. They don't speak to him about it."**

The second passage, Trial Tr. 638:2–5, again describes the government's witnesses and the absence of corroborating communications. Arguing "that the Government failed to present corroborating evidence" does not trigger the waiver. *Rosemond*, 841 F.3d at 109 (citing *Roberts*, 660 F.3d at 158–59). Nor is the statement inconsistent with the proffer, as the proffer describes Pena telling Mr. Vasquez about a single pitch and sending him a picture of Pena's bet. It does not say that Mr. Vasquez messaged or spoke with any government witness about a scheme, and the government does not contend otherwise.

**C. "If you know the answers to the test, you don't get half of them wrong."**

The third passage, Trial Tr. 639:12–21, asserts no fact about what Mr. Vasquez knew. It opens with a conditional, "If Robinson signed on a plan to cheat DraftKings," and builds to a

question aimed at the government: "how is the Government going to explain that?" The next sentence, "That he had the answers, he needed the money, he had an opportunity to make the money, and he still lost." is not counsel's account. It restates the government's own theory as the premise the government must square with its own DraftKings records (Gov't Ex. 17076). That is a challenge to an inference, and defense counsel is "entitled to argue that certain inferences from the Government's proof should not be drawn." *Rosemond*, 841 F.3d at 111. Directing the jury to the government's proof is on the same footing as inquiry into exculpatory facts the government itself supplies, which "did not trigger the waiver." *Id.* at 112. Arguing that the betting record undercuts proof of knowledge is likewise protected, because "a defense argument that simply challenged the sufficiency of government proof on elements such as knowledge, intent, identity, etc., would not trigger the waiver here at issue." *Barrow*, 400 F.3d at 119.

Nor does the government identify any fact implied by counsel in this passage. Instead, the government simply substitutes its own description: that "Vasquez never knew that Clase had provided inside information to anyone." Gov't Mot. at 9. Counsel said no such thing. In any event, because the words at issue are counsel's, "Particular caution is required when the purported fact is asserted by counsel rather than through witness testimony or exhibits." *Roberts*, 660 F.3d at 158. Read most aggressively, the passage says only that Mr. Vasquez's betting record undercuts an inference that he had inside information generally. That is consistent with his proffer statement that he was aware of "just this one occasion." Gov't Mot. at 7.

### D. No Alternate Narrative.

Critically, what is missing from the opening is what *was* present in every case in which the Second Circuit has found a trigger: an affirmative counter-story. In the instant matter, counsel did not tell the jury that someone else placed the Beltre bets, that Mr. Vasquez never discussed Clase's pitches with Pena, that the May 17, 2025 bets were based on a particular legitimate analysis, or that the Cleveland conversation never happened. Compare, *Barrow*, 400 F.3d at 114, 119 (opening "unequivocally identifying [another person] as the real perpetrator"), *and Rosemond*, 841 F.3d at 109–10 ("kidnapping gone wrong"), *with Rosemond*, 841 F.3d at 110–11 (no trigger where counsel "never attempted to affirmatively argue or prove" an alternate version). The "particular caution" owed to counsel's words applies with full force. *Id.* at 108.

## III. The Cross-Examination of Mr. Trella Made No Factual Assertion

The government next points to counsel's cross-examination of DraftKings representative Joel Trella about Government Exhibit 17076, the Beltre account records. Trial Tr. 900:14–906:23. Counsel displayed the wagers on Clase's pitches, including the two May 17, 2025 wagers (rows 10055 and 10056), and elicited that "certainly a bet could have been made for $11,500." *Id.* 904:6–8. The government says this "implied to the jury that the bets on the May 17 pitch were legitimate." Motion at 10.

However, that is not a factual assertion within the meaning of the proffer agreement, for three reasons. *First*, the exhibit is the government's. Counsel introduced no defense exhibit and called no witness. The cross-examination drew the jury's attention to facts already in the government's evidence: the amounts actually wagered and the account's limits. "Such inquiry into exculpatory facts already elicited by the Government did not trigger the waiver." *Rosemond*, 841

F.3d at 112. The contrast with *Roberts* is instructive. There, the defense introduced its own flight logs and swipe-card records "to urge . . . a factual inference" that a government witness was elsewhere. *Id.* at 110 (discussing *Roberts*, 660 F.3d at 162). Here, counsel simply examined the government's records with the government's witness.

*Secondly*, a question about bet size is a challenge to an inference, not an assertion of fact. The government asks the jury to infer from the Beltre wagers that Mr. Vasquez bet on inside information. Highlighting that the wagers were modest relative to what could have been bet is an argument that the inference is weak, which is precisely what "attempt[s] to demonstrate why the facts put in evidence by the prosecution are insufficient to permit the jury to find the elements of the crime proved." *Barrow*, 400 F.3d at 119; *Rosemond*, 841 F.3d at 111. In *Rosemond*, counsel's questions establishing that the cooperator never heard the defendant say "murder" or "kill" also carried an implication that the defendant lacked intent to murder. The Court held that "[t]o the extent the questions might also have carried the implication that Rosemond did not actually intend to have Fletcher murdered, they were no more inconsistent with the proffer waiver than entering a plea of not guilty or challenging the sufficiency of the evidence." 841 F.3d at 112. Thus, the same is true of a question about the dollar size of a wager.

*Thirdly*, counsel did not say, and did not elicit testimony, that the May 17 wagers were placed for some legitimate reason, or that Mr. Vasquez had no information about that pitch. Here, the government's argument depends on reading an unspoken implication into a single question and then treating that implication as an affirmative assertion. The Second Circuit has warned against exactly that move, as courts must "consider carefully what fact, if any, has actually been implied to the jury." *Barrow*, 400 F.3d at 119; *Oluwanisola*, 605 F.3d at 132. Further, it has held that even a question "accusing the witness of fabricating an event" does not trigger the waiver absent an accompanying affirmative counter-narrative, because "it is entirely possible that the event nevertheless occurred." *Oluwanisola*, 605 F.3d at 133; *see Booker*, 825 F. App'x at 10 (rejecting district court's finding that a single cross-examination question triggered waiver). In the instant matter, a question about how much could have been bet asserts far less than that.

## IV. The Proffer Statements Do Not Fairly Rebut Anything the Defense Has Said

Assuming, *arguendo*, the Court were to find some implicit factual assertion, the government must still show that each proffer statement it offers "fairly rebut[s]" that specific assertion. *Rosemond*, 841 F.3d at 107–08; *Barrow*, 400 F.3d at 117–21. The government cannot meet that burden as to either statement.

### A. The Pena Statement.

The first statement is that Mr. Vasquez was aware of "just this one occasion" on which Clase told Pena in advance about a pitch, and that Pena told Mr. Vasquez and sent him a picture of Pena's bet. Motion at 7. Such statement does not rebut the defense arguments the government identifies. Moreover, it does not rebut the forecast that no witness will testify Mr. Vasquez knew of illegal conduct (Trial Tr. 635:21–25), because it is not witness testimony and says nothing about what the government's witnesses will say. Further, the statement does not rebut the absence of messages between Mr. Vasquez and the government's witnesses (*id.* 638:2–5), because it describes no such message. It also does not rebut the "answers to the test" argument (*id.* 639:12–21). Rather,

it confirms it, as Mr. Vasquez said he knew of only one occasion, which is consistent with losing bets on Clase's other pitches. Finally, it does not rebut the bet-size questions to Mr. Trella. The proffer does not say that Mr. Vasquez placed the May 17 wagers on the strength of what Pena told him, or when he learned of it relative to his own wagers. The government supplies that link with other trial evidence, arguing that Pena's bets "mirrored bets that Vasquez simultaneously made." Motion at 10. Instead, that is the government's case-in-chief theory, not rebuttal of anything the defense asserted.

### B. The Cleveland Statement.

The second statement is that, in Cleveland, one of Mr. Vasquez's friends said to Clase something like "hey, maybe we can make money on one of your pitches," and that Mr. Vasquez "did not know if this friend was joking or being honest." Motion at 8. The government does not identify any defense statement, question, or argument that this fairly rebuts. Nothing in the opening or the Trella cross addressed the Cleveland conversation. A third party's remark, which the declarant himself could not say was serious, rebuts no assertion that Mr. Vasquez knew of a scheme or joined one. In reality, the government's request to admit it confirms that the Motion seeks to use the proffer as substantive proof of guilt rather than as targeted rebuttal.

### C. The Government's Own Framing Confirms the Overreach.

The government characterizes the defense as claiming that Mr. Vasquez "never knew that Clase provided anyone with inside information on any occasion." Motion at 9 (heading B). Counsel said no such thing. The government needs that paraphrase because the actual words of the opening are not inconsistent with the proffer. Where a party must restate the defense in order to find a contradiction, there is nothing for the proffer to "fairly rebut." *See Rosemond*, 841 F.3d at 111–12 (rejecting government's argument that an "implicit" factual assertion of innocence was contained in sufficiency arguments and cross-examination).

## V. The Court Should Not Adopt the Government's Reading or Issue an Anticipatory Ruling

The government also asks the Court to act on what it predicts Mr. Vasquez will do, asserting that he "has made clear that he intends to open [the door] further," and reserving the right to seek admission of additional proffer statements. Motion at 11, 13. The Court previously, and correctly, reserved decision on whether the waiver has been triggered "based on what happens at trial." ECF No. 325 at 22. Nothing in the record warrants departing from that approach.

In fact, an advance ruling adopting the government's reading would carry real constitutional risk. In *Oluwanisola*, the district court issued preliminary rulings accepting the government's expansive view of a materially identical waiver. Defense counsel, facing the prospect of "letting the horse out of the barn," limited his opening to generalities about the burden of proof, and the court restricted his cross-examination. The Second Circuit held that "[t]he government's extreme interpretation of *Barrow*, coupled with the court's preliminary ruling that adopted the government's position, had the effect of severely limiting [the defendant's] ability to mount an effective defense," violated the Sixth Amendment, and was not harmless even though counsel was later allowed to argue sufficiency in summation. 605 F.3d at 134. In *Rosemond*, the Court vacated a life sentence on the same ground, holding that a ruling barring counsel from arguing that the

government had not proven intent to murder was "at odds with [its] decisions in *Barrow* and *Oluwanisola*." 841 F.3d at 110, 112–13.

By contrast, in *Booker* the Second Circuit affirmed where the district court "did not adopt an extreme interpretation of the scope of the waiver provision," "accurately described the circumstances under which waiver would and would not be found," made itself available for sidebars before counsel began a line of inquiry, and "applied the waiver narrowly." 825 F. App'x at 11. That is the approach this Court has taken to date, and Mr. Vasquez respectfully asks that it continue. Defense counsel will request a sidebar before any line of inquiry that counsel believes could implicate the proffer.

The government's theory, if accepted, would leave Mr. Vasquez without a defense. On its view, telling the jury that the government's witnesses will not establish his knowledge, pointing out the absence of messages, arguing that his betting record undercuts an inference of inside information, and asking the government's witness about the government's exhibit all "open the door." Those are the core tools of a defense on the element of knowledge. *Oluwanisola* rejected an interpretation that "would leave the defendant, for all practical purposes, defenseless." 605 F.3d at 132. So should this Court.

## VI. Conclusion

For the foregoing reasons, Mr. Vasquez respectfully requests that the Court deny Part II of the government's Motion, decline to find that the waiver provision of his proffer agreement has been triggered, and continue to reserve decision on any future application pending specific developments at trial. In the alternative, Mr. Vasquez requests that the Court exclude the Cleveland statement, limit any admitted portion of the Pena statement to language that fairly rebuts a specifically identified assertion, require completeness under Rule 106, permit the defense to propose an alternative sanitization, and give an appropriate limiting instruction.

Respectfully submitted,

**SPODEK LAW GROUP P.C.**

By: /s/ Todd A. Spodek
Todd A. Spodek, Esq.
233 Broadway, Suite 710
New York, New York 10279
(212) 300-5196
ts@spodeklawgroup.com

*Attorneys for Defendant*
*Robinson Vasquez Germosen*