CORVA
LAW 110 West 40th Street, Suite 1003 · New York, N.Y. 10018 · (646) 974-1143 · www.corvalaw.com

November 23, 2026

*Via ECF*

The Honorable Kiyo A. Matsumoto
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *United States v. Emmanuel Clase de la Cruz, et al.*
Criminal Docket No. 25-346 (S-1) (KAM)

Dear Judge Matsumoto:

We write on behalf of the defendant Luis Leandro Ortiz Ribera to raise two evidentiary issues tied to the government's decision to not call Enoc Pena as a witness. First, the Court should allow defendants to admit Enoc Pena's cooperation agreement (3500-EP-012), and the government's applications for, and receipt of, deferred action as to Enoc Pena (3500-EP-16, 3500-EP-17, 3500-EP-21, 3500-EP-55) and to elicit that Pena met with the government on nineteen (19) occasions (including as recently as November 22, 2026), with a Rule 105 limiting instruction. The proffered evidence is admissible for one purpose: to show the government's control over him and whether the government "was in the best position to call him." Second, the Court should bar the government from offering Pena's guilty plea or allocution, any factual recital in his plea agreement, or his statements to agents, including those implicating the defendants. Admission of any such statements would violate the Confrontation Clause regardless of whether the government offers that material directly, through an agent, or as "completion" under Fed. R. Evid. 106.

## BACKGROUND

On September 23, 2025, Enoc Pena pleaded guilty, pursuant to a cooperation agreement with the government. (3500-EP-012 at 15). The agreement imposes these obligations and gives the government these powers:

- Pena must attend every meeting the Office requests and testify when the Office asks. (*Id.* ¶¶ 4(a), 4(d)).
- The government alone decides whether he has cooperated fully and whether to move under U.S.S.G. § 5K1.1. (*Id.* ¶ 20).
- If the government judges that he has not, it "will be released from its obligations under this agreement" and may withdraw support for an S Visa. (*Id.* ¶ 22).

- His obligations continue after sentencing. (*Id.* ¶ 4(f)).

The government has also "assisted [Pena] in obtaining deferred action to permit him to remain in the United States so that he is available to testify at trial." (Gov't Ltr. to Counsel, dated Aug. 21, 2026, at 3). On October 8, 2025, the government told Homeland Security Investigations ("HSI") that Pena "need[ed] to remain in the country to prepare for and give his testimony, should the trials occur." (3500-EP-016 at 1). His deferred action is discretionary. (3500-EP-017 at 1-2). When the FBI no longer needs him, the handling agent must ensure that he leaves the United States or is placed in removal proceedings. (3500-EP-016 at 2-3). On September 18, 2026, the FBI asked HSI to renew his deferred action for another year. (3500-EP-021).

Since the entry of the cooperation agreement, the government has met with Pena on fifteen (15) occasions: February 19, 2026; September 14, September 28, September 30, October 2, October 4, October 11, October 12, October 19, October 20, October 21, October 22, October 23, November 19 and November 22, 2026. Counsel for Mr. Ortiz has never met with Pena.

Upon learning that the government did not intend to call Pena as a witness, counsel for Mr. Ortiz argued that she intended to offer Pena's cooperation agreement and that it was relevant to the missing witness instruction it intended to ask the Court to give the jury:

> Ms. Geddes: The Government turned over binders worth of 3500 material for Mr. Pena, and they're still retaining their right to call him as a witness, which I understand. That is their right. It is their right to decide to call him, it is their right to decide not to call him. But it is also our right to discuss what this case is about, and as far as Mr. Ortiz is concerned, this case is about Mr. Pena. Mr. Pena is the one who inserted Mr. Ortiz's name into this case, and we will prove that he was lying about it. It's not our burden. It's the Government's burden. But our defense, as the Government well knows, is that Mr. Pena made it up because he saw an opportunity to make money. This was one of the many different schemes that Mr. Pena was involved in. There's going to be many hearsay statements of Mr. Pena's that will be introduced by the Government through text messages by Mr. Pena, through witness testimony repeating things that Mr. Pena said, and we are permitted to introduce impeachment material under 806. **And part of that is going to be that the Government entered into a cooperation agreement and strategically made a decision not to call him because – and we're going to argue that that was because they didn't think that what he had to say was helpful to them**. **And at this point, we're going to come back to Your Honor and we're going to ask for a missing witness instruction, because we don't have access to Mr. Pena, only the Government does**. Yes, we can put him on cold. His lawyer has told me that he will show up in court and we can put him on cold, but we cannot prep him. Meanwhile, the Government has spent hours and hours prepping him. We're at openings. There is no harm to the Government. This is not going to be putting the Government on trial. But it is a decision that the Government made to extend this individual a cooperation agreement, and it was the crux of their case for months.

***

> We're going to call Agent Giarrusso, and **as part of our direct of Agent Giarrusso, we will elicit that the Government entered into a cooperation agreement with Enoc Pena. And as part of our closing, we will argue that Mr. Pena was available to the Government and that the Government strategically decided not to call him as a witness**.

(T. 540-41, 551) (emphasis added).

<u>DISCUSSION</u>

**I. The cooperation agreement is admissible to show the government's control over Pena.**

As the defendants argued in their letter from earlier today in support of a missing witness instruction (ECF 351), Pena is peculiarly in the control of the government and the defendants intend to argue that the government had the unique ability to call Pena as a witness and that the jury should infer that Pena's testimony would have been unfavorable to the government and that is why the government did not call Pena as a witness. The government disputes control. (Gov't Ltr. at 3). To show how the government was in the best position to call Pena, Mr. Ortiz should be permitted to introduce Mr. Pena's cooperation agreement and the government's applications for deferred action. The agreement binds Pena to meet with the government and testify when asked, and it leaves his sentencing motion and immigration support to the government's judgment. It is plainly relevant under Fed. R. Evid. 401. In *Basciano*, another court in this district found an uncalled cooperator's agreement relevant to the same missing-witness theory and rejected a Rule 403 objection to it. *United States v. Basciano*, 430 F. Supp. 2d 87, 91-92 (E.D.N.Y. 2006).

Nor is the agreement hearsay. Mr. Ortiz offers its operative terms, not the truth of any assertion in it. Fed. R. Evid. 801(c)(2). Signed contract documents offered to show the obligations the parties undertook are not hearsay. *See, e.g., Crawford v. Tribeca Lending Corp.*, 815 F.3d 121, 125-26 (2d Cir. 2016); *United States v. Dupree*, 706 F.3d 131, 136-38 (2d Cir. 2013) (court order offered to show notice, not truth, was not hearsay). Mr. Ortiz offers the agreement for what it requires of Pena and what it leaves to the government, and those terms bind Pena.

We further request under Fed. R. Evid. 105 that the Court instruct the jury: "You may consider the cooperation agreement only in deciding whether the government was in the best position to call Pena. You may not consider it as evidence that any defendant committed any crime."

**II. The government may not prove Pena's accusations through his plea or his statements to agents.**

The government suggested that if Pena's cooperation agreement is admitted, the government should be permitted to introduce certain statements of Pena made during the course of his cooperation. It should not be permitted to do so.

**The plea.** It is beyond dispute that a plea allocution by an individual who is not testifying as a witness is not admissible absent the individual's unavailability and a prior opportunity for cross examination. *Crawford v. Washington*, 541 U.S. 36, 68 (2004) ("Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination."); *United States v. Riggi*, 541 F.3d 94, 102 (2d Cir. 2008) ("It is thus constitutional error to admit as substantive evidence a plea allocution by a co-conspirator who does not testify at trial unless the co-conspirator is unavailable and there has been a prior opportunity for cross-examination.") (internal quotations and citation omitted).

**Statements to agents.** Pena's accounts in proffers, debriefings and preparation sessions are similarly testimonial and barred by the Confrontation Clause. *Crawford*, 541 U.S. at 52 ("Statements taken by police officers in the course of interrogations are also testimonial under even a narrow standard."); *Orlando v. Nassau Cnty. Dist. Att'y's Off.*, 915 F.3d 113, 121-26 (2d Cir. 2019) (detective's account of a non-testifying accomplice's testimonial confession implicating the defendant violated the Confrontation Clause despite a limiting instruction).

## III. Offering the agreement's terms does not open the door to the plea or the other testimonial statements.

"Properly admitted evidence does not open the door to inadmissible evidence." *United States v. Rosa*, 11 F.3d 315, 335 (2d Cir. 1993). A defendant does not forfeit confrontation by making testimonial hearsay arguably relevant. *Hemphill v. New York*, 595 U.S. 140, 144 (2022) ("Hemphill did not forfeit his confrontation right merely by making the plea allocution arguably relevant to his theory of defense."). The agreement's terms answer the control question on their own. An allocution or accusation tells the jury nothing more about what the agreement requires. *See United States v. Rivera*, 61 F.3d 131, 135-36 (2d Cir. 1995) (testifying cooperator; error to admit a factual stipulation incorporated in his plea agreement after the defense introduced the agreement, because the stipulation "added nothing to the jury's understanding of the plea agreement for its relevant purpose").

## CONCLUSION

Mr. Ortiz respectfully requests that the Court (1) admit Pena's cooperation agreement, with any factual recitals redacted, and the government's letters seeking deferred action for Mr. Pena for the limited purpose of the government's control over Mr. Pena, and give the limiting instruction proposed above; (2) preclude the government from offering Pena's guilty plea or allocution, any factual recital in his plea or cooperation papers, and his statements to agents implicating the defendants, whether offered directly, through an agent, or under Rule 106; and (3) if any reference to the plea is permitted, instruct the jury that it may not be considered as evidence of any defendant's guilt.

Respectfully submitted,

Elizabeth Geddes

Elizabeth Geddes
Corva Law LLP
110 West 40th Street, Suite 1003
New York, New York 10018
liz@corvalaw.com

Christos N. Georgalis
Paul M. Flannery
Flannery | Georgalis, LLC
1621 Euclid Avenue, Floor 20
Cleveland, Ohio 44115

*Attorneys for Defendant Luis Leandro Ortiz Ribera*

cc: All counsel of record (via ECF)