**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

RCH/FTB:EWS/SMS/RMU/JS
F. #2025R00435

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

November 23, 2026

By ECF & E-mail

The Honorable Kiyo A. Matsumoto
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Emmanuel Clase de la Cruz, et al.
Criminal Docket No. 25-346 (S-1) (KAM)

Dear Judge Matsumoto:

The government respectfully submits this letter seeking the resolution of two outstanding issues in advance of the conclusion of the presentation of the evidence in this case. For the reasons set forth below, the government requests that the Court: (1) permit the government to introduce the evidence of defendant Clase's outstanding tax liability; and (2) preclude the defense from introducing the cooperation agreement of Enoc Pena.

I. The Government Should Be Permitted to Introduce Evidence of Clase's Outstanding Tax Liability

As the Court is aware, shortly after trial started, government filed a supplemental motion in limine seeking leave to introduce evidence of Clase's outstanding tax liability of approximately $700,000—including records and testimony from Clase's Accountant—in response to Clase's opening statements and his cross-examination of government witnesses suggesting he lacks a financial motive to commit the charged offenses because of his purported wealth. See ECF Nos. 341-42. After oral argument on November 12, 2026, the Court reserved decision on whether the evidence would be permitted in the government's rebuttal case in order to permit the defense additional time to review the § 3500 material and records associated with the Accountant. See Trial Tr. 1588:2-10 ("All right. Well, it should not come in in your case in chief at this point. I want to give the defense the ability to look at [the] testimony. … You've given them the documents—and I'm not making a ruling, just to be clear, but what I am ruling is it doesn't come in in your case in chief. And it may not come in in a rebuttal case. We'll wait and see."). Earlier today, the Court said "[I]f there is no rebuttal case, you can put it in. If there is a rebuttal case, you will wait until after the Defense." The government understands that Mr. Clase does not intend to present a defense case. Therefore, the government should be permitted to offer this evidence at the conclusion of its case-in-chief.

Even after this discussion with the Court, Clase has continued to elicit testimony to bolster the argument advanced in his opening statement that he lacked any financial motive to commit the charged crimes. For example, when Jared Friedberg from RockFence testified, counsel for Clase elicited "the fact that a baseball player agrees to accept a loan from RockFence does not mean that the player is experiencing financial difficulty" and that "it is not solely for players that are in some kind of financial distress." Tr. 2115:12-20. Moreover, during Clase's cross examination of financial accountant Christopher Petrellese today, counsel asked Mr. Petrellese a series of questions about Mr. Clase's wealth, including whether he investigated (*i*) the value of Clase's house in Ohio; (*ii*) the value of real and personal properties Clase owned in the Dominican Republic, including property, vehicles, and livestock; and (*iii*) the value of biweekly payments received by Clase from RockFence. All these questions were clearly designed to suggest to the jury that Clase was too wealthy to commit the charged crimes. And these lines of cross-examination are particularly notable in that they came after the government filed its supplemental letter motion seeking to admit evidence about Clase's tax liabilities in its rebuttal case. And they follow from Clase's cross-examination of MLB witness Paul Mifsud, during which Clase offered affirmative evidence that Mr. Clase's received various performance bonuses for earning certain awards. See, e.g., Tr. 699:14-19; Tr. 699:22-25; Tr. 700: 1-10; Tr. 704:8-13; Tr. 705:25-706:10; Tr. 708:5-15.

Based on this record, the government fully expects Clase to again argue in summation that he cannot be guilty of the charged crimes because he lacked a financial motive to commit them. Accordingly, for the reasons described in the government's supplemental motion in limine, ECF Nos. Nos. 341-42, and in the lengthy oral argument before the Court, Trial Tr. 1298-1315, the government submits that it should be permitted to call the Accountant as a witness and/or offer the Accountant's records about Mr. Clase's outstanding tax liabilities in 2025, around the time he accepted kickbacks. Having chosen to pursue these lines of cross-examination despite the misleading impression they left with the jury, the defendant cannot seriously complain that he would be prejudiced by the admission of directly responsive evidence. Indeed, as of today's date, the defense has been in possession of the relevant materials (which to be clear, are the defendant's own records) for approximately one month, which was a primary concern of the Court in reserving decision on this issue. In addition, this testimony is of heightened importance if Clase intends to argue in summation —as his counsel did during opening statements—that Clase lacked a financial motive to commit the charged crime. If the defendant does indeed intend to make that argument, the government submits that it would be highly prejudicial to withhold from the jury relevant admissible evidence that rebuts the argument the defense will make in summation, especially where, as here, the evidence consists of the defendant's own tax information.

## II. The Court Should Preclude the Defense from Introducing Mr. Pena's Cooperation Agreement

As of this afternoon, November 23, 2026, defense counsel notified both the government and the Court that it no longer intended to call Special Agent Giarusso to elicit Mr. Pena's prior inconsistent statements[1]; however, defense counsel persists in their request to admit

[1] Prior to trial, counsel for defendant Ortiz sent the government a letter pursuant to United States ex rel. Touhy v. Ragen, 340 U.S. 462 (1951) ("Touhy") that, inter alia, sought authorization for the case agent, FBI Special Agent Amy Giarrusso, to testify at trial regarding certain statements she heard from government witnesses as well as "methods used by the

Mr. Pena's cooperation agreement. As set forth below, the defense should be precluded from introducing Mr. Pena's cooperation agreement on both relevancy grounds and as prejudicial under Rule 403.

The evidence and testimony at trial has shown that between in or around May 2023 and June 27, 2025—while the pitch-rigging conspiracy was ongoing—Mr. Pena told a group of bettors that he had inside information from Emmanuel Clase and Luis Ortiz about what pitches they would throw and provided the bettors with that information to place bets on those pitches. In August 2025, Mr. Pena began cooperating with the government, and in September 2025, he pleaded guilty to engaging in the pitch-rigging conspiracy before Your Honor pursuant to a cooperation agreement with the government. Not a single statement from the time of his cooperation forward has been admitted into evidence in this case.

To be clear, despite the defense's best efforts to muddle the issue, this case is not about what Mr. Pena told or did not tell the government from August 2025 onwards. Rather, the evidence and testimony involving Mr. Pena has been about what he said to his co-conspirators while the scheme was ongoing from May 2023 through June 27, 2025. Indeed, as the Court noted at sidebar when the defense attempted to ask a publication witness about Mr. Pena's cooperation agreement after the witness had read Mr. Pena's historical text messages, "I'm just not sure how this cooperation agreement is relevant to anything that, you know, Pena's statements have come in not through his live testimony but through his own admissions." Tr. 2312:18–21.

Evidence is admissible only if it is relevant—that is, if it has "any tendency to make a fact [of consequence] more or less probable than it would be without the evidence," Fed. R. Evid. 401(a)—and not otherwise inadmissible. Even if a piece of evidence satisfies Rule 401's relevance standard, a court may still exclude evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Mr. Pena's statements to his co-conspirators all long pre-dated his entry into a cooperation agreement with the government, it is temporally irrelevant to those communications that he subsequently pleaded guilty to engaging in the pitch-rigging conspiracy pursuant to a cooperation agreement. See Soares v. United States, 66 F. Supp. 2d 391, 403 n.6 (E.D.N.Y Aug. 13, 1999) (noting that a hearsay declarant's "subsequent cooperation agreement" was "irrelevant to [his] credibility as a co-conspirator declarant). Put another way Mr. Pena's subsequent "dealings with federal authorities shed little light on his [earlier] credibility in dealing with criminal confederates." Id. (describing United States v. Orena, 145 F.3d 551, 560 (2d Cir. 1998)); see also United States v. Friedman, 854 F.2d 535, 570 (2d Cir. 1988) (district court did not abuse

---

government to obtain information from witnesses and the government's failure to take certain investigative steps." Nowhere in this letter did defense counsel identify that they sought for Special Agent Giarusso to introduce or authenticate Mr. Pena's cooperation agreement. Since trial has begun, defense counsel has reiterated with the Court that they intend to call Special Agent Giarrusso as a witness at trial. Indeed, it was on this basis, and over strenuous government objection, that the Court authorized defense counsel to refer to Mr. Pena in opening statements as a cooperating witness. See Tr. 566–567.

its discretion by precluding evidence of cooperator's prior lie to law enforcement because such evidence "had no conceivable bearing upon the credibility of [] [the cooperator's] statements" to his co-conspirator.)[2]

Moreover, should the Court find the cooperation agreement relevant, the Court should still preclude the agreement as unduly prejudicial and potentially confusing to the jury pursuant to Rule 403. See United States v. Basciano, No. 03-CR-929 (NGG), 2007 WL 9770658, at *4 (E.D.N.Y. July 25, 2007) (defendant sought to admit non-testifying cooperator's agreement for the purpose of "giving rise to an inference that Government lawyers have concluded that [] [the cooperator's] testimony would hurt the Government's case," but the Court ruled that because "the Government would be forced to introduce testimony it does not seek to introduce" and the "charges would be delayed, the parties' and the court's time would be wasted, and there would be no evidentiary benefit whatsoever . . .[the] cooperation is inadmissible pursuant to Rule 403 because the probative value of this evidence is substantially outweighed by the risk of jury confusion, inevitable undue delay, and certain waste of the parties' and the court's time."). The Second Circuit's holding in United States v. Caruso, 225 F.3d 646 (2d Cir. 2000) is instructive. There, defense had argued on appeal that the district court had erred by precluding the defendants from eliciting testimony regarding a cooperator's agreement with the government and subsequent deception. The Second Circuit, however, found that the district court correctly ruled because "the relevance of this information was 'outweighed by the time and . . . the confusion to the jury.'" United States v. Caruso, 225 F.3d 646 (2d Cir. 2000). The Circuit additionally noted that after weighing the probative and prejudicial value of the evidence pursuant to Rule 403, the district court had "broad discretion" and that "while the evidence might have been relevant to impeach [] credibility . . . it was also potentially confusing (since it could shift the jury's attention to the government's dealings with [] [the cooperator]) and cumulative and thus wasteful of time." Similar to the circumstances in Caruso, the existence and introduction of Mr. Pena's agreement is irrelevant to the evidence that has been introduced during this trial and would unnecessarily confuse the jury.

Finally, the government notes that because there has been and ought not to be any evidence admitted in this case indicating that Mr. Pena is a cooperating witness, the defendants should be precluded from arguing during their summations that he is a cooperating witness.[3]

---

[2] Similarly, the government is not aware of any theory under which Mr. Pena's cooperation agreement would be admissible for purposes of impeachment because the agreement itself sheds no light on Mr. Pena's credibility. It is extrinsic evidence that is neither a "specific instance" of Mr. Pena's conduct nor is it a "prior inconsistent statement."

[3] As explained during today's sidebar conference, the government directed Enoc Pena to be present in court today with his attorney. He did not appear. This evening, counsel for Mr. Pena conveyed that Mr. Pena was told that the government had directed him to be present in court today and had declined to appear. The government has directed him to appear tomorrow, but understands from counsel that he presently intends not to appear in court tomorrow either.

In the event the Court concludes that the defense should be permitted to introduce Pena's cooperation agreement, the government should be permitted to offer evidence putting the agreement in the appropriate context and to rehabilitate attacks on Pena's credibility throughout this trial, in which the defendants have repeatedly suggested that Pena made up a scheme to bet on fixed pitches. The introduction of Pena's cooperation agreement, standing alone, would confuse the jury, because the face of the document does not make clear the nature of the fraudulent scheme to which Pena pleaded. Worse, it would suggest to the jury that the government did not call Pena because of a belief that he would have testified adversely for the government and proved that the defendants are not guilty. But that would leave a false impression with the jury. No defendant seriously disputes that Enoc Pena would inculpate the defendants. From the moment Enoc Pena started cooperating with the government, he has consistently implicated all three defendants in a scheme to bet on fixed pitches. He also implicated himself in that scheme by pleading guilty to wire fraud conspiracy and allocuting to participating in a scheme to defraud betting platforms by betting on fixed pitches. See 3500-EP-010 at 35:18-36:3 ("[Pena:] I learned the outcome of the pitch from the pitcher, for example, that he would throw a ball, and made bets online, because I knew that the players do the best they can to get the best result, and I knew there was a way of cheating against the rules of the application. [Court:] So you had communications with a pitcher as to what type of pitch he would make? [Pena:] Yes. [Court:] And then you made bets on these betting platforms? [Pena:] Yes.")

Once again, Basciano is instructive. There, the court observed that the government would be entitled to rebut the false suggestion that would attach to merely offering a cooperating witness's cooperation agreement, including by offering the witness' out-of-court statements that incriminated the defendant. Basciano, 2007 WL 9770658, at *4 (citing Paolitto v. Brown, 151 F.3d 60, 66 (2d Cir. 1998) ("'Opening the door' to evidence that has previously been excluded gives the trial court discretion to permit a party to introduce otherwise inadmissible evidence on an issue (a) when the opposing party has introduced inadmissible evidence on the same issue, and (b) when it is needed to rebut a false impression that may have resulted from the opposing party's evidence.") (internal quotation marks omitted)). So too here. If the Court permits the defendants to offer Pena's cooperation agreement, the government should be permitted to offer, at a minimum, a transcript of Pena's guilty plea establishing that he incriminated himself in a pitch-rigging scheme, the very scheme at issue in this case, to rebut any suggestion that Pena would deny the existence of that scheme if called to testify.

Finally, contrary to the assertion made by counsel for Ortiz at sidebar earlier today, the introduction of Pena's guilty plea transcript would not present an issue under the Confrontation Clause because the government is not seeking to bring the statements in for their truth. Rather, the government is seeking to admit the statements for the limited purposes of putting his cooperation agreement in context and rehabilitating Pena's credibility in light of the defense's cross-examination of various cooperating witnesses in this case suggesting that Pena lied to bettors about the existence of inside information. Consistent with the Supreme Court and the Second Circuit, this Court has held that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." Crawford v. Washington, 541 U.S. 36, 59 (2004) (citing Tennessee v. Street, 471 U.S. 409, 414 (1985)); United States v. Goldstein, 442 F.3d 777, 785 (2d Cir. 2006) (citing Crawford); United States v. Hill, No. 12-CR-214 (KAM), 2014 WL 223184, at *2 (E.D.N.Y. Jan. 20, 2014), aff'd, 658 F. App'x 600

(2d Cir. 2016) (citing Crawford); Moreno v. Smith, No. 06-CV-4602 (KAM), 2010 WL 2975762, at *10 (E.D.N.Y. July 26, 2010) (citing Crawford and Street).

III. Conclusion

For the reasons set forth above, the government respectfully requests that the Court grant the applications requested herein.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By: /s/
Eric Silverberg
Sean M. Sherman
Rebecca M. Urquiola
James R. Simmons
Assistant U.S. Attorneys
(718) 254-7000

cc: Clerk of Court (KAM) (by ECF and Hand Delivery)
Counsel of Record (by ECF and E-Mail)